

# ESCROW AGREEMENT

This Escrow Agreement (the "Agreement"), effective as of the date set forth below, by and among **Greystone EB-5 LLLP** ("LP"), a Florida Limited Liability Limited Partnership; **WWB Trust, LLC** (the "Escrow Agent"); and **PNC Bank,** a Pennsylvania banking corporation (the "Escrow Bank") (collectively the "Parties").

**W I T N E S S E T H:**

**WHEREAS,** the LP proposes to offer for sale (the "Offering") one unit of interest in the LP (the "Interests"), at a subscription purchase price of five hundred thousand dollars ($500,000.00) per Interest ("Subscription Proceeds") payable in cash pursuant to subscription agreements ("Subscription Agreements"); and

**WHEREAS**, the Interests in the LP are proposed to be offered for sale to investors (the "Subscribers") under the terms of the EB-5 visa program administered by the U.S. Citizenship and Immigration Service ("USCIS"), an agency of the United States government;

**NOW THEREFORE,** in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. <u>Deposits in Escrow.</u>

(a) The LP shall deposit or cause to be deposited with the Escrow Agent, to be held in escrow under the terms of this Agreement, all Subscription Proceeds received from Subscribers ("Escrow Funds"). The Escrow Agent shall have no responsibility for Subscription

Proceeds until such proceeds are actually received, clear through normal banking channels and constitute collected funds. The Escrow Agent shall have no duty to collect or seek to compel payment of any Subscription Proceeds, except to place such proceeds or instruments representing such proceeds for deposit and payment through customary banking channels. Checks for Subscription Proceeds furnished by Subscribers shall be made payable to: "PNC Bank, as Escrow Bank for Greystone EB-5 LLLP."

(b) The LP shall deliver to the Escrow Agent, in a form acceptable to the Escrow Agent, schedules disclosing the name, address and Tax Identification Number of each of the Subscribers, the number of Shares subscribed for by each Subscriber, the amount of Subscription Proceeds received from each Subscriber, and such other information as will enable the Escrow Agent to attribute to a particular Subscriber all Subscription Proceeds received by the Escrow Agent.

2. <u>Rejection or Withdrawal of Subscription Agreement.</u>

(a) Any Subscription Agreement may be rejected by the LP in whole or in part. The LP shall promptly notify the Escrow Agent in writing in the event of any such rejection. Upon the receipt of a written notice of rejection pertaining to any Subscription Agreement, the Escrow Agent shall return to the Subscriber signing the rejected Subscription Agreement the Subscription Proceeds tendered by such Subscriber, without deduction or payment of interest; provided such Subscriber's Subscription Proceeds constitute collected funds.

(b) In the event the Escrow Agent receives notice from the LP that a Subscription Agreement has been withdrawn by a Subscriber, the Escrow Agent shall return to such Subscriber who signed the withdrawn Subscription Agreement the Subscription Agreement (if then in the Escrow Agent's possession) and the Purchase Price tendered therewith, without deduction or payment of interest.

3. <u>Disbursements.</u>

(a) At such time as the Escrow Agent has received notice from the LP that a Subscriber's Form I-526 Immigration Petition has been submitted to USCIS, the Escrow Agent shall, subject to the receipt of such funds, disburse the Subscriber's Subscription Proceeds to the account of the LP in accordance with written directions provided by the LP. At such time as all Subscribers' Form I-526 applications have been either approved, denied, or otherwise processed by USCIS and all Subscription Proceeds either returned to the Subscriber or disbursed in accordance with directions provided by the LP, this Agreement (except as otherwise provided herein) shall terminate.

(b) In the event the Escrow Agent receives written notice from the LP that a Subscriber's Form I-526 Immigration Petition has been denied by the USCIS, the Escrow Agent shall return to the Subscriber the Subscription Agreement (if then in the Escrow Agent's possession) and the Subscription Proceeds tendered therewith, without deduction or payment of interest.

(c) The LP shall provide a copy of this Agreement to each Subscriber.

