# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 1:19-cv-24138-DPG

YUANXIAO FENG, an individual; KIU
CHUN SAXON HUI, an individual; LAI
KING HUI, an individual; JING KUANG, an
individual; CHUEN PING NG, an individual;
MINYANG TIAN, an individual; HONGSEN
ZHANG, an individual; and YAN ZHANG, an
individual,

     Plaintiffs.                             **JURY DEMAND**

v.

JOSEPH WALSH, an individual; JOSEPH
WALSH, JR., an individual; ANTHONY
REITZ, an individual;
LESLIE ROBERT EVANS, an individual;
GREYSTONE EB-5 LLLP, a Florida limited
liability limited partnership; SOUTH
ATLANTIC REGIONAL CENTER, LLC, a
Florida limited liability company; USREDA,
LLC, a Delaware limited liability company;
USREDA HOLDINGS LLC, a Delaware
limited liability company; USREDA
MANAGEMENT, LLC, a Delaware limited
liability company; DANIEL VOSOTAS, an
individual; JAMES VOSOTAS, an individual;
GREYSTONE HOTEL MIAMI LLC, a
Florida limited liability company;
UNITED EB5, LLC, a Florida limited liability
company; SANTA BARBARA 230, LLC, a

Foreign limited liability company;

GREYSTONE TERRA FIRMA, LLC, a

Foreign limited liability company;

VOS HOLDINGS I, LLC, a Florida limited

liability company;

VOS CRE I, LLC, a Florida limited liability

company;

GREYSTONE HOSPITALITY, LLC, a

Florida limited liability company;

GREYSTONE HOLDCO, LLC, a Foreign

Florida limited liability company;

GREYSTONE MANAGING MEMBER,

LLC, a Florida limited liability company;

GREYSTONE MASTER TENANT, LLC, a

Foreign limited liability company;

GREYSTONE TENANT, LLC, a Foreign

Florida limited liability company;

GREYSTONE OPTION HOLDER, LLC, a

Foreign limited liability company; WWB

TRUST LLC, a Florida limited liability

company; TRANS INNS ASSOCIATES INC.,

a Foreign profit corporation;

VOS HOSPITALITY, LLC, a Florida limited

liability company;

BBM 3, LLC, an Indiana limited liability

company;

BBM 3 II, LLC an Indiana limited liability

company;

BRANDON MUHL, an individual;

PNC BANK, N.A., a National Association;

and RUBEN RAMIREZ, an individual

Defendants.

_____/

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG (collectively, hereinafter "Plaintiffs"), hereby sue Defendants, JOSEPH WALSH, JOSEPH WALSH, JR., ANTHONY REITZ, LESLIE ROBERT EVANS, GREYSTONE EB-5 LLLP, SOUTH ATLANTIC REGIONAL CENTER, LLC, USREDA, LLC, USREDA HOLDINGS LLC, USREDA MANAGEMENT, LLC, DANIEL VOSOTAS, JAMES VOSOTAS, GREYSTONE HOTEL MIAMI LLC, UNITED EB5, LLC, SANTA BARBARA 230, LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I, LLC, GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC, GREYSTONE TENANT, LLC, GREYSTONE OPTION HOLDER, LLC, WWB TRUST LLC, TRANS INNS ASSOCIATES INC., VOS HOSPITALITY, LLC, BBM 3, LLC, BBM 3 II, LLC, BRANDON MUHL, PNC BANK, N.A., and RUBEN RAMIREZ (collectively, hereinafter "Defendants"), seeking Damages and Injunctive Relief, and in support thereof state as follows:

## I.      INTRODUCTION

1.      This case stems from Defendants' fraudulent scheme to induce Plaintiffs into investing in United States real estate to obtain EB-5 immigrant visas.

2.      More specifically, since 2010, Defendant, Joseph J. Walsh (hereinafter "Walsh"), his entities, and co-conspirators[1] have defrauded investors participating in the Immigrant Investor

---

[1] The term "co-conspirators" includes, but is not limited to Walsh, Joseph Walsh Jr., the South Atlantic Regional Center, WWB Trust, USREDA, LLC, USREDA, Holdings, Daniel Vosotas, James Vosotas, the Vosotas Entities (as

Program (hereinafter "EB-5 Program") administered by the United States Citizen and Immigration Services (hereinafter "USCIS"). The EB-5 Program, also known as the immigrant investor visa, allows foreign nationals to apply for permanent residency in the United States after investing in a US business that, among other things, must create a certain number of jobs.

3.      Plaintiffs are foreign individuals who were seeking lawful United states citizenship or residency.

4.      Unfortunately, Plaintiffs fell victim to the latest series of fraudulent conspiracies perpetuated by Defendant Walsh's fraudulent EB-5 projects.

5.      Here, the platform for the fraud was an EB-5 investment project advertised as the Greystone Hotel Project or Greystone EB-5 LLLP (hereinafter "Greystone EB-5 Partnership").

6.      From 2014 to 2016, Defendant, Greystone EB-5 Partnership offered and sold limited partnership "units" totaling up to Twenty-Two Million Dollars ($22,000,000.00) to at least eight (8) foreign investors through the EB-5 Program. The offering materials provided to investors represented that the Greystone EB-5 Partnership would loan investor funds to Greystone Hotel Miami, LLC (hereinafter  "Greystone Hotel Miami") to develop, renovate, and operate two (2) adjacent properties located at 1920 Collins Avenue and 230 20th  Street, Miami Beach, Florida (hereinafter  "Greystone   Properties"). Instead, Defendant,  Walsh  and  co-conspirators misappropriated the investor funds.

7.      Defendant, Walsh and his co-conspirators also made false and materially misleading statements regarding: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Greystone Hotel Miami; (4) the

fully defined in paragraph 74), Branden Muhl, BBM 3, LLC and BBM 3 II, LLC Anthony Reitz and PNC Bank.

guaranteed return of investors' funds if Plaintiffs' I-526 Petitions[2] were denied; (5) Defendant, Walsh and his co-conspirators' expertise and experience; (6) the preparation and periodic disclosure to investors of financial reports; (7) Greystone Hotel Miami's repayment of the loan; (8) Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties; (9) advertisements of Greystone Hotel Miami development prior to the commencement of the Greystone EB-5 Partnership offering; and (10) the existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment.

8.      To date, none of the Plaintiffs' investments have been accounted for, let alone returned, and all of the Plaintiffs' EB-5 Visa applications have been denied by USCIS.

9.      Defendant, Walsh and his co-conspirators developed an elaborate scheme to wrongfully obtain investments from the Plaintiffs for illegitimate purposes. Defendants conspired to fraudulently induce each Plaintiff to invest Five Hundred Thousand Dollars ($500,000.00), plus an additional Forty-Five Thousand Dollar ($45,000.00) "administrative fee," and an additional Fifteen Thousand Dollar ($15,000.00) "legal services fee" into the Greystone EB-5 project, the EB-5 Partnership, and the Greystone Properties development (hereinafter "Greystone Project").

10.     Defendants, Walsh and James Vosotas (hereinafter "J. Vosotas") are managers of the Greystone EB-5 Partnership. Greystone EB-5 Partnership's two (2) general partners (hereinafter "General Partners") are South Atlantic Regional Center (hereinafter "SARC"), an entity managed and controlled by Walsh, and United EB5, LLC, (hereinafter "United EB5") an entity managed and controlled by J. Vosotas.

---

[2] The terms "I-526 Petition(s)" and "I-526 application(s)" refers to Immigrant Petition(s) by Alien Entrepreneur.

11.     Plaintiffs' funds were to be held in an escrow account and then loaned to Greystone Hotel Miami. Additionally, Plaintiffs funds were to only be used to renovate the Greystone Properties in accordance with the guidelines of the EB-5 Program.

12.     The Greystone Project was also required to create ten (10) qualifying, full-time jobs per investor and Plaintiffs' investments were supposed to be secured by a lien or mortgage on the Greystone Properties.

13.     Not only did Defendants represent that Plaintiffs' funds would be used in compliance with EB-5 regulations, but Defendants prepared and submitted falsified documents to USCIS stating this requirement would be fulfilled by renovating and operating the Greystone Properties.

14.     Plaintiffs' funds were not held in an escrow account, instead Defendants placed Plaintiffs' funds in a checking account and name the account "escrow." Defendants conspired to create a fictitious escrow company, WWB Trust, LLC (hereinafter "WWB Trust"). However, instead of being a neutral third-party trust to hold Plaintiffs' funds as represented, WWB Trust was in fact controlled secretly by Defendant Walsh as part of the conspiracy, Defendant WWB Trust was another cog in the wheel of Defendants' conspiracy to facilitate Defendants fraud and theft.

15.     Defendants, Walsh, PNC Bank (hereinafter "PNC"), and the other Defendants conspired to misname and place Plaintiffs' funds in Defendant, Walsh's business checking account to mislead and deceive Plaintiffs. Upon receiving Plaintiffs' funds in the fake escrow account, Defendants Walsh and co-conspirators transferred Plaintiffs' funds to their personal accounts and dissolved Defendant WWB Trust.

16.     Contrary to all written and oral agreements, and representations, Defendant Greystone Hotel Miami did not hold any legal title to the Greystone Properties.

17.     Defendants, Walsh, J. Vosotas and the co-conspirators conspired to create fake loans, business plans, and security documents falsely stating that the Greystone Hotel Miami held title to the Greystone Properties.

18.     In fact, the Greystone Hotel Miami holds no assets, let alone the Greystone Properties. These fake documents were distributed to Plaintiffs with the sole purpose of inducing them into investing/purchasing securities in the project and to create a false assurance that Plaintiffs' investments were secured by valuable real estate.

19.     Additionally, these fraudulent documents were submitted to USCIS to confuse and mislead government officials as to the viability of the EB-5 project. Defendant, Walsh and his co-conspirators created shell companies, under the ownership and control of Walsh's co-conspirators, J. Vosotas, Daniel Vosotas (hereinafter "D. Vosotas"), and Branden Muhl (hereinafter "Muhl") to hold actual title to the Greystone Properties and to defraud Plaintiffs and USCIS. After the fraud against Plaintiffs had come to fruition, Defendants J. Vosotas, D. Vosotas, and Muhl moved the Greystone Properties to new shell entities and trusts in Delaware in an attempt to further conceal and misrepresent the truth..

20.     Defendants, either by participating in the conspiracy, or by owning, controlling, and managing the Defendants entities, knew or should have known, Plaintiffs' funds were misappropriated. Defendant, Greystone EB-5 Partnership's General Partners committed fraud by providing false mortgage and loan agreements to Plaintiffs, their immigration attorneys, and USCIS.

21.     None of Plaintiffs' funds were used to develop the Greystone Properties, no EB-5 approved jobs were created, and as a result, Plaintiffs did not qualify for EB-5 visas. Accordingly,

Plaintiffs were defrauded and are now unable to immigrate to the United States, in addition to losing a large investment.

22.     Moreover, given the nature of the EB-5 program, Defendants' misrepresentations to Plaintiffs continue to cause Plaintiffs to face a delay of ten (10) or more years, should they seek to reapply though the EB-5 program in a new, legitimate project.

## II.        PARTIES

23.     Plaintiffs are foreign nationals that were victims of Defendants' conspiracies and were fraudulently induced to invest in Defendants' purported EB-5 Projects.

24.     Defendant, Walsh is an individual, who upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*. At all times relevant hereto, Defendant Walsh was the manager of SARC and United States Regional Economic Development Authority LLC d/b/a/ EB5 Petition (hereinafter "USREDA"), the managing member of USREDA Holdings LLC, the managing member of WWB Trust, controlling each of these entities and Greystone EB5 Partnership.

25.     Defendant, Joseph Walsh, Jr. (hereinafter "Walsh Jr.") is an individual who upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*. Defendant, Walsh Jr. is the son of Defendant, Walsh. Defendant, Walsh Jr. was the manager of SARC, and USREDA. Defendant, Joseph Walsh Jr. and co-conspirators made material, false representations to Plaintiffs that induced them to invest the in the Greystone EB-5 Partnership.

26.     Defendant, D. Vosotas is an individual who upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*. Defendant, D. Vosotas is the father of Defendant, J. Vosotas. Defendant, D. Vosotas is the owner and manager of VOS Hospitality who partnered with Defendant, Walsh in the Greystone EB-5 Partnership Offering. Defendant, D. Vosotas and co-conspirators made material, false representations to Plaintiffs that induced them to

invest in the Greystone Project. Defendant, D. Vosotas is an owner and manager of multiple companies that conspired with Defendant, Walsh to defraud the Plaintiffs.

27.     Defendant, J. Vosotas is an individual who upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*. Defendant, J. Vosotas is the son of Defendant, D. Vosotas. Defendant, J. Vosotas is the owner and manager of multiple Vosotas Entities who partnered and conspired with Defendant, Walsh in the Greystone EB-5 Partnership Offering to defraud the Plaintiffs. Defendant, J. Vosotas and co-conspirators made material, false representations to Plaintiffs that induced them to invest in the Greystone Project.

28.     Defendant, Muhl is an individual who resides in Dallas, Texas, but does substantial business in Palm Beach County, Florida. Defendant, Muhl is the owner and manager of multiple Vosotas Entities who partnered and conspired with Defendant, Walsh in the Greystone EB-5 Partnership Offering to defraud the Plaintiffs. Defendant, Muhl and co-conspirators made material, false representations to Plaintiffs that induced them to invest in the Greystone Project.

29.     Defendant, Anthony Reitz (hereinafter "Reitz") is an individual, who upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*. Defendant, Reitz is the Chief Financial Officer of WWB Trust, LLC. Defendant, Reitz is also a former employee of PNC Bank and assisted Defendant, Walsh in creating a fake escrow account. In his capacity as Chief Financial Officer of WWB Trust, LLC, Defendant, Reitz signed the escrow agreements.

30.     Defendant, Ruben Ramirez (hereinafter "Ramirez"), an individual, who upon information and belief resides in Palm Beach County, Florida, and is otherwise *sui juris*. Defendant, Ramirez is a business banker and is employed by PNC as a Vice-President. At all times

relevant hereto, Ramirez worked at PNC branch or branches in Boynton Beach and Palm Beach County, Florida.

31.     Defendant, Leslie Robert Evans (hereinafter "Evans") is an individual, who upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*. Defendant, Evans is an attorney based in Palm Beach County, Florida, and acted as General Counsel for Defendants, Walsh and Walsh's various entities. Defendant, Evans assisted Defendant, Walsh in creating fraudulent documents, agreements, and transfers to defraud Plaintiffs. Defendant, Evans received investor funds, which were fraudulently obtained by Defendant, Walsh and his entities. According to a criminal complaint filed in the United States District of Connecticut (Criminal No.: 18-CR-48-SRU). Defendant, Evans used a trust account to assist Defendant, Walsh in laundering money stolen from EB-5 investors.

32.     Defendant, Greystone EB-5 Partnership is a Florida limited liability limited partnership with its principal place of business in Miami-Dade County, Florida. Defendant, Greystone EB-5 Partnership has offices throughout the State of Florida, including in Miami-Dade County. The General Partners of Defendant, Greystone EB-5 Partnership are Defendants, Walsh and J. Vosotas through Defendants, SARC and United EB5, LLC[3]. Plaintiffs were fraudulently induced to each invest Five Hundred Thousand Dollars ($500,000.00) into Greystone EB-5 Partnership in exchange for an interest or "Unit" in the Greystone Limited Partnership, the false promise of United States EB-5 visas, the false promise of a security in the form of collateral against the Greystone Properties, and the ultimate return of their investment, with interest.

33.     Defendant, SARC is a Florida limited liability company, located in Palm Beach County, Florida. Defendant, SARC is a USCIS designated Regional Center. Defendant, Walsh was

---

[3] As explained more fully in paragraphs 28 and 34, Defendant, Walsh is the manager of SARC and Defendant, J. Vosotas is the manager of United EB-5, LLC.

the manager of SARC from its inception in June 2010 to at least April 2016. Thereafter, Defendant, USREDA Holdings LLC became the manager of Defendant, SARC. Defendant, SARC is a General Partner of the Greystone Partnership.

34.    Defendant, USREDA Holdings, LLC (hereinafter "USREDA Holdings") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Palm Beach County, Florida. Defendant, USREDA Holdings is owned and directed by Defendant, Walsh. Defendant, Walsh transferred his ownership of Defendant, USREDA to Defendant, USREDA Holdings to avoid criminal and civil liability. Defendant, USREDA Holdings was, and is, engaged in substantial and not isolated activities in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

35.    Defendant, USREDA, is a Delaware limited liability company with its principal place of business in Palm Beach County, Florida. Defendant, USREDA held itself out as a law firm to provide immigration services for Plaintiffs EB-5 Visa applications. Defendant, USREDA guaranteed the approval of any I-526 Petition it completed and the return of all service fees in the event of denial. Defendant, USREDA made material, false representations to the Plaintiffs that induced them to provide their investments. Defendant, USREDA was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

36.    Defendant, USREDA Management, LLC (hereinafter "USREDA Management") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Palm Beach County, Florida. Defendant, USREDA Management

is owned and directed by Defendant, Walsh. Defendant, Walsh transferred his ownership of Defendant, USREDA to Defendant, USREDA Management to avoid criminal and civil liability. USREDA Management was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

37.    Defendant, Greystone Hotel Miami is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Defendant, J. Vosotas managed and controlled Defendant, Greystone Hotel Miami. Defendants fraudulently represented to Plaintiffs and USCIS that Greystone Hotel Miami held title to two (2) parcels of real estate (i.e., the Greystone Properties) in Miami-Dade County, Florida. Defendants used this fraud to induce Plaintiffs' into investing in the Greystone EB-5 Limited Partnership and to mislead USCIS that the Greystone Project was a potentially valid EB-5 development.

38.    Defendant, United EB5 is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Defendant, United EB5 LLC is a General Partner of Greystone Partnership. Defendant, J. Vosotas has a controlling interest in Defendant, United EB5. Defendant, J. Vosotas though his ownership and control of Defendant, United EB5 acted as General Manager of Greystone Partnership.

39.    Defendant, Santa Barbara 230, LLC, (hereinafter "Santa Barbara 230") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Miami-Dade County, Florida. Defendant, Santa Barbara 230 was previously a Florida limited liability company, however, in 2017, Defendant, Santa Barbara 230 was converted to a Delaware limited liability company. Defendant, Santa Barbara 230, LLC holds title to one (1) of the two (2) properties, the Santa Barbara Apartments, comprising of the

Greystone Properties. Santa Barbara 230 was owned by Defendants, D. Vosotas, J. Vosotas, and Muhl through their entities SB 230 Hospitality, LLC and BBM 3 II, *not* Greystone Hotel Miami, as falsely represented.

40.    . Defendant, Santa Barbara 230 was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

41.    Defendant, Greystone Terra Firma, LLC (hereinafter "Greystone Terra Firma") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Miami-Dade County, Florida. Defendant, Greystone Terra Firma was previously a Florida limited liability company, however, in 2019, Defendant, Greystone Terra Firma was converted to a Delaware limited liability company. Defendant, Greystone Terra Firma holds title to one (1) property, the Greystone Hotel, of the two (2) properties comprising of the Greystone Properties. Defendants, D. Vosotas, J. Vosotas, and Muhl transferred ownership of Defendant, Greystone Terra Firma to Greystone Delaware Statutory Trust in anticipation of legal action and to avoid criminal and civil liability. Defendant, Greystone Terra Firma was, and is, engaged in substantial and not isolated activities in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

42.    Defendant, VOS Holdings I, LLC (hereinafter "VOS Holdings I") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan. From its inception to present date, Defendants, D. Vosotas and J. Vosotas were the managers of VOS Holdings I. Defendant, VOS

Holdings I holds an interest in the Greystone Properties. Defendants, J. Vosotas and D. Vosotas fraudulently represented that Greystone Hotel Maimi was the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project.

43.    Defendant, VOS CRE I, LLC (hereinafter "VOS CRE I") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan. From its inception to present date, Defendants, D. Vosotas and J. Vosotas are the managers of Defendant, VOS CRE I. Defendant, VOS CRE I holds an interest in the Greystone Properties. Defendants, J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project.

44.    Defendant, Greystone Hospitality, LLC (hereinafter "Greystone Hospitality") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan. Defendant, D. Vosotas is the manager of Defendant, Greystone Hospitality. Defendant, Greystone Hospitality holds an interest in the Greystone Properties. Defendants, J. Vosotas and D. Vosotas fraudulently represented Defendant, Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project.

