# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:19-cv-24138-DPG

---

YUANXIAO FENG, an individual;
KIU CHUN SAXON HUI, an individual;
LAI KING HUI, an individual;
JING KUANG, an individual;
CHUEN PING NG, an individual;
MINYANG TIAN, an individual;
HONGSEN ZHANG, an individual;
and YAN ZHANG, an individual,

            Plaintiffs.

**v.**

JOSEPH WALSH, an individual; JOSEPH
WALSH, JR., an individual; ANTHONY
REITZ, an individual; LESLIE ROBERT
EVANS, an individual; GREYSTONE EB-5
LLLP, a Florida limited liability limited
partnership; SOUTH ATLANTIC
REGIONAL CENTER, LLC, a Florida
limited liability company; USREDA, LLC, a
Delaware limited liability company;
USREDA HOLDINGS LLC, a Delaware
limited liability company; USREDA
MANAGEMENT, LLC, a Delaware limited
liability company; DANIEL VOSOTAS, an
individual; JAMES VOSOTAS, an
individual; GREYSTONE HOTEL MIAMI
LLC, a Florida limited liability company;
UNITED EB5, LLC, a Florida limited
liability company; SANTA BARBARA 230,
LLC, a
Foreign limited liability company;
GREYSTONE TERRA FIRMA, LLC, a
Foreign limited liability company;
VOS HOLDINGS I, LLC, a Florida
limited liability company;
VOS CRE I, LLC, a Florida liability
company; GREYSTONE HOSPITALITY, LLC, a

Florida limited liability company;
GREYSTONE HOLDCO, LLC, a Foreign
Florida limited liability company;
GREYSTONE MANAGING MEMBER,
LLC, a Florida limited liability company;
GREYSTONE MASTER TENANT, LLC, a
Foreign limited liability company;
GREYSTONE TENANT, LLC, a Foreign
Florida limited liability company;
GREYSTONE OPTION HOLDER, LLC, a
Foreign limited liability company; WWB
TRUST LLC, a Florida limited liability
company; TRANS INNS ASSOCIATES
INC.,
a Foreign profit corporation;
EVANS CARROL & ASSOCIATES INC., a
Florida Corporation;
VOS HOSPITALITY, LLC, a Florida
limited liability company;
BBM 3, LLC, an Indiana limited
liability company; BBM 3 II, LLC an
Indiana limited liability company;
BRANDON MUHL, an individual;
PNC BANK, N.A., a National
Association; and RUBEN RAMIREZ, an
individual

      Defendants.

_____/

## MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW BY DEFENDANTS GREYSTONE HOTEL MIAMI, LLC, UNITED EB5, LLC, SANTA BARBARA 230, LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I, LLC, GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC, GREYSTONE TENANT, LLC GREYSTONE OPTION HOLDER, LLC, TRANS INN ASSOCIATES, INC. VOS HOSPITALITY, LLC, BBM3, LLC, BBM 3 II, LLC, JAMES VOSOTAS, DANIEL VOSOTAS AND BRANDEN MUHL

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     THE PLAINTIFFS' ALLEGATIONS ............................................................. 2

III.    THE AMENDED COMPLAINT ...................................................................... 5

IV.     THE AMENDED COMPLAINT FAILS TO STATE ANY VIABLE CAUSES
        OF ACTION ...................................................................................................... 7

        A.    The General Standards Governing Motions To Dismiss for Failure to State
              a Claim ................................................................................................... 7
        B.    Shotgun Complaints................................................................................ 8
        C.    Heightened Pleading Requirements For Federal Securities Violations ................ 8

              1.    Fed. R. Civ. P. 9(b) .................................................................... 9
              2.    Heightened Scrutiny Under Rule 9(b) and the PSLRA ............................. 9
              3.    Heightened Scrutiny of RICO Cases Under Rule 9(b) ........................... 11

        D.    Plaintiffs' Federal Securities Claims Should Be Dismissed ................................. 12

              1.    Plaintiffs Fall Far Short of Fulfilling Their Heightened Pleading
                    Obligations ................................................................................ 12

                    a.    Plaintiffs' Solicitation Allegations Are Deficient........................ 13
                    b.    Plaintiffs Inaccurately and Implausibly Construe the
                          Transactional Documents........................................................... 15
                    c.    The Greystone Defendants Did Not Know That the Escrow
                          Account was "Fake" ................................................................ 17

              2.    Walsh's Embezzlement of the Escrow Account Was Not in
                    Connection With The Purchase and Sale of Securities........................... 17
              3.    There Are No Facts Showing a Loss Causation Between Muhl and
                    Walsh's Embezzlement.............................................................. 18
              4.    Plaintiffs' Section 20(a) Claim Against Muhl Also Fails ........................ 18

        E.    There Are No Plausible Facts Supporting Plaintiffs' RICO and Florida
              RICO Claims........................................................................................... 19
        F.    None of Plaintiffs' Florida Common Law and Statutory Claims State
              Causes of Action ...................................................................................... 21

              1.    Plaintiffs' Allegations Do Not Comply With Rule 9(b) ........................ 21
              2.    Plaintiffs Lack Standing to Bring This Direct Action ............................ 22
              3.    Plaintiffs' Equitable Lien Claims Are Clearly Unmeritorious ................ 23

V.      CONCLUSION.................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Cases**

*Allard v. Arthur Anderson & Co. (U.S.A.)*,
   924 F. Supp. 488 (S.D.N.Y. 1996) ...................................................................17

*American United Life Ins. Co. v. Martinez*,
   480 F. 3d 1043 (11th Cir. 2007) .......................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................7

*Bloor v. Carro, Spanback, Landin, Rodman & Fass*,
   754 F. 2d 57 (2d Cir. 1985) ..............................................................................17

*Brooks v. Blue Cross and Blue Shield*,
   116 F. 3d 1364 (11th Cir. 1997) .......................................................................9

*Burgess v. Religious Tech Ctr., Inc.*,
   600 Fed. App'x 657 (11th Cir. 2015) ................................................................9

*C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Secs. Litig.)*,
   311 F. 3d 198 (3d Cir. 2002) ............................................................................10

*Cordova v. Lehman Bros.*,
   526 F. Supp. 2d 1305 (S.D. Fla. 2007) ............................................................10

*Dinuro Investments, LLC v. Camacho*,
   141 So. 3d 731 (Fla. 3d DCA 2014) .................................................................23

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ...............................11

*Dusek v. JPMorgan Chase & Co.*,
   832 F.3d 1243 (11th Cir. 2016) ........................................................................21

*Findwhat Investor Group v. Findwhat.com*,
   658 F. 3d 1282 (11th Cir. 2011) .......................................................................11

*Griffin Indus. v. Irvin*,
   496 F. 3d 1189 (11th Cir. 2007) .......................................................................7

*Instituto De Prevision Militar v. Merrill Lynch*,
   546 F. 3d 1340 (11th Cir. 2008) .......................................................................12

*Jackson v. Bell South Telecomms.*,
   372 F. 3d 1250 (11th Cir. 2004) .......................................................................19

