UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| YUANXIAO FENG, et al., )<br>)<br>  Plaintiffs, )<br>)<br>v. )<br>)<br>JOSEPH WALSH, et al., )<br>)<br>  Defendants. )<br>) | Case No. 19-cv-24138-Gayles |

**PNC BANK, N.A.'S AND RUBEN RAMIREZ'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

Peter D. Hardy
  HardyP@ballardspahr.com
  (admitted pro hac vice)
Aliza R. Karetnick
  KaretnickA@ballardspahr.com
  (admitted pro hac vice)
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8838

Nina Stillman Mandel
  nsm@mandel.law
  Fla. Bar No. 843016
**MANDEL & MANDEL LLP**
169 East Flagler Street, Suite 1224
Miami, Florida 33131
Telephone: (305) 374-7771

*Counsel for PNC Bank, N.A. and Ruben Ramirez*

Defendants, PNC Bank, N.A. ("PNC") and Ruben Ramirez, hereby file this reply (the "Reply") in support of their Motion to Dismiss the Amended Complaint (the "Motion") (Dkt. No. 75).

## I. INTRODUCTION

Plaintiffs' opposition to the Motion (the "Opposition") disregards the serious – and ultimately fatal – deficiencies plaguing each of Plaintiffs' claims against PNC and Ramirez. Because Plaintiffs cannot meet their burden, they distort the applicable pleading standard, brazenly ignoring the deep pool of contrary case law on each claim, and point to the *number* of conclusory allegations – oft repetitive – to deflect from the absence of substance. Plaintiffs' Amended Complaint falls far short of plausibly pleading claims for: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting conversion; (4) violating Florida's RICO statute; (5) violating the federal RICO statute; and (6) civil conspiracy.[1] The Motion should be granted.

## II. ARGUMENT

### A. Plaintiffs Misconstrue the Applicable Standard on Motions to Dismiss

As a threshold matter, Plaintiffs misconstrue the stringent pleading standard to which they are bound, relying instead on stale, outdated, and inapt authority. Plaintiffs misleadingly quote *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that courts should not dismiss complaints "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle him to relief." *See* Opp. at 2. The *Conley* standard, however,

---

[1] In their motion to dismiss, the Greystone Entities argue that Plaintiffs lack standing to bring direct claims against the Limited Liability Limited Partnership because Plaintiffs suffered neither direct harm nor special injury, as required by Florida law. ECF No. 68 at 23; *see also Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731, 739–40 (Fla. 3d DCA 2014). PNC and Ramirez join in the Greystone Entities' argument and incorporate it by reference.

has not been good law for well over a decade.  In the landmark *Bell Atl. Corp. v. Twombly*, the Supreme Court re-set the applicable bar, emphasizing that: "*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough." 550 U.S. 544, 562–63 (2007); *see also ADA v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (explicitly recognizing that *Conley's* no-set-of-facts pleading standard is no longer good law).  Under *Twombly*, Plaintiffs' claims can survive a motion to dismiss *only* if they allege facts that "allow[] the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (emphasis added) (quoting *Iqbal*, 556 U.S. at 678).  Plaintiffs do not allege a set of facts from which any inference of liability is reasonable.

Moreover, the more stringent pleading standard articulated in Rule 9(b) applies to Plaintiffs' claims for aiding and abetting, as well as for civil conspiracy because they are premised on fraud.  The particularity required by Rule 9(b) – "the who, what, when, where, and how of the allegedly false statements[,]" – is non-negotiable. *Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV-MARTINEZ-MCALILEY, 2011 U.S. Dist. LEXIS 108720, at *2 (S.D. Fla. 2011) (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).  In contrast, Plaintiffs' Amended Complaint fails to plead allegations with the particularity required by Rule 9(b).  Indeed, Plaintiffs' Opposition neglects to even mention Rule 9(b), utterly ignoring its relevance.

> **B.    Plaintiffs' Aiding and Abetting Claims Fail Because They Do Not Assert That PNC or Ramirez Possessed Actual Knowledge of the Alleged Scheme**

The Opposition characterizes the Amended Complaint as rife with allegations that PNC and Ramirez possessed *actual* knowledge of the alleged underlying fraud scheme.  That inventive reading, however, ignores the plain words of the Amended Complaint and gives short shrift to prevailing law.  Indeed, Plaintiffs *declare* only the following:

> Ramirez and PNC "***knew***" of Defendant Walsh's and Defendant SARC's EB-5 Investment Program, "***knew***" that Walsh and SARC wanted to operate an escrow account without a formal escrow agreement, and "***substantially assisted***" them in doing so by: suggesting a work-around to allow them to operate a fake escrow account guised as a checking account; using PNC's escrow account modules in a checking account to deceive investors; purporting to investors that they had an escrow account at PNC Bank; and collecting investment funds through the fake escrow account.

