# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 1:19-cv-24138-DPG

_____

YUANXIAO FENG, et al.,

      Plaintiffs.

v.

JOSEPH WALSH, et al.,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS, GREYSTONE HOTEL MIAMI, LLC, UNITED EB5, LLC, SANTA BARBARA 230, LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I LLC, GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC, GREYSTONE TENANT, LLC, GREYSTONE OPTION HOLDER, LLC, TRANS INN ASSOCIATES, INC., VOS HOSPITALITY, LLC, BBM3, LLC, BBM3 II, LLC, JAMES VOSOTAS, DANIEL VOSOTAS, AND BRANDEL MUHL MOTION TO DISMISS AND INCORPORATED <u>MEMORANDUM OF LAW</u>**

Jordan A. Shaw, Esq. (Fla. Bar. No. 111771)
Steffani M. Russo, Esq. (Fla. Bar. No. 1002598)
Candace Phillips, Esq. (Fla. Bar. No. 1010368)
**ZEBERSKY PAYNE SHAW LEWENZ, LLP**
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 595-6060
Primary Email: jshaw@zpllp.com;
cphillips@zpllp.com; srusso@zpllp.com
Secondary Email: mperez@zpllp.com;
jgarcia@zpllp.com

SMS LAW GROUP, APC
Kevin Qi, Esq.
*Pro Hac Vice Granted*
2221 Camino Del Rio S., Ste. 100
San Diego, CA 92108
Telephone: (619) 342-7887
Primary Email: kevinqi@smslawfirm.us

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................ 1

II.   MEMORANDUM OF LAW ....................................................................................... 2

   A.  LEGAL STANDARD ........................................................................................... 2

   B.  PLAINTIFFS' AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING ........... 3

   C.  PLAINTIFFS SUFFICIENTLY STATE CLAIMS FOR FEDERAL SECURITIES
       VIOLATIONS ...................................................................................................... 5

       1.   Legal Standard for Federal Securities Claims ..................................... 5

       2.   Plaintiffs State a Claim for Securities Fraud Under Section 10(b) and Rule 10b-
            5: ........................................................................................................... 5

       3.   Solicitation Allegations are Sufficient ............................................... 16

       4.   The Transactional Documents .............................................................. 18

       5.   The Fake Escrow Account .................................................................... 20

       6.   Loss Causation ..................................................................................... 20

       7.   Section 20(a) Claim ............................................................................. 22

   A.  PLAINTIFFS PROPERLY ALLEGE RICO VIOLATIONS ........................................ 24

       1.   Legal Standard for RICO Claims ........................................................ 24

       2.   Plaintiffs Properly State a RICO Claim .............................................. 25

       3.   Plaintiffs Have Standing Under RICO ................................................ 26

   D.  COMMON LAW AND STATUTORY CLAIMS ....................................................... 26

       1.   Legal Standard ..................................................................................... 26

       2.   Standing to Bring Direct Action .......................................................... 28

       3.   Equitable Lien Claims ......................................................................... 29

III.  CONCLUSION .......................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Cases**

*Abdo v. Fitzsimmons*,
  2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) .......................................................................... 9

*Absolute Activist Value Master Fund Ltd. v. Devine*,
  233 F. Supp. 3d 1297 (M.D. Fla. 2017) ................................................................................ 25

*Altare v. Vertical Reality MFG, Inc.*,
  2020 WL 209272 (S.D. Fla. Jan. 14, 2020) ............................................................................ 3

*Anderson v. District Bd. Of Trustees of Cent. Florida Community College*,
  77 F. 3d 364 (11th Cir. 1996) .................................................................................................. 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................... 2, 20

*Basson v. Mortgage Electronic Registration Systems, Inc.*,
  741 F. App'x 770 (11th Cir. 2018) .......................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................. 2

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
  116 F. 3d 1364 (11th Cir. 1997) ........................................................................................... 26

*Camofi Master LDC v. Riptide Worldwide, Inc.*,
  2011 WL 1197659 (S.D.N.Y. Mar. 25, 2011) ........................................................................ 9

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012)...................................................................................... 8

*Dinuro Investments, LLC v. Camacho*,
  141 So. 3d 731 (Fla. 3d DCA 2014) ..................................................................................... 28

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................................... 21

*Durham v. Business Management Associates*,
  847 F. 2d 1505 (11th Cir 1988) ............................................................................................ 26

*Dusek v. JPMorgan Chase & Co.*,
  832 F. 3d 1243 (11th Cir. 2016) ........................................................................................... 25

*Hawthorne v. Mac Adjustment, Inc.*,
   140 F. 3d 1367 (11th Cir. 1998) ................................................. 3

*Hill v. White*,
   321 F. 3d 1334 (11th Cir. 2003) ................................................. 3

*In re Cameron*,
   359 B.R. 818 (M.D. Fla. 2006) ................................................. 29

*In re Chauncey*,
   454 F. 3d 1292 (11th Cir. 2006) ................................................. 29

*In re Hamilton Bankcorp, Inc. Securities Litigation*,
   194 F. Supp. 2d 1353 (S.D. Fla. 2002) ................................................. 11

*In re Livent, Inc., Sec. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999) ................................................. 6

*In re Solv-Ex Corp. Sec. Litig.*,
   210 F. Supp. 2d 276 (S.D.N.Y. 2000) ................................................. 6

*In re Sportsline.com Securities Litigation*,
   366 F. Supp. 2d 1159 (S.D. Fla. 2004) ................................................. 11

*Instituto De Prevision Militar v. Merrill Lynch*,
   546 F. 3d 1340 (11th Cir. 2008) ................................................. 5, 15

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ................................................. 6, 7

*Jones v. Payne*,
   2020 WL 109058 (S.D. Fla. Jan. 8, 2020) ................................................. 3

*Jovine v. Abbott Laboratories, Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ................................................. 4

*Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*,
   792 F. Supp. 1566 (S.D. Fla. 1992) ................................................. 24

*Kyle K. v. Chapman*,
   208 F.3d 940 (11th Cir. 2000) ................................................. 4

*Laperriere v. Vesta Ins. Group, Inc.*,
   526 F. 3d 715 (11th Cir. 2008) ................................................. 22

*Levine v. World Fin. Network Nat'l Bank*,
    437 F. 3d 1118 (11th Cir. 2006) ........................................................ 3

*Luxottica Group, S.p.A. v. Airport Mini Mall, LLC*,
    932 F. 3d 1303 (11th Cir. 2019) ...................................................... 22

*Manufacturers Hanover Trust Co. v. Smith, Barney, Harris Upham &Co. (U.S.A.),*
    924 F. Supp. 488 (S.D.N.Y. 1996) ................................................... *15*

*Mizzaro v. Home Depot, Inc.*,
    544 F. 3d 1230 (11th Cir. 2008) ...................................................... 11

*O'Malley v. O'Neill*,
    887 F. 2d 1557 (11th Cir. 1989) ...................................................... 24

*Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*,
    619 So. 2d 267 (Fla. 1993) .............................................................. 29

*Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*,
    881 So. 2d 565 (Fla. 3d DCA 2004) ................................................ 24

*Phillips v. Scientific-Atlanta, Inc.*,
    374 F. 3d 1015 (11th Cir. 2004) .................................................... 6, 7

*Richard Thorpe & Darrel Weisheit v. Walter Investment Management, Corp.*,
    111 F. Supp. 3d 1336 (S.D. Fla. 2015) ............................................ 18

*Securities and Exchange Comission v. Chen*,
    2019 WL 652360 (W.D. Wash. Feb. 15, 2019) ......................... 10, 13

