UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-24138-CIV-GAYLES/OTAZO-REYES

YUANXIAO FENG, *et al.*,

    Plaintiffs,

v.

JOSEPH WALSH, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon the following submissions:

➢    Defendants PNC Bank, N.A. ("PNC Bank") and Ruben Ramirez ("Ramirez") (together, "PNC Defendants") Motion to Dismiss the Amended Complaint (hereafter, "PNC Defendants' Motion to Dismiss") [D.E. 51]; and

➢    Defendants Greystone Hotel Miami, LLC ("Greystone Hotel Miami"), United EB5 LLC ("United EB5"), Santa Barbara 230, LLC ("Santa Barbara 230"), Greystone Terra Firma, LLC ("Greystone Terra Firma"), VOS Holdings I, LLC ("VOS Holdings I"), VOS CRE I, LLC ("VOS CRE I"), Greystone Hospitality, LLC ("Greystone Hospitality"), Greystone Holdco, LLC ("Greystone Holdco"), Greystone Managing Member, LLC ("Greystone Managing Member"), Greystone Master Tenant, LLC ("Greystone Master Tenant"), Greystone Tenant, LLC ("Greystone Tenant"), Greystone Option Holder, LLC ("Greystone Option Holder"), Trans Inn Associates, LLC ("Trans Inn Associates"), VOS Hospitality, LLC ("VOS Hospitality"), BBM 3, LLC ("BBM 3"), BBM 3 II, LLC ("BBM 3 II"), James Vosotas ("J. Vosotas"), Daniel Vosotas

("D. Vosotas"), and Branden Muhl's ("Muhl") (collectively, "Greystone Defendants") Motion to Dismiss Amended Complaint (hereafter, "Greystone Defendants' Motion to Dismiss") [D.E. 68].[1]

These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 106]. The undersigned held a hearing on these matters on June 17, 2020 [D.E. 110]. For the reasons stated below, the undersigned respectfully recommends that the PNC Defendants' Motion to Dismiss [D.E. 51] and the Greystone Defendants' Motion to Dismiss [D.E. 68] be GRANTED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Yuanxiao Feng, Kiu Chun Saxon Hui, Lai King Hui, Jing Kuang, Chuen Ping Ng, Minyang Tian, Hongsen Zhang, and Yan Zhang (collectively, "Plaintiffs"), all of whom are foreign nationals, commenced this action on October 8, 2019 [D.E. 1]. In their Amended Complaint, filed on December 2, 2019, Plaintiffs allege that they were defrauded out of millions of dollars that they claim to have invested through Defendant Walsh to obtain permanent residence in the United States through the federally-sanctioned EB-5 Immigrant Investor Program (hereafter, "EB-5 Program"). See Am. Compl. [D.E. 44].[2]

Plaintiffs further allege that:

> ➢ Walsh, through his entity the Greystone EB-5 Partnership, offered and sold limited partnership units to foreign investors seeking to participate in an approved EB-5

---

[1] Additional Defendants who have not responded to the Amended Complaint are: Joseph Walsh ("Walsh"), Joseph Walsh, Jr. ("Walsh, Jr."), Anthony Reitz ("Reitz"), Leslie Robert Evans ("Evans"), South Atlantic Regional Center, LLC ("SARC"), USREDA, LLC ("USREDA"), Greystone EB-5, LLLP ("Greystone EB-5 Partnership"), USREDA Holdings, LLC ("USREDA Holdings"), USREDA Management, LLC ("USREDA Management"), and WWB Trust, LLC ("WWB Trust"). SARC was served on October 29, 2019 [D.E. 35], but it has not entered an appearance. On April 28, 2020, a Clerk's Default was entered against Greystone EB-5 Partnership, USREDA Holdings, USREDA Management, USREDA, and WWB Trust [D.E. 102]. On May 5, 2020, Evans was voluntarily dismissed [D.E. 104]. On June 11, 2020, Walsh and Walsh, Jr. were served by alternate means, but they have not entered an appearance [D.E. 109]. Reitz, who is appearing *pro se*, has not filed a response to the Amended Complaint [D.E. 24].

[2] "[T]he EB-5 Immigrant Investor Program . . . provides visas to aspiring immigrants who make qualifying investments in U.S. commercial projects." Tingzi Wang v. United States Citizenship & Immigration Servs., 375 F. Supp. 3d 22, 26 (D.D.C. 2019) (citing 8 U.S.C. § 1153(b)(5)).

2

Program.

➤ Walsh falsely represented to investors that the Greystone EB-5 Partnership would develop, renovate, and operate two adjacent properties in Miami Beach, Florida (hereafter, "Greystone Properties"), one of which would become the Greystone Hotel (hereafter, "Greystone Hotel Project").[3]

➤ Each partnership unit required an investment of $500,000 and an additional $60,000 in administrative and legal fees, which monies were collectively authorized to be spent for the renovation and development of the Greystone Properties.

➤ The Greystone Defendants participated in the drafting and dissemination of transactional documents for the Greystone Hotel Project to give the false impression that the project was bona fide.

➤ Those transactional documents were: Limited Partnership Agreement; Subscription Agreement; Private Placement Memorandum; Legal Services Agreement; Loan and Security Agreement; Escrow Agreement; Business Plan; and Economic Report (hereafter, "Transactional Documents").

➤ Pursuant to the terms of the Transactional Documents, the Greystone EB-5 Partnership was obligated to hold each $500,000 cash investment in one escrow account at PNC Bank pending the EB-5 visa processing and approval process.  Upon release of Plaintiffs' funds from escrow, the Greystone EB-5 Partnership would loan those funds to Defendant Greystone Hotel Miami to develop the Greystone Properties and meet the EB-5 Program's requirements.

➤ Walsh, Walsh, Jr., and other Defendants traveled to China where they knowingly made false statements about the Greystone Hotel Project in order to persuade Plaintiffs to invest in the Greystone EB-5 Partnership.

➤ Those false statements included promises that the funds in the Greystone EB-5 Partnership's escrow account were guaranteed by an entity by the name of United EB-5, LLC, and were secured by a mortgage on the Greystone Hotel in the event that Plaintiffs' EB-5 visa applications were denied.