4. Investment of Subscription Proceeds.

The Parties further covenant, warrant and agree that the Escrow Agent shall invest all Subscription Proceeds, at the written direction of the LP, in a PNC Bank non-interest-bearing demand deposit account.

5. Escrow Administration.

All taxes in respect of any earnings on the Escrow Funds shall be the obligation of the Subscriber to the extent of its pro rata share thereof, which pro rata shares will be in the same proportion of the amounts deposited by each into the Escrow Account. The Limited Partnership and the Subscribers have agreed pursuant to a separate agreement that the Limited Partnership shall perform the sub-accounting services necessary for maintaining proper ownership records with respect to the Escrow Funds and shall issue IRS tax forms to the Subscribers with respect to their earnings, if any, on the Escrow Funds. The parties shall provide to Escrow Agent such information as Escrow Agent may reasonably require to enable Escrow Agent to comply with its obligations under the USA PATRIOT Act. Escrow Agent shall not credit any amount of interest or investment proceeds earned on the Escrow Funds, or make any payment of all or a portion of the Escrow Funds, to any person unless and until such person has provided to Escrow Agent such documents as Escrow Agent may require to enable Escrow Agent to comply with its obligations under such Act.

6. Duties of Escrow Agent; Indemnification.

(a) The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no additional duties or obligations shall be implied hereunder. In performing its duties under this Agreement, or upon the claimed failure to perform any of its duties hereunder, the Escrow Agent shall not be liable to anyone for any damages, losses or expenses which may be incurred as a result of the Escrow Agent's so acting or failing to so act; provided, however, that the Escrow Agent shall not be relieved from liability for damages arising from the Escrow Agent's proven gross negligence or willful misconduct. The Escrow Agent shall in no event incur any liability with respect to (i) any action taken or omitted to be taken in good faith upon advice of legal counsel, which may be counsel to either party hereto, given with respect to any question relating to the duties and responsibilities of the Escrow Agent hereunder, or (ii) any action taken or omitted to be taken in reliance upon any instrument delivered to the Escrow Agent and believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b) The LP warrants to and agrees with the Escrow Agent that there is no security interest in the Subscription Proceeds or any part of the Subscription Proceeds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Subscription Proceeds or any part of the Subscription Proceeds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the

Subscription Proceeds or any part of the Subscription Proceeds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Subscription Proceeds or any part thereof.

(c) As an additional consideration for and as an inducement for the Escrow Agent to serve as escrow agent hereunder, it is understood and agreed that, in the event of any disagreement resulting in adverse claims and demands being made in connection with or for any money or other property involved in or affected by this Agreement, the Escrow Agent shall be entitled, at the option of the Escrow Agent, to refuse to comply with the demands of any parties so long as such disagreement shall continue. In such event, the Escrow Agent may elect not to make any delivery or other disposition of the Subscription Proceeds or any part of such Subscription Proceeds. Anything herein to the contrary notwithstanding, the Escrow Agent shall not be or become liable to such parties or any of them for the failure of the Escrow Agent to comply with the conflicting or adverse demands of such parties. The Escrow Agent shall be entitled to continue to refrain and refuse to deliver or otherwise dispose of the subscription proceed or any part thereof or to otherwise act hereunder, as stated above, unless and until:

(i) the rights of such parties have been finally settled or duly adjudicated in a court having jurisdiction of the parties and the Subscription Proceeds and the Escrow Agent, has received written instructions as to disbursement thereof; or

(ii) the parties have reached an agreement resolving their differences and have notified the Escrow Agent in writing of such agreement and have provided the Escrow Agent with indemnity satisfactory to the Escrow Agent against any liability, claims or damages resulting from compliance by the Escrow Agent with such agreement.

In the event of a disagreement as described above, the Escrow Agent shall have the right, in addition to the rights described above and at the option of Escrow Agent, to tender into the registry or custody of any court having jurisdiction, all money and property comprising the Subscription Proceeds and may take such other legal action as may be appropriate or necessary, in the opinion of Escrow Agent or its legal counsel. Upon such tender, the Escrow Agent shall be discharged from all further duties under this Agreement; provided, however, that the filing of any such legal proceedings shall not deprive the Escrow Agent of its compensation hereunder earned prior to such filing and discharge of the Escrow Agent of its duties hereunder.