45.    Defendant, Greystone Holdco, LLC (hereinafter "Greystone Holdco") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Bloomfield Hills, Michigan. Defendants, J. Vosotas and Branden Muhl are the managers of Greystone Holdco. Defendant, Greystone Holdco is an owner of the Greystone Properties. Defendants, J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the owner of the Greystone Properties to induce Plaintiffs to invest in the project.

Greystone Holdco was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

46.     Defendant, Greystone Managing Member, LLC (hereinafter "Greystone Managing Member") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan. Defendant, D. Vosotas is the manager of Defendant, Greystone Managing Member. Defendant, Greystone Managing Member holds an interest in the Greystone Properties. Defendants, J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Maimi as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project.

47.     Defendant, Greystone Master Tenant, LLC (hereinafter "Greystone Master Tenant") was a Florida limited liability company previously located in Fort Lauderdale, Florida. On or around December 2017 Defendant, Greystone Master Tenant was converted to a Delaware limited liability company and duly registered to do business in the State of Florida. Defendant, Greystone Managing Member is the manager of Defendant, Greystone Master Tenant. Defendant, Greystone Master Tenant holds an interest in the Greystone Properties. Defendants, J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project. Defendant, Greystone Master Tenant was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

48.     Defendant, Greystone Tenant, LLC (hereinafter "Greystone Tenant") was a Florida limited liability company previously located in Fort Lauderdale, Florida. On or around December

2017, Defendant, Greystone Tenant was converted to a Delaware limited liability company and duly registered to do business in the State of Florida. Defendants, J. Vosotas and Branden Muhl are the managers of Defendant, Greystone Tenant. Defendant, Greystone Tenant holds an interest in the Greystone Properties. J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project. Defendant, Greystone Tenant was, and is, engaged in substantial and not isolated activities in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

49.     Defendant, Greystone Option Holder, LLC (hereinafter "Greystone Option Holder") was a Florida limited liability company previously located in Fort Lauderdale, Florida. On or around December 2017, Defendant, Greystone Option Holder was converted to a Delaware limited liability company and duly registered to do business in the State of Florida. Defendants, J. Vosotas and Branden Muhl are the managers of Greystone Option Holder. Greystone Option Holder holds an interest in the Greystone Properties. J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project. Defendant, Greystone Option Holder was, and is, engaged in substantial and not isolated activities in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Fla. Stat. § 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

50.     Defendant, WWB Trust is a Florida limited liability company with its principle place of business in Palm Beach County, Florida. Defendant, Walsh, through his entity, USREDA Holdings, manages and controls WWB Trust. WWB Trust was dissolved on or about April 28,

2017. WWB Trust was the Escrow Agent overseeing Plaintiffs' investment. WWB Trust held itself out to be a neutral, third-party Escrow Agent to induce Plaintiffs to invest in the project.

51.     Defendant, Trans Inns Associates, Inc. (hereinafter "Trans Inns Associates"), is a Michigan corporation, duly registered to do business in the State of Florida, with its principle place of business in Bloomfield Hills, Michigan. Defendant, D. Vosotas, is the President and Director of the company.  Defendant Trans Inns Associates advertised itself as the manager and developer of the Greystone Properties. Defendant, Trans Inns Associates logo and name appeared on advertisements for the Greystone Hotel EB-5 project.

52.     Defendant, VOS Hospitality, LLC (hereinafter "VOS Hospitality") is a Florida limited liability company with its principle place of business in Bloomfield Hills, Michigan. Defendant, J. Vosotas, is the manager of the company. Defendant, VOS Hospitality advertised itself as the manager and developer of the Greystone Properties. Defendant, VOS Hospitality's logo and name appeared on advertisements for the Greystone Hotel EB-5 project.

53.     Defendant, BBM 3 LLC, (hereinafter "BBM 3") is a Delaware limited liability company. Defendant, Muhl, is the manager and member of the corporation. Defendant, BBM 3 holds an interest in the Greystone Properties. Defendants, J. Vosotas, D. Vosotas and Muhl fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project. Additionally, Defendant, BBM 3 is listed as a sponsor in the Loan Agreement.

54.     Defendant, BBM 3 II, LLC (hereinafter "BBM 3 II"), is a Delaware limited liability company. Defendant, Muhl, is the manager and member of the corporation. Defendant, BBM 3 II is listed as a sponsor in the Loan Agreement.

55.     Defendant, Greystone Hotel Developer, LLC (hereinafter "Greystone Hotel Developer") is a Florida limited liability company with its principle place of business in Fort Lauderdale, Florida. Defendants J. Vosotas and Muhl are managers of the company.

56.     Defendant, Greystone Managing Member is a Florida limited liability company with its principle place of business in Bloomfield Hills, Michigan. Defendants, J. Vosoas and Muhl, are managers of the company.

57.     Defendant, PNC is a National Association with its headquarters and principal place of business in Pittsburgh, Pennsylvania and conducts business throughout the State of Florida. Among other things, Defendant, PNC is engaged in the business of providing retail banking services to millions of customers, including customers in the State of Florida. Defendant, PNC is subject to Personal Jurisdiction in Florida because it operates, conducts, engages in, carries on business or a business venture in Florida and/or committed tortious acts within Florida and/or engaged in substantial activity within Florida. The Fake Escrow Account and Business Checking account at issue herein were opened in Boynton Beach, Florida. PNC is subject to the personal jurisdiction of this Court pursuant to, *inter alia*, Section 48.193 of the Florida Statues because it is a foreign corporation actually conducting business in the State of Florida. Additionally, the causes of actions alleged herein accrued in the State of Florida.

### III.     <u>JURISDICTION AND VENUE</u>

58.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391, 15 U.S.C. §78aa, and 18 U.S.C. §1965 because a substantial part of the acts, transactions, and events giving rise to the claims occurred, and a substantial part of property that is the subject of the action is situated, in Miami-Dade County, Florida.

59.     This Court has subject matter jurisdiction over this action under the 28 U.S.C. §1331 and Section 27 of the Securities Exchange Act, 15 U.S.C. §78, 18 U.S.C. § 1964and the

principles of ancillary or supplemental jurisdiction under Title 28, United States Code, Section 1367.

60.     This Court has personal jurisdiction over Defendants because they, themselves or through operation and control of certain entities, operated, conducted, engaged in and carried on a fraudulent business and scheme in Miami-Dade County, Florida.

61.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391, 15 U.S.C. §78aa, and 18 U.S.C. § 1965 because the Defendants' wrongful acts described herein occurred in Miami-Dade County, Florida, and the property that is the subject of this action is located in Miami-Dade County, Florida. Additionally, the Defendants are residents of, and/or transact business in, Miami-Dade County, Florida.

62.     Plaintiffs have retained the undersigned counsel to represent them in this action and have agreed and are obligated to pay a reasonable fee for their services.

## IV.     GENERAL ALLEGATIONS

### A. THE EB-5 VISA PROGRAM

63.     In 1990, Congress created the EB-5 Program with the stated purpose of creating economic growth in the United States. The EB-5 program provides a prospective immigrant investor an opportunity to become a permanent resident.

64.     To qualify for an EB-5 visa, a foreign applicant must invest Five Hundred Thousand Dollars ($500,000.00) or One Million Dollars ($1,000,000.00), depending on the type of investment, in a commercial enterprise approved by USCIS.[4] Once the foreign applicant has invested, he or she may apply for a conditional green card, which is good for two (2) years. If the investment creates or preserves at least ten (10) jobs during those two (2) years, the foreign

---

[4] This increased in 2019.

applicant may apply to have the conditions removed from his or her green card. The applicant can then live and work in the United States permanently.

65.     A certain number of EB-5 visas are set aside for prospective immigrants who invest through a Regional Center, such as SARC. The benefit of investing through a Regional Center is that an investor can consider indirect jobs created from the investment and can rely on the Regional Center's analysis the investment meets USCIS's requirements for an investment of Five Hundred Thousand Dollars ($500,000.00), rather than the One Million Dollar ($1,000,000.00) investment.

66.     Regional Centers must carefully manage the number of potential EB-5 investors based on the anticipated number of jobs that will be created in the project. As stated above, to qualify for a permanent resident visa, each investor must prove the investment lead to the creation of preservation of ten (10) jobs.

## B.   DEFENDANT, WALSH CREATES THE SARC, *REGIONAL CENTER*

67.     On May 27, 2010, Defendant, Walsh applied for and received USCIS approval for the creation of a Regional Center, Defendant, SARC, located in Palm Beach, Florida. A true and correct copy of a Correspondence from USCIS demonstrating SARC's status as a Regional Center is attached hereto as Exhibit 1.

68.     Since 2010, Defendant, Walsh has promoted several EB-5 projects, including, but not limited to, the Royal Palm Town Center, Palm House Hotel, Greystone Hotel and several others.

69.     One of Defendant, SARC's projects is the Palm House Hotel project, is currently the subject of civil fraud complaint, Securities and Exchange Commission complaint, and criminal investigation.

C. THE *"WALSH ENTITIES"*

70.     Defendant, Walsh is the direct or indirect sole member of Defendants, SARC, WWB Trust, USREDA, and USREDA Holdings (hereinafter collectively, the "Walsh Entities").

71.     Defendant, Walsh used these various entities so the Plaintiffs would not have to work with any third parties who would have provided Plaintiffs with independent advice that may have revealed Defendants' fraudulent scheme.

*i.     USREDA*

72.     Also, Defendant, Walsh directed Plaintiffs to hire Defendant, USREDA as their immigration attorney of record. Defendant, Walsh then, as owner and manager of Defendant, USREDA, prevented Plaintiffs from receiving neutral, independent legal advice for Plaintiffs' immigration applications and their EB-5 investment, instead ensuring that only biased false information was provided, Defendant, USREDA provided "legal services" to Plaintiffs for their immigration applications including filing their I-526 Petitions with USCIS.

73.     Defendant, Walsh Jr. held the title of "Managing Director" of Defendant, USREDA. Defendant, Walsh Jr., directed Defendant, USREDA attorneys, employees, agents, and advertisers to provide Plaintiffs with false and misleading information. Defendant, Walsh Jr., directed Defendant, USREDA employees, agents, and advertisers to provide Plaintiffs with false and misleading information. Defendant, Walsh Jr. also met with sales agents, investors, and prospective investors multiple times regarding the Greystone Hotel project to provide false and misleading information.

*ii.     USREDA Holdings*

74.     Defendant, Walsh Jr. held the title of "Managing Director" of Defendant, USREDA. Defendant, Walsh Jr., directed Defendant, USREDA attorneys, employees, agents, and advertisers

to provide Plaintiffs with false and misleading information. Defendant, Walsh Jr., directed Defendant, USREDA employees, agents, and advertisers to provide Plaintiffs with false and misleading information. Defendant, Walsh Jr. also met with sales agents, investors, and prospective investors multiple times regarding the Greystone Hotel project to provide false and misleading information.,

75.     Defendant, Walsh is the sole member of Defendant, USREDA Holdings. Beginning in 2016, to prevent criminal and civil liability for the alleged fraud, Defendant, Walsh transferred his ownership of various Walsh Entities to Defendant, USREDA Holdings.

### iii.     WWB Trust

76.     Defendant, Walsh directed Plaintiffs to authorize Defendant, WWB Trust to act as the Parties' escrow agent to hold Plaintiffs' EB-5 investment. Defendant, WWB Trust provided fake escrow agent services to Plaintiffs for their immigration applications and EB-5 investment. Defendant, Walsh then, as owner and manager of Defendant, WWB Trust, misrepresented that it was a neutral escrow agent and that the checking account was an actual escrow account.

### D.   THE "VOSOTAS ENTITIES"

77.     Defendants, D. Vosotas and J. Vosotas own and manage numerous entities, all involved, created and manipulated to perpetuate the fraud with the Greystone EB-5 Partnership scheme. These entities include:

1) United EB5,
2) Greystone EB-5 Partnership,
3) Greystone Terra Firma,
4) Greystone Hotel Miami,
5) Greystone Option Holder,
6)  Greystone Hotel Developer,
7) Greystone Managing Member,

8) Greystone Tenant,

9) Santa Barbara 230,

10) VOS Hospitality,

11) VOS Holdings I,

12) VOS CRE I,

13) VOS Manager I, and

14) Trans Inns Associates (hereinafter, collectively the "Vosotas Entities").

78.     Defendant, J. Vosotas, through the Vostoas Entities, is a Twenty-Five Percent (25%) manager/member of the Greystone Properties.

79.     Defendant, D. Vosotas, though the Vosotas Entities is a Twenty-Five Percent (25%) manager/member of the Greystone Properties.

80.     Additionally, Defendant, Muhl is listed as a manager of the following Vosotas Entities: (1) Greystone Terra Firma, (2) Greystone Hotel Developer, (3) Greystone Managing Member, and (4) Greystone Tenant. Defendant, Muhl, through the Vostoas Entities, is a Fifty Percent (50%) manager/member of the Greystone Properties.

**E.  THE "B GROUP"**

81.     Defendant, Muhl owns and manages BBM 3 and BBM 3 II (collectively, hereinafter the "B Group"). Defendant, Muhl is a business partner and associate of Defendants, D. Vosotas and J. Vosotas.

**F.  THE CREATION OF THE "GREYSTONE EB-5 PARTNERSHIP" SCHEME**

82.     Beginning in 2014, Defendants, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group entered into a partnership with Defendants, Walsh and the Walsh Entities to obtain EB-5 funding for the Greystone Properties.

83.     To further this partnership, Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group created Defendant, Greystone EB-5

Partnership. The managers of Defendant, Greystone EB-5 Partnership are Defendants, Walsh and J. Vosotas through their entities Defendants, SARC and United EB5.

84.     Defendants, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then provided information regarding the hotel project to Defendants, Wash and the Walsh Entities. This information included current equity, project investments, potential loan and mortgage information, development timelines, economic analysis, and the ownership structure of the properties.

85.     Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then created an Investment Portfolio and fake advertising materials for the Greystone Project.

86.     Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group through websites, newsletters, brochures, magazine advertisements and sales agents distributed false information and advertising materials for the Greystone EB-5 Project targeting potential EB-5 investors, particularly in the Chinese market.

### G.  THE "GREYSTONE PROPERTIES"

87.     Through various entities, Defendants, D. Vosotas, J. Vosotas, and Muhl own and manage the Greystone Properties. In fact, Defendants, D. Vosoats, J. Vosotas and Muhl used various entities to purchase real property, enter into loan agreements, and assign rights for the Greystone Properties.

88.     On February 22, 2012, Defendants, D. Vosotas, J. Vosotas and Muhl created Defendant, Greystone Terra Firma.

89.     On or about May 17, 2012, Defendants used Greystone Terra Firma to purchase the Greystone Hotel, an abandoned property, located at 1920 Collins Avenue, Miami Beach, Florida,

and executed a Special Warranty Deed (hereinafter the "1920 Collins Ave. Special Warranty Deed"). A true and accurate copy of the 1920 Collins Ave. Special Warranty Deed for the property located at 1920 Collins Avenue is attached hereto as Exhibit 2.

90.     Defendant, Santa Barbara 230 was created in October 21, 2013 and with Defendant, J. Vosotas as its manager.

91.     On or about January 3, 2014, Defendants, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and The B Group used Santa Barbara 230 to purchase the Santa Barbara Apartments, the adjacent Hostel/Apartments next to the Greystone Hotel located at 20 230th Street, Miami Beach, Florida and, executed a Special Warranty Deed (hereinafter "Santa Barbara Special Warranty Deed"). A true and correct copy of the Santa Barbara Special Warranty Deed is attached hereto as Exhibit 3.

92.     When Plaintiffs made their investments into the Greystone EB-5 Partnership, Defendant, Greystone Terra Firma was owned by Defendants, Greystone Hospitality and BBM 3. Defendant, Greystone Hospitality is owned and controlled by Defendants, D. Vosotas and J. Vosotas.

93.     On or about January of 2016, Defendants, D. Vosoats, J. Vosotas and Muhl illegally transferred Defendant, Greystone Terra Firma to Greystone Delaware Statutory Trust, in anticipation of fraud claims, and to prevent criminal and civil liability.

**H.  HOW THE GREYSTONE PROJECT PURPORTED TO FUNCTION**

94.     By way of a partnership agreement, security agreement, loan agreement and contract, in 2014-2017, Plaintiffs invested Five Hundred Thousand Dollars ($500,000.00) into the Greystone Partnership in exchange for one (1) partnership share and paid an additional Forty-Five

Thousand Dollars ($45,000.00) for administrative fees and Fifteen Thousand Dollars ($15,000.00) in legal fees.

95.     The offering was made to a total of forty-four (44) potential investors for a total capital raise of Twenty-Two Million Dollars ($22,000,000.00).

96.     Defendants represented that the funds invested into the Greystone Partnership would be loaned to Defendant, Greystone Hotel Miami, an EB-5 job creating entity to develop the Greystone Properties, and such loan would be secured by a lien on the Greystone Properties.

97.     The false details of the Greystone EB-5 Partnership investment are stated throughout the Greystone Hotel Investment Portfolio, drafted and distributed to Plaintiffs by Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group. A true and accurate copy of the Greystone Hotel Investment Portfolio is attached hereto as Exhibit 4.

98.     The Investment Portfolio consists of the following agreements: a Limited Partnership Agreement, a Subscription Agreement, a PPM, a Legal Service Agreement, an Escrow Agreement, a Loan Agreement, a Business Plan, and an Economic Report. *See* Exhibit 4.

99.     The summary of the Partnership Agreement, Loan Agreement, PPM, and Escrow Agreement is as follows: Plaintiffs would invest in Greystone EB-5 Partnership as limited partners, contributing Five Hundred Thousand Dollars ($500,000.00). Defendant, Greystone EB-5 Partnership would hold Plaintiffs' funds in escrow, pending EB-5 processing and approval. Upon being released from escrow, the General Partners of Greystone EB-5 Partnership (Defendants, Walsh and J. Vosotas, through SARC and United EB-5) would then loan Plaintiffs' funds to Defendant, Greystone Hotel Miami to develop the Greystone Project and meet USCIS's EB-5 requirements. Defendant, Walsh acting as General Partner of Defendant, Greystone EB-5

Partnership and Defendant, J. Vosotas acting as manager of Greystone Hotel Miami had already executed the loan agreement stating Plaintiffs' funds would be used to create ten (10) jobs and the Plaintiffs' investment was secured by collateral, defined in the attached Business Plan as the Greystone Properties. Finally, the Partnership Agreement, Escrow Agreement, and Loan agreement all stated that if Plaintiffs' I-526 applications were denied, Plaintiffs would receive a full refund, both from Defendant, Greystone Hotel Miami for the amount loaned, and also from Defendant, Greystone EB-5 Partnership for any funds still held in escrow.

## I. HOW THE "*GREYSTONE PROJECT*" ACTUALLY FUNCTIONED

100. Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group created a scheme where they, through their entities, acted as Plaintiffs' attorney, immigration advisor, financial advisor, escrow agent, lender, borrower, General Partner, EB-5 Regional Center, and EB-5 developer.

101. Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group held multiple conflicting fiduciary duties and obligations to Plaintiffs. Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then used their expansive control to manipulate Plaintiffs.

102. Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group formed a fake escrow account that allowed them to misappropriate Plaintiffs' funds outside the terms of the Investment Portfolio agreements. Defendant, WWB Trust, is the purported escrow agent for the Greystone EB-5 Partnership overseeing an escrow account at PNC Bank.

103. However, Defendant, WWB Trust was neither a neutral nor an independent escrow agent, but rather another entity controlled and managed by Defendant, Walsh. Furthermore, the

account created at PNC bank where Defendants instructed Plaintiffs to wire their funds was not a legitimate escrow account, but a checking account controlled by Defendant, Walsh's entity, SARC.

104.    Contrary to the represented investment terms, Plaintiffs' investment was not protected by an escrow agent or held in an escrow account, but instead in a checking account controlled by Defendants. This allowed Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group to misappropriate Plaintiffs' funds.

105.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D, Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew or should have known Plaintiffs' funds were not managed by a legitimate escrow agent or placed in a neutral escrow account. Plaintiffs would not have invested in the Greystone Project without the representation that their investment would be held in a legitimate escrow account and managed by a legitimate escrow agent.

106.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group concealed and misrepresented the actual ownership of the Greystone Properties on multiple instruments in the Investment Portfolio agreements. Throughout the Investment Portfolio, Defendants state that Greystone Hotel Miami is the owner of the Greystone Properties. The Loan Agreement further states that Defendant, Greystone Hotel Miami owns the Greystone Properties without any encumbrances, this too is false.