*Jovine v. Abbott Labs, Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ............................................................8

ii

*Lan Li v. Walsh*,
   2019 U.S. Dist. LEXIS 14836 (S.D. Fla. 2019) ..................................................................4

*Laperriere v. Vesta Ins. Group, Inc.*,
   526 F. 3d 715 (11th Cir. 2008) ...................................................................................13

*Li v. Walsh*,
   2017 U.S. Dist. LEXIS 114553 (S.D. Fla. July 22, 2017) ...........................................20

*Manufacturers Hanover Trust Co. v. Smith, Barney, Harris Upham & Co., Inc.*,
   770 F. Supp. 176 (S.D.N.Y. 1991) ..............................................................................17

*Miccosukee Tribe of Indians of Fla. v. Cypress*,
   814 F. 3d 1202 (11th Cir. 2015) ...........................................................................11, 12

*Mizzaro v. Home Depot, Inc.*,
   544 F. 3d 1230 (11th Cir. 2008) ...................................................................................9

*Palm Beach Savings & Loan Assoc. v. Fishbein*,
   619 So. 2d 267 (Fla. 1993) .........................................................................................23

*Phila. Fin. Mgmt. of San Francisco, LLC v. DJSP Enters.*,
   572 Fed. Appx. 713 (11th Cir. 2014) ..........................................................................19

*Phillips v. Scientific-Atlanta, Inc.*,
   374 F. 3d 1015 (11th Cir. 2004) ...........................................................................10, 13

*Pross v. Katz*,
   784 F. 2d 455 (2d Cir. 1986) ......................................................................................17

*Rana Fin., LLC v. City Nat'l Bank of N.J.*,
   347 F. Supp. 3d 1147 (S.D. Fla. 2018) .........................................................................9

*Renfroe v. Nationstar Mortg*,
   822 F.3d 1241 (11th Cir. 2016) .....................................................................................7

*RJR Nabisco, Inc. v. European Community*,
   136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016) .................................................................19

*Rogers v. Nacchio*,
   241 Fed. App'x 602 (11th Cir. 2007) ............................................................................9

*Silver Crown Inves., LLC v. Team Real Estate Mgmt., LLC*,
   349 F. Supp. 3d 1316 (S.D. Fla. 2018) .......................................................................23

*Starks v. Chusak & Tecson, P.C.*,
   2019 U.S. Dist. LEXIS 10043 (S.D. Fla, January 18, 2019) .......................................12

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics and Neurosurgery, LLC*,
   278 F. Supp. 3d 1307 (S.D. Fla. 2017) .........................................................................9

*Stone Invest Dakota LLC v. DeBastos*,
   2015 U.S. Dist. LEXIS 154137 (S.D. Fla. Nov. 12, 2015) ............................................9

*Symphony, LLC v. Romeu*,
   2019 U.S. Dist. LEXIS 83215 (March 13, 2019) ..........................................................9

iii

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007) ...............................10, 11

*Thompson v. RelationServe Media, Inc.*,
   610 F. 3d 628 (11th Cir. 2010) ...............................................................10

*Weiland v. Palm Beach County Sheriff's Office*,
   792 F. 3d 1313 (11th Cir. 2015) .................................................................8

*Worldspan Marine Inc. v. Comerica Bank*,
   2019 U.S. Dist. LEXIS 30421 (S.D. Fla. Feb. 22, 2019)........................................20

*Ziemba v. Cascade Int'l. Inc.*,
   256 F. 3d 1194 (11th Cir. 2001) ...............................................................13

**Statutes**

15 U.S.C. § 78j ...........................................................................................1

15 U.S.C. § 78t(a) .......................................................................................1

15 U.S.C. § 78u-4 .................................................................................1, 10

15 U.S.C. § 78u-4(b) ..................................................................................10

15 U.S.C. § 78u-4(b)(1) ..............................................................................10

15 U.S.C. § 78u-4(b)(2) ..............................................................................10

18 U.S.C. § 1962(c) ...............................................................................1, 19

18 U.S.C. § 1964(c) .....................................................................................21

28 U.S.C. § 1153(b)(5) ..................................................................................2

Fla. Stat. §§ 501.201 *et seq.* .......................................................................8

Fla. Stat. § 620.2001 ..............................................................................22, 23

Fla. Stat. § 620.2002 ..................................................................................23

Fla. Stat. § 772.103 ................................................................................1, 12

Fla. Stat. § 895.03 .....................................................................................19

**Other Authorities**

8 C. F. R. § 204.6 .......................................................................................2

8 C. F. R. § 216.6 .......................................................................................2

17 C.F.R. § 240.10b-5 ...................................................................................1

Fed. R. Civ. P. 8 ...................................................................................11, 13

Fed. R. Civ. P. 8(a)(2) .................................................................................7

Fed. R. Civ. P. 9(b) .........................................................................1, 8, 9, 10

Fed. R. Civ. P. 10(c) ...................................................................................7

*ACTIVE 47589115v1*

Fed. R. Civ. P. 10b-5 ................................................................................................................1

Fed. R. Civ. P. 12(b)(6) .........................................................................................................1, 7

Fed. R. Civ. P. 12(d) ..............................................................................................................7

Local Rule 7.1 .........................................................................................................................1

v

Defendants, Greystone Hotel Miami, LLC, United EB5 LLC, Santa Barbara 230, LLC, Greystone Terra Firma, LLC, Vos Holdings I, LLC, VOS CREI, LLC, Greystone Hospitality, LLC, Greystone Holdco, LLC, Greystone Managing Member, LLC, Greystone Master Tenant, LLC, Greystone Tenant, LLC, Greystone Option Holder, LLC, Trans Inn, Associates, LLC, VOS Hospitality LLC, BBM 3, LLC, BBM 3 II, LLC, James Vosotas, Daniel Vosotas and Branden Muhl (the "Greystone Defendants"), move pursuant to Rule 12(b)(6) of the Fed. R. Civ. P., and Rule 7.1 of the Local Rules of the Southern District of Florida, to dismiss the Amended Complaint, with prejudice, ("AC") [ECF 44] for failure to state causes of action.

## I.     **INTRODUCTION**

The Amended Complaint suffers from numerous fatal pleading defects that justify dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  All of plaintiffs' allegations against the Greystone Defendants sound in fraud.  However, none of their federal securities causes of action, for violations of the Securities Exchange Act of 1934 Sections 10(b) and 20(a) and Rule 10b-5, 15 U.S.C. § 78j, 15 U.S.C. § 78t(a), 17 CFR § 240.10b-5, fulfill the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and Rule 9(b) of the Fed. R. Civ. P.  Similarly, plaintiffs' federal and state RICO claims, 18 U.S.C. § 1962(c) and Fla. Stat. § 772.103, fail to comply with Rule 9(b) as they do not provide required details concerning the alleged criminal conspiracy.  These defects permeate plaintiffs' state common law claims, which are grounded upon the same fraud theory.  Plaintiffs' claims are also contradicted by the exhibits they attach to the AC and upon which they rely.