Opp. at 6 (emphasis in original). Even if for argument's sake these allegations were true, which they are not, these conclusory allegations fall far short of establishing that PNC and Ramirez had *actual knowledge* of the purported underlying fraud scheme. On this basis alone, the Motion should be granted.

In essence, Plaintiffs ask the Court to make the illogical leap that because PNC and Ramirez purportedly suggested the "fake escrow account" and understood the broad contours of the Federal Government's EB-5 program requirements,[2] they necessarily knew that the Walsh Defendants schemed to and did misappropriate Plaintiffs' investments. Notably, Plaintiffs then betray their position by arguing:

> Even if Plaintiffs did not specifically allege that Ramirez and PNC had actual knowledge of the fraud, breach of fiduciary duty, and conversion . . . the Court here should find that Plaintiffs' direct allegations of Ramirez's and PNC's actions regarding the fake escrow account ***supports an inference*** that Ramirez and PNC knew Walsh and SARC were committing fraud.

---

[2] The Opposition argues that the Complaint adequately alleges actual knowledge because PNC and Ramirez "knew or should have known of the legal implications" that EB-5 funds would be deposited into an account that was not an escrow account. Opp. at 7 (quoting Am. Comp. ¶159). As a threshold matter, Plaintiffs failed to allege that the EB-5 Program requires an escrow account. That is not surprising, because as PNC and Ramirez emphasized in their Motion*, there is no legal requirement* under EB-5 law and no regulation that an escrow agreement be used. In fact, Plaintiffs' own allegations about the content of the EB-5 program say nothing about any escrow account requirement. *See* Am. Compl. at ¶¶ 63-66. Plaintiffs ignore this inconvenient fact.

4

Opp at 10 (emphasis added).  But an "inference" does meet the required legal standard, and Plaintiffs ignore the breadth of cases across jurisdictions that PNC and Ramirez rely upon regarding the degree of specific detail required to adequately allege actual knowledge.  In fact, Plaintiffs simply do not address the key cases discussed in the Motion, each of which rejected as insufficient allegations of actual knowledge based on bank employee misconduct.  *See, e.g.*, *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 718 (8th Cir. 2019) (emphasizing that "[e]ven assuming [former bank employee] Sarles knew there was shortfall . . . , and that the scammers wanted to avoid disclosing that, it does not follow that Sarles knew their enterprise was a Ponzi scheme or that they were engaged in tortious conduct. If true, this should have been a red flag, but it does not show actual knowledge"); *Heinert v. Bank of Amercia, N.A.*, No. 19-06081, 2019 U.S. Dist. LEXIS 180832, at *6 (W.D.N.Y. Oct. 18, 2019) (insufficient allegations of actual knowledge despite allegations of dirty insider at bank lying on behalf of Ponzi schemers); *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 U.S. Dist. LEXIS 30684 (S.D. Fla. Mar. 7, 2012) ("Conclusory statement[s] that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest[] that the defendant 'should have known' that something was amiss[,]" and rejecting claims of actual knowledge based on lulling activity by bank).  Actual knowledge demands factual allegations that Ramirez knew about the Walsh Defendants' alleged downstream fraud scheme *when Ramirez set up the key accounts*.  As a threshold matter, and as Plaintiffs themselves concede in their Opposition, the collective knowledge doctrine does not apply here.  *See* Opp at 10-11.  Ramirez alone must have possessed the requisite knowledge of the underlying fraud at the time of its commission.  That Ramirez helped set up key accounts (on an unspecified date) that were supposedly used later (on an

5

unspecified date) to perpetrate a fraud, is inadequate.[3] In *Perlman v. Wells Fargo Bank*, the Eleventh Circuit dismissed aiding and abetting claims despite "a multitude of atypical transactions and procedural oddities" because, "[a]t most, [the allegations] list facts that could arouse suspicions, and are not sufficient to trigger any obligation by [the bank] to investigate." 559 F. App'x 988, 993 (11th Cir. 2014).