*Securities and Exchange Comission v. Liu*,
    262 F. Supp. 3d 957 (C.D. Cal. 2017) ............................................ 10

*Securities and Exchange Comission v. Quiros*,
    2016 WL 11578637 (S.D. Fla. Nov. 21, 2016) ......................... 5, 6, 10

*Securities and Exchange Comission v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ........................................................................ 13

*Securities and Exchange Comission v. Zandford*,
    535 U.S. 813 (2002) ................................................................. 14, 15

*Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ........................................................................... 11

*Stone Invest Dakota LLC v. De Bastos*,
   *2015 WL 6997979 (S.D. Fla. Nov. 12, 2015)* ........................................................ 27

*Symphony, LLC v. Romeu*,
   2019 WL 2107288 (S.D. Fla. March 13, 2019) ...................................................... 27

*Wool v. Tandem Computers, Inc.*,
   818 F. 2d 1433 (9th Cir. 1987) ................................................................... 6, 7

*Worldspan Marine Inc. v. Comerica Bank*,
   2019 WL 2267262 (S.D. Fla. Feb. 22, 2019) ........................................................ 24

## Statutes

15 U.S.C. §78u-4 ............................................................................... 5, 12, 21
15 U.S.C. § 77b(a)(1) ............................................................................... 13
15 U.S.C. § 78c(a)(10) .............................................................................. 13
15 U.S.C. § 78j(b) ................................................................................. 13
18 U.S.C. § 1341 ................................................................................... 25
18 U.S.C. § 1957 ................................................................................... 25
18 U.S.C. § 1962(c) ................................................................................ 24
18 U.S.C. § 1964(c) ................................................................................ 24

## Rules

Federal Rule of Civil Procedure 8(a)(2) ............................................................ 20
Federal Rule of Civil Procedure 12 ............................................................... 2, 4

## Regulations

17 C.F.R. § 230.405 ................................................................................ 22
17 C.F.R. § 240.10b-5............................................................................. 5, 13

Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG ("Plaintiffs"), by and through the undersigned counsel, hereby file their Response in Opposition to Defendant GREYSTONE HOTEL MIAMI, LLC, Defendant UNITED EB5, LLC, Defendant SANTA BARBARA 230, LLC, Defendant GREYSTONE TERRA FIRMA, LLC, Defendant VOS HOLDINGS I, LLC, Defendant VOS CRE I LLC, Defendant GREYSTONE HOSPITALITY, LLC, Defendant GREYSTONE HOLDCO, LLC, Defendant GREYSTONE MANAGING MEMBER, LLC, Defendant GREYSTONE MASTER TENANT, LLC, Defendant GREYSTONE TENANT, LLC, Defendant GREYSTONE OPTION HOLDER, LLC, Defendant TRANS INN ASSOCIATES, INC., Defendant VOS HOSPITALITY, LLC, Defendant BBM3, LLC, Defendant BBM3 II, LLC, Defendant JAMES VOSOTAS, Defendant DANIEL VOSOTAS, and Defendant BRANDEL MUHL (collectively "Greystone Defendants") Motion to Dismiss [ECF No. 68] and Incorporated Memorandum of Law ("Motion to Dismiss"), and in support thereof state as follows:

## I.    INTRODUCTION

As alleged in Plaintiffs' Amended Complaint, this case arises out of Defendants' fraudulent scheme to solicit "investments" from Plaintiffs by promising them returns on their investments in the Greystone Project as well as EB-5 immigrant visas. At the direction of Defendant Joseph J. Walsh ("Walsh"), his entities and co-conspirators[1] have defrauded Plaintiffs into investing tens of millions of dollars. Greystone Defendants' Motion to Dismiss is a futile attempt to point fingers and re-brand this case as merely an issue of Walsh's embezzlement. Contrarily, the Amended Complaint contains nearly 300+ paragraphs of allegations explaining how Defendants

---

[1] Co-Conspirators include Walsh, Joseph Walsh Jr., the South Atlantic Regional Center ("SARC"), WWB Trust, USREDA, LLC, USREDA, Holdings, Daniel Vosotas, James Vosotas, the Vosotas Entities, Branden Muhl, BBM 3, LLC, BBM 3, II, LLC, Anthony Reitz, Rubin Ramirez, and PNC Bank, several of whom are Greystone Defendants.
[1931491/7]

GREYSTONE HOTEL MIAMI, LLC, UNITED EB5, LLC, SANTA BARBARA 230, LLC, GREYSTONE TERRA FIRMA, LLC, VOS HOLDINGS I, LLC, VOS CRE I LLC, GREYSTONE HOSPITALITY, LLC, GREYSTONE HOLDCO, LLC, GREYSTONE MANAGING MEMBER, LLC, GREYSTONE MASTER TENANT, LLC, GREYSTONE TENANT, LLC, GREYSTONE OPTION HOLDER, LLC, TRANS INN ASSOCIATES, INC., VOS HOSPITALITY, LLC, BBM3, LLC, BBM3 II, LLC, JAMES VOSOTAS, DANIEL VOSOTAS, and BRANDEL MUHL ("Muhl"), conspired to create and implement a complex scheme to solicit foreign investments and defraud Plaintiffs by promising them a new life in America.

Greystone Defendants cherry pick allegations in the Amended Complaint to argue that Plaintiffs' accusations do not meet the pleading standards, citing to the headings used in the Amended Complaint, rather than the detailed explanations and paragraphs contained under those headings. Greystone Defendants also state that Plaintiffs "lump the plaintiffs" together and do not plead separate facts for each plaintiff, but fail to cite any case law or authority prohibiting the grouping of Plaintiffs. No such authority exists.

For the reasons explained below, the Motion to Dismiss should be denied.

## II.   <u>MEMORANDUM OF LAW</u>

### A.  LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When reviewing a motion to dismiss, courts accept the allegations as presented in the complaint as true and view those facts 'in the light most

[1931491/7]

favorable to the plaintiff.'" *Altare v. Vertical Reality MFG, Inc.*, 2020 WL 209272, at *1 (S.D. Fla. Jan. 14, 2020) (Gayles, D.) (quoting *Hill v. White*, 321 F. 3d 1334, 1335 (11th Cir. 2003)). Courts "may always consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings." *Basson v. Mortgage Electronic Registration Systems, Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018). The issue presented to the Court is "not whether [Plaintiffs] will ultimately prevail… but whether [their] complaint [is] sufficient to cross the federal court's threshold." *Altare*, 2020 WL 209272, at *1 (internal citations omitted).

Pleadings are to be construed broadly, with the allegations in the complaint being viewed in the light most favorable to plaintiff. *See Jones v. Payne*, 2020 WL 109058, at *1 (S.D. Fla. Jan. 8, 2020) (Gayles, D.) (citing *Levine v. World Fin. Network Nat'l Bank*, 437 F. 3d 1118, 1120 (11th Cir. 2006); *Hawthorne v. Mac Adjustment, Inc.*, 140 F. 3d 1367, 1370 (11th Cir. 1998).

## B.  PLAINTIFFS' AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING

Greystone Defendants argue that Plaintiffs' Amended Complaint is a "shotgun" pleading because: (1) numerous Counts adopt the allegations contained in all prior Counts; (2) multiple and repetitive conclusory, vague and immaterial facts not obviously connected to a particular cause of action; and (4) multiple claims against multiple defendants without specifying which acts or which defendants are responsible for which claim. *See* ECF No. 68 at page 8. It is ironic that Greystone Defendants would argue that Plaintiffs' over 500-paragraph Amended Complaint is a "shotgun" pleading and at the same time provide no analysis of the law they cite in their Motion to Dismiss and no specific references to the Amended Complaint to support their arguments that there are pleading deficiencies – It is a shotgun motion.