➤ Plaintiffs, relying on the false statements made during those in-person meetings, executed the Transactional Documents and, in exchange for the required investment fees and costs, received one unit each, consisting of a limited partnership interest in the Greystone EB-5 Partnership.

➤ Although Walsh told Plaintiffs that the investment funds would be held in an escrow account at PNC Bank and then loaned to Defendant Greystone Hotel Miami, they were instead placed in a business checking account that appeared to be an escrow account at PNC Bank (characterized by Plaintiffs as the "Fake Escrow Account").

---

[3] The other property would become the Santa Barbara Apartments.   See Am. Compl. [D.E. 44 ¶ 39].

➢ The PNC Defendants agreed to allow Walsh and SARC, an entity controlled by Walsh and also one of the Greystone EB-5 Partnership's general partners, to open and operate a business checking account with PNC Bank's escrow services.   The purpose of this was to make the business checking account appear as a legitimate escrow account to Plaintiffs.   However, the account was not a real escrow account, nor did it have the restrictions of a real escrow account.

➢ The PNC Defendants' agreement with Walsh violated PNC Bank's internal rules and policies.

➢ After they were deposited in the Fake Escrow Account, Plaintiffs' funds were transferred to another account belonging to an entity controlled by Walsh, rather than used for the Greystone Hotel Project.

➢ The Fake Escrow Account was the "conduit that fed [Walsh's] fraud machine."

➢ Walsh embezzled the Greystone EB-5 Partnership's funds, and the Greystone EB-5 Partnership was unable to loan funds to support the Greystone Hotel Project.

➢ Although the PNC Defendants knew the Fake Escrow Account would be accepting EB-5 Program investor money, they did not take any affirmative action to warn Plaintiffs or stop Walsh from transferring money out of the Fake Escrow Account.

➢ As a result of Walsh's embezzlement, Plaintiffs lost their investments and the federal government denied Plaintiffs' EB-5 resident visa applications on the basis that they did not financially benefit the Greystone Hotel Project.

See Am. Compl. [D.E. 44].

Based on these factual allegations, Plaintiffs assert the following causes of action against

some or all of the PNC Defendants or Greystone Defendants, as follows:

➢ Counts 4–9 – Aiding and Abetting Conversion against: J. Vosotas (Count 4); D. Vosotas (Count 5); Muhl (Count 6); the Vosotas Entities[4] (Count 7); and the PNC Defendants (Counts 8–9);

➢ Counts 11–14 – Fraud in the Inducement against: J. Vosotas (Count 11); D. Vosotas (Count 12); Muhl (Count 13); and the Vosotas Entities (Count 14);

➢ Counts 16–17 – Aiding and Abetting Fraud in the Inducement against the PNC Defendants;

---

[4] Plaintiffs designate the "Vosotas Entities" as: Greystone Hotel Miami, United EB5, Santa Barbara 230, Greystone Terra Firma, VOS Holdings I, VOS CRE I, Greystone Hospitality, Greystone Holdco, Greystone Managing Member, Greystone Master Tenant, Greystone Tenant, Greystone Option Holder, Trans Inn Associates, and VOS Hospitality.   See Am. Compl. [D.E. 44 ¶ 299].

➢ Count 19 – Breach of Fiduciary Duty against J. Vosotas and United EB5;

➢ Counts 20–23 – Aiding and Abetting Breach of Fiduciary Duty against: D. Vosotas (Count 20); the Vosotas Entities (Count 21); and the PNC Defendants (Counts 22–23);

➢ Count 25 – Fraud against J. Vosotas;

➢ Count 26 – Violation of Florida's Civil Racketeer Influenced and Corrupt Organizations Act ("Florida RICO") against the PNC Defendants and the Greystone Defendants;

➢ Count 28 – Constructive Fraud against J. Vosotas and United EB5;

➢ Count 29 – Civil Conspiracy against the PNC Defendants and the Greystone Defendants;

➢ Count 31 – Equitable Lien on 1920 Collins Avenue (the location of the Greystone Hotel);

➢ Count 32 – Equitable Lien on 230 Santa Barbara St. (the location of the Santa Barbara Apartments);

➢ Count 33 – Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.201 *et seq.*, against J. Vosotas, D. Vosotas, United EB-5, and Muhl;

➢ Count 36 - Equitable Accounting against J. Vosotas and United EB5;

➢ Count 40(a)[5] - Violations of Section 10(b) of the Securities Exchange Act (hereafter, "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") against Muhl;

➢ Count 40(b) – Violations of Section 20(a) of the Exchange Act against Muhl; and

➢ Count 41 – Civil Conspiracy Under Federal RICO against the PNC Defendants and the Greystone Defendants.

See Am. Compl. [D.E. 44].

The PNC Defendants move to dismiss Counts 8–9, 16–17, 22–23, 26, 29, and 41 of the Amended Complaint for failure to state a cause of action pursuant to Rules 12(b)(6) and 9(b) of

---

[5] The Amended Complaint erroneously labels two separate claims as Count 40. They are captioned here as Count 40(a) and Count 40(b).

the Federal Rules of Civil Procedure (hereafter, "Rule 12(b)(6)" and "Rule 9b," respectively). <u>See</u> PNC Defs.' Mot. to Dismiss [D.E. 51].

The Greystone Defendants move to dismiss Counts 4–7, 11–14, 19–21, 25–26, 28–29, 31–33, 36, 40(a)&(b), and 41 of the Amended Complaint with prejudice on the grounds that it constitutes a shotgun pleading and that it fails to state a cause of action, pursuant to Rule 12(b)(6), Rule 9(b), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). <u>See</u> Greystone Defs.' Mot. to Dismiss [D.E. 68].