(d) The LP agrees that in the event any controversy arises under or in connection with this Agreement or the Subscription Proceeds or the Escrow Agent is made a party to or intervenes in any litigation pertaining to this Agreement or the Subscription Proceeds, to pay to the Escrow Agent reasonable compensation for its extraordinary services and to reimburse the Escrow Agent for all costs and expenses, including legal fees and expenses, associated with such controversy or litigation. As security for all fees and expenses of Escrow Agent hereunder and any and all losses, claims, damages, liabilities and expenses incurred by the Escrow Agent in connection with its acceptance of appointment hereunder or with the performance of its obligations under this Agreement and to secure the obligation of the LP to indemnify the Escrow Agent as set forth herein, the Escrow Agent is hereby granted a security

interest in and a lien upon the Subscription Proceeds, which security interest and lien shall be prior to all other security interests, liens or claims against the Subscription Proceeds or any part thereof.

(e)  The Escrow Agent may resign at any time from its obligations under this Agreement by providing written notice to the LP. Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to the date such resignation is to become effective, the Escrow Agent shall be entitled to tender into the custody of any court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement; provided however, the Escrow Agent shall be entitled to its compensation earned prior thereto. The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent hereunder.

(f)  The Escrow Agent shall have no obligation to take any legal action in connection with this Agreement or its enforcement, or to appear in, prosecute or defend any action or legal proceeding which would or might involve the Escrow Agent in any cost, expense, loss or liability unless security and indemnity satisfactory to the Escrow Agent, shall be furnished.

(g)  The LP agrees to indemnify the Escrow Agent and each of its officers, directors, employees and agents and to save the Escrow Agent and each of its officers, directors, employees and agents harmless from and against any and all Claims (as hereunder defined) and Losses (as hereinafter defined) which may be incurred by the Escrow Agent or any of such officers, directors, employees or agents as a result of Claims asserted against Escrow Agent or any of such officers, directors, employees or agents directly or indirectly as a result of or in connection with Escrow Agent's serving in the capacity of escrow agent under this Agreement. For the purposes hereof, the term "Claims" shall mean all claims, lawsuits, causes of action or other legal actions and proceedings of whatever nature brought against (whether by way of direct action, counterclaim, cross action or interpleader) the Escrow Agent or any such officer, director, employee or agent, even if groundless, false or fraudulent, so long as the claim, lawsuit, cause of action or other legal action or proceeding is alleged or determined, directly or indirectly, to arise out of, result from, relate to or be based upon, in whole or in part: (a) the acts or omissions of the LP, or (b) the appointment of the Escrow Agent as escrow agent under this Agreement, or (c) the performance by the Escrow Agent of its powers and duties under this Agreement. The term "Losses" shall mean all losses, costs, damages, expenses, judgments and liabilities of whatever nature (including but not limited to attorneys', accountants' and other professionals' fees, litigation and court costs and expenses and amounts paid in settlement), directly or indirectly resulting from, arising out of or relating to one or more Claims. Upon the written request of the Escrow Agent or any such officer, director, employee or agent (each referred to hereinafter as an "Indemnified Party"), the LP agrees to assume the investigation and defense of any Claim, including the employment of counsel acceptable to the applicable Indemnified Party and the payment of all expenses related thereto and, notwithstanding any such assumption, the Indemnified Party shall have the right, and the LP agrees to pay the costs and expense thereof, to employ separate counsel with respect to any such Claim and to participate in the investigation

and defense thereof in the event that such Indemnified Party shall have been advised by legal counsel that there may be one or more legal defenses available to such Indemnified Party which are different from or additional to those available to the LP. The LP hereby agrees that the indemnifications and protections afforded Escrow Agent and the other Indemnified Parties in this section shall survive the termination of this Agreement and any resignation or removal of the Escrow Agent.