107.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group went as far as to fabricate and provide Plaintiffs and USCIS with loan documents falsely stating that Defendants, Greystone Hotel Miami owned the Greystone Properties. These false loan documents were never filed with the Miami-Dade County Clerk of Court. A true and accurate copy of the Loan Document is attached hereto as Exhibit 5.

108.    At the time Plaintiffs were defrauded, the Greystone Hotel[5] was owned by Defendant, Greystone Terra Firma. Furthermore, Greystone Terra Firm was *not* owned by Defendant, Greystone Hotel Miami. As stated above, Defendants have now transferred the Greystone Properties, including the Greystone Hotel, to Greystone Delaware Statutory Trust to further conceal the truth.

109.    The property located at 230 20th Street in Miami Beach, Florida is owned by Defendant, Santa Barbara 230 LLC. As shown by the various instruments filed with the Miami-Dade County Clerk of Court, at the time investors were defrauded Defendant, Santa Barbara 230 was owned by Defendants, D. Vosotas, J. Vosotas, and Muhl through their entities SB 230 Hospitality, LLC and BBM 3 II, *not* Greystone Hotel Miami, as falsely represented

110.    Contrary to the represented investment terms Plaintiffs' investment was not secured by collateral. Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group offered secured collateral on Plaintiffs' investment on all real property owned by Defendant, Greystone Hotel Miami.

111.    Defendants furthered their misrepresentations with a business plan and mortgage agreement, falsely stating Defendant, Greystone Hotel Miami owned the Greystone Properties. In reality, Greystone Hotel Miami did not title to the Greystone Properties. This allowed Defendants to misappropriate Plaintiffs' funds without fear of Plaintiffs recovering the promised collateral, the Greystone Properties.

112.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, and the Vosotas Entities knew or should have known Greystone Hotel Miami was not the owner of the Greystone Properties, that the collateral promised to Plaintiffs in the Greystone Properties was

---

[5] The property is located at 1920 Collins Avenue, Miami Beach, Florida.

fraudulent and falsified, and that, if Plaintiffs' funds were misappropriated, Plaintiffs would not be able to recover any collateral. Plaintiffs relied on Defendants' representations and would not have invested in the Greystone Project without the representations that their investment was secured by collateral in the Greystone Properties.

113.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group misrepresented and falsely promised that Plaintiffs' investment was secured by a guaranteed return policy. The Loan Agreement executed by Defendant, Walsh and J. Vosotas stated that if Plaintiffs' I-526 application was denied, Plaintiffs would receive a full refund from Defendant, Greystone Hotel Miami. The guaranteed return policy was repeated on Defendants' websites, though Defendants' sales agents, and in promotional materials produced by Defendants.

114.    Also, the Escrow Agreement and Partnership Agreement state that any funds that remain in escrow will be returned to Plaintiffs if their I-526 applications were denied.

115.    Contrary to the above representations, Defendants misappropriated Plaintiffs' funds and never held them in escrow or loaned the funds to Defendant, Greystone Hotel Miami. As such, Plaintiffs were unable to receive their guaranteed return.

116.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew or should have known that Plaintiffs' funds were misappropriated, and Plaintiffs would not receive a guaranteed return if their I-526 applications were denied. Plaintiffs would not have invested in the Greystone Project without the representation that their investment was secured by guaranteed return policy.

J. DEFENDANTS' SOLICIT THE PLAINTIFFS TO INVEST IN THE *FRAUDULENT, NON-EXISTENT* EB-5 PROJECT

117.   Beginning in 2014, Defendants, Walsh, Walsh Jr., and Defendants traveled to China to solicit the Plaintiffs regarding the EB-5 program at the Greystone Hotel.

118.   Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group collaborated to produce and distribute advertisements with false and misleading information. The advertisements repeatedly made false and misleading statements about: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Project; (3) the guaranteed return of investors' funds if their I-526 Petitions were denied; (4) Walsh and co-conspirators' backgrounds; (5) Defendants' success rate in processing EB-5 applications; (6) Developer's equity in the project; and (7) The existence of bank loans in the project. The false and misleading statements in the advertisements induced Plaintiffs into investing in the Greystone Project. At the time these advertising materials were distributed to Plaintiffs, Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew, or had reason to know the statements were false and or misleading. Plaintiffs would not have invested in the project but for the misleading information in the project advertisements.

119.   Specific examples of misleading and false statements in advertisements produced by Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group include the following:

      a.   In 2014, WWB, Wealth Without Boarders, EB-5 Magazine controlled by Defendants, Walsh and the Walsh Entities, printed an article featuring the Greystone Hotel and made the following false and misleading information about the Greystone Hotel. True and accurate copies of excerpts from the Wealth Without Boarders EB-5 Magazine are attached hereto as Composite Exhibit 6.

i.   The Greystone Property was a "historic Miami Beach landmark."

ii.  The property's renovation would include three (3), "food and beverage venues from an award winning, James Bear-nominated chef that appeared on Bravo's 'Top Chef.'"

iii. The Greystone Property would have a basement speakeasy bar, "slated to become one the area's most exciting entertainment venues."

iv.  The Greystone Property was owned and managed by VOS Hospitality, with over Thirty (30) years of hospitality experience and with noted focus on job creation.

v.   The Greystone Property had support from the Miami Design Preservation League and Miami Beach Zoning & Planning Board.

vi.  The Greystone Project will create at least Seven Hundred and Thirty (730) new permanent jobs.

vii. The Greystone Project would only need to create Four Hundred and Forty-Four (440) jobs to comply with EB-5 regulations, implying a limit of Forty-Four (44) EB-5 Investors.

viii. That SARC was a leading Regional Center and processor of investment-based immigration (EB-5).

ix.  That a partnership with SARC and VOS Hospitality would provide, "knowledge and expertise that investors can count on."

x.   That SARC's portfolio consisted of "safe and exclusive projects" in the EB-5 Market Place.

xi.  That EB-5 Loans represented 34.9% of the total project cost, or Twenty-Two million Dollars ($22,000.00).

xii. That the Greystone Project had Thirty Million Dollars ($30,000,000.00) in bank financing, or 47.5%.

    xiii.   That the Greystone Project had $7.7 million in developer equity, or 12.2%.

    xiv.   That the Greystone Project had $3.3 million in historic tax credits, or 5.4%

b.   The WWB, Wealth Without Boarders, EB-5 Magazine also printed a profile of Defendant, Walsh as President/CEO of USREDA stating the following false and misleading information (*See* Composite Exhibit 6):

    i.   That Walsh has extensive experience in merger and acquisition strategy and law, including experience in U.S. Security and Exchange law.

    ii.   That Walsh managed several successful mergers of public companies,

    iii.   That Walsh had over thirty (30) years of experience in marketing, development, and process engineering.

    iv.   That USREDA was a global leader in investment immigration.

    v.   That USREDA's subsidiaries, SARC and JJW Consultancy, specialized in connecting investors with "emerging organization in key growth sectors."

c.   A Greystone Hotel brochure produced by Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, and the Vosotas Entities stated the following false and misleading information. A true and accurate copy of the Greystone Hotel brochure is attached hereto as Exhibit 7.

    i.   The Greystone Hotel would have Eighty-Eight (88) Rooms.

    ii.   The total building size was Fifty Thousand (50,000) square feet.

    iii.   The total lot size was Twenty Thousand (20,000) square feet.

    iv.   United EB-5 and its affiliates were a "safe and secure investment opportunity."

    v.   Under the heading, "Job Creation Certainty," the brochure stated, "The project would create 733.7 jobs, or 16.5 jobs per investor.

vi.  Under the heading, "Project Completion Certainty" the brochure stated, "The EB-5 Investment will be protected as the Project has been able to secure and fund substantial equity from ownership. This allows the Project to have a low amount of debt as a percentage to the total deal cost."

vii.  That United EB-5, "execute[d] the greatest amount of certainty and job growth potential."

viii.  That United EB-5 was "owned and operated by seasoned real estate business owners who are also investors, developers and managers of hospitality and commercial real estate."

ix.  That SARC was one of the most respected processors of investment-based immigration.

x.  That SARC was a federally approved Regional Center and licensed by USCIS to undertake EB-5 projects.

xi.  That VOS Hospitality, as part of Trans Inns Management, was, "one of the nation's leading independent full and select service hospitality management companies."

d.  United EB-5's webpage was produced by Defendants, D. Vosotas, J. Vosotas, and the Vosotas Entities.  United EB-5's webpage is hosted through VOS Hospitality's website domain.   United EB-5's webpage contained the following false and misleading statements. A true and accurate copy of excerpts from United EB-5's webpage is attached hereto as Composite Exhibit 8.

i.  That USREDA has, "better than 99% approval rate on I-526 petitions-significantly higher than the national USCIS average of 89%." *See Id*. at 3.

ii.  That EB-5 Petition's expert staff has "submitted hundreds of individual client files and are equipped to help EB-5." immigrant investors navigate the process with success and efficiency." *See Id*.

    iii.   United EB-5's Escrow Services were in line with "Best Practices." *See Id*.

    iv.   United EB-5 offered a "Guarantee: Simply stated, You get approved, or your money back!" *See Id*. at 4.

    v.   United EB-5 offered a "Guarantee: When you file your I-526 application through us you can be assured that we will process the application expeditiously. You can have confidence that our experienced staff will address any areas that may cause a deficiency or regulatory issue." *See Id*. at 5.

    vi.   United EB-5 offered a, "Guarantee: For these reasons we are delighted to offer a FULL REFUND in the unlikely event the Immigration Service denies a submission." *See Id*. at 6.

120.    Defendants, Walsh and Walsh Jr. acting on behalf of the Walsh Entities met with clients in person at various Walsh Entities' offices in China. In these meetings Defendant, J. Vosotas acting on behalf of the Vosotas Entities telephonically. During these meetings Defendants, Walsh, Walsh Jr. Walsh Entities, J. Vosotas, and the Vosotas Entities made material false and misleading statements regarding: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Defendant, Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Defendant, Greystone Hotel Miami; (4) the guaranteed return of investors' funds if their I-526 Petition were denied; (5) Defendant, Walsh and co-conspirators' backgrounds; (6) the preparation and periodic disclosure to investors of financial reports; (7) Defendant, Greystone Hotel Miami's repayment of the loan; (8) Defendant, Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties, (9) Defendant, Greystone Hotel Miami's prior to the commencement of the Greystone EB-5 Partnership offering; and (10) The existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan

and investment. Defendants, Walsh, Walsh Jr. Walsh Entities, J. Vosotas, and the Vosotas Entities

knew, or had reason to know the statements were false and or misleading. Plaintiffs relied on the

information provided in these in person meetings.

121.    Specific examples of misleading and false statements by Defendants, Walsh, Walsh

Jr., the Walsh Entities, J. Vosotas, and the Vosotas Entities include, but are not limited to the

following:

> a.   On July 28, 2016, Plaintiffs met with Zachary J Franklin, the general manager of
> SARC and JJW Consultancy, at the company's Shanghai Office. Defendant, J.
> Vosotas attended the meeting via teleconference. Defendant, J. Vosotas provided
> Plaintiffs with false and misleading information as to ownership of the Greystone
> Properties, guarantees on the return of Plaintiffs' investment, and the existence of a
> mortgage, or other security. Zachary J. Franklin repeated these false and misleading
> statements and directed Plaintiffs to statements in the Investment Portfolio and
> offering materials which also repeated the false and misleading statements.
> Defendant, J. Vosotas finished the call by falsely stating that Plaintiffs, as owners
> of the Greystone Hotel, would be eligible to live for free at the property upon the
> projects' completion.

**K.   DEFENDANTS FRAUDULENTLY INDUCE PLAINTIFFS WITH OFFERING MATERIALS, IN
THE FORM OF AN INVESTMENT PORTFOLIO**

122.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas

Entities, Muhl, and the B Group distributed offering documents and marketing materials in the

form of an Investment Portfolio to investors. The Investment Portfolio as, stated above, included

a Limited Partnership Agreement, a Subscription Agreement, a PPM, a Legal Service Agreement,

an Escrow Agreement, a Loan Agreement, a Business Plan, and an Economic Report. Defendants

combined these materials into a multi-hundred-page packet that also contained an "EB-5 Investor

Documents & Process Guide," a fee agreement, and a USREDA/SARC Service Agreement. To

streamline and expedite the closing of an investment, Defendant, Greystone EB-5 Partnership

provided a booklet which contained only the signature pages of the documents necessary for investors to make their investments and file their I-526 Petition with the USCIS. *See* Exhibit 4.

123.    The Greystone Partnership's offering materials also included various versions of a project brochure that was translated into Chinese--Defendants went to great lengths to defraud the Plaintiffs.

124.    Greystone's offering materials appeared under some combination of Greystone EB-5 Partnership, Greystone Hotel Miami, VOS Hospitality, Trans Inn Assocs., SARC, USREDA, and Greystone Hotel's names and logos. Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group provided the Investment Portfolio to solicited Plaintiffs into investing in the Greystone Project. The Investment Portfolio repeatedly made the following false or misleading statements regarding (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Greystone Hotel Miami; (4) the guaranteed return of investors' funds if their I-526 Petitions were denied; (5) Walsh and co-conspirators' backgrounds; (6) the preparation and periodic disclosure to investors of financial reports; (7) Greystone Hotel Miami's repayment of the loan; (8) Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties; (9) Greystone Hotel Miami's prior to the commencement of the Greystone EB-5 Partnership offering; and (10) the existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment. At the time the Investment Portfolio was distributed to Plaintiffs, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew, or had reason to know the statements

were false and or misleading. Plaintiffs relied on this false and misleading information in determining to invest in the Greystone Project.

125.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group, through the Greystone EB-5 Partnership, solicited investors using sales agents. Defendant, Greystone EB-5 Partnership sent an email to the sales agents that included links to its investment portfolio, the brochure, and the other advertising documents. Each investor or the sales agent for the investor received a copy of the relevant offering documents prior to investing—all containing false information.

126.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group, participated in creating Greystone Partnership's fraudulent offering materials and the drafted Greystone EB-5 Partnership agreement, Greystone Project's business plans, loan documents, subscription, limited partnership, and escrow agreements with information provided by Walsh, D. Vosotas J. Vostotas, and Muhl. Walsh and J. Vosotas reviewed and approved all of these documents. Walsh and J. Vosotas also signed all the offering materials and investment documents as General Partners and managers despite knowledge of the false representations therein.

127.    Specific examples of false and misleading statements in the Investment Portfolio's offering materials are as follows:

     a.   The Greystone Limited Partnership Agreement signed by Walsh and J. Vosotas falsely stated: (1) Partnership was formed for the purpose of investing in Qualifying Investments under the EB-5 Program. A true and accurate copy of the Greystone Limited Partnership Agreement is attached hereto as Exhibit 9; (2) An escrow account will hold the limited partners' capital contributions. *See Id.* at page 6, ¶ 2.1.2; (3) The project was to develop and operate the Greystone Hotel. *See Id.* at page 5; (4) The capital contributions will be released from escrow under the terms

of the escrow agreement. *See Id.* at page 6; and (5) The General Partners (Walsh and J. Vosotas) shall maintain accurate account and make such accounting available to the limited partners. *See Id.* at page 12.

b. The Greystone PPM signed by Walsh and J. Vosotas falsely stated the following. A true and accurate copy of the Greystone PPM is attached hereto as Exhibit 10. (1) The General Partners will provide limited partners addition information regarding the investment (2) The General Partners have a successful history of commercial development, construction, retail, and management experience; (3) The borrower, Greystone Hotel Miami, will use Plaintiffs' funds to invest in the Greystone Property and fulfill the EB-5 programs job creation requirements; (4) The Greystone Project will create the necessary number of jobs and economic benefits to assure the foreign investor that their application for residence status is and will continue in good standing; (5) The Greystone Partnership will loan the proceeds from the offering to the Greystone Project; (6) all subscriptions will be paid to an Escrow account under the control of another entity, or Escrow Agent; and (7) The Greystone Partnership intended to loan the proceeds of the offering to the Greystone Project.

c. The Escrow Agreement signed by Walsh falsely stated: (1) PNC Bank was an "Escrow Bank." (2) WWB Trust was an "Escrow Agent; (3) The Escrow Agent shall hold Plaintiffs' funds until their I-526 Petitions have been submitted. A true and accurate copy of the Escrow Agreement is attached hereto as Exhibit 11.

d. The loan agreement signed by Walsh and J. Vosotas falsely stated: (1) The proceeds of this Loan will be used for Greystone Hotel Miami to develop the Greystone Properties. *See* Exhibit 5; (2) Greystone Hotel Miami shall provide Plaintiffs a security interest in the Greystone Properties *See  Id;* (3) Greystone Hotel Miami will create ten (10) full time jobs per the EB-5 program *See  Id;*  (4) Plaintiffs, in the event of default, have the right to foreclose on the Greystone Property *See  Id;* (5) Greystone Hotel Miami hold title to the Greystone Properties free of encumbrances. *See Id;* (6) Greystone Hotel Miami conducts business solely in its own name and not through any other entities *See* Id.  Plaintiffs shall receive a full return/refund of the investment if Plaintiffs' I-526 application is denied. *See Id.*

e. The Greystone Comprehensive Business Plan was attached as an exhibit to the signed agreements in the Offering Materials. A true and accurate copy of the Greystone Comprehensive Business Plan is attached hereto as Exhibit 12.  The Greystone Business Plan made the following false and misleading statements: (1) The Greystone Properties were owned by Greystone Hotel Miami. *See Id.*; (2) The Greystone project anticipated financing of Sixty-Three Million Dollars ($63,000,000.00). *See Id.*  (3) That initial sources of financing included debt financing of Ten Million Dollars ($10,000,000.00) and equity of Fifteen Million Dollars ($15,000,000.00). *See Id.*; (4) That final sources of financing included a first mortgage of Fifteen Million Dollars ($15,000,000.00), equity of Twenty Million Dollars ($20,000,000.00), HTC Equity of $6.2 million, and EB-5 investments of Twenty-Two Million Dollars ($22,000,000.00). *See Id.*; (5) That the hotel construction would be completed by the fourth quarter of 2015 *See Id.*; and that the project was anticipated to create 733.7 direct and indirect jobs. *See Id.*

f. The Subscription Agreement and Partnership Agreement state the following false or misleading statements. A true and accurate copy of the Subscription Agreement and Partnership Agreement is attached hereto as Exhibit 16. *See also* Exhibit 8.

    i. The managers of the General Partner have a successful history of commercial development, construction, retail, and management experience.

    ii. Timeline for acquisition of funding is anticipated to begin in 2014, and construction of the Project to begin concurrently with acquisition of EB-5 funding.

    iii. The Partnership anticipates that the Project will be open for business in 2016.

    iv. Anticipated project costs will be Sixty-Three Million Ninety-Five Thousand and Eight Hundred and Ninety-Eight Dollars ($63,095,898.00).

    v. The Project shall provide substantial benefits to the regional economy that exceeds the strict USCIS requirements for job creation that will allow a foreign Investor to qualify for an EB-5 Immigration Visa.

    vi. The Offering provides the Investors with a projected annual dividend.

vii.   The Partnership will loan the proceeds of the offering to Greystone Project to partially finance the acquisition, development, and operation of the Greystone Properties.

viii.   To maintain complete security in the payment process for the investor and the partnership, subscription funds will be wired into the Escrow Bank and held in Escrow.

ix.   The Partnership will furnish financial statements to Limited Partners annually.

128.    Prior to investing in the project, Plaintiff Chuen Ping Ng traveled to Miami Florida to meet with Mitch Garrett, the Vice President - Acquisition & Development of VOS Hospitality. Acting as an employee and agent of the Vosotas Entities, Mitch Garrett provided the following false and misleading information as part of a presentation for the Greystone Hotel EB-5 Project: (1) the ownership of the Greystone Properties, (2) a guarantee on the return of Plaintiffs' investment, (3) the existence of a mortgage, or other security on Plaintiff's investment, (4) the expected creation of jobs by the project, (5) Defendants' experience as developers for EB-5 projects, and (6) the construction timeline for the Greystone Hotel.

## L.  THE FAKE "*ESCROW ACCOUNT*"

129.    To facilitate the fraud and misappropriation of Plaintiffs' funds, Walsh and Walsh Entities sought banking services that would allow them to create an escrow account without having to follow standard escrow requirements.

130.    Defendants, Ramirez and PNC, permitted Defendant, Walsh to create business checking account with PNC's escrow services, and, in fact caused the account to be developed and opened. The effect of this was to make the business checking account appear as a legitimate escrow account to outside investors while providing no actual escrow protections (hereinafter the "Fake Escrow Account").