Plaintiffs' federal securities claims fail to state causes of action even if well-plead, which they are not.  Plaintiffs' losses were not suffered in connection with the purchase and sale of securities, but as they allege, were caused by the defendant Walsh's theft months later.

Assuming that plaintiffs' losses were in connection with the purchase and sale of

1

securities, which they weren't, none of the Greystone Defendants have been charged with securities crimes, and this circumstance bars plaintiffs' federal and state RICO claims.

All of plaintiffs' remaining Florida law claims also fail as a matter of law as they are derivative claims that may not be brought individually, and they do not plead fraud with the specificity required by Rule 9(b).

## II.   THE PLAINTIFFS' ALLEGATIONS

The AC contains one hundred twenty nine (129) pages of repetitive and conclusory allegations.  Plaintiffs are lumped together and little, if any, individual facts are plead.  From what is plead, plaintiffs are foreign nationals without specifying their citizenship.[1]  AC ¶ 18.  Greystone Defendants are grouped with other defendants, and often no factual distinctions are drawn between them.  Plaintiffs' strategy is to accuse all persons and entities involved in the transaction with a conspiracy to cast a wide liability net.  However, such a wide-ranging conspiracy is not plausible.

For purposes of the Greystone Defendants' Motion to Dismiss, the following facts are assumed to be true.

Plaintiffs allege an elaborate conspiracy between all 33 defendants with the goal of converting plaintiffs' investments.   AC  ¶¶  94-208, 491-498.   According to plaintiffs, the defendants created a "façade" transaction whose purported purpose was the construction of a multi-million dollar Miami Beach hotel[2] to be known as the "Greystone Hotel".  AC ¶ 170.  They assert that the Greystone "defendants" participated in the drafting and dissemination of

---

[1]  The AC implies that plaintiffs are citizens of the People's Republic of China, though this is not certain.

[2] The EB-5 Immigrant Investor Visa Program is set forth, in part, in 28 U.S.C.§ 1153(b)(5) and 8 C. F. R. §§ 204.6 and 216.6, and permits eligible immigrants to become permanent United States residents by investing at least $500,000 and generating the required number of jobs in specified targeted areas.

transactional documents to give the false impression that the project was bona fide.  AC ¶¶ 84-86, 97, 98, 118.   These documents consisted of a Limited Partnership Agreement, Subscription Agreement, Private Placement Memorandum, Legal Services Agreement, Loan and Security Agreement, Escrow Agreement, Business Plan and an Economic Report (the "Transactional Documents").  AC ¶ 98, Exh. 4 attached to the AC.

Plaintiffs allege that they attended meetings in Shanghai, China where Walsh appeared, and on one occasion defendant James Vosotas was on the telephone and he provided information about the hotel proposal.  AC ¶¶ 117, 120, 121.  They received the Transactional Documents, though they do not allege how or when each may have received them.

Plaintiffs claim that they completed the Transactional Documents and in exchange for payment of $500,000, plus other fees and costs, respectively, each received one unit consisting of a limited partnership interest in Greystone EB-5 LLLP (the "Limited Partnership").  AC ¶¶ 9, 214. They allege that pursuant to the Escrow Agreement, the Limited Partnership was obligated to hold each $500,000 cash investment in one "escrow account" at defendant PNC Bank.  AC ¶¶ 129-156.

To facilitate the fraud-based conspiracy, plaintiffs allege that "defendants" or the "Greystone Defendants"[3] knowingly made false statements about the Greystone Hotel project to induce them to purchase limited partnership units and to place the Limited Partnership's funds in escrow.  AC ¶¶ 117-128.  These false statements included misrepresentations about the ownership of the two parcels intended for the Greystone Hotel, AC ¶¶ 87-93, 108, 109, the number of hotel rooms, the number of jobs to be created by the construction, AC ¶ 119 and the operation of the Greystone Hotel when completed, AC ¶ 119.  They further allege that the Greystone Defendants promised that the funds in the Limited Partnership's escrow account were "guaranteed" by

---

[3]  The Greystone Defendants do not include Greystone EB-5, LLLP.

defendant United EB-5, LLC and secured by a mortgage against the Greystone Hotel in the event that their visa applications were denied.  AC ¶¶ 119, 120.

Unbeknownst to plaintiffs, Walsh failed to establish the escrow account.  AC ¶¶ 119-143.  Instead, Walsh, with the alleged connivance of PNC Bank, created a bank account that he controlled, and which did not provide the safeguards of an escrow account.  AC ¶¶ 119-145.  They also claim that Walsh embezzled the Limited Partnership's funds, and the Limited Partnership was unable to lend monies to support the Greystone Hotel.[4]  As a result of Walsh's embezzlement, the Greystone Hotel never received the loan from the Limited partnership.  AC ¶ 144.

According to the plaintiffs, Walsh's theft of the Limited Partnership's funds was aided and abetted by the Greystone Defendants.  AC ¶¶ 241-296.  Though these allegations do not include any facts tying Walsh's embezzlement to the Greystone Defendants, plaintiffs nevertheless claim the Greystone Defendants are liable for Walsh's conversion.  AC ¶¶ 119-145, 241-296.

As a result of Walsh's embezzlement, the federal government denied plaintiffs' EB-5 residency applications on the ground that they did not financially benefit the hotel project.  AC ¶¶ 144- 154, 181-182.  Therefore, not only have they lost their investments, plaintiffs' goal of using the EB-5 program to qualify for United States residency may have been irreparably derailed.  AC ¶¶ 147-154.[5]

---

[4]  The AC gives the inaccurate impression that the Greystone Hotel was never constructed.  The project was completed and is scheduled to open in January 2020.

[5]  Other EB-5 investors have accused Walsh of fraud and embezzlement.  *Lan Li v. Walsh*, 2019 U.S. Dist. LEXIS 14836 (S.D. Fla. 2019).

4

## III.   <u>THE AMENDED COMPLAINT</u>

While the Greystone Defendants' Motion to Dismiss the initial complaint [ECF 22] was pending, plaintiffs amended their complaint and added three federal causes of action against the Greystone Defendants:  Count 40 – Violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 Promulgated Thereunder AC ¶¶ 561-570; Count 40[6] - Violations of 20(a) of the Securities Exchange Act AC, ¶¶ 571-576; and Count 41 – Civil Conspiracy Under Federal RICO AC ¶¶ 577-588.