> C. **Plaintiffs' RICO Claims Fail Because Plaintiffs (1) Lack Standing and (2) Fail to Sufficiently Allege a RICO Enterprise**
>
> 1. <u>Plaintiffs Lack Standing to Assert RICO Claims Against PNC and Ramirez</u>

Plaintiffs' federal and state RICO claims do not allege domestic injury and accordingly Plaintiffs lack standing to bring RICO claims. Plaintiffs' only retort is that Ramirez and PNC "misconstrue the applicable law" for RICO standing. It is Plaintiffs that misconstrue – and misapply – the law, as evidenced by their brazen disregard of *Li v. Walsh*, a case nearly identical to the one at bar. *See* Opp. at 12; *Li v. Walsh*, No. 16-81871, 2017 U.S. Dist. LEXIS 114553 (S.D. Fla. July 22, 2017). Plaintiffs argue that their "injuries are . . . almost exclusively domestic despite the location of Plaintiffs" because they (1) invested equity and interest into a Florida EB-5 project; (2) relied upon representations that their funds would be invested in the Florida EB-5 project; and (3) made deposits to a Florida bank account. Opp. at 14. These were the same arguments that this Court outright rejected in *Li*. *See* 2017 U.S. Dist. LEXIS 114553 at *34.

The *Li* plaintiffs, foreign investors from China and Iran, alleged they were the victims of an EB-5 fraud scheme perpetrated by many of the same Walsh Defendants in this case. *Id.* at *6-

---

[3] Plaintiffs' concession that the collective knowledge doctrine does not apply is critical, in part because the Amended Complaint alleges that PNC – but not Ramirez – had general knowledge about the alleged requirements of the EB-5 program based on a few website postings by PNC. Am. Comp., ¶¶ 151-53. However, these website postings are not tied to the actual knowledge of Ramirez, which is the key issue.

6

19. Just as Plaintiffs argue here, the *Li* plaintiffs stated they: (1) were fraudulently induced to invest in a purported Florida EB-5 project; (2) relied upon representations that their funds would be invested in the Florida EB-5 project; and (3) deposited money into a U.S. bank account. *Id.* at *19-20. Judge Marra dismissed the *Li* plaintiffs' RICO claims for lack of standing, finding that they failed to identify and allege a domestic injury. *Id.* at *34. Even accepting the plaintiffs' contention that the basis of their RICO claim occurred in the United States, Judge Marra found "that [it] does not change the fact that the injury was felt by [p]laintiffs in their home countries." *Id.* The facts here are indistinguishable from the facts in *Li,* notwithstanding the single investor who purportedly travelled to the United States on a single occasion *before* investing. Opp. at 13. Again, the Motion should be granted.

      2.  <u>Plaintiffs Have Not Adequately Pled a RICO Enterprise</u>

Even if Plaintiffs had standing, which they do not, their RICO claims require dismissal for failure to allege PNC and Ramirez knowingly participated in a RICO enterprise. Knowledge of wrongdoing is critical to demonstrate participation in a RICO enterprise. Were it not, countless innocent parties could unwittingly be used to facilitate crimes and be labelled as racketeers. *See Ray v. Spirit Airlines*. 836 F.3d 1340, 1352-53 (11th Cir. 2016) (dismissing RICO claims for failure to allege defendant's knowing participation in an enterprise); *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1345-48 (N.D. Ga. 2017) (same); *McCaul v. First Mont. Bank, Inc.*, No. 17-41-BU-BMM-JCL, 2018 U.S. Dist. LEXIS 224274, *1, *11-14 (D. Mont. Oct. 29, 2018) (same). Plaintiffs' suggestion that "such a determination [of knowledge] would need to occur after sufficient discovery of facts," is absurd. Opp. at 15. *Chudusama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997) (motion to dismiss based on complaint's failure to state a claim for relief should be decided prior to the initiation of discovery).

Consistent with their *modus operandi*, Plaintiffs fail to acknowledge the Eleventh Circuit's holding in *Ray*. 836 F.3d at 1352-55. The *Ray* plaintiffs alleged that Spirit Airlines conducted a RICO enterprise – consisting of its various technology vendors, including its website manager Objectart – to fraudulently portray its Passenger Usage Fee as a government-imposed or authorized fee when, in fact, it was a part of the ticket price charged by the airline. *Id.* at 1344-45. Plaintiffs further alleged that the enterprise members had a common purpose "to increase and maximize the revenue of Spirit Airlines" by misrepresenting the source of the fee. *Id.* at 1352. The Eleventh Circuit affirmed dismissal of plaintiffs' RICO claims, finding that the complaint failed to plausibly allege that Spirit's vendors acted with this alleged common purpose:

> [T]he plaintiffs allege that Objectart and its owner helped Spirit set up the ticket reservation system for Spirit's website. But this is a wholly innocent activity undertaken as a course of regular business for Objectart. More importantly, this passage is notable for what it lacks. It does not say that Objectart had any control over (or, for that matter, was even aware of) the actual content on the web platform it helped develop. It does not allege that Objectart worked to conceal the true nature of the Passenger Usage Fees. It does not indicate that Objectart and its owner knew that Spirit was engaging in misleading behavior. It does not indicate that Objectart directly profited from the misrepresentation, as opposed to simply receiving a fee for the anodyne services it provided. **That Objectart helped set up a platform that Spirit independently misused does not give rise to a plausible inference that Objectart and Spirit acted with the common purpose, let alone the common purpose arising out of a continuing relationship, to misrepresent the Passenger Usage Fee or defraud Spirit customers.**

*Id.* at 1352-53 (emphasis added); *see also Norfolk v. Southern Ry. v. Boatright R.R. Prods.*, No. 17-01787, 2019 U.S. Dist. LEXIS 41388, at *17-18 (N.D. Ala. Mar. 14, 2019) (dismissing RICO claims where plaintiff's allegations failed to plausibly allege that defendant worked knowingly to further a fraud scheme, but instead acted "in the ordinary course of business and in pursuit of its own economic interest").

Like Objectart in *Ray*, PNC and Ramirez were simply doing their job; they opened bank accounts. The fact that the PNC bank accounts were subsequently – and independently – used to

perpetrate a fraud scheme does not raise a plausible inference that PNC and Ramirez participated in a criminal enterprise to defraud Plaintiffs.

      **D.**      **Plaintiffs' Conspiracy Claim Fails Because It Does Not Plausibly Allege PNC and Ramirez Knowingly Entered a Conspiracy**

Similar to their RICO claims, Plaintiffs suggest they need not allege PNC and Ramirez knowingly entered into an illicit agreement. Opp. at 21. Plaintiffs are wrong. It is well-settled that "one cannot agree, expressly or tacitly, to commit a wrong about which he or she has no knowledge. . . . Civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." 16 Am Jur. 2d Conspiracy § 51 (2d ed. 2019). Accordingly, courts consistently dismiss civil conspiracy claims that fail to sufficiently plead such knowledge. *See, e.g.*, *Angell v. Allergan Sales, LLC*, No. 3:18-cv-282-J-34JBT, 2019 U.S. Dist. LEXIS 142768, at *55 (M.D. Fla. Aug. 22, 2019) (dismissing civil conspiracy claims because "a conspirator must know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators") (internal quotations and citation omitted); *Newby v. Enron Corp.*, 761 F. Supp. 2d 504, 558 (S.D. Tex. 2011) (collecting cases and holding the same); *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (same).

The Amended Complaint does not plausibly allege that PNC and Ramirez knowingly conspired to defraud investors, and the Opposition simply reorganizes and highlights the conclusory allegations that PNC and Ramirez "agreed" to open an account for the alleged perpetrators. *See* Opp. at 19. These redundant allegations, however, only confirm an ordinary banking relationship – that is, one in which a customer's request for a business checking account with escrow services are met. This is the hallmark of business, not fraud. The Motion should be granted.

### III. CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, the Court should dismiss the Amended Complaint against PNC and Ramirez.

Dated: January 27, 2020                     Respectfully submitted,

*/s/   Nina Stillman Mandel*
Nina Stillman Mandel
Fla. Bar No. 843016
**MANDEL & MANDEL LLP**
169 East Flagler Street, Suite 1224
Miami, Florida 33131
Telephone: 305.374.7771
nsm@mandel.law

*/s/   Peter D. Hardy*
Peter D. Hardy (admitted *pro hac vice*)
Aliza R. Karetnick (admitted *pro hac vice*)
Mary K. Treanor (admitted *pro hac vice*)
Mansi Shah (admitted *pro hac vice*)
Nicholas A.R. Kato (admitted *pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103

*Counsel for PNC Bank, N.A. and Ruben Ramirez*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2020, a true copy of the above document was served via electronic means using the Court's Electronic Case Filing (ECF) system upon all registered ECF users and a true paper copy was served by first class mail on nonregistered parties.

*/s/ Nina Stillman Mandel*
Nina Stillman Mandel