Greystone Defendants' argument that Plaintiffs' Amended Complaint adopts prior Counts into subsequent counts is plainly disproven from the face of the Amended Complaint. Count I

begins at paragraph 231, and incorporates paragraphs 1-230. Similarly, each of the 42 Counts only incorporate the paragraphs prior to Count I.[2] Because the Counts only incorporate paragraphs 1-230 and Count I begins at paragraph 231, none of the paragraphs incorporated into the Counts contain other Counts, like they did in the cases Greystone Defendants cite. *See Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011) (finding that the complaint was a "shotgun" pleading where it incorporated prior allegations into each subsequent claim for relief).

As for arguments (2) and (4), Greystone Defendants do not provide any specific references to the alleged deficiencies in the Amended Complaint. The Counts in the Amended Complaint unequivocally list the relevant Defendants in the title of the Count, throughout the allegations in the Count, and in the wherefore clause of the Count. Even if certain Defendants are, at times, grouped together in the Amended Complaint, "[t]he fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Finally, even if Plaintiffs' Amended Complaint were a shotgun pleading (it clearly is not), the proper relief for Greystone Defendants would have been to move for a more definite statement rather than moving to dismiss. The Eleventh Circuit finds that "[u]nder the Federal Rules of Civil Procedure, a defendant faced with a [shotgun pleading]…is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Anderson v. District Bd. Of Trustees of Cent. Florida Community College*, 77 F. 3d 364, 366 (11th Cir. 1996). Greystone Defendants' Motion must be dismissed.

---

[2] The Amended Complaint contains a scrivener's error where two individual Counts were inadvertently labeled "Count 40." Therefore, there are 42 Counts in total.

### C. PLAINTIFFS SUFFICIENTLY STATE CLAIMS FOR FEDERAL SECURITIES VIOLATIONS

#### 1. Legal Standard for Federal Securities Claims

"It shall be unlawful for any person, directly or *indirectly*, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

EB-5 litigation commonly arises in federal securities claims, and such claims are not new to this Court. In fact, this very Court has determined that "[t]o establish a violation of Section 10(b) and Rule 10b-5(b), the SEC must prove that the defendant (1) made a material misrepresentation or materially misleading omission, (2) in connection with the sale or purchase of securities, (3) with scienter." *SEC v. Quiros*, 2016 WL 11578637, at *13 (S.D. Fla. Nov. 21, 2016) (Gayles, D.); *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F. 3d 1340, 1352 (11th Cir. 2008).

#### 2. Plaintiffs State a Claim for Securities Fraud Under Section 10(b) and Rule 10b-5:

##### i. MATERIAL MISREPRESENTATION OR OMISSION

"In any private action arising under this chapter in which the plaintiff alleges that the defendant made an untrue statement…the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

[1931491/7]

"Under Rule 10b-5, the maker of the statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Quiros*, 2016 WL 11578637, at *13 (Gayles, D.). (citing *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 141-42 (2011)). "More than one person or entity may have authority over a statement and therefore may be considered the maker of a false statement or responsible for a material omission." *Id.*

In *Phillips v. Scientific-Atlanta, Inc.*, 374 F. 3d 1015, 1018-19 (11th Cir. 2004), the Eleventh Circuit considered the "group pleading" doctrine in securities violations as it was framed in *Wool v. Tandem Computers, Inc.*, 818 F. 2d 1433 (9th Cir. 1987), where the complaint did not attribute fraudulent statements or acts to individual defendants, but instead attributed fraudulent conduct to "all defendants."

> The Ninth Circuit determined that such pleading satisfied Rule 9(b)'s particularity requirement because "[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity where possible the roles of the individual defendants in the misrepresentations. *Id.*, at 1440 (citations omitted). Some other courts have applied the group pleading doctrine to impute the actions or knowledge of some defendants to other defendants, or to presume action or knowledge solely from a defendant's title or position. *See, e.g., In re Solv-Ex Corp. Sec. Litig.*, 210 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) ("Under the group pleading doctrine, Plaintiffs may rely on a presumption that statements in prospectuses, registrations, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company.") (quotation marks omitted); *In re Livent, Inc., Sec. Litig.*, 78 F. Supp. 2d 194, 219 (S.D.N.Y. 1999) ("Group pleading doctrine…permits a plaintiff to allege that misstatements contained in company documents may be presumed to be the work of the company's officers and directors.") (quotation marks omitted)."

[1931491/7]

6

*Phillips*, 374 F. 3d at 1019 (citing *Tandem*, 818 F. 2d at 1440).

Here, Plaintiffs plead above and beyond the particularity requirements described by the Eleventh Circuit in *Phillips*. Though the Court in *Phillips* absolutely permits group pleading in this scenario, Plaintiffs used an abundance of caution, effort and specificity, and repeatedly alleged various and specific misrepresentations made by particular defendants. *See e.g.* ECF No. 44 at ¶¶ 41, 82-87, 93, 97, 106-107, 110-111, 113, 118-119, 122, 124, 126, 160, 288, 562-568, 572-575. Rather than grouping all thirty-one (31) defendants together and referring to them as "defendants" throughout the Amended Complaint like in *Tandem*, Plaintiffs took the time to tediously list the specific defendants involved with each aspect of the misrepresentations. For example, while Plaintiffs were led to believe that Greystone Hotel Miami owned the Greystone Properties, the Greystone Properties were actually owned by Greystone Terra Firma. *See* ECF No. 44 at ¶106:

> Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group concealed and misrepresented the actual ownership of the Greystone Properties on multiple instruments in the Investment Portfolio agreements. Throughout the Investment Portfolio, Defendants state that Greystone Hotel Miami is the owner of the Greystone Properties. The Loan Agreement further states that Defendant, Greystone Hotel Miami owns the Greystone Properties without any encumbrances, this too is false.

In 2011, the Supreme Court addressed the issue of who is to be considered the "maker" of a statement for Rule 10b-5 claims. *See Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it… Without such authority, it is not "necessary or inevitable" that any falsehood will be contained in the statement." *Id.* at 144.

Muhl's direct involvement with the Greystone EB-5 LLLP and the Greystone EB-5 project holds him accountable for the representations made to Plaintiffs regarding the project: "Muhl is listed as a manager of the following Vosotas Entities: (1) Greystone Terra Firma; (2) Greystone Hotel Developer, (3) Greystone Managing Member, and (4) Greystone Tenant. Defendant Muhl, through the Vosotas Entities, is a Fifty Percent (50%) manager/member of the Greystone Properties." (¶80); "Defendant, Muhl owns and manages BBM 3 and BBM II (collectively, hereinafter the 'B Group'). Defendant, Muhl is a business partner and associate of Defendants, D. Vosotas and J. Vosotas." (¶81); Muhl "entered into a partnership with Defendants, Walsh, and the Walsh Entities to obtain EB-5 funding for the Greystone Properties." (¶82); Muhl "created Defendant, Greystone EB-5 Partnership." (¶83); Muhl "provided information regarding the hotel project to Defendants, Wash and the Walsh Entities…include[ing] current equity, project investments, potential loan and mortgage information, development timelines, economic analysis, and the ownership structure of the properties." (¶84); Muhl "created an Investment Portfolio and fake advertising materials for the Greystone Project." (¶85); "[T]hrough website, newsletters, brochures, magazine advertisements and sales agents distributed false information and advertising materials for the Greystone EB-5 Project targeting potential EB-5 investors, particularly in the Chinese market." (¶86); "Through various entities, Defendants, D. Vostoas, J. Vosotas, and Muhl own and manage the Greystone Properties… Muhl used various entities to purchase real property, enter into loan agreements, and assign rights for the Greystone Properties." (¶87).