## STANDARD OF REVIEW

### I.   Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In ruling on a [Rule] 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." <u>Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention</u>, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir.2003)). "The Court does not view each fact in isolation . . . but considers the complaint in its entirety." <u>Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.</u>, 155 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (citing <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Michel v. NYP Holdings, Inc.</u>, 816 F.3d 686, 694 (11th Cir. 2016) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  (quoting Twombly, 550 U.S. at 556).  While detailed factual allegations are not necessary, "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 545 (citations and internal quotation marks omitted).  "[U]nadorned, the-defendant-unlawfully- harmed-me accusation[s]" are insufficient to state a claim for relief.  Iqbal, 556 U.S. at 678.

## II.    Rule 9(b)

Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed. R. Civ. P. 9(b).   "The particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."   W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (internal quotation marks omitted) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

A complaint satisfies Rule 9(b) when it sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Kammona v. Onteco Corp., 587 F. App'x 575, 581 (11th Cir. 2014) (quoting Ziemba, 256 F.3d at 1202).  "The complaint must sufficiently recite 'facts as to time, place, and substance of the

defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Etkin & Co. v. SBD, LLC, No. 11-CV-21321, 2013 WL 12092536, at *4 (S.D. Fla. 2013) (quoting U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1222 (11th Cir. 2012)). Failure to comply with Rule 9(b)'s heightened pleading standard is grounds for dismissal.   Thoroughbred Yacht, Inc. v. McConaghy Boats Ltd., No. 18-CV-60355, 2018 WL 5098964, at *7 (S.D. Fla. 2018) (citing In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1269 (11th Cir. 2016)).

### III.   Shotgun Pleading

Pursuant to Federal Rule of Civil Procedure 8(a)(2) (hereafter, "Rule 8(a)(2)"), "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).   "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)."   Auf v. Howard Univ., No. 19-CV-22065, 2019 WL 2231215, at *2 (S.D. Fla. 2019).   There are four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.   The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.   The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.   Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted).   "The unifying characteristic of all types of shotgun pleadings is that they fail to one

degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."   Id. at 1323 (footnote omitted).

Dismissal is appropriate when a complaint constitutes a shotgun pleading.   See Wilder v. JP Morgan Chase Bank, N.A., No. 18-CV-20820, 2018 WL 5629922, at *6 n.5 (S.D. Fla. 2018) (citing Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015)).

### IV.   PSLRA

"The Private Securities Litigation Reform Act of 1995 . . . requires a complaint alleging securities fraud to 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'"   IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp., 660 F. App'x 850, 855 (11th Cir. 2016) (quoting 15 U.S.C. § 78u–4(b)(1)(B)).   "Additionally, the PSLRA provides that a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind.'"   City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Cellulose S.A., 41 F. Supp. 3d 1369, 1389 (S.D. Fla. 2011) (citing 15 U.S.C. § 78u–4(b)(2)). "A 'strong inference' of scienter means an inference that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"   In re Ocwen Fin. Corp. Sec. Litig., No. 14-CV-81057, 2015 WL 12780961, at *4 (S.D. Fla. 2015) (quoting Tellabs, Inc., 551 U.S. at 324).

To determine whether a strong inference of scienter has been properly pled:

courts must consider the complaint in its entirety, counting any omissions and ambiguities in the complaint against an inference of scienter.  Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute. The inquiry is inherently comparative because courts must take into account plausible opposing inferences.

9

In re Ocwen Fin. Corp. Sec. Litig., 2015 WL 12780961, at *4 (citations and internal quotation marks).   Thus,

> First, plaintiffs must specify each statement alleged to have been misleading and why each was misleading.   This requirement is even more specific than the Rule 9(b) standard.   Second, for each alleged misrepresentation, plaintiffs must state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind or scienter.
>
> The Eleventh Circuit recently clarified the second requirement in *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004).   In *Phillips*, the defendants, like the Defendants in this case, argued that plaintiffs could not aggregate factual allegations to infer scienter and that plaintiffs were required to establish scienter with respect to each defendant and with respect to each alleged violation. The Eleventh Circuit interpreted the PSLRA to "permit the aggregation of facts to infer scienter." *Id.* at 1017. The Court went on to hold, however, that "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Id.* at 1017-8.

Underwood v. Lampert, No. 02-CV-21154, 2004 WL 7332754, at *12 (S.D. Fla. 2004) (some citations omitted).

Failure to comply with the PSLRA's heightened pleading standard is grounds for dismissal.

See In re Sportsline.com Sec. Litig., 366 F. Supp. 2d 1159, 1174 (S.D. Fla. 2004) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 (11th Cir. 1999)).

## DISCUSSION

### I.    The PNC Defendants' Motion to Dismiss

#### A.  Aiding and Abetting Claims – Counts 8–9, 16–17, and 22–23

The PNC Defendants first argue that Plaintiffs have failed to sufficiently plead claims for aiding and abetting because they do not plausibly allege that the PNC Defendants had knowledge of the underlying scheme to defraud Plaintiffs of their investments.   See PNC Defs.' Mot. to

Dismiss [D.E. 51 at 15–25].[6]

"To state an aiding and abetting claim under Florida law, the [plaintiff] must allege: '(1) an underlying violation on the part of the primary wrongdoer; (2) actual knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing.'" Isaiah, 2017 WL 5514370, at *3 (quoting Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012)).

"[W]hen a claim of aiding and abetting is asserted against a bank, the second element—knowledge—will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." Perlman, 559 F. App'x at 993 (citing Lawrence, 455 F. App'x at 907). "Florida law requires that a defendant have actual 'knowledge of the underlying [wrongdoings],' not merely that certain 'red flags' indicate a defendant 'should have known' of the [wrongdoings]." Honig v. Kornfeld, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (citing Lamm v. State St. Bank & Tr., 749 F.3d 938, 950 (11th Cir. 2014)). "[W]hile actual knowledge may be shown by circumstantial evidence, the circumstantial evidence must demonstrate that the aider and abettor *actually knew* of the underlying wrongs committed." Perlman, 559 F. App'x at 993 (emphasis added) (citing Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013)). "[Although] the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific 'facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.'" Meridian Tr. Co. v.