(h)     The LP acknowledges that the Escrow Agent is serving as escrow agent for the limited purposes set forth herein and represents, covenants and warrants to the Escrow Agent that no statement or representation, whether oral or in writing, has been or will be made to any Subscriber to the effect that the Escrow Agent has investigated the desirability or advisability of investment in the Shares or approved, endorsed or passed upon the merits of such investment or is otherwise involved in any manner with the transactions contemplated hereby, other than as Escrow Agent under this Agreement. It is further agreed that the LP shall not use or permit the use of the name "PNC," "PNC Bank," or any variation thereof in any sales presentation, placement or offering memorandum or literature pertaining directly or indirectly to the offering except strictly in the context of the duties of the Escrow Agent as escrow agent under this Agreement. Any breach or violation of the paragraph shall be grounds for immediate termination of this Agreement by the Escrow Agent.

(i)     The Escrow Agent shall have no duty or responsibility for determining whether the Shares or the offer and sale thereof conform to the requirements of applicable Federal or state securities laws, including but not limited to the Securities Act of 1933 or the Securities Exchange Act of 1934. The LP represents and warrants to the Escrow Agent that the Shares and the Offering will comply in all respects with applicable Federal and state securities laws and further represents and warrants that the LP has obtained and acted upon the advice of legal counsel with respect to such compliance with applicable Federal and state securities laws. The LP acknowledges that the Escrow Agent has not participated in the preparation or review of any sales or offering material relating to the Offering or the Shares.  In addition to any other indemnities provided for in this Agreement, the LP agrees to indemnify and hold harmless the Escrow Agent and each of its officers, directors, agents and employees from and against all claims, liabilities, losses and damages (including attorneys' fees) incurred by the Escrow Agent or such persons and which directly or indirectly result from any violation or alleged violation of any Federal or state securities laws.

7.     Notices.

Any notices, elections, demands, requests and responses thereto permitted or required to be given under this Agreement shall be in writing, signed by or on behalf of the party giving the same, and addressed to the other party at the address of such other party set forth below or at such other address as such other party may designate in writing in accordance herewith. Any such notice, election, demand, request or response shall be addressed as follows and shall be deemed to have been delivered upon receipt by the addressee thereof:

    (a)    If to the LP:
Greystone EB-5 LLLP
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Attn: Joseph J. Walsh
Phone: (561) 282-6102
Email: info@sarceb5.com

    (b)    If to the Escrow Agent:
WWB Trust, LLC
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Attn: Tony Reitz
Phone: (561) 282-6102
Email: tonyr@usreda.com

    (c)    If to the Escrow Bank:
PNC Bank
Escrow Services
9875 Jog Road
Boynton Beach, FL  33437

8.    <u>Successors and Assigns; Amendment</u>.

The rights created by this Agreement shall inure to the benefit of and the obligations created hereby shall be binding upon the successors and assigns of the Escrow Agent and the LP; provided, however, that neither this Agreement nor any rights or obligations hereunder may be assigned by any party hereto without the express written consent of the other party hereto. This Agreement may not be amended without the written consent of all parties in writing.

9.    <u>Construction</u>.

This Agreement shall be construed and enforced according to the laws of the State of Florida.

**[SIGNATURE PAGE FOLLOWS]**

10. Term.

This Agreement shall terminate and the Escrow Agent shall be discharged of all responsibilities hereunder at such time as the Escrow Agent shall have disbursed all Subscription Proceeds in accordance with the provisions of this Agreement; provided, however, that the provisions of Sections 6(g) and 6(i) hereof shall survive any termination of this Agreement and any resignation or removal of the Escrow Agent.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year set forth below.

"LP"
Greystone EB-5 LLLP

_____
Joseph Walsh,
President, SAFC (General Partner of LP)

08.14.2014
Date

"ESCROW AGENT"
WWB Trust, LLC

_____
Tony Reitz
CFO

9/14/14
Date

# EXHIBIT A

## Certificate of Incumbency
(List of Authorized Representatives)

Client Name: _____

As an Authorized Officer of the above referenced entity, I hereby certify that the each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| **Name** | **Title** | **Signature** | **Contact Number** |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer by:

By:_____      Date_____

Title:_____