131.    Defendants created a fake escrow account to obtain and control Plaintiffs' funds without being stifled by standard banking escrow requirements.

132.    Defendants, Walsh and the Walsh Entities' prior EB-5 projects had previously used SunTrust Bank's escrow account services. However, SunTrust's escrow requirements would have prevented Walsh and Walsh Entities from carrying out the alleged fraud.

133.    Walsh enlisted the help of a Walsh Entity employee, Anthony Reitz (hereinafter "Reitz"), to coordinate with Defendants Ramirez and PNC and create the fake escrow account.

134.    Walsh employed Reitz from approximately January 2011 through February 2015 as the Chief Financial Officer of SARC and USREDA. As Walsh's employee, Reitz took orders from and directly reported to Walsh.

135.    Reitz was a former employee of PNC bank and had extensive knowledge of PNC's lax policies. From his former employment with PNC, Defendant, Reitz had a personal and professional relationship with Defendant, Ramirez, a Vice-President at PNC's Boynton Beach, Florida branch. Defendant, Reitz used his contact with Ramirez to set up a meeting with Daniel Osaba (hereinafter "Osaba"), a member of PNC's Treasury Department.

136.    Defendants, Reitz, Walsh and the Walsh Entities' representative, met with Defendant, Ramirez and Osaba at Walsh's office. At this meeting Defendant, Reitz disclosed Defendant, Walsh's EB-5 business and escrow requirements and discussed Defendant, PNC's escrow account requirements and procedures.

137.    Defendant, Reitz disclosed that (1) Walsh, and Walsh Entities had potential EB-5 clients/investors from China; (2) Each EB-5 client would invest  Five Hundred Thousand Dollars ($500,000.00) plus an administrative fee of between Forty Thousand Dollars ($40,000.00) and Sixty Thousand Dollars ($60,000.00); (3) Walsh expected total investment in the tens of millions

of dollars; (4) the EB-5 investment funds were subject to escrow agreements; (5) Walsh and Walsh Entities would manage the EB-5 investment on behalf the EB-5 clients; (6) Walsh and SARC currently had an escrow account at SunTrust Bank; (7) Walsh was seeking escrow account services with less restrictions and oversight; and (8) Walsh and Walsh Entities wanted a PNC escrow account that was free of these restrictions and oversight.

138.    At a second meeting, Defendant, Reitz was told that PNC, like SunTrust Bank, would require SARC and PNC to enter an escrow administration agreement as a prerequisite for creating an escrow account.  Furthermore, similar to SunTrust Bank, PNC would require Walsh and Walsh Entities to strictly follow the terms of the escrow administration agreement.

139.    This arraignment was unworkable for Walsh as it would prevent him from having unrestricted access to the investor's funds. As such, Reitz informed Ramirez and PNC that Walsh required a banking arraignment without the restrictions of an escrow administration agreement.

140.    Defendants, Ramirez and PNC agreed to accommodate Defendant, Walsh's demands. Defendant, Ramirez told Reitz that "if you need functionality of an escrow account, we can provide the escrow service modules with this type of business checking account." Ramirez and PNC proposed opening a business checking account with PNC's escrow services modules. The effect of this would be to allow Walsh to operate a business checking account that appeared to be an escrow account. However, crucially, the account would not in fact be a real escrow account, nor would it have the restrictions of a real escrow account.

141.    In other words, Defendant, PNC suggested a policy loophole to assist Defendants, Walsh, Reitz and SARC in perpetuating their fraud, conspiracy and other bad acts.

142.    Defendants, Ramirez and PNC agreed to allow Defendants, Walsh and SARC to open and operate a business checking account with PNC's escrow services. The purpose of this

was to make the business checking account appear as a legitimate escrow account to outside investors. Walsh and SARC would then be able to falsely demonstrate to potential EB-5 investors that their funds were being transferred to and held by SARC's "Escrow Account".

143.    Defendants, Ramirez and PNC knew Walsh and Walsh Entities' account was not a legitimate Escrow Account and knew, or should have known that they were assisting Defendants, Walsh and the Walsh Entities in creating a fake escrow account.

144.    Upon information and belief, Defendants, Ramirez and PNC's agreement with Walsh violated PNC's internal rules, regulations and policies.

145.    Ramirez stood to gain from this agreement by increasing profits for his employer, PNC. Through his Vice President position at PNC, Ramirez received increase salary, awards, and promotion opportunities for increasing PNC's deposits. Ramirez's title, as a Vice President at PNC, included Business Banking.

146.    PNC stood to gain a new business from an account with tens of millions in deposits. This included significant service fees, interest, and profits.

147.    Ramirez and PNC engineered the opening of an Analysis Business Checking Account in the name of South Atlantic Regional Center LLC — Greystone EB-5, LLP Escrow Account.

148.    Defendants, PNC and Ramirez benefitted by conspiring with Defendants to create the Fake Escrow Account.

**M. THE PNC WORKAROUND**

149.    In the second step of the Workaround, in order to create the illusion that the Analysis Business Checking Account was really an escrow account, PNC changed the name of the Fake

Escrow Account from South Atlantic Regional Center LLC – Greystone EB-5, LLLP to South Atlantic Regional Center LLC —Escrow Account.

150.    Defendant, PNC did this or permitted this, despite knowing that the account was not an escrow account. By so doing, Ramirez and PNC knowingly made the Fake Escrow Account look like a legitimate escrow account with specific knowledge that while it was not one, it would appear like one and be used like one. This occurred before any of the Plaintiffs were defrauded into wiring money into the Fake Escrow Account. Throughout the existence of the Fake Escrow Account, PNC received fees for the services it provided to Walsh and Walsh Entities indirectly to Defendants in connection with the Fake Escrow Account. In addition, PNC was able to invest the tens of millions of dollars that ran through the Fake Escrow Account, for its own benefit, while the money was held in the Fake Escrow Account.  Ramirez and PNC assisted Walsh in creating a fake Escrow Account which appeared to outside investors as a legitimate escrow account protected by PNC's escrow services. This allowed Walsh, the Walsh Entities, and Defendants to, without authorization, misappropriate Plaintiffs' investment.

151.    PNC had knowledge of the EB-5 program prior to entering this agreement with Walsh. PNC's website included an article entitled "PNC Assists Ironstate Development in Rebuilding the Waterfront." In this article PNC demonstrates detailed knowledge of the EB-5 program.

152.    PNC was also involved in the Navy Pier Court EB-5 Project until well after the fraud in this case began. Specifically, PNC's Navy Pier Court credit facility was in place through February 2019 when it was refinanced.

153.    Additionally, PNC also markets itself to the EB-5 investments marketplace, as evidenced by the posting dated April 18, 2016, on the website called "EB-5 Investments-The EB-

5 Investment Marketplace." This post is still active and available. Thus, PNC cannot feign ignorance as to the impact and importance of the Workaround or how critical it is to an EB-5 Investor to know that her/his money will be held safely in an escrow account pending I-526 application processing.

154.    Once the Workaround was fully implemented, there were no further impediments to convincing Plaintiffs that their EB-5 investment monies and administrative fees were being wired into a legitimate escrow account and would be kept safe and untouched pending the processing of their I-526 applications. The creation of the Fake Escrow Account became the conduit that fed the Defendants' fraud machine and was a proximate cause of Plaintiffs' losses.

155.    PNC was on notice that Plaintiffs' believed they were transferring funds to a legitimate escrow account as the Plaintiffs' wire transfers named the receiving account as "EB-5 Investment Fund Escrow." True and correct copies of exemplars of invoices are attached hereto as Exhibit 14.

156.    PNC was compliant and complicit with Defendants' fraud.

**N.  UNKNOWINGLY, PLAINTIFFS WERE SENDING MONEY TO THE *FAKE* ESCROW ACCOUNT**

157.    In reliance upon the existence of the Fake Escrow Account, Plaintiffs each wired their respective Five Hundred Thousand Dollars ($500,000.00) EB-5 investments, Forty-Four Thousand Dollars ($40,000.00), Sixty Thousand Dollars ($60,000.00) administrative fees into what they believed was a legitimate, safe escrow account—it was not.

158.    The Workaround, and the resulting Fake Escrow Account, was utilized by Walsh, the Walsh Entities, and the Defendants to collect, control and misappropriate all the funds that they later misappropriated from the Plaintiffs.

159. As described above, Ramirez and PNC had specific knowledge that the Plaintiffs' funds that would be deposited into the Fake Escrow Account would be EB-5 investments, and they knew, or should have known of the legal implications of same. Despite the fact that none of Plaintiffs' EB-5 investment monies were legally permitted to be used for any reason until their I-526 Petitions were approved, PNC and Ramirez did absolutely nothing to:

a. Prevent the Walsh, the Walsh Entities, and Defendants from taking Plaintiffs' money from the Fake Escrow Account;

b. Prevent the Walsh, the Walsh Entities, and Defendants from moving the money stolen from the Fake Escrow Account into the Clearing Account;

c. prevent the Walsh, the Walsh Entities, and Defendants from wiring money out of the Clearing Account to various other companies, individuals, or accounts controlled by the Walsh, the Walsh Entities, and Defendants;

d. close the Fake Escrow Account until, on information and belief, May 2017;

e. close the Clearing Account until, on information and belief, May 2017;

f. inform Plaintiffs of Walsh, the Walsh Entities, and Defendants fraudulent acts;

g. inform Plaintiffs the misappropriation of their EB-5 investment monies from the Fake Escrow Account; or

h. inform Plaintiffs of the further transfer of the EB-5 investment monies out of the Clearing Account.

**O. DEFENDANTS' FRAUD CONTINUED**

160. Beginning in 2017, Plaintiffs began receiving requests from USCIS to provide additional evidence to support their EB-5 Petitions.

a. Defendants, J. Vosotas, D. Vosotas, Muhl, and Walsh provided false and misleading information to Plaintiff's immigration attorneys in an attempt to hide and conceal the ongoing fraud. Such false and misleading information included photos of ongoing construction of the Greystone Hotel, falsely claimed to be construction of

the Santa Barbara Apartments. True and correct copies of the Construction Photos are attached hereto as Composite Exhibit 15.

b. A Loan Agreement falsely stating ownership and financing of the Santa Barbara Apartments (hereinafter "Santa Barbara 230 Loan Agreement). A true and correct copy of the Santa Barbara 230 Loan Agreement is attached hereto as Exhibit 16.

c. An Ownership Chart falsely stating ownership of the Santa Barbara Apartments. A true and correct copy of the Ownership Chart is attached hereto as Exhibit 17.

## P. PLAINTIFFS' I-526 PETITIONS ARE DENIED BY USCIS

161.    Plaintiffs were approved as accredited investors and their petitions were accepted within SARC's program for the Greystone EB-5 Partnership investment.

162.    Relying on Defendants' representations, Plaintiffs diligently submitted all necessary paperwork in conjunction with their I-526 Petitions, asserting eligibility based on an investment in a Regional Center through Greystone Partnership and SARC.

163.    However, because of the deficiencies in the project, Plaintiffs' Form I-526 Petitions were denied by USCIS for failure to establish by a preponderance of the evidence that the Form I-526 Petitions complied with the applicable legal requirements.

164.    USCIS cited the following deficiencies: (1) failure to demonstrate the creation of jobs, (2) failure to demonstrate Plaintiffs' investment had been loaned to Greystone Hotel Miami, (3) failure to demonstrate construction was underway at the properties, and (4) failure to demonstrate bank loans had been obtained.

165.    The deficiencies cited by USCIS were a direct result of actions taken and documents provided by Greystone EB-5 Partnership, and over which Plaintiffs had absolutely no control.

166.    Because it had become apparent that Defendants' promises were false and Defendants had not adhered to their duties, Plaintiffs demanded the return of their funds.

167.    Despite Plaintiffs' demands, no funds were returned to Plaintiffs.

168.    Instead, Defendants ceased all communication with Plaintiffs and wrongfully retained the Plaintiffs' investment funds.

**Q.  DEFENDANTS' FRAUD AND THEFT ARE DISCOVERED**

169.    Upon investigation, Plaintiffs discovered the list of Defendants' fraudulent representations made in furtherance of obtaining and stealing Plaintiffs money.

170.    Greystone EB-5 Partnership was not a legitimate EB-5 project, but rather a façade and a vehicle meant only to defraud investors. Defendants used Greystone Partnership to steal at least Four Million Dollars ($4,000,000.00) from at least Eight (8) foreign nationals seeking EB-5 visas and a better life for their families in the United States.

171.    Plaintiffs discovered that their funds were not held in a true Escrow Account as promised, but were in a checking account for the benefit of the Defendants.

172.    In violation of all written and oral representations, Plaintiffs' funds were immediately transferred from the fraudulent Escrow Account to other accounts controlled by the conspirators.

173.    As the Plaintiffs' funds were not used in furtherance of the Project, no jobs were created, and none of the Plaintiffs were eligible for an EB-5 Visa.

174.    None of Plaintiffs' funds were sent to the Project or anyone purportedly associated with the development of the Project.

175.    As described in detail above, most of the representations within the Investment Portfolio's offering materials were knowingly false or misleading.

176.    The One Hundred Percent (100%) guaranty for the return of Plaintiffs' investment and fees in the event their I-526 Petition was denied was knowingly false.

177.    The representations that Plaintiffs' funds would be held in escrow unless and until USCIS approved their I-526 applications were knowingly false.

178.    The representations that Plaintiffs' funds would be returned within Ninety (90) days of denial of their I-526 applications were knowingly false.

179.    The representations that a maximum of Forty-Four (44) investors in the Greystone EB-5 Partnership would be sold were knowingly false.

180.    The representations that the funds would be exclusively invested in the Greystone Hotel to create jobs by helping to finish the renovation and development were knowingly false. Virtually none of the funds were used at the project.

181.    The representations that USREDA guaranteed the approval of any I-526 application it completed and that it would return all service fees in the event of denial were knowingly false.

182.    Plaintiffs' investigation has revealed that the representations that the developer had "invested" $7.7 million of their own equity into the project were misleading and knowingly false. In truth, no "equity" was invested by the developer, as they acquired the property with little or no cash paid.

183.    The representations that Plaintiffs' funds were in addition to an equity investment by the developer in excess of $7.7 million and a bank loan in excess of Thirty Million Dollars ($30,000,000.00) so that Plaintiffs' funds constitute less than 34.9% of the project funding were knowingly false.

184.    The representations that a bank had provided funding in excess of Thirty Million Dollars ($30,000,000.00) and that the bank had undertaken due diligence on the project prior to making the loan were knowingly false. Indeed, there was no bank loan, and no due diligence undertaken by any bank.

185.    The representations that the funds would create ten (10) full-time jobs for each Five Hundred Thousand Dollars ($500,000.00) advanced were knowingly false.

186.    In fact, the representations that the project was in progress, "very near completion," and would be complete for "Season" of 2016 were knowingly false.

187.    The representations that the job count for the project was Seven Hundred and Thirty (730) jobs were knowingly false.

188.    The representations that Plaintiffs need not worry if the project will perform and meet the rigid standards required by USCIS were knowingly false.

189.    The representations that Walsh had experience in securities was knowingly false.

190.    The representations that VOS Hospitality had experience in generating jobs for EB-5 related projects was knowingly false.

191.    The representations that each investor's investment would be fully secured by the real property at issue were knowingly false.

192.    All of the false representations described herein were made to induce Plaintiffs into investing their money. The Loan Documents specifically stated that the loan to Greystone Project was dependent on USCIS' approval of Plaintiffs' I-526 Petitions.

193.    As owners and/or managers and/or agents of Greystone EB-5 Partnership, J. Vosotas knew that none of Plaintiffs' funds could be used unless and until Plaintiffs' I-526 Petitions had been approved by USCIS.

194.    While none of Plaintiffs' I-526 Petitions were approved, Defendants took Plaintiffs' money anyway, further demonstrating their intent to defraud the Plaintiffs.

195.    SARC, Walsh, J. Vosotas and United EB5, LLC owed Plaintiffs a fiduciary duty to protect their funds, not steal their funds, and not allow their release for use at Greystone Hotel Miami unless and until the Plaintiffs' I-526 Petitions were approved by USCIS.

196.    Defendants acted with willful, reckless, grossly negligent and malicious intent in taking the alleged above actions.

**R.  THE *"GREYSTONE EB-5 PARTNERSHIP"* SCHEME WAS BASED ON A SERIES OF FRAUDULENT MISREPRESENTATIONS**

*i.*    **Material Misrepresentations and Omissions to Greystone EB-5 Investors**

197.    Defendants misrepresented the ownership of the Greystone Properties.

198.    Throughout the Offering Materials, Defendants misrepresented that Greystone Hotel Miami either directly owned, or owned the subsidiaries Defendants, Greystone Terra Firma and Santa Barbara 230.

199.    In reality, and as evidenced by multiple mortgages, deeds, and other instruments filed with the Miami-Dade Clerk of Court, Defendant, Greystone Hotel Miami held no ownership interest in the Greystone Properties.

*ii.*    **Misrepresentations Regarding Escrow Requirements and the Return of Investor Funds**

200.    From 2014 to 2016, Greystone EB-5 Partnership's offering materials contained material misrepresentations about Greystone Partnership use of an escrow account for investor funds. Greystone Partnership falsely and fraudulently claimed that investor funds would be held in an escrow account at PNC Bank, pursuant to an escrow agreement between Greystone EB-5 Partnership, WWB Trust, and PNC Bank, through at least the filing of the investor's 1-526 petition. Contrary to these representations, no escrow account even existed for investor funds. Prior to the

Greystone offering, the former CFO for SARC and USREDA informed Walsh that the account receiving investor funds would not even be administered by PNC Bank.

201.    Greystone    Partnership's    offering    materials    also    contained    material misrepresentations about the return of funds paid by investors. Greystone Hotel Miami and Greystone EB-5 Partnership falsely and fraudulently stated that if an investor's 1-526 petition were denied by the USCIS for reasons "within the control" of Greystone Partnership investor's funds would be returned without deduction. The offering materials and SARC's own website also falsely, fraudulently, and repeatedly stated that investors' funds would be returned.

202.    Defendants knew or recklessly disregarded that Defendants, Greystone Hotel Miami, Greystone EB-5 Partnership, USREDA and SARC would not be able to repay investors whose petitions were denied because they misappropriated for their own use, millions of dollars of investor funds, and never escrowed investor funds prior to their release to Greystone Project.

203.    To date, the USCIS has denied all of the investor 1-526 petitions. USCIS denied the I-526 petitions because, among other reasons, investors failed to demonstrate that the Greystone Hotel project would create sufficient jobs, and failure to prove the investors' funds had been allocated to the development.

204.    Defendants and their employees orally repeated the misrepresentations.

205.    Defendants and their employees through electronic messengering services and email repeated the misrepresentations.

206.    Defendants never returned any money to investors.

### iii.    Misrepresentations and Omissions Regarding Defendant, Walsh and the Developer's Backgrounds

207.    Defendant,    Greystone    EB-5    Partnership's    business    plans    contained misrepresentations and omissions regarding the backgrounds of Defendants, Walsh and J. Vosotas,

who are both described in a section on "Management." The description of Walsh's background, which he drafted, stated that he "has extensive experience in merger and acquisition strategy and law" and experience with "the intricacies of U.S. Securities and Exchange laws." Walsh did not have any such merger and acquisition or securities law experience. This misrepresentation and omission is repeated in brochures and other advertisements for the project.

208. The offering materials also included a section on J. Vosotas stating VOS Hospitality had over Thirty (30) years of hospitality experience and with noted focus on job creation.

### iv. Other Misrepresentations to the Greystone EB-5 Partnership Investors

209. Greystone Partnership's offering materials also materially misrepresented the conditions under which investor funds would be loaned to Greystone Hotel Miami. In particular, the PPMs stated, "it shall be a condition of each advance that as of such time there shall not have been a material adverse change in the operations, assets or financial condition of the borrower and its subsidiaries, taken as a whole."

210. The loan documents made similar representations and stated that the determination as to material adverse changes would be made by Greystone EB-5 Partnership. Walsh, J. Vosotas, and Greystone EB-5 Partnership never ascertained whether Greystone Hotel Miami met these pre-conditions for any loan advance. Despite being granted the authority by the loan documents to access Greystone Hotel Miami's financial statements and the right to inspect its books and records, Greystone Partnership never exercised this authority.

211. The offering materials also materially misrepresented that Greystone EB-5 Partnership would provide audited financial statements or other financial information to investors on an annual or quarterly basis. Greystone EB-5 Partnership never prepared audited financial statements and did not provide audited statements, or any other financial reports, to investors.