The other Florida state causes of action carried over from the initial complaint against some or all of the Greystone Defendants are:

Count 4 – Aiding and Abetting Conversion (J. Vosotas), AC ¶¶ 254-268

Count 5 – Aiding and Abetting Conversion (D. Vosotas), AC ¶¶ 269-282

Count 6 – Aiding and Abetting Conversion (B. Muhl), AC ¶¶ 283-297

Count 7 – Aiding and Abetting Conversion (Vosotas Entities) AC ¶¶ 298-308

Count 11 – Fraud in the Inducement (J. Vosotas), ¶¶ 337-342

Count 12 – Fraud in the Inducement (D. Vosotas), AC ¶¶ 343-348

Count 13 – Fraud in the Inducement (B. Muhl), AC¶¶ 349-354

Count 14 – Fraud in the Inducement (Vosotas Entities), AC ¶¶ 355-360

Count 19 – Breach of Fiduciary Duty (J. Vosotas and United EB-5, LLC),
AC ¶¶ 397-404

Count 20 – Aiding and Abetting Breach of Fiduciary Duty (D. Vosotas),
AC ¶¶ 405-419

Count 21 – Aiding and Abetting Breach of Fiduciary Duty (Vosotas Entities)
AC ¶¶ 420-431

Count 25 – Fraud (J. Vosotas), AC ¶¶ 463-469

---

[6]  The AC contains two causes of action denominated as "Count 40".

5

Count 26 – Florida RICO (All Defendants), AC ¶¶ 470-478

Count 28 – Constructive Fraud (J. Vosotas and United EB-5, LLC),
    AC ¶¶ 485-490

Count 29 – Civil Conspiracy (All Defendants), AC ¶¶ 491-498

Count 31 – Equitable Lien (Greystone Terra Firma), AC ¶¶ 510-512

Count 32 – Equitable Lien (230 Santa Barbara, LLC), AC ¶¶ 516-522

Count 33 – Florida Deceptive and Unfair Practices Act (J. Vosotas, D. Vosotas,
    B. Muhl and United EB5, LLC), AC ¶¶ 516-522

Count 36 – Equitable Accounting (J. Vosotas and United EB5, LLC),
    AC ¶¶ 535-540

Plaintiffs also dropped JJW Consultancy, Ltd. as a defendant.

6

**IV.   THE AMENDED COMPLAINT FAILS TO STATE ANY VIABLE CAUSES OF ACTION**

    A.   The General Standards Governing Motions To Dismiss for Failure to State a Claim

Rule 8(a)(2) of the Fed. R. Civ. P. requires a plaintiff to plead "only a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement is designed to provide a defendant with fair notice of what the claim alleged is and its basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A plaintiff must present more than "labels and conclusions." *Id*. Further, a conclusory tracking of the elements of a cause of action is legally insufficient. *Id*. To be sufficient to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. Plausibility allows a court to draw the reasonable inference that the defendant is liable for the alleged unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In applying the above criteria, the courts must ignore "legal conclusions couched as factual allegation[s]". *Twombly*, 550 U.S. at 555. Then, the court must focus upon the well-pleaded facts, and assume them to be true, while drawing all inferences in favor of the plaintiff. Only plausible allegations may survive motions to dismiss. *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the general rule is that the court must limit its analysis to the well-pleaded facts alleged in the complaint. Fed. R. Civ. P. 12(d). This general rule is qualified where the exhibits attached to the complaint "plainly" contradict by "specific factual details" the allegations in the body of the complaint. Where that occurs, the court must rely upon the exhibits and disregard general and conclusory allegations. *Griffin Indus. v. Irvin*, 496 F. 3d 1189, 1205-06 (11th Cir. 2007); *Renfroe v. Nationstar Mortg*, 822 F.3d 1241 (11th Cir. 2016); Fed. R. Civ. P. 10(c).

B. <u>Shotgun Complaints</u>

Shotgun pleading constitutes an independent ground to dismiss the AC. *Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331, 1337 (S.D. Fla. 2011). The Eleventh Circuit Court of Appeals has identified four types of shotgun pleading:

1. numerous counts where each adopts the allegations contained in all prior counts;

2. multiple and repetitive conclusory, vague and immaterial facts not obviously connected to a particular cause of action;

3. failure to separate different counts into separate causes of action;

4. multiple claims against multiple defendants without specifying which acts or which defendants are responsible for which claim.

Each category denies defendants adequate notice of the claims against them and the underlying grounds. *Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313, 1322-23 (11th Cir. 2015). Categories 1, 2 and 4 permeate the AC, and provide another ground for dismissal.

C. Heightened Pleading Requirements
   <u>For Federal Securities Violations</u>

The AC alleges various fraud claims, fraud-based conversion and fraud-based breaches of fiduciary duty causes of action, Counts 4-7 (Aiding and Abetting Conversion), Counts 11, 14, (Fraudulent Inducement), Counts 25 (Fraud), 28 and 29 (Conspiracy) along with violations of Sections 10(b) and 20(a) of the Securities Exchange Act, Counts 40, as well as a RICO Civil Conspiracy Count 41, a Florida RICO Civil Conspiracy, Count 26, and Florida's Unfair and Deceptive Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201 *et seq*., Count 33. As they are based upon the same alleged fraudulent conduct, all of these causes of action are subject to heightened scrutiny under Fed. R. Civ. P. 9(b). Plaintiffs' federal securities claims are also subject to heighted review by the PLRSA.

8

1. <u>Fed. R. Civ. P. 9(b)</u>

Fed. R. Civ. P. 9(b) requires that where a plaintiff alleges fraud, it "must state with particularity the circumstances constituting fraud." In the Eleventh Circuit,

> Rule 9(b) is satisfied if the complaint sets forth precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross and Blue Shield*, 116 F. 3d 1364, 1371 (11th Cir. 1997). In a more concise summary, the Eleventh Circuit held a plaintiff must plead "the who, what, when, where, and how of the alleged false statements." *Mizzaro v. Home Depot, Inc.*, 544 F. 3d 1230, 1237 (11th Cir. 2008).

Fed. R. Civ. P. 9(b) also applies to fraudulent misrepresentation, *Burgess v. Religious Tech Ctr., Inc.*, 600 Fed. App'x 657, 663 (11th Cir. 2015); fraudulent inducement, *Rogers v. Nacchio,* 241 Fed. App'x 602, 609 (11th Cir. 2007); civil conspiracy grounded in fraud, *American United Life Ins. Co. v. Martinez*, 480 F. 3d 1043, 1067-68 (11th Cir. 2007), FDUPTA, *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics and Neurosurgery, LLC,* 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017), conversion, *Stone Invest Dakota LLC v. DeBastos*, 2015 U.S. Dist. LEXIS 154137 (S.D. Fla. Nov. 12, 2015); and breach of fiduciary duty, *Rana Fin., LLC v. City Nat'l Bank of N.J.*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018). If each preceding cause of action "sounds in fraud", Rule 9(b) applies. *Symphony, LLC v. Romeu*, 2019 U.S. Dist. LEXIS 83215 (March 13, 2019).

2. <u>Heightened Scrutiny Under Rule 9(b) and the PSLRA</u>

The two mislabeled Counts 40 – "Violations of Section 10(b) of the Exchange Act [sic]

and Rule 10(b-5 Promulgated Thereunder" and "Violations of Section 20(a) of the Securities

Exchange Act", are also governed by Fed. R. Civ. P. 9(b).  Because Section 10(b) and Rule 10b-5

sound in fraud, plaintiffs must plead the applicable elements of the violation "with particularity".