Courts have considered the "group pleading" doctrine in light of *Janus* to allow a plaintiff to rely on a presumption that written statements are group published statements "made by all individuals with direct involvement in the everyday business of the company." *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373

(S.D.N.Y. 2012) (despite failure to allege a statement made by the vice president, securities fraud claim against vice president could be stated against her on basis of group pleading doctrine) (citing *Camofi Master LDC v. Riptide Worldwide, Inc.*, 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011)); *but see Abdo v. Fitzsimmons*, 2017 WL 6994539 at *9 (N.D. Cal. Nov. 3, 2017) (allegations against "defendants" were deficient where they lacked any particular factual allegations tying the individual defendants to the statements, "Plaintiffs must specifically allege how any particular defendant as connected to the making of a particular statement.").

Again, the Amended Complaint, unlike *Abdo*, does not allege statements made by "defendants" but instead specifically lists the individual defendants who made the statements, specifies each statement alleged to be misleading, and explains why that statement was misleading. However, even if it did group them together, it would be permissible in this context.

For example, Plaintiffs allege that Muhl fabricated loan documents to provide Plaintiffs and USCIS which falsely stated that Greystone Hotel Miami owned the Greystone Properties. *See* ¶107. However, the Greystone Hotel was actually owned by Greystone Terra Firma, not Greystone Hotel Miami. ¶108. The Greystone Property located at 230 20th Street in Miami Beach, Florida is owned by Defendant, Santa Barbara 230, LLC, which, at the time Plaintiffs invested, was owned by Muhl through his entities SB 230 Hospitality, LLC and BBM 3, II. ¶109. While the investment terms produced and propounded by Muhl stated that Plaintiffs' investments were secured by collateral in the Greystone Properties, the Greystone Properties were not actually owned by Greystone Hotel Miami, LLC. ¶112. In fact, "Muhl through the Muhl Entities (BBM3 and BBM3 II) provided the initial funding to purchase the Greystone Properties." ¶291.

Muhl misrepresented and falsely promised that Plaintiffs' investments were secured by a guaranteed return policy. ¶113. Plaintiffs never received a return of their investments.

While issues of material misrepresentations are determinations to be made at summary judgment, other securities enforcement actions involving the EB-5 program have found that there was no material fact at issue that misrepresentations existed where defendant diverted investors' money to himself, his wife, and various marketing companies, and that "[s]uch vast misappropriation is fundamentally inconsistent with the EB-5 program and would dramatically undermine the project's viability and therefore threaten investors' ability to obtain visas." *SEC v. Liu*, 262 F. Supp. 3d 957, 971-72 (C.D. Cal. 2017). "[T]here is no genuine dispute that, at the time of the investment decision, a reasonable EB-5 investor would have found it important to know that Defendants would use his or money for purposes fundamentally at odds with the EB-5 program." *Securities and Exchange Comission v. Chen*, 2019 WL 652360, *14 (W.D. Wash. Feb. 15, 2019). Here, "[o]n or about January of 2016…Muhl illegally transferred Defendant, Greystone Terra Firma to Greystone Delaware Statutory Trust, in anticipation of fraud claims, and to prevent criminal and civil liability." ¶93.

"Projections are actionable as misrepresentations if there is no reasonable basis to support them." *Quiros*, 2016 WL 11578637, at *14 (Gayles, D.) (citations omitted). Plaintiffs clearly and succinctly allege what statements were misrepresented to them, including: that the hotel construction would be completed by the fourth quarter of 2015 (¶127(e)(5)); that the project was anticipated to create 733.7 direct and indirect jobs (¶127(e)(5)); that the Greystone Project will create the necessary number of jobs and economic benefits to assure the foreign investor that their application for residence status is and will continue in good standing (¶127(b)); construction of the Project is to begin concurrently with acquisition of EB-5 funding in 2014 (¶127(f)(ii)); the Partnership anticipates that the Project will be open for business in 2016 (¶127(f)(iii)); that the project was "very near completion" and would be complete for 2016 Season (¶186).

ii.   MADE WITH SCIENTER

Scienter is imputed or inferred to individual and collective defendants through the totality of the allegations in the pleading. *In re Sportsline.com Securities Litigation*, 366 F. Supp. 2d 1159, 1164-65 (S.D. Fla. 2004) ("Courts in the Southern District of Florida have also analyzed the establishment of scienter by looking to the totality of the allegations in a complaint."). The cumulative effect and totality of the allegations in a complaint support a strong inference of scienter. *Id.* (citing *In re Hamilton Bankcorp, Inc. Securities Litigation*, 194 F. Supp. 2d 1353, 1359 (S.D. Fla. 2002).

Because the allegations in this case relate to the allegations in the Transaction Documents, "we look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like)." *Mizzaro v. Home Depot, Inc.*, 544 F. 3d 1230, 1254 (11th Cir. 2008) (citing *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)).

The Amended Complaint alleges Muhl knew that the documents that were prepared and distributed to Plaintiffs were not only inaccurate, but contained falsely inflated promises of return on investments, misrepresentations of a legitimate EB-5 project, and false promises of eventually being able to obtain U.S. Citizenship, all as part of an elaborate scheme to defraud foreign investors. Muhl provided information for and participated in creating Greystone EB-5 LLLP's fraudulent offering materials, the Greystone EB-5 LLLP Limited Partnership agreement, Greystone Project's business plans, loan documents, subscription, limited partnership, and escrow agreements. ¶126. Muhl also provided false and misleading information to Plaintiffs' immigration attorneys in an attempt to hide and conceal the fact that the representations made to Plaintiffs about

their investment in the Greystone Project were entirely fabricated. ¶160(a). In an attempt to knowingly conceal the misrepresentations used to induce Plaintiffs' investments, Muhl went as far as providing Plaintiffs' immigration attorneys with photos of ongoing construction at the Greystone Hotel and claiming that it was construction of the Santa Barbara Apartments. ¶160(a). Walsh and his co-conspirators created shell companies, under Muhl's ownership and control, to hold actual title to the Greystone Properties and to conceal from Plaintiffs where their investments were truly being transferred to. ¶19. Once the fraud had been exposed, Muhl then moved the Greystone Properties to new shell entities in Delaware in an attempt to further conceal and misrepresent the truth, that Plaintiffs would never receive their promised returns on investments, refunds, or citizenship. ¶¶19, 176, 178, 180. Muhl knew that Plaintiffs' investments were not managed by a legitimate escrow agent, as promised, or placed in a legitimate escrow account, as promised. ¶105. Muhl engaged and participated in a course of conduct including concealing adverse material information about the fake escrow account, the status of the project, and the funding available for completion of the Greystone EB-5 Project. ¶563. Muhl designed a scheme to entice foreign investors to purchase limited partnership interests in the Greystone EB-5 LLLP partnership, and participated in the creation, development, and publication of the Greystone EB-5 LLLP's sales, marketing, projections and/or reports, which he knew were materially false and misleading. ¶565.

Plaintiffs therefore "state with particularity the facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. §78u-4(b)(2).