---

[6] The aiding and abetting claims may be considered together, although the underlying torts vary, because the gravamen of those claims is that the PNC Defendants aided and abetted the scheme to defraud Plaintiffs. See Isaiah v. JPMorgan Chase Bank, N.A., No. 16-CV-21771, 2017 WL 5514370, at *3 (S.D. Fla. 2017) ("Although the underlying torts vary for each of the three aiding and abetting claims, the gravamen of these claims is that [the defendant] aided and abetted the Ponzi scheme, and thus this Court will analyze them together.") (citing Perlman v. Wells Fargo Bank, N.A., 559 F. Appx. 988, 993 (11th Cir. 2014)).

Batista, No. 17-CV-23051, 2018 WL 4760277, at *8 (S.D. Fla. 2018) (quoting Lamm v. State St. Bank & Tr. Co., 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012)).

Plaintiffs argue that they have sufficiently pled the knowledge element of their aiding and abetting claims against the PNC Defendants because they allege that:

> Defendant, Ramirez offered, created and implemented the Fake Escrow Account, he knew that Defendants, Walsh, the Walsh Entities, and co-conspirators were holding Plaintiffs EB-5 investment funds in a checking account fraudulently represented as an escrow account. Ramirez also knew Plaintiffs had made substantial transfer[s] to a named "Escrow Account" which was in fact a business checking account and those funds were immediately transferred to Defendant, Walsh's holding account with PNC [B]ank, without a requirement to follow any terms of a PNC escrow agreement.

See Pls.' Resp. in Opp'n to the PNC Defs.' Mot. to Dismiss [D.E. 75 at 13–14]; Am. Compl. [D.E. 44 ¶ 317].

However, these allegations do not satisfy the required element that the PNC Defendants possessed actual knowledge of the scheme to defraud Plaintiffs of their investments.   See Meridian Tr. Co. v. Batista, No. 17-CV-23051, 2018 WL 4693533, at *4–5 (S.D. Fla. 2018) ("the Eleventh Circuit [has] plainly rejected the notion that a series of atypical banking transactions constitute actual knowledge on the part of the bank.") (citing Perlman, 559 F. App'x at 993); Isaiah, 2017 WL 5514370, at *3 ("Allegations that a bank failed to adhere to an appropriate standard of care or to follow relevant policies, procedures, or regulations are likewise insufficient to demonstrate actual knowledge for the purposes of an aiding and abetting claim.") (citing Groom v. Bank of Am., No. 08-CV-2S67, 2012 WL 50250, at *1 (M.D. Fla. 2012)).   Rather, they merely support an inference that the PNC Defendants "should have known" of the underlying fraud because the creation of the Fake Escrow Account, their knowledge and experience with the EB-5 Program, and Walsh's transfer of Plaintiffs' investment funds to his second holding account at PNC Bank, amounted to "red flags," which should have alerted them to Walsh's wrongdoings.

Am. Compl. [D.E. 44 ¶¶ 317, 322–25].   Thus, Plaintiffs have failed to create a strong inference

of actual knowledge. See Perlman, 559 F. App'x at 993–94 (holding that "red flags" which may

have put the bank on notice "that some impropriety was taking place, [did] not create a strong

inference of actual knowledge . . . .") (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d

Cir. 2006)).

      Accordingly, the undersigned recommends that Counts 8–9, 16–17, and 22–23 against the

PNC Defendants be dismissed without prejudice.

      **B.**  **Florida Civil RICO and Conspiracy Under Federal RICO - Counts 26 & 41**

      Florida's Civil RICO provides, "It is unlawful for any person employed by, or associated

with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a

pattern of racketeering activity or the collection of an unlawful debt."   Fla. Stat. § 895.03(3).

Federal RICO provides, "It shall be unlawful for any person employed by or associated with

any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity or collection of unlawful debt."   18 U.S.C. § 1962(c).

      "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the

federal courts for guidance in interpreting and applying the act.   Therefore, federal decisions

should be accorded great weight."   O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000

(Fla. 3d DCA 1992) (citing Wilson v. State, 596 So. 2d 775, 776 (Fla. 1st DCA 1992); see also All

Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc., 135 F.3d 740, 745 (11th Cir. 1998)

("Florida's RICO statutes have consistently been interpreted using federal RICO claims cases.").

      The PNC Defendants argue that Plaintiffs' RICO claims should be dismissed with

prejudice because Plaintiffs lack standing to bring such claims and because Plaintiffs have failed

to plausibly allege a RICO enterprise.   See PNC Defs.' Mot. to Dismiss [D.E. 51 at 25–31].

"To establish . . . standing to bring their civil RICO claims, [p]laintiffs must allege that they suffered domestic injuries and that those injuries were the result of [the] [d]efendants' RICO violations."   Worldspan Marine Inc. v. Comerica Bank, No. 18-CV-21924, 2020 WL 1238732, at *7 (S.D. Fla. 2020) (citing Catano v. Capuano, No. 18-CV-20223, 2019 WL 3890343, at *2 (S.D. Fla. 2019)).   The Supreme Court has held that a civil RICO plaintiff is not entitled to recovery for foreign injuries.   RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2111 (2016).   "The focus of the domestic injury inquiry is the geographic location of the injury to [p]laintiffs, not the location of the [d]efendants' wrongful acts."   Worldspan Marine Inc., 2020 WL 1238732, at *7 (citing RJR Nabisco, Inc., 136 S. Ct. at 2108).   "If the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails[.]"   Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000) (citing Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000)); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004) (same).

The PNC Defendants rely on Lan Li v. Walsh, No. 16-CV-81871, 2017 WL 3130388, at *1 (S.D. Fla. 2017) (Marra, J.) in support of their argument that the RICO claims should be dismissed with prejudice.   In Lan Li, the plaintiffs asserted RICO claims predicated on facts nearly identical to those here, and the case involved another of Walsh's alleged schemes to defraud foreign investors interested in obtaining permanent residency through the EB-5 Program of their investments.   Id.   The relevant facts in Lan Li are as follows:

> The "Bad Actors" conspired to fraudulently induce each Plaintiff to invest $500,000, plus a $40,000 "administrative fee," into a purported Palm Beach real estate project, known as the "Palm House Hotel" which was simply a mechanism to steal Plaintiffs' funds and distribute them among the conspirators.  Plaintiffs' funds were supposed to be held in an escrow account unless and until their I-526 immigration petitions were approved by the United States government.  If and

14

when Plaintiffs' I-526 petitions were approved, their funds were supposed to be used to create at least 10 full-time jobs for qualifying U.S. workers, in this case by:

(a) finishing the renovation and development of an existing luxury hotel structure in Palm Beach;

(b) serving Palm Beach County by seeking to create jobs and increase U.S. exports by developing an upscale resort hotel; and

(c) creating at least 790 direct and indirect jobs to support the EB-5 guidelines and the number of investors sought.