212.     The offering materials also misrepresented that Greystone Hotel Miami would make monthly interest payments to Greystone EB-5 Partnership on its loan for five (5) years. Greystone Hotel Miami did not make any monthly interest payments to Greystone EB-5 Partnership.

213.     In order to bolster investor confidence in Greystone EB-5 Partnership investment offering, Greystone's business plans and brochures also made materially misleading statements suggesting that Greystone Hotel Miami had substantial funds at stake in the Greystone Properites, and that investor funds were only part of an already well-financed development project. Based on information provided in part by J. Vosotas, Greystone EB-5 Partnership's business plans falsely and fraudulently represented that Greystone Project had $7.7 million in equity in the Greystone Hotel, and the brochures fraudulently stated the project was "very safe" based in part on a substantial equity investment from Greystone Hotel Miami. In reality, the Greystone Properties were financially distresses, and J. Vosotas, through his various entities purchased them with limited equity. J. Vosotas also failed to disclose the properties were financed with an initial, undisclosed Five Million Dollar ($5,000,000.00) mortgage from BBM3 II and BBM3 and no equity from the developer.

### *v.*     Defendants Fraudulently Induced Plaintiff's to Invest in the Greystone EB-5 Partnership

214.     In reliance on the Offering Documents, the USCIS Approval, the Websites, and the oral representations described above, each of the Plaintiffs provided Five Hundred Thousand Dollars ($500,000.00) for a limited partnership unit in Greystone Partnership, along with an administrative fee of Forty-Five Thousand Dollars ($45,000.00) and legal services fee of Fifteen Thousand Dollars ($15,000.00). A true and accurate copy of a Certificate of Limited Partnership Interest is attached hereto as Exhibit 18.

215.     Each of the Plaintiffs received confirmation that their Five Hundred Thousand Dollar ($500,000.00) investment, Forty-Five Thousand Dollars ($45,000.00), Sixty Thousand Dollar ($60,000.00) administrative fee, and Fifteen Thousand Dollar ($15,000.00) legal services fee had been received.

216.     In providing their money, Plaintiffs relied upon the representation that there was a 100% guaranty for the return of their investment and fees in the event their I-526 Petition was denied.

217.     In providing their money, Plaintiffs relied upon the Escrow Representation, and understood that their money would be held in escrow unless escrow conditions were met.

218.     In providing their money, Plaintiffs relied upon the representation that if their I-526 Petition was denied, their funds would be returned within 90 days.

219.     In providing their money, Plaintiffs relied upon the representation that only 44 limited partnership units in Greystone EB-5 Partnership would be offered. This representation was material because, if there were too many investors, not enough jobs would be created per investor and they would be unable to obtain the EB-5 visas. Further, this information was relied upon in calculating each investors' ability to obtain a return on their investment.

220.     In providing their money, Plaintiffs relied upon the representation that their funds would be exclusively invested in the Greystone Hotel Miami to create jobs by helping to finish the renovation and development of the Greystone Hotel.

221.     In providing their money, Plaintiffs relied upon the representation that Defendant, USREDA guaranteed the approval of any I-526 application it completed and that it would return all service fees in the event of denial.

222.     In providing their money, Plaintiffs relied upon the representation by Defendant, United EB-5 that the General Partners had a historic "99%" success rate with I-526 petitions.

223.     In providing their money, Plaintiffs relied upon the representation that their funds were in addition to an equity investment by the developer in excess of $7.7 million and a bank loan in excess of Thirty Million Dollar ($30,000,000.00), so that Plaintiffs' funds constituted less than 34.9% of the project's funding. Plaintiffs relied upon the fact that a bank conducted significant due diligence on the viability of the project prior to giving a Thirty Million Dollar ($30,000.00) loan.

224.     In providing their money, Plaintiffs relied upon the representation that their funds would be held in escrow, and were not yet needed, because the developer's investment in excess of $7.7 million and a bank loan in excess of Thirty Million Dollars ($30,000.00) were being used for construction.

225.     In providing their money, Plaintiffs relied upon the representation that their funds would not be taken from the escrow account, and would not be used, unless and until the developer's investment in excess of $7.7 million and the bank funds in excess of Thirty Million Dollars ($30,000.00) had been used at the project.

226.     In providing their money, Plaintiffs relied upon the representation that a bank had provided funding in excess of Thirty Million Dollar ($30,000.00), that these funds were being used for ongoing construction at the project, and that a bank had undertaken due diligence on the project.

227.     In providing their money, Plaintiffs relied upon the representation that their funds would be used exclusively to develop the hotel and create at least ten (10) jobs per investor.

228.     In providing their money, Plaintiffs relied upon the representation that the project was in progress, "very near completion," and would be complete for "the 2016 season"

229.    In providing their money, Plaintiffs relied upon the representation that the job count for the Greystone Hotel project was 733.7 jobs, while the project needed only Four Hundred and Forty-Four (440) jobs.

230.    In providing their money, Plaintiffs relied upon the representation that they need not worry if the project will perform and meet the rigid standards required by the USCIS.

In providing their money, Plaintiffs relied upon the representation that each investor's investment would be fully secured by the real property at issue.

<u>**COUNT 1 – Violation of Florida Securities and Investor Protection Act,**</u>
<u>**Florida Statutes 517.301(1)(a)**</u>
*(Defendant, Walsh)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230 as if fully set forth herein.

231.    Defendants solicited monies for the purchase and sale of securities in the Greystone EB-5 Partnership.

232.    "Sale" or "sell" means any contract of sale or disposition of any investment, security, or interest in a security, for value. With respect to a security or interest in a security, the term defined in this subsection does not include preliminary negotiations or agreements between an issuer or any person on whose behalf an offering is to be made and any underwriter or among underwriters who are or are to be in privity of contract with an issuer. Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value. Every sale or offer of a warrant or right to purchase or subscribe to another security of the same or another issuer, as well as every sale or offer of a security which gives the

holder a present or future right or privilege to convert into another security or another issuer, is considered to include an offer of the other security.

233.    "In an action for rescission [a] purchaser may recover the consideration paid for the security or investment, plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security or investment upon tender of the security or investment." Fla. Stat. § 517.211(3).

234.    On behalf of themselves and Defendants, Greystone EB-5 Partnership and the Walsh Entities, Defendants made false representations to Plaintiffs, including: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Greystone Hotel Miami; (4) the guaranteed return of investors' funds of Plaintiffs' I-526 Petitions were denied; (5) Defendant, Walsh and co-conspirators' backgrounds; (6) the preparation and periodic disclosure to investors of financial reports; (7) Greystone Hotel Miami's repayment of the loan; (8) Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties; (9) advertisements of Greystone Hotel Miami development prior to the commencement of the Greystone EB-5 Partnership offering; and (10) the existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment.

235.    Defendant, Walsh, in connection with the offer, sale or purchase of any investment or security, including any security exempted under the provision of Fla. Stat. § 517.051 and including any security sold in a transaction exempted under the provision of Fla. Stat. § 517.061:

      a.   Directly or indirectly employed a device, scheme, or artifice and defraud;

      b.   Obtained money by means of untrue statements of material fact;

     c.    Omitted a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    d.    Engaged in a transaction, practice or course of business which operates or would operate as a fraud or deceit upon the Plaintiffs.

236.    Defendant, Walsh employed a scheme to defraud Plaintiffs into making an investment in Greystone EB-5 Project.

237.    Defendant, Walsh obtained the Plaintiffs money by means of untrue statements of material facts, including the Escrow Representation.

238.    Defendant, Walsh engaged in transactions, practices and a course of business that operated as a fraud on the Plaintiffs.

239.    Defendant, Walsh acted with scienter, and knew that their representations were false, and intended that the Plaintiffs rely upon the representations and be induced by them to invest their money into the Greystone Project.

240.    Defendant, Walsh knew there was no intention to hold the Plaintiffs' funds in escrow unless and until their I-526 applications were approved by USCIS.

241.    Plaintiffs relied upon the representations of Defendant, Walsh and tendered payment to Defendant, Walsh.

242.    Defendant, Walsh participated directly in making the sale of the Greystone Project that resulted in a direct harm to the Plaintiffs.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, JOSEPH WALSH awarding Plaintiffs monetary damages in the amount of the consideration paid for the investment, plus interest thereon at the legal rate, less the amount of any income

received by the Plaintiffs (which is zero); reasonable attorneys' fees and legal costs pursuant to Fla. Stat. §517.211(6) and further relief this Court deems just and proper.

## COUNT 2 - Conversion
### *(Defendant, Walsh)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

243.    Defendant, Walsh's improper taking and retention of property and investor payments which belong to Plaintiffs, gives rise to a claim for conversion in that Defendant, Walsh has, without authorization, asserted dominion and control over the funds which are the specifically identifiable property of the Plaintiffs and are or were the property of the Plaintiffs and which were owned or payable to Plaintiffs.

244.    Defendant, Walsh's conversion is inconsistent with Plaintiffs' rights and ownership to said property.

245.    The payments and property wrongfully converted by Defendant, Walsh is specific and identifiable.

246.    By virtue of Defendant, Walsh's repeated and continued misappropriation and conversion of Plaintiffs' property, Defendant has caused Plaintiffs substantial damage.

247.    Plaintiffs have made demands for the return of their property, but the funds have not been returned. Moreover, a demand for the return of Plaintiffs' funds would be futile. Defendant, Walsh has been confronted with the fact that he stole and converted Plaintiffs' property, but have failed to return all of the property to Plaintiffs.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against

Defendant, JOSEPH WALSH, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 3 - Conversion
*(Defendants, Walsh Entities)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

248.    The Walsh Entities, Defendants, SARC, WWB TRUST, USREDA, and USREDA Holdings' improper taking and retention of property and investor payments which belong to Plaintiffs, gives rise to a claim for conversion in that Defendants, the Walsh Entities have, without authorization, asserted dominion and control over the funds which are the specifically identifiable property of the Plaintiffs and are or were the property of the Plaintiffs and which were owned or payable to Plaintiffs.

249.    Defendants, SARC, WWB TRUST, USREDA, and USREDA Holdings' conversion is inconsistent with Plaintiffs' rights and ownership to said property.

250.    The payments and property wrongfully converted by Defendants, SARC, WWB TRUST, USREDA, and USREDA Holdings is specific and identifiable.

251.    By virtue of Defendants, SARC, WWB TRUST, USREDA, and USREDA Holdings' repeated and continued misappropriation and conversion of Plaintiffs' property, Defendants have caused Plaintiffs substantial damage.

252.    Plaintiffs have made demands for the return of their property, but the funds have not been returned. Moreover, a demand for the return of Plaintiffs' funds would be futile.

253.    Defendants, SARC, WWB TRUST, USREDA, and USREDA Holdings have been confronted with the fact that he stole and converted Plaintiffs' property, but have failed to return all of the property to Plaintiffs.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, JOSEPH WALSH, SOUTH ATLANTIC REGIONAL CENTER, LLC, WWB TRUST, LLC, USREDA, LLC, and USREDA HOLDINGS, LLC, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

<u>**COUNT 4 - Aiding and Abetting Conversion**</u>
*(Defendant, J. Vosotas)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

254.   Defendants, Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.

255.   Defendant, J. Vosotas had specific knowledge that Plaintiffs' property was converted.

256.   Defendant, J. Vosotas knew should have known Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

257.   Defendant, J. Vosotas knew or should have known that Plaintiffs' investment funds were never placed in escrow, never loaned to Greystone Hotel Miami, and never used to develop the Greystone Properties.

258.   Defendant, J. Vosotas knew, or should have known, that Walsh had misappropriated and converted Plaintiffs' property.

259.   Defendant, J. Vosotas through his role as manager of the Vosotas Entities (Greystone EB-5 Partnership, United EB5, Greystone Terra Firma, Santa Barbara 230, Greystone

Hotel Miami, Greystone Option Holder, VOS Hospitality, VOS Holdings I, Vos Associate, VOS CRE I, Greystone Hotel Developer, and Greystone Managing Member, Greystone Tenant) had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

260.    Defendant, J. Vosotas, as 25% manager/member of the Greystone Properties, had ultimate control over the various Vosotas Entities, had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

261.    Defendant, J. Vosotas as a General Partner of Greystone EB-5 LLLP had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

262.    Defendant, J. Vosotas provided substantial assistance to advance the commission of the conversion.

263.    Defendant, J. Vosotas in a teleconference meeting with Plaintiffs  made multiple misrepresentations to Plaintiffs including (1) the ownership of the Greystone Properties, (2) the existence of a security interest or collateral, (3) the existence of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their  EB-5 Visas were approved.

264.    Defendant, J. Vosotas produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

265.     Defendant,  J. Vosotas, provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers'

EB-5 experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

266.    Defendant, J. Vosotas partnered with Walsh and represented himself as a project manager in the Greystone Project's advertisements and the Offering Materials.

267.    In conclusion, Defendant, J. Vosotas, knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment. Defendant, J. Vosotas substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

268.    Plaintiffs were severely damaged by the actions of Defendant, J. Vosotas

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, JAMES VOSOTAS for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 5 - Aiding and Abetting Conversion
*(Defendant, D. Vosotas)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

269.    Defendants, Walsh, Walsh Jr., the Walsh Entities, and co-conspirators theft and misappropriation of Plaintiffs' investment shows the existence of an Underlying Conversion. Defendants, Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.

270.    Defendant, D. Vosotas had specific knowledge that Plaintiffs' property was converted.

271.    Defendant, D. Vosotas knew should have known Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

272.    Defendant, D. Vosotas knew or should have known that Plaintiffs' investment funds were never placed in escrow, never loaned to Greystone Hotel Miami, and never used to develop the Greystone Properties.

273.    Defendant, D. Vosotas knew, or should have known, that Walsh had misappropriated and converted Plaintiffs' property.

274.    Defendant, D. Vosotas through his role as manager of the Vosotas Entities (Trans Inn Associates, VOS Holdings, and VOS CRE I) had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

275.    Defendant, D. Vosotas as 25% manager/member of the Greystone Properties, had ultimate control over the various Vosotas Entities, had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

276.    Defendant, D. Vosotas provided substantial assistance to advance the commission of the conversion.

277.    Defendant, D. Vosotas, or his authorized agents, met with Plaintiffs to discuss their potential investment in the Greystone Project. Representations made by Defendant, D. Vostoas and/or his agents gave credibility to Defendant, Walsh and the Greystone Project.

278.    Defendant, D. Vosotas produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

279.     Defendant, D. Vosotas, provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 Experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

280.     Defendant, D. Vosotas partnered with Walsh and represented himself as a project manager in the Greystone Project's advertisements and the Offering Materials. Defendant, D. Vosotas's reputation, as a purported experienced developer and manager of hotels in the Miami Florida market was essential in giving Walsh credibility in the EB-5 offering.

281.     Defendant, D. Vosotas, knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment. Defendant, D. Vosotas substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

282.     Plaintiffs were severely damaged by the actions of Defendant, D. Vosotas.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, DANIEL VOSOTAS, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## **COUNT 6 - Aiding and Abetting Conversion**
### *(Defendant, Muhl)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

283.     Defendants, Walsh, Walsh Jr., the Walsh Entities, and co-conspirators theft and misappropriation of Plaintiffs' investment shows the existence of an Underlying Conversion. Defendants, Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.

284.     Defendant, Muhl had specific knowledge that Plaintiffs' property was converted.

285.     Defendant, Muhl knew should have known Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

286.     Defendant, Muhl knew or should have known that Plaintiffs' investment funds were never placed in escrow, never loaned to Greystone Hotel Miami, and never used to develop the Greystone Properties.

287.     Defendant, Muhl knew, or should have known, that Walsh had misappropriated and converted Plaintiffs' property.

288.     Defendant, Muhl through his role as manager of the Vosotas Entities (Greystone Terra Firma, Greystone Hotel Developer, Greystone Managing Member, and Greystone Tenant) had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

289.     Defendant, Muhl as 50% manager/member of the Greystone Properties, had ultimate control over the various Vosotas Entities, had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

290.     Defendant, Muhl provided substantial assistance to advance the commission of the conversion.

291.      Defendant, Muhl through the Muhl Entities (BBM3 and BBM3 II) provided the initial funding to purchase the Greystone Properties.

292.    Defendant, Muhl traveled to China and Hong Kong to advertise EB-5 projects, including the Greystone Project.

293.    Defendant, Muhl delayed in filing various mortgages, notices, and lease agreements in regards to the Greystone Properties. The only reasonable explanation for this delay was to prevent public disclosure, and Plaintiffs' discovery of true ownership structure of the Greystone Properties.

294.    Defendant, Muhl produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

295.    Defendant, Muhl provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 Experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

296.    Defendant, Muhl, knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment. Defendant, Muhl substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

297.    Plaintiffs were severely damaged by the actions of Defendant, Muhl.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against

Defendant, BRANDEN MUHL, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 7 - Aiding and Abetting Conversion
*(Defendants, Vosotas Entities)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

298.    Defendants, Walsh, Walsh Jr., the Walsh Entities, and co-conspirators theft and misappropriation of Plaintiffs' investment shows the existence of an Underlying Conversion. Defendants, Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.

299.    Defendants, Vosotas Entities (Greystone Hotel Miami, United EB5, Santa Barbara 230, Greystone Terra Firma, VOS Holdings I, VOS CRE I, Greystone Hospitality, Greystone Holdco, Greystone Managing Member, Greystone Master Tenant, Greystone Tenant, Greystone Option Holder, Trans Inns Associates, VOS Hospitality, and Greystone Managing Member) had Specific Knowledge that Plaintiffs' property was Converted.

300.    Defendants, Vosotas Entities knew should have known Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

301.    Defendants, Vosotas Entities knew or should have known that Plaintiffs' investment funds were never placed in escrow, never loaned to Greystone Hotel Miami, and never used to develop the Greystone Properties.

302.    Defendants, Vosotas Entities knew, or should have known, that Walsh had misappropriated and converted Plaintiffs' property.

303.     Defendants, Vosotas Entities agreed to develop the Greystone Project and EB-5 partnership with Walsh. Defendants, Vosotas Entities were the legally authorized recipients of Plaintiffs' investment to develop the Greystone Properties. As such, the Vosotas Entities had specific knowledge the investment was never received and none of Plaintiffs' funds were used to develop the property. Defendants, Vosotas Entities knew, or should have known, Plaintiffs' property had been misappropriated and converted by Walsh.

304.     Defendants, Vosotas Entities provided substantial assistance to advance the commission of the conversion.

305.     Defendants, Vosotas Entities produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

306.     Defendants,  Vosotas Entities provided Defendants, Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 Experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

307.     Defendants, Vosotas Entities, knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment. Defendants, Vosotas Entities substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

308.     Plaintiffs were severely damaged by the actions of the Vosotas Entities.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, GREYSTONE HOTEL MIAMI, UNITED EB5, LLC, SANTA BARBARA 230, LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I, LLC, GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC,   GREYSTONE TENANT, LLC, GREYSTONE OPTION HOLDER, LLC, TRANS INNS ASSOCIATES, VOS HOSPITALITY, LLC and GREYSTONE MANAGING MEMBER, LLC for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 8 - Aiding and Abetting Conversion
*(Defendant, Ramirez)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

309.    Defendants, Walsh, Walsh Jr., the Walsh Entities, and co-conspirators theft and misappropriation of Plaintiffs' investment shows the existence of an Underlying Conversion. Defendants, Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.

310.    Defendant, Ramirez had specific knowledge that Plaintiffs' property was Converted.

311.     Defendant, Ramirez knew that Defendant, Walsh created the Fake Escrow Account to avoid the standard banking policies and procedures associated with legitimate escrow accounts. Defendant, Ramirez knew, or should have known, Defendant, Walsh sought to avoid standard escrow requirements to assist in the conversion of Plaintiffs' funds.

312.     Defendant, Ramirez, as a result of all the information that was provided by Defendants, Walsh and the Walsh Entities, via Reitz, regarding both the SunTrust escrow account and the intended use of the account they wished to open at PNC, combined with PNC's knowledge of the EB-5 program, had specific knowledge or should have known that Plaintiffs had been fraudulently induced into investing in the Project.

313.     Defendant, Ramirez, as a Vice President of PNC and as a result of receiving multiple wires transfers referencing an "Escrow Account" had specific knowledge or should have known that Plaintiffs' had been defrauded and wrongfully believed they were placing their funds in an escrow account.

314.     Defendant, Ramirez, as a Vice President of PNC and as a result of witnessing Walsh immediately transfer funds from the "Escrow Account" to Defendant, Walsh's second holding account at PNC, had specific knowledge or should have known that Plaintiffs' funds had been converted.