*Thompson v. RelationServe Media, Inc.*, 610 F. 3d 628, 633 (11th Cir. 2010).

In addition to Fed. R. Civ. P. 9(b), Congress enacted the PSLRA to curb abusive Rule

10b-5 litigation.  15 U.S.C. § 78u-4; *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

320-21, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007).  The PSLRA, at 15 U.S.C. § 78u-4(b), created

heightened pleading requirements for all "private actions" arising under the Securities Exchange

Act.

Under the PSLRA's heighted pleading requirements, because plaintiffs allege

defendants made false or misleading statements, plaintiffs must "specify each statement alleged to

have been misleading, the reason or reasons why the statement is misleading, and if an allegation

regarding the statement or omission is made on information and belief, the complaint shall state

with particularity all facts on which the belief is formed."  15 U.S.C. § 78u-4(b)(1).

In cases that involve multiple parties, that are not class actions, each plaintiff must

allege, with particularity, the specific representations made and why each statement is false.  *C.W.*

*Sommer & Co. v.  Rockefeller (In re Rockefeller Ctr. Props. Secs. Litig.),* 311 F. 3d 198, 217 (3d

Cir. 2002); and *Phillips v. Scientific-Atlanta, Inc.*, 374 F. 3d 1015, 1018-19 (11th Cir. 2004), where

the Eleventh Circuit criticized group pleadings as prohibited by the PSLRA.[7]

The AC must also "state with particularity the facts giving rise to a strong inference

that the defendant acted with the requisite state of mind."  15 U.S.C.§ 78u-4(b)(2).  This "strong

---

[7]   Rule 9(b) also bars allegations that "merely lump" defendants together.  *Cordova v. Lehman Bros.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007).

10

inference" must be more than merely "reasonable' or "permissible" and it must be "cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc.*, 551 U.S. at 324. The Eleventh Circuit has also held that "[a]lthough factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendants' alleged violation of the statute." *Findwhat Investor Group v. Findwhat.com*, 658 F. 3d 1282, 1296 (11th Cir. 2011).

The PSLRA also governs the proper pleading of loss causation. Because plaintiffs bear the burden of proving the alleged violation of the Securities Exchange Act caused their losses, plaintiffs must plead loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-48, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). However, the Supreme Court applied the ordinary pleading rules contained in Rule 8 of the Fed. R. Civ. P. to loss causation allegations. *Id*.

3.   Heightened Scrutiny of RICO
     Cases Under Rule 9(b)

The Eleventh Circuit has held that the heightened pleading requirements of Rule 9(b) are applicable to RICO claims in Count 41. In *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F. 3d 1202, 1212 (11th Cir. 2015), the court stated that to satisfy Rule 9(b), RICO claims based on fraud, as here, plaintiffs must allege:

(1) The precise statements, documents or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statement misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.

*Id.*[8]

D. Plaintiffs' Federal Securities
   Claims Should Be Dismissed

Plaintiffs allege two federal securities violations against defendant Branden Muhl. Both are mislabeled as Count 40[9]. Both should be dismissed for failing to state causes of action because: (1) they do not fulfill the heightened pleading requirements of the PSLRA, and Rule 9(b); (2) defendant Walsh's conversion of the Limited Partnership's escrow funds was not in connection with the purchase or sale of securities; (3) there are no facts plead that show a causal connection between the alleged misrepresentations and plaintiffs' losses; and (4) the dismissal of the Section 10(b) and Rule 10b-5 claims mandates the dismissal of plaintiffs' Section 20 claim.

1. Plaintiffs Fall Far Short of
   Fulfilling Their Heightened
   Pleading Obligations

To state Section 10(b) and Rule 10b-5 claims for securities fraud, plaintiffs must allege six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase and sale of securities; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation and the loss, which is commonly called "loss causation." *Instituto De Prevision Militar v. Merrill Lynch*, 546 F. 3d 1340, 1352 (11th Cir. 2008).

---

[8]  Rule 9(b)'s heightened pleading standard also controls plaintiffs' Florida RICO claim, Fla. Stat. § 772.103, Count 26. *Starks v. Chusak & Tecson, P.C.*, 2019 U.S. Dist. LEXIS 10043 (S.D. Fla, January 18, 2019).

[9]  Muhl is the only Greystone Defendant in the two #40 Counts.

Section 20(a) places derivative liability on persons that control the primary violators of section 10(b) and Rule 10b-5. *Laperriere v. Vesta Ins. Group, Inc.*, 526 F. 3d 715, 721 (11th Cir. 2008).

To defeat a motion to dismiss under Section 10(b) and Rule 10b-5 sounding in fraud, plaintiffs must satisfy, in addition to the general notice pleading requirements of Fed. R. Civ. P. Rule 8, the special fraud standards in Rule 9(b) and the pleading hurdles erected by the PSLRA. *Ziemba v. Cascade Int'l. Inc.*, 256 F. 3d 1194, 1202 (11th Cir. 2001); *Phillips v. Scientific-Atlanta, Inc.*, 374 F. 3d 1015, 1016 (11th Cir. 2004).  None of the plaintiffs' allegations come close to these heightened pleading requirements.

Plaintiffs' main fraud allegations are: (1) "Defendants' [sic] solicit the Plaintiffs to Invest in the Fraudulent, *Non-Existent* EB-5 Project" (Italics in Original).  AC ¶¶ 117-121; (2) "Defendants Fraudulently Induce Plaintiffs with Offering Materials, In the Form of An Investment Portfolio", AC ¶¶ 122-129; (3) a "Fake *Escrow Account*, AC ¶¶129-148 (Italics in Originals); (4) "the PNC Workaround", AC ¶¶ 149-156; (5) "Unknowingly, Plaintiffs were Sending Money to the *Fake Escrow Account*, AC ¶¶ 157-159, (Italics in Original); (6) "Defendants' Fraud Continued", AC ¶ 160; and (7) "Defendants' Fraud and Theft are Discovered," AC ¶¶ 169-196. Plaintiffs contend that the ultimate goal of these alleged frauds was the embezzlement of the Limited Partnership's escrow funds.  AC ¶¶ 9-21.  Though plaintiffs make broad accusations against the Greystone Defendants, they do not withstand scrutiny as they are conclusory, immaterial and/or contradicted by plaintiffs' exhibits and other allegations.

a.   Plaintiffs' Solicitation Allegations Are Deficient

Plaintiffs' allegations that material misrepresentations occurred while Walsh and some of the Greystone Defendants solicited their investments in the Greystone Hotel project lack critical details.  AC ¶¶ 127-121.  All of these allegations lump the plaintiffs and defendants and fail to

13

*ACTIVE 47589115v1*

plead the context each made the alleged misrepresentations.  Similarly, the plaintiffs, which they do throughout the AC, do not differentiate amongst themselves and broadly claim that "advertisements induced Plaintiffs into investing into the Greystone Project." AC ¶ 118.  With the exception of two references to a 2014 and a July 28, 2016 meeting, and an undated trip by one plaintiff to Florida, plaintiffs fail to plead whether the Greystone Defendants provided the marketing materials to them, when they received these items, where they received them and how they obtained them. AC ¶¶ 117, 120, 121, 128.  Without this material information, it is impossible to know if those who appear in the lawsuit as plaintiffs were in fact solicited for the Greystone Hotel project and are the same persons who invested in the Limited Partnership.  This problem is exacerbated by the fact that with the exception of one plaintiff, Exh. 18, there are no factual allegations or exhibits that support plaintiffs' claims that they invested in the Limited Partnership.