### iii. CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES

The Supreme Court has identified "investment contracts" as used in the Securities Act to mean "a contract, transaction or scheme whereby a person invests his money in a common

enterprise and is led to expect profits solely from the efforts of the promotor or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

Courts often consider EB-5 projects in federal securities claims. In *Securities and Exchange Commission v. Chen*, 2019 WL 652360, at *10-11 (W.D. Wash. Feb. 15, 2019) the Court found that membership interests in a limited liability company constituted "securities" within the meaning of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. "The Securities and Exchange Acts define the term 'security' to include, among other things, 'any…investment contract.'" *Id.* at *10 (citing 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10)). The *Chen* Court found that even though the foreign investors' primary motivation in investing in the LLC was to obtain permanent residency, the offering documents promised the investors a chance to earn a profit. *Id.* at *11.

The *Chen* Court also found that simply because the defendants had afforded some investors a security interest in real property did not immunize them from liability for material misrepresentations in the offering documents. *See Chen*, 2019 WL 652360 at *12. The *Chen* defendants also argued that they performed under the offering documents exactly what the investors were promised because the EB-5 project was completed and created hundreds of new jobs, and therefore the court could not find that they misrepresented how they intended to use investor funds. The Court disagreed, finding that "[m]ere completion of the project does not absolve Defendants of misappropriating investor funds." *Id.* at *12. (citing *Matter of Y-L-* at 3).

Greystone Defendants ignore the well-founded principles underlying federal securities law and instead argue that because the Greystone EB-5 LLLP never loaned funds to Greystone Hotel

Miami, LLC, that no security was created in favor of Greystone EB-5 LLLP. This argument borders on bad faith. *See* ECF No. 44-5, page 9 (Greystone Hotel Miami, LLC "hereby grants to [Greystone EB-5 LLLP] a subordinated security interest in all of the Borrower's present and future right, title and interest in real property, furniture and fixtures, inventory, deposit accounts and reserve bank accounts, lease reserve accounts wherever located and whether now existing or hereafter created or arising, collectively called the "Collateral."). Greystone Defendants cannot allege that because they committed fraud, misappropriated investor funds, and failed to fund a project that there is no securities fraud. Plaintiffs were solicited with misrepresentations to invest in the Greystone Project. *See* ECF No. 44-10, page 14 ("Units of limited partnership interests in the Partnership shall be issued to Investors in this Offering, with one (1) Unit issued for each $500,000 investment."); ECF No. 44, ¶ 94 ("By way of a partnership agreement, security agreement, loan agreement and contract, in 2014-2017, Plaintiffs invested Five Hundred Thousand Dollars ($500,000.00) into the Greystone Partnership in exchange for one (1) partnership share.") *See S.E.C. v. Zandford*, 535 U.S. 813, 814 (2002) ("This Court disagrees with respondent's claim that his misappropriation of the proceeds, though fraudulent, does not have the requisite connection with the sales, which were perfectly lawful. The securities sales and respondent's practices were not independent events. Taking the complaint's allegations as true, each sale was made to further his fraudulent scheme; and each was deceptive because it was neither authorized by, nor disclosed to, the Woods. In the aggregate, the sales are properly viewed as a course of business that operated as a fraud or deceit on a stockbroker's customer.").

The Supreme Court has repeatedly held that the phrase "in connection with the purchase or sale" of a security in § 10(b) "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (quotation marks

omitted). "It is enough that the scheme to defraud and the sale of securities coincide." *Id.* at 822; *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F. 3d 1340, 1348 (11th Cir. 2008).

Greystone Defendants cite *Manufacturers Hanover Trust Co. v. Smith, Barney, Harris Upham & Co. (U.S.A.)*, 924 F. Supp. 488 (S.D.N.Y. 1996) for the proposition that conversions and embezzlements that occur after an investment are not in connection to the sale of securities. To the contrary, *Manufacturers* stands for the proposition that fraudulent change in ownership of securities, e.g., embezzlement or conversion, does not alone constitute sufficient basis for finding sale of securities within the meaning of § 10(b) of the Securities Exchange Act of 1934. This is not the case here.

Here, the embezzlement was connected to the securities because Greystone Defendants induced Plaintiffs into investing in the Greystone EB-5 project in exchange for a security interest in Greystone EB-5 LLLP when in reality Greystone Defendants knew that the investment was not legitimate, that Plaintiffs would not receive a return on their investments, that plaintiffs would not be approved for I-526 petitions, and that Plaintiffs would never receive a refund of their investments. Muhl knew that the funds were going into fake escrow. This is not simply a case where there was a transfer of a security and later embezzlement of that security. This was a complex, organized, and detailed scheme to lure Plaintiffs into emptying their pockets in the hopes of one day becoming U.S. Citizens. *See e.g.* ECF No. 44: "This case stems from Defendants' fraudulent scheme to induce Plaintiffs into investing in United States real estate to obtain EB-5 immigrant visas." (¶1); "To date, none of the Plaintiffs' investments have been accounted for, let alone returned, and all of the Plaintiffs' EB-5 Visa applications have been denied by USCIS." (¶8); "Defendant, Walsh and his co-conspirators developed an elaborate scheme to wrongfully obtain investments from the Plaintiffs for illegitimate purposes. Defendants conspired to fraudulently

induce each Plaintiff to invest Five Hundred Thousand Dollars ($500,000.00), plus an additional Forty-Five Thousand Dollar ($45,000.00) "administrative fee," and an additional Fifteen Thousand Dollar ($15,000.00) "legal services fee" into the Greystone EB-5 project, the EB-5 Partnership, and the Greystone Properties development (hereinafter "Greystone Project")." (¶9).

### 3.   Solicitation Allegations are Sufficient

Plaintiffs' Amended Complaint contains nearly four pages of paragraphs that list exactly what was misrepresented to Plaintiffs in Defendants' Investment Portfolio, which included a Limited Partnership Agreement, Subscription Agreement, PPM, Legal Service Agreement, Escrow Agreement, Loan Agreement, Business Plan, and Economic Report. *See* ¶¶119-122. Greystone Defendants claim that Plaintiffs fail to show how these marketing statements were false or misleading. First and foremost, the crux of the marketing materials is that they represented that Plaintiffs would receive certain things for their investments that they never received. *See* ECF No. 44 "United EB-5 offered a 'Guarantee: Simply stated, You get approved, or your money back!'" ¶119(d)(iv); "United EB-5 offered a, "Guarantee: For these reasons we are delighted to offer a FULL REFUND in the unlikely event the Immigration Service denies a submission." ¶119(d)(vi); "That the Greystone Project had $7.7 million in developer equity, or 12.2%. ¶119(a)(xiii); "The undersigned Subscriber hereby subscribes to and agrees to purchase an equity interest in Greystone EB-5 LLLP, a Florida limited liability limited partnership ("Partnership") consisting of a $500,000 equity investment in the Partnership ("Investment") as set forth below on the signature page hereof." ECF No. 44-13, page 1.  Greystone Defendants argument that the project was nevertheless completed has no bearing on the fact that Plaintiffs' investments were wrongfully induced with false statements, completely misappropriated and used in violation of the investor documents and process guide, and were wrongfully retained and never refunded. It is of no importance to Plaintiffs

that the Greystone project was ultimately completed… Plaintiffs investments were not appropriately invested in the project as was promised in the documents.

While Greystone Defendants claim that Plaintiffs' solicitation allegations regarding misrepresentations fall short of the pleading standards and only claim that "advertisements induced Plaintiffs into investing into the Greystone Project," that is plainly disproven by looking at Plaintiffs' Amended Complaint.

"Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group concealed and misrepresented the actual ownership of the Greystone Properties on multiple instruments in the Investment Portfolio agreements. Throughout the Investment Portfolio, Defendants state that Greystone Hotel Miami is the owner of the Greystone Properties. The Loan Agreement further states that Defendant, Greystone Hotel Miami owns the Greystone Properties without any encumbrances, this too is false." (¶106); "Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group went as far as to fabricate and provide Plaintiffs and USCIS with loan documents falsely stating that Defendants, Greystone Hotel Miami owned the Greystone Properties. These false loan documents were never filed with the Miami-Dade County Clerk of Court. A true and accurate copy of the Loan Document is attached hereto as **Exhibit 5."** (¶107); "At the time Plaintiffs were defrauded, the Greystone Hotel was owned by Defendant, Greystone Terra Firma. Furthermore, Greystone Terra Firm was not owned by Defendant, Greystone Hotel Miami. As stated above, Defendants have now transferred the Greystone Properties, including the Greystone Hotel, to Greystone Delaware Statutory Trust to further conceal the truth." (¶108).

Greystone Defendants argue that Plaintiffs do not distinguish amongst themselves throughout their Amended Complaint and therefore cannot claim that material misrepresentations

[1931491/7]

or omissions were made to each Plaintiff. Notably, Greystone Defendants do not cite to a single case that requires Plaintiffs to plead each misrepresentation that was made to each plaintiff. To the contrary, Federal Securities Laws provide for class action lawsuits in which it would be an absolute impossibility for such pleading to be required. *See e.g. Richard Thorpe & Darrel Weisheit v. Walter Investment Management, Corp.*, 111 F. Supp. 3d 1336 (S.D. Fla. 2015).

### 4. The Transactional Documents

Greystone Defendants make several arguments denying the allegations in Plaintiffs' Amended Complaint without any explanation as to why Plaintiffs' federal securities claims should be dismissed. Greystone Defendants claim that Plaintiffs were not investors in Greystone Hotel Miami, LLC or its related entities. This is simply untrue. Plaintiffs invested in Greystone EB-5 LLLP, referred to in the Amended Complaint as "Greystone EB-5 Partnership." ECF No. 44 at ¶5. "From 2014 to 2016, Defendant, Greystone EB-5 Partnership offered and sold limited partnership "units" totaling up to Twenty-Two Million Dollars ($22,000,000.00) to at least eight (8) foreign investors through the EB-5 Program." ¶6.

Greystone Defendants attempt to prove that Plaintiffs "implausibly construe" the transaction documents does nothing more than prove that the representations in the Investment Portfolio were false misrepresentations of fact. The fact that Greystone Defendants cherry-pick statements from the transaction and loan documents to try to prove that Plaintiffs are misconstruing the documents when Plaintiffs' Amended Complaint is based on the exact misrepresentations in the documents borders bad faith.

Greystone Defendants claim because the Limited Partnership (Greystone EB-5 LLLP) never loaned any money to Greystone Hotel Miami, LLC, that the repayment conditions were never met and therefore Greystone Hotel Miami, LLC has no obligation to return the funds to the Limited Partnership (Greystone EB-5 LLLP). This is simply not true, and the argument itself

[1931491/7]

borders on a misrepresentation. Indeed, the page of the loan document that Greystone Defendants cite to says the exact opposite. The loan document between Greystone EB-5 LLLP (Lender) and Greystone Hotel Miami, LLC (Borrower) specifically states:

> Each Advance is issued to Borrower as part of an offering of investment United to EB-5 Investors, and may be advanced before those investors' I-526 applications with USCIS are approved. In such a case, **if an individual investor's I-526 application is denied without possibility of cure, Borrower shall, within 60 days, refund the full amount of the Advance attributable to that investor to Lender.**

ECF No. 44-5, page 3 (emphasis added). There is no "limited repayment obligation" or additional preconditions. Simply and straightforwardly, Greystone Hotel Miami, LLC guaranteed repayment in the event Plaintiffs I-526 applications were denied.

The unequivocal refund guarantees are riddled throughout the transaction documents. "In the event the Escrow Agent receives written notice from the LP that a Subscriber's Form I-526 Immigration Petition has been denied by the USCIS, the Escrow Agent shall return to the Subscriber the Subscription Agreement…and the Subscription Proceeds tendered therewith, without deduction or payment of interest." ECF No. 44-11, page 2. "THE MONEY INVESTED WILL BE HELD IN AN ESCROW ACCOUNT AND RETURNED TO THE APPLICANT IN THE EVENT THAT THE APPLICANT IS DENIED." ECF No. 44-4, page 8.



ECF No. 44-8, page 6.

As alleged in the Amended Complaint and furthered by the misrepresentations in Greystone Defendants' Motion to Dismiss, this was a lie, a false representation made to induce Plaintiffs to contribute funds.

### 5. The Fake Escrow Account

Greystone Defendants seemingly argue that Plaintiffs' Amended Complaint should be dismissed because "the Greystone Defendants Did Not Know That the Escrow Account was 'Fake.'" *See* ECF No. 68, page 24. Whether Greystone Defendants ***actually*** knew if the account was fake or not is not an issue to be determined in a Motion to Dismiss. Plaintiffs' allegation, which must be accepted as true, is that "Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group formed a fake escrow account that allowed them to misappropriate Plaintiffs' funds outside the terms of the Investment Portfolio agreements." ¶102. "Defendants, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew or should have known Plaintiffs' funds were not managed by a legitimate escrow agent or placed in a neutral escrow account." ¶104. And, Plaintiffs are not required to prove more than enough facts to support a plausible inference. *Ashcroft*, 556 U.S. 662 at 678.

Furthermore, Plaintiffs' federal securities claims do not hinge on Plaintiffs' allegation that the escrow account was fake (it was) or that Muhl or Greystone Defendants knew that the account was fake (they did). As explained in detail, Plaintiffs allege every element of a Section 10(b) and Rule 10b-5 violation.

### 6. Loss Causation

In pleading loss causation, "[w]hile Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' and while

[1931491/7]

the Court assumes that neither the Rules nor the securities statutes place any further requirement in respect to the pleading, the 'short and plain statement' must give defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 337 (2005) (citations omitted). Notably, the Securities and Exchange Act does not require Plaintiffs to prove loss causation at the pleading stage, but does require Plaintiffs to "prove[] that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4.

Plaintiffs clearly plead sufficient allegations of loss causation to give Greystone Defendants fair notice of the substance and background of their claims. *See* ECF No. 44 at ¶567 ("As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth herein, Greystone EB-5 Partnership appeared to be a legitimate investment opportunity for foreigners seeking a path to United States residency though an EB-5 visa. Unbeknownst to the Plaintiffs, the Greystone EB-5 Partnership was merely a façade for a criminal scheme, Plaintiffs invested their money in to Greystone EB-5 Partnership and suffered damages."); ¶570 ("As a direct and proximate result of Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's wrongful conduct, Plaintiffs suffered damages in connection with their respective purchase of limited partnership interests in the Greystone EB-5 Partnership."); ¶576 ("As a direct and proximate result of Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's conduct, Plaintiffs suffered damages in connection with their purchases of the Greystone EB-5 Partnership securities."). "To date, none of the Plaintiffs' investments have been accounted for, let alone returned, and all of the Plaintiffs' EB-5 Visa applications have been denied by USCIS." ¶8.

[1931491/7]

21

Contrary to Greystone Defendants conclusory argument that Plaintiffs fail to plead loss causation, as explained above in detail, Plaintiffs allege the entire scheme of misrepresentations used to induce their investments and how those misrepresentations cause Plaintiffs substantial damages.