However, Plaintiffs' funds were not held in the escrow account. Instead, Plaintiffs' funds were transferred from the escrow account to other accounts for the benefit of the conspirators.  Virtually none of Plaintiffs' funds were used to develop the property, no jobs were created, and no EB-5 visas were issued to any of the Plaintiffs.

Id.  Additionally, Walsh and the other defendants traveled to China to solicit the plaintiffs into investing in Walsh's real estate project.  Id. at *4.  The Lan Li court dismissed the plaintiffs' RICO claims with prejudice because they lacked standing to bring the claims for want of a domestic injury.  Id. at *10–11.  The Lan Li Court explained that the plaintiffs lacked standing as follows:

the majority of the alleged RICO conduct took place in the foreign countries where Plaintiffs received the alleged false information and induced to invest their money and are now unable to come to the United States.  Even accepting Plaintiffs' claim that the basis of the RICO claim occurred in the United States because Defendants moved the money around in the United States and diverted funds from the Palm House real estate project, that does not change the fact that the injury was felt by Plaintiffs in their home countries.

Id. at *10.

Here, Plaintiffs allege that:

➢ Beginning in 2014, Defendants, Walsh, Walsh Jr., and Defendants traveled to China to solicit the Plaintiffs regarding the EB-5 program at the Greystone Hotel.

➢ Defendants, Walsh and Walsh Jr. acting on behalf of the Walsh Entities met with clients in person at various Walsh Entities' offices in China.  In these meetings Defendant, J. Vosotas acting on behalf of the Vosotas Entities telephonically.  During these meetings

Defendants, Walsh, Walsh Jr. Walsh Entities, J. Vosotas, and the Vosotas Entities made material false and misleading statements regarding: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Defendant, Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Defendant, Greystone Hotel Miami; (4) the guaranteed return of investors' funds if their I-526 Petition were denied; (5) Defendant, Walsh and co-conspirators' backgrounds; (6) the preparation and periodic disclosure to investors of financial reports; (7) Defendant, Greystone Hotel Miami's repayment of the loan; (8) Defendant, Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties, (9) Defendant, Greystone Hotel Miami's prior to the commencement of the Greystone EB-5 Partnership offering; and (10) The existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment.  Defendants, Walsh, Walsh Jr. Walsh Entities, J. Vosotas, and the Vosotas Entities knew, or had reason to know the statements were false and or misleading.  Plaintiffs relied on the information provided in these in person meetings.

➢ Relying on Defendants' representations, Plaintiffs diligently submitted all necessary paperwork in conjunction with their I-526 Petitions, asserting eligibility based on an investment in a Regional Center through Greystone Partnership and SARC.

➢ However, because of the deficiencies in the project, Plaintiffs' Form I-526 Petitions were denied by USCIS for failure to establish by a preponderance of the evidence that the Form I-526 Petitions complied with the applicable legal requirements.

➢ Because it had become apparent that Defendants' promises were false and Defendants had not adhered to their duties, Plaintiffs demanded the return of their funds.

➢ Despite Plaintiffs' demands, no funds were returned to Plaintiffs.

Am. Compl. [D.E. 44 ¶¶ 117, 120, 162–63, 166–67].   As in <u>Lan Li</u>, the situs of the RICO conduct and the Plaintiffs' loss allegations in this case is extraterritorial.  Therefore, the undersigned applies the <u>Lan Li</u> court's persuasive analysis to conclude that Plaintiffs have not alleged the required domestic injury; hence, they lack standing to bring their Florida RICO and Federal RICO conspiracy claims.  <u>Lan Li</u>, 2017 WL 3130388, at *10; <u>Efron</u>, 223 F.3d at 21.  Additionally, because the undersigned further concludes that amendment of Plaintiffs' RICO claims to establish standing would be futile, the undersigned recommends that Counts 26 & 41 of the Amended Complaint be dismissed with prejudice.  <u>See Heard v. Publix Supermarkets Inc</u>, 808 F. App'x

904, 906 (11th Cir. 2020) ("the court may deny leave to amend the complaint where further amendment would be futile[.]") (internal quotation marks omitted) (quoting Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019)).[7]

### C. Civil Conspiracy - Count 29

"Under Florida law, the elements of a civil conspiracy claim are: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" Tippens v. Round Island Plantation L.L.C., No. 09-CV-14036, 2009 WL 2365347, at *4 (S.D. Fla. 2009) (quoting UTC Indus., Inc. v. Presidential Fin. Corp., 976 So. 2d 92, 94 (Fla. 3d DCA 2008)).  "[A] conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (citing Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 912 (11th Cir. 1998)).  "Under Florida law, a civil conspiracy must have as its object the commission of an underlying tort." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1281 (11th Cir. 2009)

Plaintiffs allege that the basis of their civil conspiracy claim "is a fraud and theft of over four million dollars of Plaintiffs' money, which are independent torts that give rise to causes of action."  Am. Compl. [D.E. 44 ¶ 493].  Plaintiffs argue that they have sufficiently pled a claim of civil conspiracy because they allege that:

> Ramirez and PNC had an agreement with Walsh, the Walsh Entities, and SARC; "Defendants, Ramirez and PNC agreed to accommodate Defendant, Walsh's demands." (¶139); "Defendants, Ramirez and PNC agreed to allow Defendants, Walsh and SARC to open and operate a business checking account with PNC's escrow services." (¶142); "Defendants, Ramirez and PNC's agreement with Walsh violated PNC's internal rules, regulations, and policies." (¶144); "Ramirez stood to

---

[7] Because the undersigned finds that Plaintiffs lack standing to bring the RICO claims, the undersigned need not address the PNC Defendants' enterprise argument.

gain from this agreement by increasing profits for his employer, PNC." (¶145); "PNC had knowledge of the EB-5 program prior to entering this agreement with Walsh." (¶151) (emphasis added).