315.     Defendant, Ramirez provided substantial assistance to advance the commission of the conversion.

316.     Defendant, Ramirez assisted Defendant, Walsh in creating the Fake Escrow Account.

317.     Defendant, Ramirez offered, created and implemented the Fake Escrow Account, he knew that the Defendants, Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an escrow account. Ramirez also knew Plaintiffs had made substantial transferred to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Defendant, Walsh's holding account with PNC bank, without a requirement to follow

any terms of a PNC escrow agreement. Under these particular circumstances, Defendant, Ramirez and PNC's failure to warn Plaintiffs or stop Defendants, Walsh, the Walsh Entities, and co-conspirators' conversions is providing substantial assistance.

318.     Defendant, Ramirez therefore knowingly aided and abetted in the conversion of Plaintiffs' funds. Ramirez substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies from the Fake Escrow Account.

319.     Plaintiffs were severely damaged by the actions of Defendant, Ramirez.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, RUBEN RAMIERZ, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 9 - Aiding and Abetting Conversion
*(Defendant, PNC)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

320.     Defendants, Walsh, Walsh Jr., the Walsh Entities, and co-conspirators theft and misappropriation of Plaintiffs' investment shows the existence of an Underlying Conversion. Defendants, Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.

321.     Defendant, PNC had specific knowledge that Plaintiffs' property was converted.

322.     Defendant, PNC knew Walsh created the Fake Escrow Account to avoid the standard banking policies and procedures associated with legitimate escrow accounts. Defendant,

PNC knew, or should have known, Defendant, Walsh sought to avoid standard escrow requirements to assist in the conversion of Plaintiffs' funds.

323.    Defendant, PNC, as a result of all the information that was provided by Defendants, Walsh and the Walsh Entities, via Reitz, regarding both the SunTrust escrow account and the intended use of the account they wished to open at PNC, combined with PNC's knowledge of the EB-5 program, had specific knowledge or should have known that Plaintiffs had been fraudulently induced into investing in the Project.

324.    Defendant, PNC, as a result of receiving multiple wires transfers referencing an "Escrow Account," had specific knowledge or should have known that Plaintiffs' had been defrauded and wrongfully believed they were placing their funds in an escrow account.

325.    Defendant, PNC, as a result of witnessing Defendant, Walsh immediately transfer funds from the "Escrow Account" to Walsh's second holding account at PNC, had specific knowledge or should have known that Plaintiffs' funds had been converted.

326.    Defendant, PNC provided substantial assistance to advance the commission of the conversion.

327.    Defendant, PNC assisted Defendant, Walsh in creating the Fake Escrow Account.

328.    Defendant, PNC offered, created and implemented the fake escrow account, they knew that Defendants, Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an escrow account. PNC also knew Plaintiffs had made substantial transferred to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Walsh's holding account with PNC bank, without a requirement to follow any terms of a PNC escrow agreement. Under these particular circumstances, Defendants, Ramirez and PNC's failure to warn Plaintiffs

or stop Defendants, Walsh, the Walsh Entities, and co-conspirators' conversions is providing substantial assistance.

329.    Defendant, PNC therefore knowingly aided and abetted in the conversion of Plaintiffs' funds. PNC substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies from the Fake Escrow Account.

330.    Plaintiffs were severely damaged by the actions of Defendant, PNC.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, PNC BANK, N.A., for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 10 - Fraud in the Inducement
*(Defendant, Walsh)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

331.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, DefendantWalsh induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

   a.  the use of investor funds;
   b.  the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;
   c.  the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;
   d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;
   e.  Defendants' backgrounds;
   f.  the preparation and periodic disclosure to investors of financial reports;

g.  Greystone Project's repayment of the loan; and

h.   Greystone Project's purported ownership of and investment in the Greystone Hotel

i.  The underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.

j.  The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

332.   Defendant, Walsh after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake PNC escrow account.

333.   Knowing that his statements were false, Defendant Walsh intended for the representations to induce Plaintiffs to rely on them and transfer the money.

334.   Plaintiffs justifiably relied on Defendant Walsh's representations and transferred all required payments.

335.   Defendant, Walsh however, did not hold Plaintiffs' funds in escrow nor invest Plaintiffs' funds into any legitimate EB-5 program, nor did Defendant return Plaintiffs' funds when Plaintiffs' I-526 Petitions were denied.

336.   In justifiable reliance on Defendant Walsh's representations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant JOSEPH WALSH, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 11 - Fraud in the Inducement
*(Defendant, J. Vosotas)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

337.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, Defendant J. Vosotas induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

    a.  the use of investor funds;

    b.  the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;

    c.  the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

    d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;

    e.  Defendants' backgrounds;

    f.  the preparation and periodic disclosure to investors of financial reports;

    g.  Greystone Project's repayment of the loan; and

    h.  Greystone Project's purported ownership of and investment in the Greystone Hotel

    i.  The underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.

    j.  The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

338.    Defendant, J. Vosotas after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake PNC escrow account.

339.    Knowing that his statements were false, Defendant J. Vosotas intended for the representations to induce Plaintiffs to rely on them and transfer the money.

340.     Plaintiffs justifiably relied on Defendant, J. Vosotas' representations and transferred all required payments.

341.     Defendant, J. Vosotas however, did not hold Plaintiffs' funds in escrow nor invest Plaintiffs' funds into any legitimate EB-5 program, nor did Defendant return Plaintiffs' funds when Plaintiffs' I-526 Petitions were denied.

342.     In justifiable reliance on Defendant J. Vosotas' representations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, JAMES VOSOTAS for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 12 - Fraud in the Inducement
*(Defendant, D. Vosotas)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

343.     Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, Defendant D. Vosotas induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

   a.   the use of investor funds;

   b.   the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;

   c.    the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

   d.   the guaranteed return of investors' funds if their I-526 Petitions were denied;

e.  Defendants' backgrounds;

f.  the preparation and periodic disclosure to investors of financial reports;

g.  Greystone Project's repayment of the loan; and

h.   Greystone Project's purported ownership of and investment in the Greystone Hotel

i.  The underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.

j.  The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

344.    Defendant, D. Vosotas after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake PNC escrow account.

345.    Knowing that his statements were false, Defendant D. Vosotas intended for the representations to induce Plaintiffs to rely on them and transfer the money.

346.    Plaintiffs justifiably relied on Defendant D. Vosotas' representations and transferred all required payments.

347.    Defendant, D. Vosotas however, did not hold Plaintiffs' funds in escrow nor invest Plaintiffs' funds into any legitimate EB-5 program, nor did Defendant return Plaintiffs' funds when Plaintiffs' I-526 Petitions were denied.

348.    In justifiable reliance on Defendant D. Vosotas' representations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, DANIEL VOSOTAS, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 13 - Fraud in the Inducement
### *(Defendant, Muhl)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

349.   Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, Defendant Muhl induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

   a.  the use of investor funds;

   b.  the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;

   c.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

   d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;

   e.  Defendants' backgrounds;

   f.  the preparation and periodic disclosure to investors of financial reports;

   g.  Greystone Project's repayment of the loan; and

   h.   Greystone Project's purported ownership of and investment in the Greystone Hotel

   i.  The underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.

   j.  The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

350.   Defendant, Muhl after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake PNC escrow account.

351.   Knowing that his statements were false, Defendant Muhl intended for the representations to induce Plaintiffs to rely on them and transfer the money.

352.    Plaintiffs justifiably relied on Defendant Muhl's representations and transferred all required payments.

353.    Defendant Muhl however, did not hold Plaintiffs' funds in escrow nor invest Plaintiffs' funds into any legitimate EB-5 program, nor did Defendant return Plaintiffs' funds when Plaintiffs' I-526 Petitions were denied.

354.    In justifiable reliance on Defendant Muhl's representations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, BRANDEN MUHL, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 14 - Fraud in the Inducement
### *(Defendants, Vosotas Entities)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

355.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, the Vosotas Entities induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

    a.  the use of investor funds;

    b.  the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;

    c.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

    d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;

    e.  Defendants' backgrounds;

    f.  the preparation and periodic disclosure to investors of financial reports;

    g.  Greystone Project's repayment of the loan; and

    h.  Greystone Project's purported ownership of and investment in the Greystone Hotel

    i.  The underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.

    j.  The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

356.     The Vosotas Entities, after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake PNC escrow account.

357.     Knowing that his statements were false, the Vosotas Entities intended for the representations to induce Plaintiffs to rely on them and transfer the money.

358.     Plaintiffs justifiably relied on the Vosotas Entities' representations and transferred all required payments.

359.     The Vosotas Entities however, did not hold Plaintiffs' funds in escrow nor invest Plaintiffs' funds into any legitimate EB-5 program, nor did Defendants return Plaintiffs' funds when Plaintiffs' I-526 Petitions were denied.

360.     In justifiable reliance on the Vosotas Entities' representations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants, GREYSTONE HOTEL MIAMI, UNITED EB5, LLC, SANTA BARBARA 230, LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I, LLC,

GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC,  GREYSTONE TENANT, LLC, GREYSTONE OPTION HOLDER, LLC, TRANS INNS ASSOCIATES, VOS HOSPITALITY, LLC and GREYSTONE MANAGING MEMBER, LLC, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 15 - Fraud in the Inducement
*(Defendants, Walsh Entities)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

361.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, the Walsh Entities induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

  a.  the use of investor funds;
  b.  the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;
  c.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;
  d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;
  e.  Defendants' backgrounds;
  f.  the preparation and periodic disclosure to investors of financial reports;
  g.  Greystone Project's repayment of the loan; and
  h.   Greystone Project's purported ownership of and investment in the Greystone Hotel
  i.  The underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.
  j.  The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

362.    The Walsh Entities after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake PNC escrow account.

363.    Knowing that his statements were false, the Walsh Entities intended for the representations to induce Plaintiffs to rely on them and transfer the money.

364.    Plaintiffs justifiably relied on the Walsh Entities' representations and transferred all required payments.

365.    The Walsh Entities however, did not hold Plaintiffs' funds in escrow nor invest Plaintiffs' funds into any legitimate EB-5 program, nor did Defendants return Plaintiffs' funds when Plaintiffs' I-526 Petitions were denied.

366.    In justifiable reliance on the Walsh Entities' representations, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants, SOUTH ATLANTIC REGIONAL CENTER, LLC, WWB TRUST, LLC, USREDA, LLC, USREDA HOLDINGS, LLC, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 16 - Aiding and Abetting Fraud in the Inducement
*(Defendant, Ruben Ramirez)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

367.    Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and Muhl Entities and their agents knew that their representations were false and

intended the Plaintiffs to rely upon the representations and induced by them to invest their money into Greystone EB-5 Partnership.

368.    Defendant, Ramirez had specific knowledge that Plaintiffs' had been defrauded.

369.    Defendant, Ramirez knew Defendant, Walsh created the Fake Escrow Account to avoid the standard banking policies and procedures associated with legitimate escrow accounts. Defendant, Ramirez knew, or should have known, Defendant, Walsh sought to avoid standard escrow requirements to assist in the defrauding Plaintiffs' into believing they were placing their funds into a legitimate escrow account.

370.    Ramirez, as a result of all the information that was provided by Walsh and the Walsh Entities, via Reitz, regarding both the SunTrust escrow account and the intended use of the account they wished to open at PNC, combined with PNC's knowledge of the EB-5 program, had specific knowledge or should have known that Plaintiffs had been fraudulently induced into investing in the Project.

371.    Ramirez, as a Vice President of PNC and as a result of receiving multiple wires transfers referencing an "Escrow Account" had specific knowledge or should have known that Plaintiffs' had been defrauded and wrongfully believed they were placing their funds in an escrow account.

372.    Ramirez, as a Vice President of PNC and as a result of witnessing Walsh immediately transfer funds from the "Escrow Account" to Walsh's second holding account at PNC, had specific knowledge or should have known that Plaintiffs' had been defrauded.

373.    Ramirez provided substantial assistance to advance the fraudulent inducement.

374.    Ramirez assisted Walsh in creating the Fake Escrow Account.

375.     Ramirez offered, created and implemented the fake escrow account, he knew that the Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an escrow account. Ramirez also knew Plaintiffs had made substantial transferred to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Walsh's holding account with PNC bank, without a requirement to follow any terms of a PNC escrow agreement.   Under these particular circumstances, Ramirez and PNC's failure to warn Plaintiffs or stop the Walsh, the Walsh Entities, and co-conspirators' fraud is providing substantial assistance.

376.     Ramirez therefore knowingly aided and abetted in the inducement. Ramirez substantially assisted or enabled the inducement of fraud by convincing Plaintiffs' their EB-5 investment had been placed in a legitimate escrow account.

377.     Plaintiffs were severely damaged by the actions of Ramirez.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, RUBEN RAMIREZ for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 17 - Aiding and Abetting Fraud in the Inducement
*(Defendant, PNC)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

378.     Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, Vosotas Entities, Muhl, and Muhl Entities and their agents knew that their representations were false and intended

the Plaintiffs to rely upon the representations and be induced by them to invest their money into Greystone EB-5 Partnership.

379.   Defendant, PNC had specific knowledge that Plaintiffs' had been defrauded.

380.   Defendant, PNC knew Defendant, Walsh created the Fake Escrow Account to avoid the standard banking policies and procedures associated with legitimate escrow accounts. Defendant, PNC knew, or should have known, Defendant, Walsh sought to avoid standard escrow requirements to assist in the conversion of Plaintiffs' funds in the defrauding Plaintiffs' into believing they were placing their funds into a legitimate escrow account.

381.   Defendant, PNC, as a result of all the information that was provided by Defendants, Walsh and the Walsh Entities, Via Reitz, regarding both the SunTrust escrow account and the intended use of the account they wished to open at PNC, combined with PNC's knowledge of the EB-5 program, had specific knowledge or should have known that Plaintiffs had been fraudulently induced into investing in the Project.

382.   As a result of receiving multiple wires transfers referencing an "Escrow Account", Defendant, PNC had specific knowledge or should have known that Plaintiffs' had been defrauded and wrongfully believed they were placing their funds in an escrow account.

383.   Defendant, PNC as a result of witnessing Defendant Walsh immediately transfer funds from the "Escrow Account" to Walsh's second holding account at PNC, had specific knowledge or should have known that Plaintiffs' had been defrauded.

384.   Defendant, PNC provided substantial assistance to advance the fraudulent inducement.

385.   Defendant, PNC assisted Defendant Walsh in creating the Fake Escrow Account.

386.     Defendant, PNC offered, created and implemented the fake escrow account, it knew that Defendants, Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an escrow account. Defendant, PNC also knew Plaintiffs had made substantial transferred to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Defendants, Walsh's holding account with PNC bank, without a requirement to follow any terms of a PNC escrow agreement. Under these particular circumstances, Defendants, PNC and Ramirez's failure to warn Plaintiffs or stop Defendants, Walsh, the Walsh Entities, and co-conspirators' fraud is providing substantial assistance.

387.     Defendant, PNC therefore knowingly aided and abetted in the inducement. Defendant, PNC substantially assisted or enabled the inducement of fraud by convincing Plaintiffs' their EB-5 investment had been placed in a legitimate escrow account.

388.     Plaintiffs were severely damaged by the actions of PNC.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, PNC BANK, N.A., for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## **COUNT 18 - Breach of Fiduciary Duty**
### *(Defendants, Walsh and SARC)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

389.    Defendants, Walsh and SARC owed Plaintiffs a fiduciary duty and other implied duties arising from their service as general partners or persons purporting to act as general partners Defendant, Greystone EB-5 Partnership, including the duties of loyalty and care.

390.    Moreover, Plaintiffs reposed their trust and confidence in Defendants, Walsh and SARC which they accepted. Plaintiffs were dependent on Defendants, United EB5, SARC, Walsh, and J. Vosotas and their purported expertise in the United States EB-5 visa program, and Defendants knowingly undertook and accepted the duty to advise, counsel, and protect Plaintiffs.

391.    Defendants, Walsh and SARC's duty of loyalty included the duty to account and hold as trustee any property derived by the general partner in the conduct of the limited partnership's activities.

392.    Defendants, Walsh and SARC had a duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

393.    Defendants, Walsh and SARC's duty of loyalty included the duty to follow material terms of the partnership agreement, which would have revealed Defendant's fraud, such as providing annual financial statements.

394.    Defendants, Walsh and SARC by stealing and/or allowing Plaintiffs' funds to be stolen from the Escrow Account, in derogation of the written and oral representations that the funds would be held in escrow pending USCIS' approval of Plaintiffs' I-526 applications, breached their fiduciary duties to Plaintiffs.

395.    Defendants, Walsh and SARC by concealing material facts about the Greystone project and breached their fiduciary duties to Plaintiffs.

396.    Defendants, Walsh and SARC breach of their fiduciary duties have caused Plaintiffs substantial damage.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, JOSEPH WALSH and SOUTH ATLANTIC REGIONAL CENTER, LLC, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 19 - Breach of Fiduciary Duty
*(Defendants, J. Vosotas and United EB5)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

397.    Defendants, J. Vosotas and United EB5 owed Plaintiffs a fiduciary duty and other implied duties arising from their service as general partners or persons purporting to act as general partners of Defendant, Greystone EB-5 Partnership, including the duties of loyalty and care.

398.    Moreover, Plaintiffs reposed their trust and confidence in Defendants,  J. Vosotas and United EB5 which they accepted. Plaintiffs were dependent on Defendants, United EB5, SARC, Walsh, and J. Vosotas and their purported expertise in the United States EB-5 visa program, and Defendants knowingly undertook and accepted the duty to advise, counsel, and protect Plaintiffs.

399.    Defendants, J. Vosotas and United EB5's duty of loyalty included the duty to account and hold as trustee any property derived by the general partner in the conduct of the limited partnership's activities.

400.    Defendants, J. Vosotas and United EB5 had a duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

401.   Defendants, J. Vosotas and United EB5's duty of loyalty included the duty to follow material terms of the partnership agreement, which would have revealed Defendant's fraud, such as providing annual financial statements.

402.   Defendants, J. Vosotas and United EB5 by stealing and/or allowing Plaintiffs' funds to be stolen from the Escrow Account, in derogation of the written and oral representations that the funds would be held in escrow pending USCIS' approval of Plaintiffs' I-526 applications, breached their fiduciary duties to Plaintiffs.

403.   Defendants, J. Vosotas and United EB5 by concealing material facts about the Greystone project, breached their fiduciary duties to Plaintiffs.

404.   Defendants, J. Vosotas and United EB5 breach of their fiduciary duties have caused Plaintiffs substantial damage.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, JAMES VOSOTAS and UNITED EB-5, LLC, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

**COUNT 20 - Aiding and Abetting Breach of Fiduciary Duty**
*(Defendant, D. Vosotas)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

405.   Defendants, Walsh, SARC, J. Vosotas, and United EB5 breached a fiduciary duty owed to the Plaintiffs.

406.   Defendant, D. Vosotas had specific knowledge of Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

407.    Defendant, D. Vosotas had specific knowledge of the fiduciary duties Defendants, United EB5, SARC, Walsh, and J. Vosotas had to Plaintiffs as General Managers of Defendant, Greystone EB-5 Partnership.

408.    Defendant, D. Vosotas knew should have known Plaintiffs' funds were supposed to be held in escrow then loaned to Defendant, Greystone Hotel Miami for the purposes of developing the Greystone Properties.

409.    Defendant, D. Vosotas knew or should have known that Plaintiffs' investment funds were never placed in escrow, never loaned to Greystone Hotel Miami, and never used to develop the Greystone Properties.

410.    Defendant, D. Vosotas knew, or should have known, that Defendants, SARC, J. Vosotas, and United EB5 misappropriated Plaintiffs' investment was a violation of their Fiduciary Duty to Plaintiffs.

411.    Defendant, D. Vosotas through his role as manager of the Vosotas Entities (Trans Inn Associates, VOS Holdings, and VOS CRE I) had specific knowledge that Plaintiffs' investment had been misappropriated and Fiduciary Duties violated.

412.    Defendant, D, Vosotas as 25% manager/member of the Greystone Properties, had ultimate control over the various Vosotas Entities, had specific knowledge that Plaintiffs' investment had been misappropriated and Fiduciary Duties violated.

413.    Defendant, D. Vosotas provided substantial assistance to advance the commission of the Breach of Fiduciary Duty.

414.    Defendant, D. Vosotas, or his authorized agents, met with Plaintiffs to discuss their potential investment in the Greystone Project. Representations made by D. Vostoas and/or his agents gave credibility to Walsh and the Greystone Project.