Plaintiffs also list a number of statements they lifted from the marketing materials and broadly claim that all are "misleading and false."  AC ¶ 119.  However, plaintiffs do not provide facts that show how these marketing statements were false and misleading.  As is obvious from the Transactional Documents, funds were needed to finance the construction of the Greystone Hotel.  AC ¶¶ 6, 127(c) and Exhibit "4" at pp. 165, 187.  Given that the hotel project had not been completed, and none of the EB-5 monies had been invested into the Limited Partnership, the Business Plan contains estimates of how the project may work financially.  Plaintiffs do not provide any facts that show that the project would not or could not have been completed in line with the estimates contained in the Business Plan.  Exh. 4, pp. 162-314.

Similarly, plaintiffs fail to allege how the representations about the experience of the Greystone Defendants were materially false.  AC ¶¶ 119-128, Exh. 4, pp. 184-186.  Though they dispute the Greystone Defendants' opinions as to their reputations and experiences, they do not

14

offer facts to show how the Greystone Defendants materially misrepresented their backgrounds, prior projects and success rates.

Plaintiffs' fraud and conspiracy claims are flawed in that plaintiffs work backwards to fit the events leading to Walsh's embezzlement into causes of action.  To plaintiffs, Walsh's embezzlement, in and of itself, proves that the transaction from its inception, and throughout all of its phases, was entirely illicit.  This is illogical.  The fact that Walsh embezzled Limited Partnership funds neither supports the existence of a conspiracy, nor disproves the possibility that he acted alone and without any knowledge and assistance from the Greystone Defendants.  Walsh's embezzlement also does not plausibly render the Greystone Defendants' business ventures corrupt as plaintiffs assert.

### b.  Plaintiffs Inaccurately and Implausibly Construe the Transactional Documents

Plaintiffs make a number of allegations about the Transactional Documents that are patently contradicted by their express terms.  AC ¶¶ 122-128, Exhs. 4, 9, 10, 11, 12, 13 and 14.  They wrongly assert that the Transactional Documents misrepresent the ownership of the Greystone Properties, offer "a guarantee on the return of Plaintiffs' investment", and create the "existence of a mortgage, or other security on Plaintiff's [sic] investment".  AC ¶ 128.  They also misconstrue the overall nature of the transaction.

The Transactional Documents clearly show that plaintiffs were limited partners in a Florida Limited Liability Partnership.  AC ¶ 127, Exh. 4, pp. 69-72.  The Limited Partnership was to hold investment funds in an Escrow Account, and when needed, lend these monies to the "borrower," defendant Greystone Hotel Miami LLC, to provide a portion of the construction financing.  AC ¶ 99, Exh. 4, p. 187.  Upon the release of the funds to Greystone Hotel Miami LLC, as borrower and the Limited Partnership, as lender, the parties would be subject to their Loan and

CASE NO.: 1:19-cv-24138-DPG

Security Agreement.  AC ¶ 99, Exh. 5.  At no time were plaintiffs investors in Greystone Hotel Miami, LLC or its related entities.  Exh. 5, 10, 12, 13.

Contrary to plaintiffs' allegations, the developer's ownership structure and deal flow were accurately disclosed.  The Business Plan provides that the Limited Partnership was seeking a $22 million equity raise to fund a loan to Greystone Hotel Miami LLC.  Exh. 4, p. 187.  It further states that "Greystone Terra Firma, LLC (owner of the 1920 Collins Avenue parcel) and Santa Barbara 230, LLC (owner of the 230 20th Street parcel) are both wholly-owned subsidiaries of Greystone Hotel Miami, LLC."  Exh. 4, p. 165, 168.  Therefore, plaintiffs' allegation that the Greystone Defendants falsely stated that Greystone Hotel Miami LLC owned the parcels is contradicted by plaintiffs' Exh. 4.

Plaintiffs' claim that the Greystone Defendants "guarantee[ed]", AC ¶ 113, their Limited Partnership investments is undermined by the Transactional Documents.  Nothing contained in the Transactional Documents renders the Greystone Defendants insurers against Walsh's embezzlement of their Limited Partnership investment funds.  Greystone Hotel Miami LLC provided a limited repayment obligation for it to pay the Limited Partnership the loan amount funded, if the Limited Partnership fulfilled its loan commitment to Greystone Hotel Miami LLC and the federal government denied the plaintiffs' EB-5 visa applications.  Exh. 5, p. 3.  As plaintiffs admit that the Limited Partnership failed to loan any monies to Greystone Hotel Miami LLC, the repayment-conditions were never met and Greystone Hotel Miami LLC has no obligation to return funds to the Limited Partnership it never received.  Exh. 5, p. 3[10].

Similarly, plaintiffs' allegation that their Limited Partnership investment was to be

---

[10]  Plaintiffs' guarantee allegations against United EB-5 are not supported in its exhibits.  AC ¶ 119.

ACTIVE 47589115v1

secured by a "mortgage" against the Greystone Hotel is belied by the Loan and Security Agreement. AC ¶¶ 110, Exh. 5, p. 9.  The Loan and Security Agreement does not convey a security interest to the plaintiffs.  It grants a lien to the Limited Partnership on the assets of Greystone Hotel Miami LLC to secure repayment of the Limited Partnership's loan.  Exh. 5, p. 9.  Due to the Limited Partnership's failure to loan funds to Greystone Hotel Miami LLC, the loan was not funded and no security was created in favor of the Limited Partnership.  AC ¶¶ 172-174.

<blockquote>
c.  The Greystone Defendants Did Not Know<br>
That the Escrow Account was "Fake"
</blockquote>

Though plaintiffs repeatedly allege that the Limited Partnership's Escrow Account was "fake", they fail to offer any facts that show that the Greystone Defendants, and in particular Muhl, knew that this was the case.  AC ¶¶ 129-148.  Further, they do not allege facts that show that Muhl and the Greystone Defendants played any role in the creation and management of the Escrow Account and knew that Walsh would later embezzle from the Escrow Account.  AC ¶¶ 129-159. These critical omissions undermine their claim that Muhl violated Section 10(b) and Rule 10b-5.

<blockquote>
2.  Walsh's Embezzlement of the Escrow<br>
Account Was Not in Connection With<br>
The Purchase and Sale of Securities
</blockquote>

Section 10(b) and Rule 10b-5 require that plaintiffs allege facts showing that Walsh's embezzlement of the Limited Partnership's Escrow Account was connected to the sale of securities.  They cannot allege that connection as a matter of law.