### 7. Section 20(a) Claim

"Section 20(a) should be construed liberally" to impose liability "not only on the person who actually commits a securities law violation, but also on an entity or individual that controls the violator." *Laperriere v. Vesta Ins. Group, Inc.*, 526 F. 3d 715, 723, 721 (11th Cir. 2008). A corporation only acts through its officers and agents. *See Luxottica Group, S.p.A. v. Airport Mini Mall, LLC*, 932 F. 3d 1303, 1317 (11th Cir. 2019). The Securities and Exchange Commission promulgated a specific definition of "control" under the Act, "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. To allege control person liability under section 20(a), a plaintiff must allege that "(1) the defendant had the power to control the general affairs of the primary violator, and (2) the defendant had the power to control the specific corporate policy that resulted in the primary violation." *Laperriere*, 526 F. 3d at 723.

Plaintiffs allege Muhl's power to control the general affairs of the primary violator, Greystone EB-5 LLLP: "Beginning in 2014, Defendants D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group entered into a partnership with Defendants, Walsh, and the Walsh Entities to obtain EB-5 funding for the Greystone Properties." (¶ 82); "To further this partnership, Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group created Defendant, Greystone EB-5 Partnership." (¶83); "Defendants, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then provided information regarding the

[1931491/7]

hotel project to Defendants, Wash and the Walsh Entities. This information included current equity, project investments, potential loan and mortgage information, development timelines, economic analysis, and the ownership structure of the properties." (¶84); "Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then created an Investment Portfolio and fake advertising materials for the Greystone Project." (¶85); "Defendants, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group through websites, newsletters, brochures, magazine advertisements and sales agents distributed false information and advertising materials for the Greystone EB-5 Project targeting potential EB-5 investors, particularly in the Chinese market." (¶86).

Simply put, Muhl created "Greystone EB-5 LLLP" to induce foreign investors into funding the Greystone Properties, which he owned and managed. Muhl was therefore able to falsify documents in the Investment Portfolio for Greystone EB-5 LLLP by promising investors equity in the project, a return on their investment, a path to U.S. Citizenship through the EB-5 program, and a refund if investors' I-526 applications were denied. In reality, Muhl knew that Plaintiffs would never receive equity, a return on their investment, a path to U.S. Citizenship through EB-5, or a refund for the denial of their I-526 applications. Muhl's plan was never to use the money for a legitimate EB-5 project but rather to create a complicated web of entities to misappropriate Plaintiffs' investments and conceal the ultimate recipients of Plaintiffs' lives savings.

Greystone Defendants' argument that Plaintiffs fail to allege Muhl's role in the Limited Partnership (Greystone EB-5 LLLP) or power to control the corporate policies that resulted in the securities violations is plainly contradicted by these allegations.

### A.  PLAINTIFFS PROPERLY ALLEGE RICO VIOLATIONS

#### 1.  Legal Standard for RICO Claims

As Greystone Defendants explain in their Motion to Dismiss, to state a claim under the federal RICO statute, plaintiffs must allege: (1) conduct or participation in an enterprise; and (2) through a pattern of racketeering activity. *See* ECF No. 68, page 26 (citing 18 U.S.C. § 1962(c)). Plaintiffs must "clearly identify the injury suffered and the predicate acts from which the injury flowed." *Worldspan Marine Inc. v. Comerica Bank*, 2019 WL 2267262, at *6 (S.D. Fla. Feb. 22, 2019).

To establish a RICO § 1962(c) violation, it must be alleged that: (1) Defendant was associated with an enterprise; (2) Defendant knowingly committed at least two predicate acts; (3) the predicate acts formed a pattern by having the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics so that they were not isolated events; (4) the predicate acts amounted to or threatened the likelihood of continued criminal activity posing a threat of continuity projecting into the future; (5) the enterprise was engaged in or its activities affected interstate commerce; and (6) Plaintiffs were injured in their business or property as a result of Defendant's commission of the pattern of racketeering activity. 18 U.S.C. § 1962(c); 11th Cir. Pattern Civil Jury Instr. 5.1 (2000).

To have standing under RICO, a plaintiff must allege: (1) violation of the statute; (2) injury to business or property; and (3) that the violation caused the injury. *See Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, 792 F. Supp. 1566, 1577 (S.D. Fla. 1992) (citing *O'Malley v. O'Neill*, 887 F. 2d 1557, 1560-61 (11th Cir. 1989); 18 U.S.C. § 1964(c)). The inquiry for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable. *See Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So. 2d 565, 573 (Fla. 3d DCA 2004), *rev*. *denied*, 895 So. 2d 406 (Fla. 2005). [1931491/7]

With regard to standing of foreign plaintiffs, standing focuses on the "geographic location of the injury to plaintiffs, not the location of a defendant's wrongful acts." *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1325 (M.D. Fla. 2017).

### 2. Plaintiffs Properly State a RICO Claim

Greystone Defendants argument for dismissal of Plaintiffs' RICO claims is that Plaintiffs did not plead that Greystone Defendants were connected to Walsh's theft of the Limited Partnership's (Greystone EB-5 LLLP) Escrow Account and Plaintiffs did not establish an illegal enterprise for that purpose. However, and as more fully explained above, Greystone Defendants were involved in the scheme to create, produce, and distribute misrepresentations about the Greystone EB-5 Project to Plaintiffs in order to induce investments. The Greystone Defendants did this despite knowing that the project was not legitimate, that Plaintiffs would never get a return on their investment, refund, or approved U.S. Citizenship based on the EB-5 program. This is not simply a case of embezzlement or theft of investment funds. Greystone Defendants collaborated with Walsh and his co-conspirators to devise an illicit scheme to defraud foreign nationals.

Greystone Defendants rely on one single case, *Dusek v. JPMorgan Chase & Co.*, 832 F. 3d 1243 (11th Cir. 2016), which states that Plaintiffs cannot only rely upon conduct that would have been actionable as securities fraud to establish a RICO violation. However, other than Defendant Muhl, there are no securities fraud allegations against Greystone Defendants in the Amended Complaint. As evidenced by the plain language of Count 41, which outlines the Federal RICO claims against Greystone Defendants, the predicate acts are not simply based in fraud in the purchase of securities, but rather on violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1957.

As such, Plaintiffs state a claim for RICO.

[1931491/7]

### 3.  Plaintiffs Have Standing Under RICO

Greystone Defendants' argument that Plaintiffs did not suffer a domestic injury is negated by the plain allegations in Plaintiffs' Amended Complaint: Defendants solicited investments from Plaintiffs for the Greystone Hotel Project or Greystone EB-5 LLLP in Miami Beach, Florida (¶5); the equity and interest in the Greystone properties was in Miami Beach, Florida (¶6); the materials provided to Plaintiffs were for purported investments in properties located in Miami Beach, Florida (¶6), and the investment was made, misappropriated, and lost in Miami, Florida and the surrounding areas; Plaintiffs relied upon representations that their funds would be invested in Greystone Hotel Miami in Miami, Florida (¶220); Plaintiffs' investments were lost in the United States (¶8); Plaintiffs' EB-5 Visa applications have accordingly been denied by the United Sates Citizenship and Immigration Services (¶8); Plaintiffs made deposits to the fake escrow account operated out of Boynton Beach, Florida (¶ 57); Plaintiffs believed their investments would be secured by real property in Miami, Florida, and it was not (¶230). Plaintiffs' injuries are, based on the allegations in the Amended Complaint, almost exclusively domestic despite the location of Plaintiffs.