***

"Defendant, PNC suggested a policy loophole to assist Defendants, Walsh, Reitz and SARC in perpetuating their fraud, conspiracy and other bad acts." (¶141) . . . .

Pls.' Resp. in Opp'n to the PNC Defs.' Mot. to Dismiss [D.E. 75 at 24].

Because Plaintiffs' civil conspiracy claim sounds in fraud, Rule 9(b)'s heightened pleading standard is applicable.  Meridian Tr. Co., 2018 WL 4693533, at *6 (citing Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1146 (M.D. Fla. 2018)).

The undersigned finds that Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading requirement concerning an alleged agreement between the parties to defraud Plaintiffs of their investment funds.   Plaintiffs' allegations that the PNC Defendants and Walsh reached a "meeting of the minds" and agreed to defraud Plaintiffs of their investment funds are wholly conclusory and fail to provide the level of detail necessary to satisfy Rule 9(b)'s heightened pleading standards. See Meridian Tr. Co., 2018 WL 4693533, at *9 (dismissing plaintiffs' civil conspiracy claims for failure to meet Rule 9(b)'s heightened pleading requirements because the plaintiffs did not provide any factual statements to support a finding that the defendants agreed with other coconspirators to commit fraudulent transfers); Jaffe v. Bank of Am., N.A., 667 F. Supp. 2d 1299, 1323 (S.D. Fla. 2009) ("Plaintiffs cannot prevail on their civil conspiracy theory because there is no evidence of any kind to support Plaintiffs' allegations that BoA and ABC entered into an agreement to defraud the Plaintiffs of money they put up to purchase a yacht.").

Therefore, the undersigned recommends that Count 29 against the PNC Defendants be dismissed without prejudice.

## II.    The Greystone Defendants' Motion to Dismiss

As noted above, the Greystone Defendants seek dismissal of Plaintiffs' claims against them

with prejudice on the grounds that the Amended Complaint is a shotgun pleading and that all of the claims against them are insufficient as a matter of law.

Initially, the undersigned applies her analysis of Counts 26 & 41 of the Amended Complaint to the Greystone Defendants' Motion to Dismiss.  Accordingly, the undersigned recommends that those Counts also be dismissed with prejudice as to the Greystone Defendants.

### A.  <u>Shotgun Pleading</u>

The Amended Complaint may be said to constitute a shotgun pleading, given that each of its 42 Counts incorporates all 230 paragraphs of the preceding factual allegations, without regard to their applicability to each count.   See <u>Taft v. The Dade Cty. Bar Ass'n, Inc.</u>, No. 15-CV-22072, 2015 WL 5771811, at *2 (S.D. Fla. 2015) ("Counts I–VII are classic shotgun pleadings. The factual allegations in the first fourteen paragraphs are incorporated into each count without regard as to whether the facts alleged are actually relevant to a particular count."); <u>Diaz v. Nationstar Mortg., LLC</u>, No. 19-CV-22148, 2019 WL 8273561, at *1 (S.D. Fla. 2019) ("Plaintiffs' Amended Complaint is an impermissible shotgun pleading in that it incorporates all 40 factual allegations into each count without delineating which allegations relate to which cause of action.") (citing <u>Jackson v. Bank of Am., N.A.</u>, 898 F.3d 1348, 1354 (11th Cir. 2018)).   Moreover, the Amended Complaint suffers from the additional defects of co-mingling Plaintiffs and Defendants without providing any detail regarding how each Plaintiff was allegedly harmed and how each Defendant committed the alleged harm.   See <u>Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.</u>, No. 18-CV-81761, 2020 WL 3547047, at *5 (S.D. Fla. 2020) (dismissing a count as a shotgun pleading because the count, which was brought on behalf of nine individual defendants: "[did] not reference individual-specific transactions or individual-specific facts"; "[did] not address the individual plans governing each Individual Plaintiff's claim"; and did not "clarify how a specific

Defendant breached specific fiduciary duties to specific Plaintiffs.") (citing <u>Weiland v. Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1321–23 (11th Cir. 2015) ("Shotgun pleading exists when multiple parties or multiple claims for relief are merged into a single count."); <u>see also</u> <u>Rea v. It Works! Glob., Inc.</u>, No. 19-CV-599, 2019 WL 5722479, at *2 (M.D. Fla. 2019) (dismissing the amended complaint as a shotgun pleading because the plaintiffs improperly incorporated all factual allegations into each count and because the amended complaint "improperly group[ed] together both [p]laintiffs in some allegations and ma[de] allegations about a '[p]laintiff' without specifying which.").[8]

Due to these pleading deficiencies, the Amended Complaint fails to provide Defendants with adequate notice of the grounds upon which their claims rest.  <u>See</u> <u>McDonough v. City of Homestead</u>, 771 F. App'x 952, 955 (11th Cir. 2019) ("Shotgun pleadings violate Rule 8(a)(2)'s 'short and plain statement' requirement by 'failing . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'") (citing <u>Vibe Micro, Inc. v. Shabanets</u>, 878 F.3d 1291, 1296 (11th Cir. 2018)).  Therefore, the undersigned recommends that the Amended Complaint be dismissed as a shotgun pleading with leave to replead, with the exception of the RICO claims, which the undersigned recommends be dismissed with prejudice. <u>See</u> <u>Perdomo v. HSBC Bank USA</u>, No. 13-CV-22645, 2014 WL 1278132, at *3 (S.D. Fla. 2014) ("In a shotgun pleading 'any counts not dismissed on other grounds [will be dismissed] as deficiently plead under the Federal Rules of Civil Procedure.'") (alteration in original) (quoting <u>Degirmenci v. Sapphire–Fort Lauderdale, LLLP</u>, 693 F.Supp.2d 1325, 1336 (S.D.Fla.2010)).  To

---

[8]  At the June 17, 2020 hearing, Plaintiffs' counsel conceded that he had "lumped the Plaintiffs together" and that there were no specific allegations as to each Plaintiff in the Amended Complaint.  <u>See</u> Tr. of June 17, 2020 Hr'g [D.E. 111 at 90:20–91:5, 92:9–11].  Plaintiffs' counsel agreed to amend the Amended Complaint if the undersigned deemed it necessary to correct those deficiencies.  <u>Id.</u> at 92:10–20.

provide further guidance to Plaintiffs, the undersigned addresses below additional deficiencies in their claims raised by the Greystone Defendants.