415.     Defendant, D. Vosotas produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

416.     Defendant,  D. Vosotas, provided Defendants, Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 Experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

417.     Defendant, D. Vosotas partnered with Defendant, Walsh and represented himself as a project manager in the Greystone Project's advertisements and the Offering Materials. Defendant, D. Vosotas's reputation, as a purported experienced developer and manager of hotels in the Miami Florida market was essential in giving Walsh credibility in the EB-5 offering.

418.     Defendant, D. Vosotas, knowingly aided and Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs. Defendant, D. Vosotas substantially assisted or enabled Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

419.     Plaintiffs were severely damaged by the actions of Defendant, D. Vosotas.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, DANIEL VOSOTAS, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 21 - Aiding and Abetting Breach of Fiduciary Duty
*(Defendants, the Vosotas Entities)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

420.    Defendants, Walsh, SARC, J. Vosotas, and United EB5 breached a fiduciary duty owed to the Plaintiffs.

421.    Vosotas Entities Greystone Hotel Miami, United EB5, Santa Barbara 230, Greystone Terra Firma, VOS Holdings I, Vos CRE I, Greystone Hospitality, Greystone Holdco, Greystone Managing Member, Greystone Master Tenant, Greystone Tenant, Greystone Option Holder, Trans Inns Associates, VOS Hospitality, and Greystone Managing Member) had Specific Knowledge of Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

422.    Vosotas Entities had specific knowledge of the fiduciary duties Defendants, United EB5, SARC, Walsh, and J. Vosotas had to Plaintiffs as General Managers of Greystone EB5 Partnership.

423.    Vosotas Entities knew should have known Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

424.    Vosotas Entities knew or should have known that Plaintiffs' investment funds were never placed in escrow, never loaned to Greystone Hotel Miami, and never used to develop the Greystone Properties.

425.    Vosotas Entities knew, or should have known, that Walsh, SARC, J. Vosotas, and United EB5 misappropriated Plaintiffs' investment was a violation of their Fiduciary Duty to Plaintiffs.

426.     Vosotas Entities agreed to develop the Greystone Project and EB-5 partnership with Walsh. Vosotas Entities were the legally authorized recipients of Plaintiffs' investment to develop the Greystone Properties. As such, the Vosotas Entities had specific knowledge the investment was never received and none of Plaintiffs' funds were used to develop the property.

427.     Vosotas Entities provided substantial assistance to advance the commission of the Breach of Fiduciary Duty.

428.     Vosotas Entities produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

429.     Vosotas Entities, provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 Experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

430.     Vosotas Entities, knowingly aided and Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs. The Vosotas Entities substantially assisted or enabled Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

431.     Plaintiffs were severely damaged by the actions of the Vosotas Entities.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants, GREYSTONE HOTEL MIAMI, UNITED EB5, LLC, SANTA BARBARA 230,

LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I, LLC, GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC,  GREYSTONE TENANT, LLC, GREYSTONE OPTION HOLDER, LLC, TRANS INNS ASSOCIATES, VOS HOSPITALITY, LLC and GREYSTONE MANAGING MEMBER, LLC, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 22 - Aiding and Abetting Breach of Fiduciary Duty
*(Defendants, Ruben Ramirez)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

432.    Defendants, Walsh, SARC, J. Vosotas, and United EB5's owed a fiduciary duty to the Plaintiffs.

433.    Defendant, Ramirez had specific knowledge of Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

434.    Defendant, Ramirez had specific knowledge of the fiduciary duties Defendants, United EB5, SARC, Walsh, and J. Vosotas had to Plaintiffs as General Managers of Defendant, Greystone EB-5 Partnership.

435.    Defendant, Ramirez knew Defendant, Walsh created the Fake Escrow Account to avoid "obstacles and red tape" associated with legitimate escrow accounts. Defendant, Ramirez knew, or should have known, Defendant, Walsh wished to avoid standard escrow requirements to assist in the defrauding Plaintiffs' into believing they were placing their funds into a legitimate escrow account.

436.    Defendant, Ramirez, as a result of all the information that was provided by Defendants, Walsh and the Walsh Entities, via Reitz, regarding both the SunTrust escrow account

and the intended use of the account they wished to open at PNC, combined with PNC's knowledge of the EB-5 program, had specific knowledge or should have known that Plaintiffs had been fraudulently induced into investing in the Greystone Project.

437.    Defendant, Ramirez, as a Vice President of PNC and as a result of receiving multiple wires transfers referencing an "Escrow Account" had specific knowledge or should have known that Plaintiffs' had been defrauded and wrongfully believed they were placing their funds in an escrow account.

438.    Defendant, Ramirez, as a Vice President of PNC and as a result of witnessing Defendant, Walsh immediately transfer funds from the "Escrow Account" to Walsh's second holding account at PNC,  had specific knowledge or should have known that  Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

439.    Defendant, Ramirez provided substantial assistance to advance Defencants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

440.    Defendant, Ramirez assisted Defendant, Walsh in creating the Fake Escrow Account.

441.    Defendant, Ramirez offered, created and implemented the fake escrow account. He knew that Defendants, Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an escrow account. Ramirez also knew Plaintiffs had made substantial transferred to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Walsh's holding account with PNC bank, without a requirement to follow any terms of a PNC escrow agreement. Under these particular circumstances, Defendants, Ramirez and PNC's failure to warn Plaintiffs

or stop Defendants, Walsh, the Walsh Entities, and co-conspirators' fraud is providing substantial assistance to Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

442.    Defendant, Ramirez therefore knowingly aided and abetted Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs. Defendant, Ramirez substantially assisted or enabled Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs by convincing Plaintiffs' their EB-5 investment had been placed in a legitimate escrow account.

443.    Plaintiffs were severely damaged by the actions of Defendant, Ramirez.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, RUBEN RAMIREZ, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 23 - Aiding and Abetting Breach of Fiduciary Duty
### *(Defendant, PNC)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

444.    Defendants, Walsh, SARC, J. Vosotas, and United EB5 owed a breach of Fiduciary Duty to the Plaintiffs.

445.    Defendant, PNC had specific knowledge of Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

446.    Defendant, PNC had specific knowledge of the fiduciary duties Defendants, United EB5, SARC, Walsh, and J. Vosotas had to Plaintiffs as General Managers of Defendant, Greystone EB-5 Partnership.

447.    Defendant, PNC knew Defendant, Walsh created the Fake Escrow Account to avoid the standard banking policies and procedures associated with legitimate escrow accounts. Defendant, PNC knew, or should have known, Defendant, Walsh sought to avoid standard escrow requirements to assist in the defrauding Plaintiffs' into believing they were placing their funds into a legitimate escrow account.

448.    Defendant, PNC, as a result of all the information that was provided by Defendants, Walsh and the Walsh Entities, via Reitz, regarding both the SunTrust escrow account and the intended use of the account they wished to open at PNC, combined with PNC's knowledge of the EB-5 program, had specific knowledge or should have known that Plaintiffs had been fraudulently induced into investing in the Greystone Project.

449.    Defendant, PNC as a result of receiving multiple wires transfers referencing an "Escrow Account" had specific knowledge or should have known that Plaintiffs' had been defrauded and wrongfully believed they were placing their funds in an escrow account.

450.    Defendant, PNC as a result of witnessing Defendant, Walsh immediately transfer funds from the "Escrow Account" to Walsh's second holding account at PNC, had specific knowledge or should have known that Defendants, Walsh, SARC, J. Vosotas, and United EB5's breached their Fiduciary Duties to Plaintiffs.

451.    Defendant, PNC provided substantial assistance to advance Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

452.    Defendant, PNC assisted Defendant, Walsh in creating the Fake Escrow Account.

453.    Defendant, PNC offered, created and implemented the fake escrow account. Defendant, PNC knew that Defendants, Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an

escrow account. Defendant, PNC also knew Plaintiffs had made substantial transferred to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Defendant, Walsh's holding account with PNC bank, without a requirement to follow any terms of a PNC escrow agreement. Under these particular circumstances, Defendants, Ramirez and PNC's failure to warn Plaintiffs or stop Defendants, Walsh, the Walsh Entities, and co-conspirators' fraud is providing substantial assistance to Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs.

454.    Defendant, PNC therefore knowingly aided and abetted Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs. Defendant, PNC substantially assisted or enabled Defendants, Walsh, SARC, J. Vosotas, and United EB5's breach of Fiduciary Duty to Plaintiffs by convincing Plaintiffs' their EB-5 investment had been placed in a legitimate escrow account.

455.    Plaintiffs were severely damaged by the actions of Defendant, PNC.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, PNC BANK, N.A., for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 24 - Fraud
*(Defendant, Walsh)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

456.    In a calculated scheme to defraud, Defendant Walsh made false statements to the Plaintiffs to induce them into investing into an EB-5 program.

457.   Knowing that his statements were false, Defendant Walsh intended for the representations to induce Plaintiffs to rely on them, so that Plaintiffs would invest into the Greystone EB-5 Partnership and Defendant, Walsh would obtain such investments.

458.   Defendant, Walsh produced, signed, and distributed to Plaintiffs' immigration attorney, to be filed with USCIS, loan agreements, contracts, construction agreements, and ownership charts falsely stating:

a.   the use of investor funds;

b.   the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;

c.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

d.   the guaranteed return of investors' funds if their I-526 Petitions were denied;

e.   Defendants' backgrounds;

f.   the preparation and periodic disclosure to investors of financial reports;

g.   Greystone Project's repayment of the loan; and

h.   Greystone Project's purported ownership of and investment in the Greystone Hotel and underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering.

i.   The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

459.   Defendant, Walsh knew the representation and materials provided were false and intended that Plaintiffs and USCIS rely on them and to prevent USCIS or Plaintiffs from discovering and taking action to disrupt the criminal scheme.

460.   Plaintiffs justifiably relied on these material representations and invested funds in the Greystone EB-5 project.

461.   Defendant, Walsh did not perform and misappropriated the Plaintiffs' investments.

462.     In justifiable reliance on Defendant, Walsh's representations, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, JOSEPH WALSH, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 25 - Fraud
*(Defendant, J. Vosotas)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

463.     In a calculated scheme to defraud, Defendant, J. Vosotas made false statements to the Plaintiffs to induce them into investing into an EB-5 program.

464.     Knowing that his statements were false, Defendant, J. Vosotas intended for the representations to induce Plaintiffs to rely on them, so that Plaintiffs would invest into the Greystone EB-4 Partnership and Defendant, J. Vosotas would obtain such investments.

465.     Defendant, J. Vosotas produced, signed, and distributed to Plaintiffs' immigration attorney, to be filed with USCIS, loan agreements, contracts, construction agreements, and ownership charts falsely stating:

    a.  the use of investor funds;

    b.  the use of an escrow account to hold investor funds prior to disbursement to Greystone Project;

    c.  the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

    d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;

     e.   Defendants' backgrounds;

     f.   the preparation and periodic disclosure to investors of financial reports;

     g.   Greystone Project's repayment of the loan;

     h.   Greystone Project's purported ownership of and investment in the Greystone Hotel and underlining Greystone Properties prior to the commencement of the EB-5 Greystone Partnership offering; and

     i.   The existence of a mortgage, or other security, the investors held through the Greystone Partnership against the Greystone Properties to secure their loan and investment.

466.    Defendant, J. Vosotas knew the representation and materials provided were false and intended that Plaintiffs and USCIS rely on them and to prevent USCIS or Plaintiffs from discovering and taking action to disrupt the criminal scheme.

467.    Plaintiffs justifiably relied on these material representations and invested funds in the Greystone EB-5 project.

468.    Defendant, J. Vosotas did not perform and misappropriated the Plaintiffs' investments.

469.    In justifiable reliance on Defendant J. Vosotas' representations, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, JAMES VOSOTAS, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 26 - Florida Civil RICO
### *(All Defendants)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

470.    This is an action for civil racketeering relief under the Florida RICO (Racketeer Influenced and Corrupt Organization) Act, Florida Statutes §§ 895.01-895.05 against all Defendants.

471.    Defendants acted as a RICO "enterprise" as defined in Florida Statute § 895.02(5), to wit; a partnership operation designed to solicit foreign investors to invest in a USCIS approved EB-5 program in the United States, which was a union or association of persons and legal entities acting together, without disclosing their interrelatedness and joint profiteering scheme.

472.    The above described RICO enterprise had an organizational structure, internal command and control structure and mechanism set out by continuing written and verbal agreements pertaining to the Greystone EB-5 Partnership, between Defendant, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, the B Group and with the assistance of Defendants, Evans, Reitz, Ramirez and PNC, all of which purported to be a legitimate EB-5 program and was furthered, orchestrated, organized and/or directed, by Defendant, Walsh.

473.    The above described RICO enterprise operated on a continuing nature and on a daily basis over a period of months from at least 2014 through 2019.

474.    The above described RICO enterprise operated and existed by mutual agreements between the Defendants separate from, and not by virtue of, its pattern of racketeering activity.

475.    Defendants, while associated with said enterprise, engaged in a "pattern of racketeering activity" as defined in Florida Statute § 895.02(7).

476.     Defendants, while associated with the Greystone EB-5 Partnership, engaged in a "pattern of racketeering activity" as defined in Florida Statute § 895.02(7) involving a pattern of bad acts in violation of Chapter 817, relating to fraudulent practices, false pretenses, fraud generally, by compelling Plaintiffs' investments into the Greystone EB-5 Partnership despite having intentionally and fraudulently failed to actually appropriate Plaintiffs' investment funds into a legitimate EB-5 project, had similar intents, results, or methods of commission and were interrelated by distinguishing characteristics and not isolated incidents; and received, with criminal intent, proceeds derived from such racketeering activity.

477.     In addition, Defendants, while associated with the Greystone EB-5 Partnership fraud enterprise, engaged in a "pattern of racketeering activity" as defined in Florida Statute § 895.02(7) involving a pattern of bad acts in violation of Chapter 817, relating to fraudulent practices, false pretenses, fraud generally, by inducing foreign investors like the Plaintiffs to their participate in the fraudulent Greystone EB-5 Partnership and their interrelated or enterprise entities, while concealing and failing to disclose the common profit, scheme, and interrelatedness of Defendants, and, had similar intents, results, or methods of commission and were interrelated by distinguishing characteristics and not isolated incidents; and received, with criminal intent, proceeds derived from such racketeering activity.

478.     Defendants, while associated with the Greystone EB-5 Partnership fraud enterprise, engaged in a "pattern of racketeering activity" as defined in Florida Statute § 895.02(7) involving a pattern of  fraud in violation of Chapter 817, relating to fraudulent practices, false pretenses, fraud generally that had similar intents, results, or methods of commission and were interrelated by distinguishing characteristics and were not isolated incidents as set out in the above factual allegations.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 27 - Constructive Fraud
*(Defendants, Walsh and SARC)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

479.    A duty to Plaintiffs under a confidential or fiduciary relationship has been abused.

480.    An unconscionable or improper advantage has been taken of Plaintiffs.

481.    Defendants, Walsh and SARC, as General Partner, of the Greystone EB-5 Partnership, had a fiduciary relationship with Plaintiffs.

482.    As specifically described above, a fraudulent scheme was perpetrated upon Plaintiffs based upon knowingly false statements concerning material facts and concealment.

483.    Plaintiffs relied upon the false statements knowingly made by Defendants Walsh and SARC concerning material facts and concealment, were induced to provide their investments, and have been damaged.

484.    Defendants, Walsh and SARC's fraudulent scheme perpetrated upon Plaintiffs was wrongful, and equitable interference is justified under these circumstances.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants, JOSEPH WALSH and SOUTH ATLANTIC REGIONAL CENTER, LLC, for

damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 28 - Constructive Fraud
### *(Defendants, J. Vosotas and United EB5)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

485.    A duty to Plaintiffs under a confidential or fiduciary relationship has been abused.

486.    An unconscionable or improper advantage has been taken of Plaintiffs.

487.    Defendants, J. Vosotas and United EB-5, as General Partner, of the Greystone EB-5 Partnership, had a fiduciary relationship with Plaintiffs.

488.    As specifically described above, a fraudulent scheme was perpetrated upon Plaintiffs based upon knowingly false statements concerning material facts and concealment.

489.    Plaintiffs relied upon the false statements knowingly made by Defendants, J. Vosotas and United EB-5 concerning material facts and concealment, were induced to provide their investments, and have been damaged.

490.    Defendants, J. Vosotas and United EB-5'S fraudulent scheme perpetrated upon Plaintiffs was wrongful, and equitable interference is justified under these circumstances.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants, JAMES VOSOTAS and UNITED EB-5, LLC, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT 29 - Civil Conspiracy against all Defendants
*(All Defendants)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

491.    Defendants are parties to a conspiracy.

492.    There was an agreement between the Defendants to do an unlawful act or to do a lawful act by unlawful means, there were overt acts in furtherance of the conspiracy, and Plaintiffs were damaged as a result of acts done under the conspiracy.

493.    As described above, the basis of the conspiracy is a fraud and theft of over four million dollars of Plaintiffs' money, which are independent torts that give rise to causes of action if committed by one person.

494.    Defendants entered into a conspiracy and acted in concert to market a fraudulent investment scheme to Plaintiffs, steal their money, and then distribute and dissipate the money among themselves.

495.    Defendants acted with the full knowledge and awareness that the investment scheme was designed to fraudulently procure and steal Plaintiffs' funds under the guise of an EB-5 visa investment opportunity.

496.    Defendants acted contrary to law, acted according to a predetermined and commonly understood plan of action for the purpose of obtaining Plaintiffs' funds, and took overt acts in furtherance of the conspiracy.

497.    There was a meeting of minds between and among the Defendants to commit the unlawful acts alleged herein.

498.    Plaintiffs have suffered damage as a result of the conspiracy.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants for damages, interest, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

**COUNT 30 - Dissolution**
*(Defendant, Greystone EB-5 Partnership)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

499.    Defendant, Greystone EB-5 Partnership is a Florida limited liability limited partnership and is governed by the Florida Revised Uniform Limited Partnership Act of 2005, which is contained in Florida Statutes Chapter 620.

500.    Plaintiffs are limited partners in Greystone EB-5 Partnership.

501.    Pursuant to Fla. Stat. §620.1802, on application by a partner, the circuit court may order the dissolution of a limited partnership if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement.

502.    As described above, Defendant, Greystone EB-5 Partnership served as a vehicle for Defendants to defraud Plaintiffs and steal their funds.

503.    The partnership required Defendants to loan the funds from Defendant, Greystone EB-5 Partnership to Defendant, Greystone Hotel Miami to develop the Greystone Hotel.

504.    With all the funds now stolen from the Escrow Account, and the Greystone EB-5 Partnership shown to be nothing more than an instrument of Defendants' theft, the Greystone EB-5 Partnership has no reasonably practical means to carry on its operation.

505.     Additionally, it is necessary to remove Defendants, SARC and United EB-5 as General Partners from continuing to manage the partnership and perpetuated the theft of Plaintiffs funds.

506.     Defendants, SARC and United EB-5 should be removed from the wind up of Greystone Partnership the prosecution of legal claims on behalf of Greystone EB-5 Partnership.

507.     New, independent decision makers and counsel that will actually pursue justice on behalf of the victims should be installed at Greystone EB-5 Partnership.

508.     Accordingly, pursuant to Fla. Stat. §620.1803(4), on the basis of the good cause demonstrated herein, Plaintiffs ask the Court to order judicial supervision of the winding up of Greystone EB-5 Partnership, and the appointment of a person to wind up Greystone EB-5 Partnership's activities, including the prosecution of claims on behalf of Greystone EB-5 Partnership.

509.     Alternatively, dissolution and wind up of Greystone EB-5 Partnership is appropriate pursuant to the Greystone EB-5 Limited Partnership Agreement.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendant, GREYSTONE EB-5, LLLP. Further, pursuant to Florida Statutes §§ 620.1802 and §620.1803, Plaintiffs seek the dissolution and wind up of Defendant, Greystone EB-5 LLLP, judicial supervision of the wind up, the appointment of a person to wind up Greystone Partnership's activities, including the prosecution of claims on behalf of Defendant, Greystone EB-5, LLLP and for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## <u>COUNT 31 - Equitable Lien-1920 Collins Avenue</u>

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

510.    Plaintiffs seek the imposition of a lien on the 1920 Collins Avenue parcel held by Defendant, Greystone Terra Firma, LLC.

511.    As described above, Defendants, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and B Group are managers and members of Defendant, Greystone Terra Firma and used fraud, misrepresentation, and deception to secure Plaintiffs' investments in Greystone EB-5 Partnership Project.

512.    A lien on the Greystone Properties in favor of Plaintiffs is appropriate to prevent unjust enrichment or other inequities.