The courts have consistently held that conversions and embezzlements of funds that occur after an investment are not in connection to the sale of securities.  *Manufacturers Hanover Trust Co. v. Smith, Barney, Harris Upham & Co., Inc.*, 770 F. Supp. 176, 180 (S.D.N.Y. 1991); *Allard v. Arthur Anderson & Co. (U.S.A.)*, 924 F. Supp. 488 (S.D.N.Y. 1996); *Bloor v. Carro, Spanback, Landin, Rodman & Fass*, 754 F. 2d 57 (2d Cir. 1985); *Pross v. Katz*, 784 F. 2d 455 (2d

17

Cir. 1986).  As Walsh's embezzlement occurred after the plaintiffs' investments in the Limited Partnership's, plaintiffs fail to show this key Section 10(b) and Rule 10b-5 element.

> **3.**     There Are No Facts Showing a Loss Causation
> Between Muhl and Walsh's Embezzlement

Plaintiffs have not alleged any facts that create a loss causation between Muhl and Walsh's embezzlement of the Escrow Account.  In fact, there are no factual allegations that show that Muhl did anything to cause plaintiffs' losses.

Plaintiffs state, in a conclusory manner, that the "Fake Escrow Account was utilized by Walsh, the Walsh Entities, and the Defendants to collect, control and misappropriate all the funds they later misappropriated from the Plaintiffs."  AC ¶ 158.  Plaintiffs' allegations that Walsh's "co-conspirators" transferred the Escrow Account to their "personal accounts" has no factual support.  AC ¶ 15.  There are no facts substantiating any claims that Muhl and the Greystone Defendants knew of Walsh's plans to embezzle funds, assisted him in any way, and profited from Walsh's actions.  Without these facts, there is no plausible loss causation alleged against Muhl.

> **4.**     Plaintiffs' Section 20(a) Claim
> Against Muhl Also Fails

Plaintiffs allege that Muhl was a "controlling person" of the Limited Partnership.  AC ¶¶ 571-576.  They claim he had a "high position" with the Limited Partnership, which they do not specify, had "unlimited access" to the Limited Partnership and had "day to day" involvement in its operations.  AC ¶¶ 571-574.  These allegations are facially implausible.

Specific references to Muhl in the AC are limited.  AC ¶¶ 28, 53, 54, 81.  Nowhere do plaintiffs, until the second Count 40 that contains their Section 20(a) claims, allege that Muhl had any involvement in the Limited Partnership.  Plaintiffs merely allege Muhl's interest in entities affiliated with the project's developer, and not his control of the Limited Partnership.  AC ¶¶ 28, 53, 54, 81.

Simply put, plaintiffs' Section 20(a) cause of action make no sense.  Muhl is not mentioned in the project's Business Plan as a manager of the Limited Partnership or the Greystone Hotel.  Exh. 4 at pp. 184-187.  Similarly, Muhl's companies are not in the Business Plan.  Though plaintiffs claim Muhl had "day to day" operational control of the Limited Partnership, plaintiffs themselves acknowledge that the Limited Partnership's sole business objective was to loan funds to Greystone Hotel Miami LLC and to obtain EB-5 visas thereafter, both of which did not occur. Given these limited functions, there are no plausible day to day operations for the Limited Partnership, and plaintiffs do not state what they were or which involved Muhl.

Similarly, plaintiffs do not identify any Limited Partnership functions that Muhl actually performed and reports that Muhl either had access to or received.  They do not allege that Muhl had any knowledge of or involvement with the Escrow Account.

As an additional ground, dismissal of the section 10(b) and Rule 10b-5 claims requires that the section 20(a) claims against Muhl be dismissed.  *Phila. Fin. Mgmt. of San Francisco, LLC v. DJSP Enters.*, 572 Fed. Appx. 713, 715 (11th Cir. 2014).

E.  There Are No Plausible Facts Supporting
    Plaintiffs' RICO and Florida RICO Claims

Under the federal RICO statute, 18 U.S.C. § 1962(c), plaintiffs must allege: (1) conduct or participation in an enterprise; and (2) through a pattern of racketeering activity.  Florida's RICO Act contains the same elements and is guided by federal judicial interpretations.  Fla. Stat. § 895.03; *Jackson v. Bell South Telecomms.*, 372 F. 3d 1250, 1263-64 (11th Cir. 2004).  Plaintiffs must also establish standing by alleging a domestic injury caused by racketeering.  *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2106, 195 L. Ed. 2d 476 (2016).  To survive a motion to dismiss, plaintiffs have to "clearly identify the injury suffered and the predicate acts

19

from which the injury flowed." *Worldspan Marine Inc. v. Comerica Bank*, 2019 U.S. Dist. LEXIS 30421, *18 (S.D. Fla. Feb. 22, 2019).

As shown above, plaintiffs' allegations are conclusory and devoid of specificity. There are no facts plead that connect the Greystone Defendants to Walsh's theft of the Limited Partnership's Escrow Account or establish an illegal enterprise for that illicit purpose. In fact, all of plaintiffs' allegations improperly parrot the general RICO elements. AC ¶¶ 470-478, 577-588. The absence of that factual connection compels the dismissal of plaintiffs' federal and Florida RICO claims.

There are additional grounds for dismissal of the RICO claims in that: (1) plaintiffs lack standing because they cannot show a domestic injury; and (2) defendants have not been charged with federal securities crimes.

Plaintiffs do not plausibly allege that they suffered a domestic injury. They assert that they are foreign nationals, residing outside the United States, who were solicited abroad and who sought to use the EB-5 program to reside here. AC ¶¶ 3, 63-66, 99, 214. None allege any business or personal ties to the United States other than their purchases of Limited Partnership units. AC ¶¶ 470-478, 577-588. These facts undermine the existence of a domestic injury.

In another case involving Walsh's conversion of EB-5 investments, District Judge Marra in *Li v. Walsh*, 2017 U.S. Dist. LEXIS 114553, *32 (S.D. Fla. July 22, 2017), dismissed foreign nationals' RICO claims, with prejudice, because of the absence of a domestic injury. The fact that the foreign plaintiffs forwarded funds to the United States in order to invest in an entity that would finance a domestic real estate venture did not create an economic impact in the United States nor show a domestic injury. *Id*. At *33-34.

20

Plaintiffs have alleged that certain predicate acts violated federal and state civil securities statutes. AC ¶¶ 561-570, 585-588. However, plaintiffs must allege the Greystone Defendants' conviction of securities crimes to support their securities fraud based RICO claims. The fact that none of the Greystone Defendants have been charged, let alone convicted, of federal securities crimes requires dismissal. 18 U.S.C. § 1964(c), *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016).