### D.  COMMON LAW AND STATUTORY CLAIMS

#### 1.  Legal Standard

"Rule 9(b) must be read in conjunction with Rule 8(1) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F. 3d 1364, 1371 (11th Cir. 1997) (internal citations omitted).

"The application of [Rule 9(b)] must not abrogate the concept of notice pleading... alternative means are also available to satisfy the rule." *Durham v. Business Management Associates*, 847 F. 2d 1505, 1511-1512 (11th Cir 1988).

[1931491/7]

Defendants also argue that "[i]f each preceding cause of action 'sounds in fraud'" then Rule 9(b) should apply. *See* ECF No. 68 at page 9, (citing *Symphony, LLC v. Romeu*, 2019 WL 2107288 (S.D. Fla. March 13, 2019)). However, merely stating that certain counts are subject to heightened scrutiny because "they are based upon the same alleged fraudulent conduct" [ECF No. 68 at page 8] is insufficient to warrant a Rule 9(b) analysis:

> This Court has explicitly rejected the dismissal of claims due to a defendant's failure to explain *why* those claims sound in fraud. *See De Bastos,* 2015 WL 6997979, at *4[3] (rejecting dismissal of claims, including a claim for conversion, where defendants provided no authority to support an argument that certain claims sound in fraud.) Here, the Motion [to dismiss] fails to explain not only why Symphony's individual claims sound in fraud, but also why the entire complaint sounds in fraud based upon the same alleged fraudulent statements or omissions. Accordingly, the Court declines to dismiss any of these counts for failure to plead with sufficient particularity under Rule 9(b).

*Id.* at *3 (denying defendants' motion to dismiss) (emphasis added).

Here, Greystone Defendants merely string-cite a slew of cases to support their argument that Rule 9(b) applies to fraudulent misrepresentation, fraudulent inducement, civil conspiracy, conversion, and breach of fiduciary duty. Without any analysis whatsoever, Greystone Defendants ask this Court to dismiss fourteen (14) individual Counts in Plaintiffs' Amended Complaint because they allegedly sound in fraud. There is no explanation, as required in *Symphony* and *De Bastos*, as to *why* those claims in Plaintiffs' Amended Complaint sound in fraud.

Instead, Greystone Defendants claim that Plaintiffs' Florida causes of action do not contain any facts showing that each plaintiff "received the Transactional Documents, read them, actually attended the two China meetings, executed the operative agreements, used their funds to invest in the Limited Partnership and plausibly and reasonably relied upon any representations made by

---

[3] *Stone Invest Dakota LLC v. De Bastos*, 2015 WL 6997979 (S.D. Fla. Nov. 12, 2015).

[1931491/7]

each Greystone Defendant… the Greystone Defendant met with, knew of , spoke to, communicated with or interacted with each plaintiff…that the Greystone Defendants knew that any plaintiff had executed the Transactional Documents, sent the funds to the Limited Partnership and that their investment funds had been deposited into a PNC account…that any of the Greystone Defendants knew of Walsh's plans to embezzle the Limited Partnership's funds, and plaintiffs do not factually support their allegation that the Greystone Defendants received the funds Walsh had converted." *See* ECF No. 68, pages 28-29. Greystone Defendants do not explain why Plaintiffs would need to prove these specific facts, which claims they believe these facts are insufficient for, or the elements needed to be alleged with particularity for each claim. Without this explanation, Plaintiffs cannot determine which elements of which Florida causes of action Greystone Defendants contend require these statements to be made.

### 2.  Standing to Bring Direct Action

Once again, Greystone Defendants attempt to make this case simply about Walsh's embezzlement rather than the conspiracy created by Greystone Defendants to defraud Plaintiffs.

Plaintiffs' damages are not the sole result of Walsh's embezzlement but instead result from the intricate and calculated scheme to defraud their investments in the EB-5 program.

An action may be brought directly if "(1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by other shareholders or members." *Dinuro Investments, LLC v. Camacho*, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014). Plaintiffs' claims are not derived from a direct injury to the Limited Partnership (Greystone EB-5 LLLP). In fact, as Greystone Defendants claim, the project was completed and is scheduled to open in January 2020. Therefore, Plaintiffs' injuries are

[1931491/7]

not solely the result of an injury suffered by the Limited Partnership (Greystone EB-5 LLLP) because other investors were not harmed in the same way.

### 3. Equitable Lien Claims

Florida awards equitable liens where monies are obtained through fraud or egregious conduct. *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 269-270 (Fla. 1993); *see also In re Cameron*, 359 B.R. 818, 822 (M.D. Fla. 2006); *In re Chauncey*, 454 F. 3d 1292, 1294 (11th Cir. 2006). "The key is how the monies were obtained, not how they were used." *Id.* Defendants acknowledge this and indeed cite the same authority as Plaintiffs. *See Palm Beach*, 619 So. 2d 267.

Greystone Defendants shockingly represent to the Court that the Amended Complaint does not allege that Greystone Defendants made misrepresentations. This is directly controverted by Amended Complaint paragraphs 13-14, 16, 19, 22, 25-28, 37, 39, 42-49, 53, 96, 102, 104-116, 118-121, 126, 162, 169-170, 175-192, 197-198, 200-202, 204-205, 209-213, and 216-230, which state that Greystone Defendants made material, false representations to Plaintiffs that induced them to invest in the Greystone Project. Each of these misrepresentations led to the unjust enrichment of the Greystone Defendants. However, even if Greystone Defendants' allegations had any merit and there were no misrepresentations alleged in the Amended Complaint (there were many) then Greystone Defendants were unjustly enriched by a mutual mistake, i.e. relying on the representations of the Walsh Defendants.

Either way, and without question, Greystone Defendants benefitted from the several million dollars invested by the Plaintiffs. Greystone Defendants make the assertion that "Walsh's embezzlement precluded the Limited Partnership's construction loan," however, these facts are nowhere in the record and this argument is outside of the four corners of the Amended Complaint.

[1931491/7]

III.   **CONCLUSION**

Plaintiffs' Amended Complaint far surpasses the pleading requirements by alleging the details behind Greystone Defendants' direct involvement in soliciting Plaintiffs' investments and later misappropriating the same and should survive a motion to dismiss. The Amended Complaint clearly explains how certain Greystone Defendants made material misrepresentations and created a chain of corporate entities to conceal their bad acts and obtain unrestricted access to Plaintiffs' lives savings. Greystone Defendants' Motion to Dismiss Counts 4, 5, 6, 7, 11, 12, 13, 14, 19, 20, 21, 25, 26, 28, 29, 31, 32, 33, 36, 40, 40, and 41.

Respectfully submitted,

ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 595-6060
Facsimile: (954) 989-7781
Primary Email: jshaw@zpllp.com;
srusso@zpllp.com
Secondary Email: mperez@zpllp.com;
jgarcia@zpllp.com


By:   _/s/ Candace Phillips_____
JORDAN A. SHAW, ESQ.
Fla. Bar No. 111771
CANDACE PHILLIPS, ESQ.
Fla. Bar. No. 1010368
STEFFANI M. RUSSO, ESQ.
Fla. Bar No. 1002598

and

SMS LAW GROUP, APC
*Co-Counsel for Plaintiffs*
Kevin Qi, Esq.
CA Bar No. 284314
*Pro Hac Vice Granted*
2221 Camino Del Rio S.
Ste. 100

[1931491/7]

San Diego, CA 92108
Telephone: (619) 342-7887
Facsimile: (619) 255-9559
Primary Email: kevinqi@smslawfirm.us

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of February, 2020, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF which will notify all parties.

_/s/ Candace Phillips_
Candace Phillips, Esq.

[1931491/7]

31