### B. Counts 40(a)&(b) - Violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5

Section 10(b) of the Exchange Act (hereafter, "Section 10(b)") disallows:

> us[ing] or employ[ing], in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (footnote omitted). SEC Rule 10b-5 (hereafter, "Rule 10b-5")—promulgated under Section 10(b)— makes it unlawful for:

> any person, directly or indirectly, . . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. Section 20(a) of the Exchange Act (hereafter, "Section 20(a)") provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

"To state a claim under [Section] 10(b) . . . and Rule 10b–5, the plaintiff must show '(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury.'" Kammona v. Onteco Corp., 587 F. App'x 575, 581 (11th Cir. 2014) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

"To survive a motion to dismiss, a claim brought under [S]ection 10(b) . . . or Rule 10b–5 must satisfy (1) the federal notice pleading requirements [found in Rule 8(a)(2)]; (2) the special fraud pleading requirements found in [Rule 9(b)]; and (3) the additional pleading requirements imposed by the PSLRA." Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enterprises, Inc., 572 F. App'x 713, 715 (11th Cir. 2014) (citation omitted).

The Greystone Defendants argue that Plaintiffs' claims under Section 10(b), Section 20(a), and Rule 10b-5 (hereafter, "Securities Claims") should be dismissed because: they do not meet the heightened pleading requirements of the PSLRA and Rule 9(b); Walsh's alleged conversion of the Greystone EB-5 Partnership's escrow funds was not in connection with the purchase or sale of securities; and no facts have been pled that show a causal connection between the alleged misrepresentations and Plaintiffs' losses. See Greystone Defs.' Mot. to Dismiss [D.E. 68 at 19–26].

As noted above, Counts 40(a)&(b) of the Amended Complaint incorporate all 230 paragraphs of the preceding factual allegations without regard to their applicability to each count. Moreover, instead of articulating which of their factual allegations Plaintiffs are relying upon in support of these claims, Plaintiffs generally allege that:

> ➢ Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 carried out a plan, scheme, and course of conduct that was intended to, and did (i) deceive Plaintiffs, as alleged herein; and (ii) cause Plaintiffs to purchase limited partnership interests in Greystone EB- 5 Partnership.   In furtherance of this unlawful scheme, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 took the actions set forth hereinabove.

> ➢ Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of Greystone EB-5 Partnership's limited partnership units in violation of Section

10(b) of the Exchange Act and Rule 10b-5.   These Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

➢ Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 each employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure the Plaintiffs of the value of investing in the project, which included the making of, or the participating in the making of, untrue statements of material facts about the Greystone EB-5 Partnership and project and omitting material facts necessary in order to make the statements not misleading.

➢ Defendants, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's primary liability arises from the following facts, among others: (i) Defendants designed a scheme to entice foreign investors to purchase limited partnership interests in the Greystone EB-5 Partnership; (ii) Defendants, by virtue of their responsibilities and activities in the scheme, were privy to and participated in the creation, development and publication of the Greystone EB-5 Partnership's sales, marketing, projections and/or reports; and (iii) Defendants were aware of Greystone EB-5 Partnership's dissemination of information to the potential foreign investors, which Defendants knew or recklessly disregarded was materially false and misleading.

Am. Compl. [D.E. ¶¶ 561–62, 564–65].   These allegations do not satisfy the Rule 9(b) heightened pleading requirements or the PSLRA's requirements that: "plaintiffs . . . specify each statement alleged to have been misleading and why each was misleading"; and "plaintiffs . . . state with particularity the facts giving rise to a strong inference that the defendant act with the required state of mind or scienter.   Underwood, 2004 WL 7332754, at *12.   Accordingly, the undersigned recommends that Plaintiffs be permitted an opportunity to replead the claims asserted in Counts 40(a)&(b) so that they may be in compliance with the applicable pleading requirements.   See Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279–80 (11th Cir. 2006) ("The lack of connection between the substantive count and the factual predicates is the central problem with each of the enumerated counts in the complaint, because courts cannot perform their gatekeeping function with regard to the averments of fraud.   It is not that we know that plaintiffs cannot state

23

a claim but rather that we do not know whether they have.").[9]   Moreover, Plaintiffs' amended pleading should also cure the following deficiencies in their Securities Claims highlighted by the Greystone Defendants, namely: the failure to allege that Walsh's purported conversion of the Greystone EB-5 Partnership's escrow funds was in connection with the purchase or sale of securities; and the failure to allege a causal connection between the purported misrepresentations and Plaintiffs' losses.