WHEREFORE, Plaintiffs request that the Court impose an equitable lien in favor of Plaintiffs on the 1920 Collins Avenue parcel held by Defendant, GREYSTONE TERRA FIRMA, LLC, and grant such other and further relief which is necessary and just under the circumstances.

## <u>COUNT 32 - Equitable Lien-230 Santa Barbara St.</u>

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

513.    Plaintiffs seek the imposition of a lien on the Santa Barbara Apartments located at 230 20th Street, Miami Beach, Florida, a parcel held by Defendant, Santa Barbara 230.

514.    As described above, Defendant, J. Vosotas, as manager and member of Defendant, Santa Barbara 230 used fraud, misrepresentation, and deception to secure Plaintiffs' investments in Greystone EB-5 Partnership project.

515.    A lien on the Greystone Properties located at 230 20th Street, Miami Beach, Florida, in favor of Plaintiffs is appropriate to prevent unjust enrichment or other inequities.

WHEREFORE, Plaintiffs request that the Court impose an equitable lien in favor of Plaintiffs on the 1920 Collins Avenue parcel held by Defendant, 230 SANTA BARBARA, LLC, and grant such other and further relief which is necessary and just under the circumstances.

### COUNT 33 – Violation of Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201 et seq.
(*Defendants, Walsh, SARC, J. Vosotas, D. Vosotas, United EB-5, USREDA and Muhl*)

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

516.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") broadly prohibits all "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade of commerce." § 501.204(1), Fla. Stat.

517.    The Defendants engaged in trade and/or commerce within the meaning of FDUTPA.

518.    Plaintiffs were consumers under FDUTPA.

519.    In furtherance of a conspiracy to defraud and steal from Plaintiffs, Defendants, Walsh, SARC, J. Vosotas, D. Vosotas, United EB-5, USREDA and Muhl, engaged in deceptive and unfair trade practices, as more fully explained above, including but not limited to:

    a.  Causing Plaintiffs to wire money into a bank account in Florida, which then allowed the money to be looted in Florida;

    b.  Stealing and removing Plaintiffs' funds from the Escrow Account in Florida;

    c.  Engaging in a scheme whereby Plaintiffs' funds were moved between multiple bank accounts in Florida, using Florida business entities (e.g., Defendant, Greystone EB-5 Partnership) or entities with their principal place of business in Florida (e.g.,

Defendant, USREDA), in an effort to disguise the source of funds, and then distributing those funds among the conspirators in Florida; and

d.   Providing Plaintiffs' funds to Defendant, SARC in Florida before Plaintiffs' I-526 Petitions were approved by USCIS; Engaging in a systematic scheme, in Florida, to loot Plaintiffs' funds.

520.   Defendants deceptive acts and unfair practices cause Plaintiffs to suffer damages.

521.   Plaintiffs suffered actual economic damages as a direct result of the Defendants, Walsh, SARC, J. Vosotas, D. Vosotas, United EB-5, USREDA and Muhl's deceptive and unfair trade practices.

522.   Plaintiffs' damages include, but are not limited to, their solicited investments in the Greystone EB-5 Partnership Program.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against the Defendants JOSEPH WALSH, SOUTH ATLANTIC REGIONAL CENTER, LLC,, JAMES VOSOTAS, DANIEL VOSOTAS, UNITED EB-5, LLC, USREDA, LLC, and BRANDEN MUHL, for damages, interest, costs, attorneys' fees pursuant to Fla. Stat. Section § 501.2105, and such other relief that the Court deems just and proper.

### COUNT 34 – Equitable Accounting
*(Defendant, Greystone EB-5 Partnership)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

523.   Defendant, Greystone EB-5 Partnership shares a fiduciary relationship or entered into a complex transaction.

524.   The fraud and theft perpetrated upon Plaintiffs was an extensive, complex transaction, whereby Plaintiffs' funds were transferred between and among many accounts, laundered through numerous entities, and ultimately used for personal, inappropriate purposes.

525.    Plaintiffs' funds, which were transferred from the Escrow Account without any authorization from Plaintiffs, and the subsequent unauthorized transfers and transactions involving these funds, are so involved and complicated that a remedy at law is insufficient to administer complete justice.

526.    Plaintiffs are entitled to receive information regarding transactions involving any of the funds traceable to Plaintiffs.

527.    Plaintiffs have requested information on the transfers of their funds, transactions involving their funds, and the present location of their funds, which has not been provided.

528.    A remedy at law is inadequate.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, GREYSTONE EB-5, LLLP, and order Defendant to provide a full and complete accounting of their finances, operations, and transactions involving any funds traceable to Plaintiffs, provide Plaintiffs with the location and amount of all accounts containing any funds traceable to Plaintiffs, provide Plaintiffs with the location and description of all property purchased with any funds traceable to Plaintiffs, and to grant such other and further relief as the Court deems just and proper.

### COUNT 35 - Equitable Accounting
*(Defendant, Walsh and SARC)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

529.    Defendants, Walsh and SARC share a fiduciary relationship or entered into a complex transaction.

530.    The fraud and theft perpetrated upon Plaintiffs was an extensive, complex transaction, whereby Plaintiffs' funds were transferred between and among many accounts, laundered through numerous entities, and ultimately used for personal, inappropriate purposes.

531.    Plaintiffs' funds, which were transferred from the Escrow Account without any authorization from Plaintiffs, and the subsequent unauthorized transfers and transactions involving these funds, are so involved and complicated that a remedy at law is insufficient to administer complete justice.

532.    Plaintiffs are entitled to receive information regarding transactions involving any of the funds traceable to Plaintiffs.

533.    Plaintiffs have requested information on the transfers of their funds, transactions involving their funds, and the present location of their funds, which has not been provided.

534.    A remedy at law is inadequate.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants JOSEPH WALSH and SOUTH ATLANTIC REGIONAL CENTER, LLC, and order Defendants to provide a full and complete accounting of their finances, operations, and transactions involving any funds traceable to Plaintiffs, provide Plaintiffs with the location and amount of all accounts containing any funds traceable to Plaintiffs, provide Plaintiffs with the location and description of all property purchased with any funds traceable to Plaintiffs, and to grant such other and further relief as the Court deems just and proper.

## COUNT 36 – Equitable Accounting
### *(Defendants, J. Vosotas and United EB5)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

535.    Defendants, J. Vosotas and United EB5 share a fiduciary relationship or entered into a complex transaction.

536.    The fraud and theft perpetrated upon Plaintiffs was an extensive, complex transaction, whereby Plaintiffs' funds were transferred between and among many accounts, laundered through numerous entities, and ultimately used for personal, inappropriate purposes.

537.    Plaintiffs' funds, which were transferred from the Escrow Account without any authorization from Plaintiffs, and the subsequent unauthorized transfers and transactions involving these funds, are so involved and complicated that a remedy at law is insufficient to administer complete justice.

538.    Plaintiffs are entitled to receive information regarding transactions involving any of the funds traceable to Plaintiffs.

539.    Plaintiffs have requested information on the transfers of their funds, transactions involving their funds, and the present location of their funds, which has not been provided.

540.    A remedy at law is inadequate.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants JAMES VOSOTAS and UNITED EB-5, LLC, and order Defendants to provide a full and complete accounting of their finances, operations, and transactions involving any funds traceable to Plaintiffs, provide Plaintiffs with the location and amount of all accounts containing

any funds traceable to Plaintiffs, provide Plaintiffs with the location and description of all property purchased with any funds traceable to Plaintiffs, and to grant such other and further relief as the Court deems just and proper.

### COUNT 37 - Breach of Contract
*(Defendant, Greystone EB-5 Partnership)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

541.    Defendant, Greystone EB-5 Partnership, entered into the Limited Partnership Agreement with Plaintiffs for the development of the Greystone Hotel Project.

542.    Pursuant to the Greystone EB-5 Limited Partnership Agreement, the Plaintiffs each paid Five Hundred Thousand Dollars ($500,000.00) as their investment in exchange for one (1) unit in the Greystone EB-5 Partnership.

543.    Plaintiffs paid a Forty-Five Thousand Dollar Administrative Fee ($45,000.00) pursuant to the terms of the Greystone EB-5 Limited Partnership Agreement.

544.    Plaintiffs have performed all of its obligations under the Greystone EB-5 Limited Partnership Agreement.

545.    Defendant, Greystone EB-5 Partnership has breached the Greystone EB-5 Limited Partnership Agreement by failing to comply with its terms, including, but not limited to: failing to invest the Plaintiffs' funds in a qualifying investment under the EB-5 Program, provide Plaintiffs' with an accounting, provide a return of Plaintiffs' investment upon Plaintiffs' I-526 Petition denials, failing to hold Plaintiffs' funds in an Escrow account, and misappropriating Plaintiffs' investments.

546.    As a result of the breach, Plaintiffs have already been damaged and continue to sustain additional damages.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, GREYSTONE EB-5, LLLP for damages, pre-judgment and post-judgment interest, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT 38 – Unjust Enrichment
*(Defendant, Greystone EB-5 Partnership)*
*In the Alternative to Count 37*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

547.    Plaintiffs conveyed a benefit of nearly Five Million Dollars ($500,000,000.00) to Defendant, Greystone EB-5 Limited Partnership.

548.    Defendant, Greystone EB-5 Partnership was enriched by the benefit and used it for their own personal uses.

549.    Defendant, Greystone EB-5 Partnership retained the benefit for its sole use and profit.

550.    The circumstances are such that it would be inequitable for Defendant Greystone EB-5 Partnership to retain the benefit, without paying Plaintiffs.

551.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, GREYSTONE EB-5, LLLP for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

**COUNT 39 - Avoidance of Fraudulent Transfers Pursuant to**
**Florida Statutes §726.105 (1)(a)**
*(Defendant, Walsh)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

552.    Defendant, Walsh, without the knowledge, consent or approval of the Plaintiffs, stole Plaintiffs' funds and distributed them to his conspirators and their various entities.

553.    Under Florida Statutes § 726.105(1)(a), a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud and creditor of the debtor.

554.    As the funds and assets at issue were stolen by Defendant, Walsh from Plaintiffs, Plaintiffs have claims against Defendant, Walsh which pre-dated the fraudulent transfers and are "Creditors" within the meaning of Florida Statutes § 726.102(4).

555.    Defendant, Walsh is a "Debtor" within the meaning of Florida Statutes § 726.102(6).

556.    At the time Defendants received the transfers as set forth herein, there existed significant, unpaid claims of the Plaintiffs against Defendant, Walsh.

557.    The transfers were made with the actual intent to hinder, delay, and defraud Plaintiffs as creditors of Defendant, Walsh.

558.    The transfers were made under circumstances demonstrating an unlawful intent as set forth in Florida Statutes §726.105(2), because, among other things: (i) the transfers were to insiders; (ii) the transfers were concealed; (iii) the debtor retained control over many of the

transferred assets; (iv) the transfer was of substantially all of the debtor's assets; (v) the debtor removed or concealed assets; and (vi) the debtor absconded.

559.    Florida Statutes § 726.108 provides that, in an action for relief against a transferee under § 726.105, a creditor may obtain:

        a.  avoidance of the transfer to the extent necessary to satisfy the creditor's claim;

        b.  an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;

        c.  an injunction against further disposition by the transferee of the asset transferred or of other property;

        d.  appointment of a receiver to take charge of the asset transfer or other property; or

        e.  any other relief the circumstances may require.

560.    In addition to the relief available to the Plaintiffs under Florida Statute § 726.108, Plaintiffs also are entitled to a money judgment equal to the value of the assets transferred including pre-judgment interest.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully requests that the Court enter judgment in favor of Plaintiffs and against Defendant, JOSEPH WALSH in an amount equal to the value of the assets transferred to them, and award Plaintiffs pre-judgment interest and any other remedies the Court deems just and proper including, without limitation, and any or all of the remedies provided under Florida Statutes Chapter 726 and for any further relief this Court deems just and proper.

**Count 40 – Violations of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder**
*(Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA, Greystone EB-5)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

561.    Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 carried out a plan, scheme, and course of conduct that was intended to, and did (i) deceive Plaintiffs, as alleged herein; and (ii) cause Plaintiffs to purchase limited partnership interests in Greystone EB-5 Partnership. In furtherance of this unlawful scheme, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 took the actions set forth hereinabove.

562.    Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of Greystone EB-5 Partnership's limited partnership units in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

563.    Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a course of conduct including but not limited to conceal adverse material information about the fake escrow account, the status of the project, the funding available for the completion of the Greystone EB-5 Project.

564.    Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 each employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of

conduct as alleged herein in an effort to assure the Plaintiffs of the value of investing in the project, which included the making of, or the participating in the making of, untrue statements of material facts about the Greystone EB-5 Partnership and project and omitting material facts necessary in order to make the statements not misleading.

565.    Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's primary liability arises from the following facts, among others: (i) Defendants designed a scheme to entice foreign investors to purchase limited partnership interests in the Greystone EB-5 Partnership; (ii) Defendants, by virtue of their responsibilities and activities in the scheme, were privy to and participated in the creation, development and publication of the Greystone EB-5 Partnership's sales, marketing, projections and/or reports; and (iii) Defendants were aware of Greystone EB-5 Partnership's dissemination of information to the potential foreign investors, which Defendants knew or recklessly disregarded was materially false and misleading.

566.    Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with severely reckless disregard for the truth, in that each failed to ascertain and disclose such material facts, even though such facts were available to them. Defendants' material misrepresentations and/or omissions were done knowingly or with deliberate recklessness and for the purpose and effect of concealing information regarding Greystone EB-5 Partnership's true status as a façade and scheme for fraud and theft.

567.    As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth herein, Greystone EB-5 Partnership appeared to be a legitimate investment opportunity for foreigners seeking a path to United States residency through an EB-5 visa. Unbeknownst to the Plaintiffs, the Greystone EB-5 Partnership was merely a façade

for a criminal scheme, Plaintiffs invested their money in to Greystone EB-5 Partnership and suffered damages.

568.    At the time of Defendants, Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's misrepresentations and omissions, Plaintiffs were unaware of the falsity of the statements and believed them to be true. Had Plaintiffs known of Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's fraudulent practices, Plaintiffs would not have purchased or otherwise acquired their securities in the Greystone EB-5 Partnership.

569.    By virtue of the foregoing, Defendants Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 have each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated therein.

570.    As a direct and proximate result of Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's wrongful conduct, Plaintiffs suffered damages in connection with their respective purchases of limited partnership interests in the Greystone EB-5 Partnership.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 for damages, pre-judgment and post-judgment interest, litigation costs, and for any such other and further relief as this Court deems just and proper.

### Count 40 – Violations of Section 20(a) of the Securities Exchange Act
*(Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA, Greystone EB-5)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

571.     Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 acted as controlling persons of Greystone EB-5 Partnership within the meaning of Section 20(a) of the Exchange Act as alleged herein.

572.     By virtue of their high positions within the Greystone EB-5 Partnership and/or high level positions within the scheme to sell foreign investors limited partnership interests in Greystone EB-5 Partnership, participation in and/or awareness of Greystone EB-5 Partnership's operations, and/or intimate knowledge of Greystone EB-5 Partnership's fraudulent practices and Greystone EB-5 Partnership's actual status and true prospects, Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 had the power to influence and control, and did influence and control, directly or indirectly, the decision making of Greystone EB-5 Partnership, including the content and dissemination of the various statements which Plaintiffs contend were false and misleading.

573.     Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 were provided with, or had unlimited access to, copies of Greystone EB-5 Partnership's reports, sales materials, brochures, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

574.     Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 also had direct involvement in the day-to-day operations of the Greystone EB-5 Partnership and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

575.     As explained above, Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5, each violated Section 10(b) and Rule 10b-5 by their acts and omissions. By virtue

of Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's controlling positions, they are liable pursuant to Section 20(a) of the Securities Exchange Act.

576.    As a direct and proximate result of Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's conduct, Plaintiffs suffered damages in connection with their purchases of the Greystone EB-5 Partnership securities.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 for damages, pre-judgment and post-judgment interest, litigation costs, and for any such other and further relief as this Court deems just and proper.

## Count 41 – Civil Conspiracy Under Federal RICO
### *(All Defendants)*

Plaintiffs reaffirms, re-alleges, and incorporates by reference paragraphs 1 through 230, as if fully set forth herein.

577.    Defendants, are "persons" as defined by 18 U.S.C. § 1961(3).

578.    Defendants, have been members of and constitute an "association-in-fact enterprise" within the meaning of 18 U.S.C. § 1961(4), and will be referred to herein collectively as the "RICO Enterprise".

579.    Defendants violated 18 U.S.C. 1962(c) by participating in or conducting the affairs of the RICO Enterprise, whose activities affect interstate commerce, through a pattern of racketeering.

580.    Plaintiffs are persons injured in their business or property as a result of Defendants' violation of RICO as defined by 18 U.S.C. § 1964(c).

581.   The RICO Enterprise was engaged in or affects interstate commerce.

582.   Defendants' scheme has occurred throughout a series of predicate acts over the course of a number of years sufficient to rise to the level of a RICO enterprise.

583.   Defendants' scheme is the legal and proximate cause of Plaintiffs' damages.

584.   Defendants, who are all members of the RICO Enterprise are, and have been, joined in a common purpose, have relationships with and among each other, and have associated through time sufficient to permit those associated to pursue the enterprise's purpose. Defendants needed and depended upon the participation of each other to accomplish their common purpose, namely, stealing Plaintiffs' investments in the Greystone EB-5 Partnership and by keeping all of Plaintiffs' investments for themselves rather than placing the money in escrow for the Greystone EB-5 Project.

585.   Defendants, have each willingly or knowingly conducted and/or participated, directly or indirectly, in the conduct of the RICO Enterprise's affairs through a "pattern of racketeering activity" over a substantial period of time, 2014 through 2016, as defined by 18 U.S.C. §§ 1961(1)and 1961(5) and consisting of:

    a.   Engaging in a scheme to defraud third parties and using the United States mail to execute this scheme in violation of 18 U.S.C. § 1341 as alleged herein; and

    b.   Knowingly engaging in a monetary transaction in criminally derived property that is of a value greater than $10,000.00 and is derived from specified unlawful activity in violation of 18 U.S.C. § 1957, by selling obtaining funds from Plaintiffs and not investing such funds into a legitimate EB-5 project, that was criminally derived as a result of unlawful activity outlined in above in paragraphs 148-167.

586.    These acts of racketeering constitute a pattern of racketeering as defined by 18 U.S.C. § 1961(5).

587.    These predicate acts were related to one another to serve Defendants' common purpose, namely, stealing Plaintiffs' investments in the Greystone EB-5 Partnership and by retaining Plaintiffs' funds for Defendants own use and benefit without Plaintiffs' knowledge or authority and keeping the proceeds for themselves.

588.    As a direct and proximate result of Defendants' actions and misconduct, Plaintiffs suffered, and continue to suffer injuries, including but not limited to the loss of Plaintiff's funds in the United States intended for investment in the Greystone EB-5 Partnership; loss of Plaintiff's equity and meaningful ownership within the Greystone EB-5 Partnership ; and the loss of Plaintiff as limited partners to enforce Greystone EB-5 Partnership's loan to Greystone Hotel Miami via liens against the Greystone Properties, and have further incurred significant expenses in bringing forth litigation to address such actions and misconduct, and are therefore entitled to recover monetary and equitable damages in connection with Defendants' actions, as well as attorneys' fees and costs pursuant to 18 U.S.C. § 1964.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants for damages, pre-judgment and post-judgment interest, litigation costs, and for any such other and further relief as this Court deems just and proper.

### JURY TRIAL REQUEST

Plaintiffs respectfully requests a jury trial on all issues so triable.

Respectfully submitted 2nd day of December , 2019.

[1915456/3]                                  Page 128 of 129

ZEBERSKY PAYNE SHAW LEWENZ, LLP
*Attorneys for Plaintiffs*
110 SE 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email: jshaw@zpllp.com;
srusso@zpllp.com
Secondary Email: mperez@zpllp.com;
jgarcia@zpllp.com

By: _____
JORDAN A. SHAW, ESQ.
Fla. Bar No. 111771
STEFFANI M. RUSSO, ESQ.
Fla. Bar No. 1002598

and

SMS LAW GROUP, APC
*Co-Counsel for Plaintiffs*
Kevin Qi, Esq.
CA Bar No. 284314
*Pro Hac Vice* to be sought

2221 Camino Del Rio S, Ste. 100
San Diego, CA 92108
Telephone: (619) 342-7887
Facsimile: (619) 255-9559
(732) 747-5259 Fax
Primary Email: kevinqi@smslawfirm.us