F.   None of Plaintiffs' Florida Common Law
      and Statutory Claims State Causes of Action

Plaintiffs allege the following Florida common law and statutory claims: Counts 4, 5, 6 and 7 Aiding and Abetting Conversion AC ¶¶ 254-308; Counts 11, 12, 13 and 14 Fraudulent Inducement AC ¶¶ 337-360; Counts 19, 20, 21 Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty AC ¶¶ 397-431; Counts 25 and 28 Fraud and Constructive Fraud AC ¶¶ 463-469; Count 29 Civil Conspiracy AC ¶¶ 491-498; Counts 31 and 32 Equitable Lien AC ¶¶ 510-515; Count 33 FDUPTA AC ¶¶ 516-522; Count 36 Equitable Accounting AC ¶¶ 535-540. None of these causes of action meet heightened pleading standards. Also, plaintiffs lack standing as these claims are derivative, but are brought individually. Some are also facially implausible. All Florida causes of action should be dismissed.

1.   Plaintiffs' Allegations Do Not Comply With Rule 9(b)

As stated previously in Section III, C above, all of plaintiffs' causes of action must meet the heightened pleading requirements of Rule 9(b). Absent from the Florida causes of action are any facts that show that each plaintiff received the Transactional Documents, read them, actually attended the two China meetings, executed the operative agreements, used their funds to invest in the Limited Partnership and plausibly and reasonably relied upon any representations made by each Greystone Defendant.

21

There are also no facts plead that show that the Greystone Defendant met with, knew of, spoke to, communicated with or interacted with each plaintiff.  Similarly, the AC does not allege that the Greystone Defendants knew that any plaintiff had executed the Transactional Documents, sent funds to the Limited Partnership and that their investment funds had been deposited into a PNC account.  Most importantly, there are no facts alleged that plausibly demonstrate that any of the Greystone Defendants knew of Walsh's plans to embezzle the Limited Partnership's funds, and plaintiffs do not factually support their allegation that the Greystone Defendants received the funds Walsh had converted.  AC ¶ 115.  These material omissions justify dismissal.

2. **Plaintiffs Lack Standing to
   Bring This Direct Action**

Plaintiffs' lump themselves together without differentiation.  AC ¶¶ 3, 4, 8, 11, 13, 14, 21, 22, 23.  They make the same allegations and assert the same claims that Walsh, with the assistance of one or more defendants, embezzled their Limited Partnership investments, which caused them to lose their EB-5 visa eligibility.  AC ¶¶ 623.

Plaintiffs' claims are derived from a direct injury to the Limited Partnership.  Because of Walsh's theft of Limited Partnership funds, the Limited Partnership failed to perform the linchpin of the EB-5 program, which was to finance the Greystone Hotel's construction in order to create the requisite number of jobs.  Walsh's embezzlement deprived the Limited Partnership of the financial resources necessary to fulfill these and other EB-5 conditions.  While Walsh's embezzlement indirectly injured plaintiffs' investments, the direct harm is to the Limited Partnership.

Direct actions, as here, are governed by Fla. Stat. § 620.2001, which states a limited partner must "plead and prove an actual or threatened injury that is not solely the result of an injury

22

suffered or threatened to be suffered by the limited partnership."  Florida courts have adopted a test to distinguish between direct and derivative actions that limits direct actions where: "(1) there is a direct harm to the [limited partner] such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the [limited partner] that is separate and distinct from those sustained by the other [limited partners]." *Silver Crown Inves., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1326 (S.D. Fla. 2018) *quoting Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014).

Plaintiffs ignore Fla. Stat. § 620.2001, and have not plead facts to justify their direct action against the Limited Partnership and the Greystone Defendants.  They have also failed to plead compliance with the requirements for a derivative action.  Fla. Stat. § 620.2002.

3.    Plaintiffs' Equitable Lien Claims
      Are Clearly Unmeritorious

Plaintiffs in Counts 31 and 32 request the imposition of equitable liens against two entities that previously held title to the parcels upon which the Greystone Hotel is situated.  AC ¶¶ 510-515.

Florida awards equitable liens where a party, through a mutual mistake or a misrepresentation, has been unjustly enriched. *Palm Beach Savings & Loan Assoc. v. Fishbein*, 619 So. 2d 267 (Fla. 1993).  However, plaintiffs do not allege that the parcel owners played any part in Walsh's embezzlement or misrepresented anything to the plaintiffs.  Also, Walsh's embezzlement precluded the Limited Partnership's construction loan such that neither parcel received any benefit from the Limited Partnership.  Counts 31 and 32 fail as a matter of law.

V.      **CONCLUSION**

Based on the foregoing, the Greystone Defendants request that this court grant their

Motion to Dismiss the Amended Complaint, dismiss the causes of action against them with

prejudice, and grant such other relief the court deems just and proper.


Dated:  January 2, 2020                          Respectfully submitted,

                                                 ***Attorneys for Greystone Defendants***

                                                 GREENBERG TRAURIG, P.A.
                                                 5100 Town Center Circle
                                                 Suite 400
                                                 Boca Raton, Florida 33486
                                                 Telephone: 561-955-7600
                                                 Telefax: 561-338-7099

                                                 By*:  s/ Stephen A. Mendelsohn*
                                                     Stephen A. Mendelsohn
                                                     Florida Bar No. 0849324
                                                     Email:  mendelsohns@gtlaw.com;
                                                     hasenh@gtlaw.com; and
                                                     FLService@gtlaw.com

*ACTIVE 47589115v1*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of January, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.


            */s/ Stephen A. Mendelsohn*
            STEPHEN A. MENDELSOHN

25

CASE NO**.:**  1:19-cv-24138-DPG

## <u>SERVICE LIST</u>

Yuanxiao Feng, *et al.v.* Joseph Walsh, et al.
**Case No.  1:19-cv-24138-DPG**
**United States District Court, Southern District of Florida**

ZEBERSKY PAYNE SHAW LEWENZ, LLP
*Attorneys for Plaintiffs*
Jordan A. Shaw, Esq.
Fla. Bar No. 111771
Steffani M. Russo, Esq.
Fla. Bar No. 1002598
110 SE 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email: <u>jshaw@zpllp.com;</u>
<u>srusso@zpllp.com</u>
Secondary <u>Email· mperez@zpllp.com;</u>
<u>jgarcia@zpllp.com</u>

And

SMS LAW GROUP, APC
*Co-Counsel for Plaintiffs*
Kevin Qi, Esq.
CA Bar No. 284314
*Pro Hac Vice* to be sought
2221 Camino Del Rio S, Ste. 100
San Diego, CA 92108
Telephone: (619) 342-7887
Facsimile: (619) 255-9559
(732) 747-5259 Fax
Primary Email: <u>kevinqi@smslawfirm.us</u>

Attorneys for Plaintiffs

26

Mandel & Mandel LLP
*Counsel for Defendants PNC Bank, N.A.*
*And Ruben Ramirez*
Nina Stillman Mandel
FBN 843016
160 East Flagler Street, Ste. 1224
Miami, Florida 33131
Tel: (305) 374-7771
Fax: (305) 374-7776
nsm@mandel.law

Ballard Spahr LLP
Nicholas A.R. Kato
*Pro Hac Vice requested*
*Counsel for Defendants PNC Bank, N.A.*
*And Ruben Ramirez*
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: (215) 864-8838
KatoN@ballardspahr.com

27