## C. **Florida Law Claims**

i. Rule 9(b)'s Application

The Greystone Defendants contend that all of Plaintiffs' Florida common law and statutory claims are subject to Rule 9(b)'s heightened pleading requirements.   See Greystone Defs.' Mot. to Dismiss [D.E. 68 at 28-29].   The claims at issue are: aiding and abetting conversion (Counts 4–7); fraud in the inducement (Counts 11–14); breach of fiduciary duty (Count 19); aiding and abetting breach of fiduciary duty (Counts 20–21); fraud (Count 25); constructive fraud (Count 28); civil conspiracy (Count 29); equitable liens (Counts 31–32); FDUPTA (Count 33); and equitable accounting (Count 36). The undersigned notes that the following claims are generally subject to Rule 9(b)'s heightened pleading requirements because those claims are rooted in fraud:

> ➢ Aiding and Abetting Conversion (Counts 4–7), see Solidda Grp., S.A. v. Sharp Elecs. Corp., No. 12-CV-21411, 2012 WL 12863888, at *8 (S.D. Fla. 2012);

> ➢ Fraud in the Inducement (Counts 11–14), see Fla. Beauty Flora, Inc. v. Evergreen Fresh Farms, Inc., No. 17-CV-24173, 2018 WL 801599, at *3 (S.D. Fla. 2018);

> ➢ Breach of Fiduciary Duty (Count 19), see Cutler v. Voya Fin., Inc., No. 18-CV-20723, 2019 WL 1112379, at *3 (S.D. Fla. 2019);

---

[9] "Because a primary violation of the securities laws constitutes an essential element of a [Section] 20(a) derivative claim, a plaintiff adequately pleads a [Section] 20(a) claim only where the plaintiff adequately pleads a primary violation."   Kinnett v. Strayer Educ., Inc., 501 F. App'x 890, 894 (11th Cir. 2012) (citing Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008)).

➢ Aiding and Abetting Breach of Fiduciary Duty (Counts 20–21), see <u>Berman v. Morgan Keegan & Co.</u>, No. 10-CV-5866, 2011 WL 1002683, at *7 (S.D.N.Y. 2011);

➢ Fraud (Count 25), see <u>Sol. Z v. Alma Lasers, Inc.</u>, No. 11-CV-21396, 2012 WL 13012765, at *2 (S.D. Fla. 2012);

➢ Civil Conspiracy (Count 29), see <u>Meridian Tr. Co.</u>, 2018 WL 4693533, at *6;

➢ Equitable Liens (Counts 31–32), see <u>Zaleznik v. Gulf Coast Roofing Co.</u>, 576 So. 2d 776, 779 (Fla. 2d DCA 1991); and

➢ FDUPTA (Count 33), see <u>Llado-Carreno v. Guidant Corp.</u>, No. 09-CV-20971, 2011 WL 705403, at *5 (S.D. Fla. 2011).

Therefore, Plaintiffs must replead these claims in compliance with Rule 9(b). However, Rule 9(b)'s heightened pleading requirements do not apply to claims of constructive fraud (Count 28), see <u>Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co.</u>, No. 06-CV-61055, 2007 WL 2826603, at *5 (S.D. Fla. 2007), or equitable accounting (Count 36), see <u>Samana Inc. v. Lucena</u>, 156 F. Supp. 3d 1373, 1374 (S.D. Fla. 2016).

ii. <u>Standing under Fla. Stat. § 620.2001</u>

Fla. Stat. § 620.2001 provides:

(1) Subject to subsection (2), a partner may maintain a direct action against the limited partnership or another partner for legal or equitable relief, with or without an accounting as to the partnership's activities, to enforce the rights and otherwise protect the interests of the partner, including rights and interests under the partnership agreement or this act or arising independently of the partnership relationship.

(2) A partner commencing a direct action under this section is required to plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership.

<u>Id.</u> "[A]n action [by a shareholder or a member of a limited liability company] may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury

to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members."  Fritz v. Fritz, 219 So. 3d 234, 237 (Fla. 3d DCA 2017) (alterations and emphasis in original) (quoting Dinuro Investments, LLC v. Camacho, 141 So. 3d 731, 739–40 (Fla. 3d DCA 2014)).

To the extent that Plaintiffs seek to assert claims pursuant to Fla. Stat. § 620.2001 in their capacity as partners of the Greystone EB-5 Partnership against the Greystone EB-5 Partnership and/or other partners of the Greystone EB-5 Partnership, those claims fail as currently pled because Plaintiffs' injuries allegedly flow directly from an initial harm to the Greystone EB-5 Partnership, namely, Walsh's embezzling of Plaintiffs' investment funds.  See Dinuro Investments, LLC, 141 So. 3d at 743 ("Florida law does not permit a member of an LLC to sue individually for damages arising out of its status as a member of a company unless the damages arise from a direct harm and special injury . . . .").

iii.  Equitable Liens – Counts 30–31

Plaintiffs request that the Court impose an equitable lien on the Greystone Hotel and on the Santa Barbara Apartments as a result of the alleged "fraud, misrepresentation, and deception to secure Plaintiffs' investments in Greystone EB-5 Partnership Project."  See Am. Compl. [D.E. 44 at 110–11].

"To be entitled to an equitable lien, there must be circumstances such as fraud or misrepresentation of material facts upon which the plaintiff specifically relied in good faith . . . ." In re Cameron, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006) (citing Jennings v. Connecticut Gen. Life Ins. Co., 177 So. 2d 66, 68 (Fla. 2d DCA 1965)).  "[O]nly monies obtained through fraud or egregious conduct may permit the imposition of an equitable lien."  In re Cameron, 359 B.R. at 822 (emphasis in original) (citing In re Chauncey, 454 F.3d 1292, 1294 (11th Cir. 2006)).  "In all

circumstances, in order to warrant the imposition of an equitable lien, the funds, payment of which are to be secured by the equitable lien, must be directly traceable to the real property in question, having unjustly enriched the Debtor's interest in that property." <u>In re Johnson</u>, 336 B.R. 568, 572 (Bankr. S.D. Fla. 2006).

Thus, in order to state claims for equitable liens in Counts 30 and 31, Plaintiffs must trace their lost investment funds to the Greystone Hotel and the Santa Barbara Apartments, respectively. <u>Id.</u>

## <u>RECOMMENDATION</u>

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS as follows:

1) That the PNC Defendants' Motion to Dismiss [D.E. 51] and the Greystone Defendants' Motion to Dismiss [D.E. 68] be **GRANTED IN PART**;

2) That Counts 26 & 41 of the Amended Complaint be **dismissed with prejudice**; and

3) That the remaining Counts against the PNC Defendants and the Greystone Defendants in the Amended Complaint be **dismissed without prejudice** with leave to replead.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **<u>fourteen</u> days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles.  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  <u>See</u> <u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this <u>14th</u> day of September, 2020.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Darrin P. Gayles
      Counsel of Record