# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 1:19-cv-24138-DPG

YUANXIAO FENG, an individual; KIU
CHUN SAXON HUI, an individual; LAI
KING HUI, an individual; JING KUANG, an
individual; CHUEN PING NG, an individual;
MINYANG TIAN, an individual; HONGSEN
ZHANG, an individual; and YAN ZHANG, an
individual,

      Plaintiffs.                                                    **JURY DEMAND**

v.

JOSEPH WALSH, an individual; JOSEPH
WALSH, JR., an individual; GREYSTONE
EB-5 LLLP, a Florida limited liability limited
partnership; SOUTH ATLANTIC REGIONAL
CENTER, LLC, a Florida limited liability
company; USREDA, LLC, a Delaware limited
liability company; USREDA HOLDINGS
LLC, a Delaware limited liability company;
USREDA MANAGEMENT, LLC, a Delaware
limited liability company; DANIEL
VOSOTAS, an individual; JAMES
VOSOTAS, an individual; GREYSTONE
HOTEL MIAMI, LLC, a Delaware limited
liability company registered to do business in
Florida; UNITED EB5, LLC, a Florida limited
liability company; SANTA BARBARA 230,
LLC, a Delaware limited liability company
registered to do business in Florida;
GREYSTONE TERRA FIRMA, LLC, a
Delaware limited liability company registered
to do business in Florida; VOS HOLDINGS I,
LLC, a Florida limited liability company;
VOS CRE I, LLC, a Florida limited liability
company; GREYSTONE HOSPITALITY,
LLC, a Florida limited liability company;
GREYSTONE HOLDCO, LLC, a Delaware
limited liability company registered to do
business in Florida; GREYSTONE
MANAGING MEMBER, LLC, a Florida
limited liability company; GREYSTONE

MASTER TENANT, LLC, a Delaware limited
liability company registered to do business in
Florida; GREYSTONE TENANT, LLC, a
Delaware limited liability company registered
to do business in Florida; GREYSTONE
OPTION HOLDER, LLC, a Delaware limited
liability company registered to do business in
Florida; WWB TRUST LLC, a defunct
Florida limited liability company; TRANS
INNS ASSOCIATES, INC., a Michigan profit
corporation registered to do business in
Florida; VOS HOSPITALITY, LLC, a Florida
limited liability company; BBM3 LLC, a
Delware limited liability company; BBM3 II
LLC a Delaware limited liability company;
and BRANDON MUHL, an individual,

     Defendants.

_____/

## PLAINTIFFS' FIRST PARTIALLY AMENDED COMPLAINT
## AS TO GREYSTONE DEFENDANTS

    Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING

KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG

(collectively, "Plaintiffs"), for its First Partially Amended Complaint[1] against Defendants DANIEL

VOSOTAS; JAMES VOSOTAS; GREYSTONE HOTEL MIAMI, LLC; UNITED EB5, LLC;

SANTA BARBARA 230, LLC; GREYSTONE TERRA FIRMA, LLC; VOS HOLDINGS I, LLC;

VOS CRE I, LLC; GREYSTONE HOSPITALITY, LLC; GREYSTONE HOLDCO, LLC;

GREYSTONE MANAGING MEMBER, LLC; GREYSTONE MASTER TENANT, LLC;

GREYSTONE TENANT, LLC; GREYSTONE OPTION HOLDER, LLC; TRANS INNS

---

[1] Pursuant to Southern District of Florida Local Rule 15.1, this Partially Amended Complaint is being filed with prior
leave of Court (D.E. 132, 145) against the Greystone Defendants only.  The Amended Complaint (D.E. 44) is
superseded for the Greystone Defendants only, with the Amended Complaint (D.E. 44) remaining operative as to
Walsh; Walsh Jr.; Greystone EB5 Partnership; SARC; USREDA, LLC; USREDA Holdings, LLC; USREDA
Management, LLC; and WWB Trust, LLC.

ASSOCIATES, LLC; VOS HOSPITALITY, LLC; BBM 3, LLC; BBM 3 II, LLC; and BRANDON MUHL (collectively, the "Greystone Defendants"), seeking Damages and Injunctive Relief, and in support thereof state as follows:

## I.   **INTRODUCTION**

1.      This First Partially Amended Complaint as to the Greystone Defendants stems out of a larger dispute that currently involves Joseph J. Walsh, Sr.; Joseph Walsh, Jr.; Greystone EB-5, LLLP; South Atlantic Regional Center, LLC; USREDA, LLC; USREDA Holdings LLC; USREDA Management, LLC; Daniel Vosotas; James Vosotas; Greystone Hotel Miami, LLC; United EB5, LLC; Santa Barbara 230, LLC; Greystone Terra Firma, LLC; VOS Holdings I, LLC; VOS CRE I, LLC; Greystone Hospitality, LLC; Greystone Holdco, LLC; Greystone Managing Member, LLC; Greystone Master Tenant, LLC; Greystone Tenant, LLC; Greystone Option Holder, LLC; WWB Trust LLC; Trans Inns Associates, Inc.; VOS Hospitality, LLC; BBM 3, LLC; BBM 3 II, LLC; and Branden Muhl (collectively, "Defendants").  Although the suit is remaining as to all Defendants, this First Partially Amended Complaint is to the Greystone Defendants only.[2]

2.      This case stems from Defendants' fraudulent scheme to induce Plaintiffs into investing in United States real estate to obtain EB-5 immigrant visas.

3.      More specifically, since 2010, Joseph J. Walsh ("Walsh"), his entities, and co-conspirators[3] have defrauded investors participating in the Immigrant Investor Program ("EB-5 Program") administered by the United States Citizen and Immigration Services ("USCIS").  The

---

[2] Although this First Partially Amended Complaint is as to the Greystone Defendants only, the allegations against all Defendants from the First Amended Complaint (D.E. 44) are incorporated herein to the maximum extent possible, as that is the operative complaint as to the Defaulted Defendants, as defined herein.  However, given that the Greystone Defendants have already moved to dismiss the First Amended Complaint (D.E. 44) as a shotgun pleading, allegations against all Defendants are made herein in accordance with the United Magistrate Judge's Report and Recommendation (D.E. 112) and the Court's Order affirming the same (D.E. 113).

[3] The term "co-conspirators" includes, but is not limited to Walsh; Joseph Walsh, Jr.; the South Atlantic Regional Center; WWB Trust; USREDA, LLC; USREDA Holdings, LLC; Daniel Vosotas; James Vosotas; the Vosotas Entities (as fully defined in paragraph 67), Branden Muhl; BBM 3, LLC; and BBM 3 II, LLC.

EB-5 Program, also known as the immigrant investor visa, allows foreign nationals to apply for permanent residency in the United States after investing in a US business that, among other things, must create a certain number of jobs.

4.      Plaintiffs are foreign individuals who were seeking lawful United States citizenship or residency.

5.      Unfortunately, Plaintiffs fell victim to the latest series of fraudulent conspiracies perpetuated by Defendant Walsh's fraudulent EB-5 projects.

6.      Here, the platform for the fraud was an EB-5 investment project advertised as the Greystone Hotel Project or Greystone EB-5 LLLP ("Greystone EB-5 Partnership").

7.      From 2014 to 2016, Greystone EB-5 Partnership offered and sold limited partnership "units" totaling up to Twenty-Two Million Dollars ($22,000,000.00) to at least eight (8) foreign investors through the EB-5 Program, including Plaintiffs.  The Investment Portfolio provided to investors represented that the Greystone EB-5 Partnership would loan investor funds to Greystone Hotel Miami, LLC ("Greystone Hotel Miami") to develop, renovate, and operate two (2) adjacent properties located at 1920 Collins Avenue and 230 20th Street, Miami Beach, Florida ("Greystone Properties").  Instead, Walsh and co-conspirators misappropriated at least a portion of the investor funds.

8.      In fact, it is without dispute that the Greystone EB-5 Partnership lent at least some money to the Greystone Hotel Miami, as discussed herein.

9.      Defendant Walsh and his co-conspirators also made false and materially misleading statements regarding: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Greystone Hotel Miami; (4) the guaranteed

return of investors' funds if Plaintiffs' I-526 Petitions[4] were denied; (5) Walsh and his co-conspirators' expertise and experience; (6) the preparation and periodic disclosure to investors of financial reports; (7) Greystone Hotel Miami's repayment of the loan; (8) Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties; (9) advertisements of Greystone Hotel Miami development prior to the commencement of the Greystone EB-5 Partnership offering; and (10) the existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment.

10.     To date, none of the Plaintiffs' investments have been accounted for, let alone returned, and all of the Plaintiffs' EB-5 Visa applications have been denied by USCIS.

11.     Defendant Walsh and his co-conspirators developed an elaborate scheme to wrongfully obtain investments from Plaintiffs for illegitimate purposes.  Defendants conspired to fraudulently induce each Plaintiff to invest Five Hundred Thousand Dollars ($500,000.00), plus an additional Forty-Five Thousand Dollar ($45,000.00) "administrative fee," and an additional Fifteen Thousand Dollar ($15,000.00) "legal services fee" into the Greystone EB-5 project, the EB-5 Partnership, and the Greystone Properties development ("Greystone Project").

12.     Defendants Walsh and James Vosotas ("J. Vosotas") are managers of the Greystone EB-5 Partnership.  Greystone EB-5 Partnership's two (2) general partners ("General Partners") of record are South Atlantic Regional Center ("SARC"), an entity managed and controlled by Walsh, and United EB5, LLC, ("United EB5") an entity managed and controlled by J. Vosotas.

13.     Even though the General Partners of record were SARC and United EB5, in the Private Placement Memorandum provided to Plaintiffs, the Greystone EB-5 Partnership's limited

---

[4] The terms "I-526 Petition(s)" and "I-526 application(s)" refers to Immigrant Petition(s) by Alien Entrepreneur.

Partners were listed as SARC and "VOS Hospitality / Trans Inns Management," with profiles of Daniel Vosotas, J. Vosotas, and another VOS Hospitality / Trans Inns Management employee featured under the heading "Management of the Partnership."

14. Plaintiffs' funds were to be held in an escrow account and then loaned to Greystone Hotel Miami. Additionally, Plaintiffs' funds were to only be used to renovate the Greystone Properties in accordance with the guidelines of the EB-5 Program.

15. The Greystone Project was also required to create ten (10) qualifying, full-time jobs per investor and Plaintiffs' investments were supposed to be secured by a lien or mortgage on the Greystone Properties.

16. Not only did Defendants represent that Plaintiffs' funds would be used in compliance with EB-5 regulations, but Defendants prepared and submitted falsified documents to USCIS stating this requirement would be fulfilled by renovating and operating the Greystone Properties.

17. Plaintiffs' funds were not held in an escrow account, instead Defendants placed Plaintiffs' funds in a checking account and name the account "escrow." Defendants conspired to create a fictitious escrow company, WWB Trust, LLC ("WWB Trust"). However, instead of being a neutral third-party trust to hold Plaintiffs' funds as represented, WWB Trust was in fact controlled secretly by Defendant Walsh as part of the conspiracy: WWB Trust was another cog in the wheel of Defendants' conspiracy to facilitate Defendants fraud and theft.

18. Contrary to all written and oral agreements, and representations, Defendant Greystone Hotel Miami did not hold any legal title to the Greystone Properties.

19.     Defendants Walsh, J. Vosotas, and the co-conspirators conspired to create fake loans, business plans, and security documents falsely stating that the Greystone Hotel Miami held title to the Greystone Properties.

20.     In fact, the Greystone Hotel Miami holds no assets, let alone the Greystone Properties.  These fake documents were distributed to Plaintiffs with the sole purpose of inducing them into investing/purchasing securities in the project and to create a false assurance that Plaintiffs' investments were secured by valuable real estate.

21.     Additionally, these fraudulent documents were submitted to USCIS to confuse and mislead government officials as to the viability of the EB-5 project.  Defendant Walsh and his co-conspirators created shell companies, under the ownership and control of Walsh's co-conspirators, J. Vosotas, Daniel Vosotas ("D. Vosotas"), and Branden Muhl ("Muhl") to hold actual title to the Greystone Properties and to defraud Plaintiffs and USCIS.  After the fraud against Plaintiffs had come to fruition, Defendants J. Vosotas, D. Vosotas, and Muhl moved the Greystone Properties to new shell entities and trusts in Delaware in an attempt to further conceal and misrepresent the truth.

22.     by participating in the conspiracy and/or or by owning, controlling, and managing the Defendants entities, knew or should have known that Plaintiffs' funds were misappropriated.  Greystone EB-5 Partnership's General Partners committed fraud by providing false mortgage and loan agreements to Plaintiffs, their immigration attorneys, and  USCIS.

23.     Although at least some funds were loaned from the Greystone EB-5 Partnership to the Greystone Hotel Miami, upon information and belief, none of Plaintiffs' funds were used to develop the Greystone Properties, no EB-5 approved jobs were created, and as a result, Plaintiffs

did not qualify for EB-5 visas.[5]  Accordingly, Plaintiffs were defrauded and are now unable to immigrate to the United States, in addition to losing a large investment.

24.     Moreover, given the nature of the EB-5 program, Defendants' misrepresentations to Plaintiffs continue to cause Plaintiffs to face a delay of ten (10) or more years, should they seek to reapply though the EB-5 program in a new, legitimate project.

## II.     PARTIES

25.     Plaintiffs are Chinese foreign nationals that were victims of Defendants' conspiracies and were fraudulently induced to invest in Defendants' purported EB-5 Projects.

26.     Defendant Walsh is an individual, who, upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*.  At all times relevant hereto, Walsh was the manager of SARC and United States Regional Economic Development Authority LLC d/b/a/ EB5 Petition ("USREDA"), the managing member of USREDA Holdings LLC, the managing member of WWB Trust—controlling each SARC, USREDA, USREDA Holdings, LLC, and the WWB Trust—and general partner of the Greystone EB5 Partnership.

27.     Defendant Joseph Walsh, Jr. ("Walsh Jr.") is an individual who, upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*.  Walsh Jr. is the son of Walsh.  Walsh Jr. was the manager of SARC and USREDA.

28.     Defendant D. Vosotas is an individual who, upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*.  D. Vosotas is the father of J. Vosotas. D. Vosotas is the owner and manager of Trans Inns Associates, Inc. and/or VOS Hospitality, LLC—entities that partnered with Walsh (via SARC) in the Greystone EB-5 Partnership Offering.

---

[5] In fact, in this proceeding, before being confronted with the email confirmation of receipt of funds from the Greystone EB-5 Partnership by the Greystone Hotel Miami, the Greystone Defendants denied that funds were ever lent from the Greystone EB-5 Partnership to the Greystone Hotel Miami.  *See* D.E. 68 at 16, 23.

D. Vosotas is an owner and/or member and/or manager of multiple of the Vosotas Entities, as defined at Paragraph 67, herein.

29.      Defendant J. Vosotas is an individual who, upon information and belief, resides in Palm Beach County, Florida, and is otherwise *sui juris*.   J. Vosotas is the son of D. Vosotas. J. Vosotas is the owner and/or member and/or manager of multiple of the Vosotas Entities, as defined at Paragraph 67, herein, that partnered and conspired Defendant Walsh in the Greystone EB-5 Partnership Offering to defraud the Plaintiffs.

30.      Defendant Muhl is an individual who resides in Dallas, Texas, but does substantial business in Palm Beach County, Florida.   Defendant Muhl is the owner and/or member and/or manager of multiple of the Vosotas Entities, as defined herein at Paragraph 67, herein, that partnered and conspired with Walsh in the Greystone EB-5 Partnership Offering to defraud the Plaintiffs.

31.      Defendant Greystone EB-5 Partnership is a Florida limited liability limited partnership with its principal place of business in Miami-Dade County, Florida.   Greystone EB-5 Partnership has offices throughout the State of Florida, including in Miami-Dade County.   The General Partners of Greystone EB-5 Partnership are as record as SARC and United EB5, LLC. Yet, on the Private Placement Memorandum provided to Plaintiffs, the General Partners were listed as VOS Hospitality, Inc. / Trans Inns Associates, Inc.

32.      Defendant SARC is a Florida limited liability company, located in Palm Beach County, Florida.   SARC is a USCIS designated Regional Center.   Walsh was the manager of SARC from its inception in June 2010 to at least April 2016.   Thereafter, USREDA Holdings LLC became the manager of SARC.   SARC is a General Partner of the Greystone EB-5 Partnership.

33.     Defendant USREDA Holdings, LLC ("USREDA Holdings") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Palm Beach County, Florida. USREDA Holdings is owned and directed by Walsh. USREDA Holdings was, and is, engaged in substantial and not isolated activities in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

34.     Defendant USREDA is a Delaware limited liability company with its principal place of business in Palm Beach County, Florida. USREDA held itself out as a law firm capable of providing immigration services for Plaintiffs EB-5 Visa applications. USREDA was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

35.     Defendant USREDA Management, LLC ("USREDA Management") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Palm Beach County, Florida. USREDA Management was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

36.     Greystone Hotel Miami is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Miami-Dade County, Florida. J. Vosotas managed and controlled Greystone Hotel Miami. Greystone Hotel Miami was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject

it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

37.     Defendant United EB5 is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.  United EB5 LLC is of record as a General Partner of Greystone EB-5 Partnership.  J. Vosotas has a controlling interest in United EB5.

38.     Defendant Santa Barbara 230, LLC ("Santa Barbara 230") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Miami-Dade County, Florida.  Santa Barbara 230 was previously a Florida limited liability company; however, in 2017, Santa Barbara 230 was converted to a Delaware limited liability company.  Santa Barbara 230, LLC holds title to one (1) property, the Santa Barbara Apartment, of the two (2) properties comprising of the Greystone Properties.  Santa Barbara 230 was owned by D. Vosotas, J. Vosotas, and Muhl through their entities SB 230 Hospitality, LLC and BBM 3 II, *not* Greystone Hotel Miami, as falsely represented.  Santa Barbara 230 was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

39.     Defendant Greystone Terra Firma, LLC ("Greystone Terra Firma") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Miami-Dade County, Florida.  Greystone Terra Firma was previously a Florida limited liability company; however, in 2019, Greystone Terra Firma was converted to a Delaware limited liability company.  Greystone Terra Firma holds title to one (1) property, the Greystone Hotel, of the two (2) properties comprising of the Greystone Properties.  Greystone Terra Firma was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to

subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

40.     Defendant VOS Holdings I, LLC ("VOS Holdings I") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan.  From its inception to the present date, D. Vosotas and J. Vosotas were the managers of VOS Holdings I.  VOS Holdings I holds an interest in the Greystone Properties.

41.     Defendant VOS CRE I, LLC ("VOS CRE I") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan.  From its inception to present date, D. Vosotas and J. Vosotas are the managers of VOS CRE I.  VOS CRE I holds an interest in the Greystone Properties.

42.     Defendant Greystone Hospitality, LLC ("Greystone Hospitality") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan.  D. Vosotas is the manager of Greystone Hospitality.  Greystone Hospitality holds an interest in the Greystone Properties. J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project.

43.     Defendant Greystone Holdco, LLC ("Greystone Holdco") is a Delaware limited liability company, duly registered to do business in the State of Florida, with its principal place of business in Bloomfield Hills, Michigan.   J. Vosotas and Branden Muhl are the managers of Greystone Holdco.  Greystone Holdco is an owner of the Greystone Properties.  J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the owner of the Greystone Properties to induce Plaintiffs to invest in the project.  Greystone Holdco was, and is, engaged in substantial

and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

44.     Defendant Greystone Managing Member, LLC ("Greystone Managing Member") is a Florida limited liability company previously located in Fort Lauderdale, Florida, and currently lists its principal place of business in Bloomfield Hills, Michigan.  D. Vosotas is the manager of Greystone Managing Member.  Greystone Managing Member holds an interest in the Greystone Properties.  J. Vosotas and D. Vosotas fraudulently represented Greystone Hotel Miami as the sole owner of the Greystone Properties to induce Plaintiffs to invest in the project.

45.     Defendant Greystone Master Tenant, LLC ("Greystone Master Tenant") was a Florida limited liability company previously located in Fort Lauderdale, Florida.  In or around December 2017, Greystone Master Tenant was converted to a Delaware limited liability company and duly registered to do business in the State of Florida.  Greystone Managing Member is the manager of Greystone Master Tenant.  Greystone Master Tenant holds an interest in the Greystone Properties.  Greystone Master Tenant was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

46.     Defendant Greystone Tenant, LLC ("Greystone Tenant") was a Florida limited liability company previously located in Fort Lauderdale, Florida.  In or around December 2017, Greystone Tenant was converted to a Delaware limited liability company and duly registered to do business in the State of Florida.  J. Vosotas and Branden Muhl are the managers of Greystone Tenant.  Greystone Tenant holds an interest in the Greystone Properties.  Greystone Tenant was,

and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

47.    Defendant Greystone Option Holder, LLC ("Greystone Option Holder") was a Florida limited liability company previously located in Fort Lauderdale, Florida.  In or around December 2017, Greystone Option Holder was converted to a Delaware limited liability company and duly registered to do business in the State of Florida.  J. Vosotas and Branden Muhl are the managers of Greystone Option Holder.  Greystone Option Holder holds an interest in the Greystone Properties.  Greystone Option Holder was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.

48.    Defendant WWB Trust is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.  Walsh, through his entity, USREDA Holdings, manages and controls WWB Trust.  WWB Trust was dissolved on or about April 28, 2017.  WWB Trust was the Escrow Agent overseeing Plaintiffs' investment.  WWB Trust held itself out to be a neutral, third-party Escrow Agent to induce Plaintiffs to invest in the project.

49.    Defendant Trans Inns Associates, Inc. ("Trans Inns Associates"), is a Michigan corporation, duly registered to do business in the State of Florida, with its principal place of business in Bloomfield Hills, Michigan.  D. Vosotas is the President and Director of the company. Defendant Trans Inns Associates advertised itself as the manager and developer of the Greystone Properties.  Trans Inns Associates logo and name appeared on advertisements for the Greystone Hotel EB-5 project.

50.     Defendant VOS Hospitality, LLC ("VOS Hospitality") is a Florida limited liability company with its principal place of business in Bloomfield Hills, Michigan.  J. Vosotas is the manager of the company.  VOS Hospitality advertised itself as the manager and developer of the Greystone Properties.  VOS Hospitality's logo and name appeared on advertisements for the Greystone Hotel EB-5 project.

51.     Defendant BBM3 LLC, ("BBM3") is a Delaware limited liability company not registered to do business in Florida.  Muhl is the manager and member of the limited liability company.  BBM3 holds an interest in the Greystone Properties.  BBM3 was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.  Alternatively, the Court has specific jurisdiction over BBM3, as BBM3's conduct here fits within Florida's long-arm jurisdiction statute and the exercise of jurisdiction over BBM3 does not offend due process.

52.     Defendant BBM3 II LLC ("BBM3 II"), is a Delaware limited liability company not registered to do business in Florida.  Muhl is the manager and member of the limited liability company.  BBM3 II was, and is, engaged in substantial and not isolated activity in the State of Florida sufficient to subject it to the general personal jurisdiction of this Court under Florida Statutes Section 48.193 and meets the continuous and systematic contact requirements for jurisdiction.  Alternatively, the Court has specific jurisdiction over BBM3 II, as BBM3 II's conduct here fits within Florida's long-arm jurisdiction statute and the exercise of jurisdiction over BBM3 II does not offend due process.

## III.  <u>JURISDICTION AND VENUE</u>

53.     This Court has subject-matter jurisdiction over this action under the 28 U.S.C.

§ 1331, 28 U.S.C. § 1332, Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, 18 U.S.C.

§ 1964, and the principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367 in that

the state law claims are so intertwined with the federal claims in that they form part of the same

case or controversy.

54.     This Court has personal jurisdiction over Defendants because they, themselves or

through operation and control of certain entities, operated, conducted, engaged in and carried on a

fraudulent business and scheme in Miami-Dade County, Florida.  In addition, as set out in the

Parties Section, *supra*, each is either a Florida a resident, a Florida limited liability company, a

foreign limited liability company registered to do business in Florida, or otherwise subject to

specific jurisdiction under Florida's long-arm jurisdiction statute, Florida Statutes Section 48.193,

and the exercise of jurisdiction against said Defendants does not offend due process.

55.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391, 15 U.S.C. § 78aa, and

18 U.S.C. § 1965 because a substantial part of the acts, transactions, and events giving rise to the

claims occurred, and a substantial part of property that is the subject of the action is situated, in

Miami-Dade County, Florida.

56.     Further, venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §

1391, 15 U.S.C. §78aa, and 18 U.S.C. § 1965 because the Defendants' wrongful acts described

herein occurred in Miami-Dade County, Florida, and the property that is the subject of this action

is located in Miami-Dade County, Florida. Additionally, the Defendants are residents of, and/or

transact business in, Miami-Dade County, Florida.

57.     Plaintiffs have retained the undersigned counsel to represent them in this action and have agreed and are obligated to pay a reasonable fee for their services.

## IV.     GENERAL ALLEGATIONS

### A.  THE EB-5 VISA PROGRAM

58.     In 1990, Congress created the EB-5 Program with the stated purpose of creating economic growth in the United States. The EB-5 program provides a prospective immigrant investor an opportunity to become a permanent resident.

59.     To qualify for an EB-5 visa, a foreign applicant must invest Five Hundred Thousand Dollars ($500,000.00) or One Million Dollars ($1,000,000.00), depending on the type of investment, in a commercial enterprise approved by USCIS.[6]  Once the foreign applicant has invested, he or she may apply for a conditional green card, which is good for two (2) years.  If the investment creates or preserves at least ten (10) jobs during those two (2) years, the foreign applicant may apply to have the conditions removed from his or her green card.  The applicant can then live and work in the United States permanently.

60.     A certain number of EB-5 visas are specifically set aside for prospective immigrants who invest through a Regional Center, such as SARC.  The benefit of investing through a Regional Center is that an investor can consider indirect jobs created from the investment and can rely on the Regional Center's analysis that the investment meets USCIS's requirements for an investment of Five Hundred Thousand Dollars ($500,000.00), rather than the One Million Dollar ($1,000,000.00) investment.

61.     Regional Centers must carefully manage the number of potential EB-5 investors based on the anticipated number of jobs that will be created in the project.  As stated above, to

---

[6] These amounts increased in 2019, but as of the time of Plaintiffs' investments, these were the operative amounts.

qualify for a permanent resident visa, each investor must prove the investment lead to the creation of preservation of ten (10) jobs.

**B. WALSH CREATES THE SARC, *REGIONAL CENTER***

62.     On May 27, 2010, Walsh applied for and received USCIS approval for the creation of a Regional Center—SARC—located in Palm Beach, Florida.  A true and correct copy of a Correspondence from USCIS demonstrating SARC's status as a Regional Center is attached hereto as **Exhibit 1**.

63.     Since 2010, Walsh has promoted several EB-5 projects, including, but not limited to, the Royal Palm Town Center, the Palm House Hotel, the Greystone Hotel, and several others.

64.     One of SARC's projects is the Palm House Hotel project, is currently the subject of civil fraud complaint (*Li, et al., v. Walsh, et al.*, 9:16-cv-81871-KAM), Securities and Exchange Commission complaint, and criminal investigation.

**C. THE *"WALSH ENTITIES"***

65.     Walsh is the direct or indirect sole member of SARC, WWB Trust, USREDA, USREDA Holdings, and USREDA Management (collectively, the "Walsh Entities").

66.     Walsh used these various entities so that the Plaintiffs would not have to work with any third parties who would have provided Plaintiffs with independent advice that may have revealed Defendants' fraudulent scheme.

**D. THE *"VOSOTAS ENTITIES"***

67.     D. Vosotas and J. Vosotas own and manage numerous entities, all involved, created, and manipulated to perpetuate the fraud with the Greystone EB-5 Partnership scheme.  These entities include:

    1)  Greystone EB-5 Partnership,
    2)  Greystone Hotel Miami,

3)  United EB5,

4)  Santa Barbara 230,

5)  Greystone Terra Firma,

6)  VOS Holdings I,

7)  VOS CRE I,

8)  Greystone Hospitality,

9)  Greystone Holdco,

10) Greystone Managing Member,

11) Greystone Master Tenant,

12) Greystone Tenant,

13) Greystone Option Holder,

14) Trans Inns Associates,

15) And VOS Hospitality (collectively the "Vosotas Entities").

68.     J. Vosotas, through the Vostoas Entities, is a Twenty-Five Percent (25%) manager/member of the Greystone Properties.

69.     D. Vosotas, though the Vosotas Entities is a Twenty-Five Percent (25%) manager/member of the Greystone Properties.

70.     Additionally, Muhl is listed as a manager of the following Vosotas Entities: (1) Greystone Terra Firma, (2) Greystone Managing Member, and (3) Greystone Tenant.  Muhl, through the Vosotas Entities, is a Fifty Percent (50%) manager/member of the Greystone Properties.

### E.  THE "B GROUP"

71.     In addition to his interests through the Vosotas Entities, Muhl owns and manages BBM3 and BBM3 II (collectively, the "B Group").  Muhl is a business partner and associate of D. Vosotas and J. Vosotas.

### F.  THE CREATION OF THE "*GREYSTONE EB-5 PARTNERSHIP*" SCHEME

72.     Beginning in 2014, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group entered into a partnership with Walsh and the Walsh Entities to obtain EB-5 funding for the Greystone Properties.

73.     Formally, this partnership was the Greystone EB-5 Partnership with SARC and United EB5 as the General Partners.  However, in the Private Placement Memorandum presented to investors such as Plaintiffs, Defendants represented that the partners were SARC along with VOS Hospitality / Trans Inns Management, showing profiles of both D. Vosotas and J. Vosotas under "Management Team."

74.     D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then provided information regarding the hotel project to Walsh and the Walsh Entities.  This information included current equity, project investments, potential loan and mortgage information, development timelines, economic analysis, and the ownership structure of the properties.

75.     Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then created an Investment Portfolio and fake advertising materials for the Greystone Project.

76.     Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group through websites, newsletters, brochures, magazine advertisements and sales agents distributed false information and advertising materials for the Greystone EB-5 Project targeting potential EB-5 investors, particularly in the Chinese market.

### G.  THE "GREYSTONE PROPERTIES"

77.     Through various entities, D. Vosotas, J. Vosotas, and Muhl ultimately own and manage the Greystone Properties.  In fact, D. Vosoats, J. Vosotas, and Muhl used various entities

to purchase real property, enter into loan agreements, and assign rights for the Greystone Properties.

78.     On February 22, 2012, D. Vosotas, J. Vosotas and Muhl created Greystone Terra Firma.

79.     On or about May 17, 2012, Defendants used Greystone Terra Firma to purchase the Greystone Hotel, an abandoned property, located at 1920 Collins Avenue, Miami Beach, Florida, and executed a Special Warranty Deed (the "1920 Collins Ave. Special Warranty Deed").  A true and accurate copy of the 1920 Collins Ave. Special Warranty Deed for the property located at 1920 Collins Avenue is attached hereto as **Exhibit 2**.

80.     Santa Barbara 230 was created on October 21, 2013, and with J. Vosotas as its manager.

81.     On or about January 3, 2014, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and The B Group used Santa Barbara 230 to purchase the Santa Barbara Apartments, the adjacent Hostel/Apartments next to the Greystone Hotel located at 20 230th Street, Miami Beach, Florida, and executed a Special Warranty Deed ("Santa Barbara Special Warranty Deed").  A true and correct copy of the Santa Barbara Special Warranty Deed is attached hereto as **Exhibit 3**.

82.     When Plaintiffs made their investments into the Greystone EB-5 Partnership, Greystone Terra Firma was owned by Greystone Hospitality and BBM3.  Greystone Hospitality is owned and controlled by D. Vosotas and J. Vosotas.

83.     On or about January of 2016, D. Vosoats, J. Vosotas and Muhl improperly transferred Greystone Terra Firma to Greystone Delaware Statutory Trust, in anticipation of fraud claims, and to prevent criminal and civil liability.

### H.  How The Greystone Project Purported To Function

84.    By way of a partnership agreement, security agreement, loan agreement and contract, in 2014-2017, each of the Plaintiffs invested Five Hundred Thousand Dollars ($500,000.00) into the Greystone EB-5 Partnership in exchange for one (1) partnership share and paid an additional Forty-Five Thousand Dollars ($45,000.00) for administrative fees and Fifteen Thousand Dollars ($15,000.00) in legal fees, for a total of $560,000 per Plaintiff.

85.    The offering was made to a total of forty-four (44) potential investors for a total capital raise of Twenty-Two Million Dollars ($22,000,000.00).

86.    Defendants represented that the funds invested into the Greystone EB-5 Partnership would be loaned from the Greystone EB-5 Partnership to Greystone Hotel Miami, an EB-5 job-creating entity to develop the Greystone Properties, and such loan would be secured by a lien on the Greystone Properties.

87.    The false details of the Greystone EB-5 Partnership investment are stated throughout the Greystone Hotel Investment Portfolio, drafted and distributed to Plaintiffs by Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group.  A true and accurate copy of the Greystone Hotel Investment Portfolio is attached hereto as **Exhibit 4**.

88.    Each of the Plaintiffs received a copy of the Investment Portfolio and relied upon the Investment Portfolio in determining to make an investment in the Greystone EB-5 Partnership.

89.    The Investment Portfolio consists of the following agreements: a Limited Partnership Agreement, a Subscription Agreement, a Private Placement Memorandum, a Legal Service Agreement, an Escrow Agreement, a Loan Agreement, a Business Plan, and an Economic Report.  *See* Exhibit 4.

90.     The summary of the Partnership Agreement, Loan Agreement, PPM, and Escrow Agreement is as follows: Plaintiffs would invest in Greystone EB-5 Partnership as limited partners, each contributing Five Hundred Thousand Dollars ($500,000.00).  Greystone EB-5 Partnership would hold Plaintiffs' funds in escrow, pending EB-5 processing and approval.  Upon being released from escrow, the General Partners of Greystone EB-5 Partnership (SARC and United EB-5) would then loan Plaintiffs' funds to Greystone Hotel Miami to develop the Greystone Project and meet USCIS's EB-5 requirements.  Walsh, acting as manager of SARC and, therefore, General Partner of Greystone EB-5 Partnership and J. Vosotas, acting as manager of Greystone Hotel Miami had already executed the loan agreement stating that each Plaintiff's funds would be used to create ten (10) jobs and the Plaintiffs' investment was secured by collateral, defined in the attached Business Plan as the Greystone Properties.  *See* Exh. 4 at 102–126.  Finally, the Partnership Agreement, Escrow Agreement, and Loan agreement all stated that if Plaintiffs' I-526 applications were denied, Plaintiffs would receive a full refund, both from Greystone Hotel Miami for the amount loaned, and also from Greystone EB-5 Partnership for any funds still held in escrow.

91.     In any event, United EB-5 was a general partner in the Greystone EB-5 Partnership, making United EB-5 jointly and severally responsible for all conduct taken by Walsh in his capacity as general partnership of Greystone EB-5 Partnership.

92.     Even though United EB-5 was formally listed as the second general partner in the Greystone EB-5 Partnership, the Private Placement Memorandum instead identified that VOS Hospitality / Trans Inns Management was the second general partner and member of the Management Team, specifically identifying both D. Vosotas and J. Vosotas as members of the management team.  *See* Exh. 4 at 52–54.

93.     Specifically, as part of the Loan Documents included as part of the Investment

Portfolio, J. Vosotas, acting as member of Greystone Hotel Miami, LLC, represented that:

> The Borrower has good and marketable title to its properties and assets, including
> all of the Collateral, subject to no mortgage, pledge, lien, security interest,
> encumbrance or other charge which is not set forth herein.  Specifically, the
> Borrower **represents that it has or shall obtain Bank mortgage and/or
> construction loan on the underlying Properties**, which may secure mezzanine
> financing as a bridge loan while awaiting EB-5 funding.

Exh. 4 at 112 (emphasis added).  Of course, in the same Loan Documents, Greystone Hotel Miami

is identified as the Borrower.

94.     Additionally, in the Private Placement Memorandum, it was represented to

Plaintiffs that "The proceeds of the Loan will be used to partially finance the acquisition,

development and operation by Borrower of the Project."  Exh. 4 at 63.  This was repeated from the

"Use of Proceeds" section of the Private Placement Memorandum, which stated: "The Partnership

will loan ("Loan") the proceeds of this Offering to the Borrower to partially finance the acquisition,

development, and operation of the Project.  The Partnership will make the Loan to Borrower on

the terms set forth in the Loan Documents attached hereto."  Exh. 4 at 41.

**I.   HOW THE *"GREYSTONE PROJECT"* ACTUALLY FUNCTIONED**

95.     Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities,

Muhl, and the B Group created a scheme where they, through their entities, acted as Plaintiffs'

attorney, immigration advisor, financial advisor, escrow agent, lender, borrower, General Partner,

EB-5 Regional Center, and EB-5 developer.

96.     Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and

the B Group held multiple conflicting fiduciary duties and obligations to Plaintiffs.  Walsh, Walsh

Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group then

used their expansive control to manipulate Plaintiffs.

97.     Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group formed a fake escrow account that allowed them to misappropriate Plaintiffs' funds outside the terms of the Investment Portfolio agreements.

98.     However, WWB Trust was neither a neutral nor an independent escrow agent, but rather another entity controlled and managed by Walsh.  Further, the purported "escrow" account was not an escrow account but instead a checking account.

99.     Walsh, Walsh Jr., the Walsh Entities, D, Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew or should have known Plaintiffs' funds were not managed by a legitimate escrow agent or placed in a neutral escrow account.  Plaintiffs would not have invested in the Greystone Project without the representation that their investment would be held in a legitimate escrow account and managed by a legitimate escrow agent.

100.    Plaintiffs had relied on the Escrow Agreement included in the Investment Portfolio, which obviously contradicted the way in which Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group intended to do business.  *See* Exh. 4 at 134–144.

101.    Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group concealed and misrepresented the actual ownership of the Greystone Properties on multiple instruments in the Investment Portfolio agreements.  Throughout the Investment Portfolio, Defendants state that Greystone Hotel Miami is the owner of the Greystone Properties.  *See* Exh. 4.  The Loan Agreement further states that Greystone Hotel Miami owns the Greystone Properties without any encumbrances, this too is false.  *See* Exh. 4 at 102–126.

102.    Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group went so far as to fabricate and provide Plaintiffs and USCIS with loan

documents falsely stating that Greystone Hotel Miami owned the Greystone Properties. These false loan documents were never filed with the Miami-Dade County Clerk of Court. A true and accurate copy of the Loan Document is attached hereto as **Exhibit 5**.

103.    At the time that Plaintiffs were defrauded, the Greystone Hotel[7] was owned by Greystone Terra Firma. Furthermore, Greystone Terra Firm was *not* owned by Greystone Hotel Miami. As stated above, Defendants have now transferred the Greystone Properties, including the Greystone Hotel, to Greystone Delaware Statutory Trust to further conceal the truth.

104.    This is a staunch difference from a Loan Agreement that states that "Borrower **represents that it has or shall obtain Bank mortgage and/or construction loan on the underlying Properties**." Exh. 4 at 112 (emphasis added).

105.    A reasonable investor reading this, in conjunction with the other representations, would assume that the "mortgage" was a real property mortgage and that the "underlying Properties" were the Greystone Properties.

106.    The property located at 230 20th Street in Miami Beach, Florida is owned by Santa Barbara 230 LLC. As shown by the various instruments filed with the Miami-Dade County Clerk of Court, at the time investors were defrauded, Santa Barbara 230 was owned by D. Vosotas, J. Vosotas, and Muhl through their entities SB 230 Hospitality, LLC and BBM3 II, *not* Greystone Hotel Miami, as falsely represented.

107.    Contrary to the represented investment terms Plaintiffs' investment was not secured by collateral. Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group offered secured collateral on Plaintiffs' investment on all real property owned by Greystone Hotel Miami.

---

[7] The property is located at 1920 Collins Avenue, Miami Beach, Florida.

108.    Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group furthered their misrepresentations with a Business Plan and mortgage agreement, falsely stating that the Greystone Hotel Miami owned the Greystone Properties.  In reality, Greystone Hotel Miami did not own title to the Greystone Properties.  This allowed Walsh and the Walsh entities to misappropriate Plaintiffs' funds without fear of Plaintiffs being secured against the promised collateral, the Greystone Properties.

109.    The Investment Portfolio also included the Business Plan, which expressly stated that "Greystone Hotel Miami, LLC owns both the 1920 Collins Avenue parcel and the 230 20th Street Parcel."  Exh. 4 at 165.[8]

110.    Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, and the Vosotas Entities knew or should have known Greystone Hotel Miami was not the owner of the Greystone Properties, that the collateral promised to Plaintiffs in the Greystone Properties was fraudulent and falsified, and that, if Plaintiffs' funds were misappropriated, Plaintiffs would not be able to recover any collateral. Plaintiffs relied on Defendants' representations and would not have invested in the Greystone Project without the representations that their investment was secured by collateral in the Greystone Properties.

111.    Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group misrepresented and falsely promised that Plaintiffs' investment was secured by a guaranteed return policy.  The Loan Agreement executed by SARC via Walsh and Greystone Hotel Miami via J. Vosotas stated that if Plaintiffs' I-526 application was denied,

---

[8] Later at p. 168, this states "Funds will be channeled from Greystone EB-5 LLLP into the Project by means of a loan to the ownership entity, Greystone Hotel Miami, LLC, in order to develop the Project.  Greystone Terra Firma, LLC (owner of the 1920 Collins Avenue parcel) and Santa Barbara 230, LLC (owners of the 230 20th Street parcel) are both wholly-owned subsidiaries of Greystone Hotel Miami, LLC."  However, this does nothing to change the fact that Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group repeatedly misrepresented ownership of the Greystone Properties.

Plaintiffs would receive a full refund from Greystone Hotel Miami.  The guaranteed return policy was repeated on Defendants' websites, though Defendants' sales agents, and in promotional materials produced by Defendants.

112.   Also, the Escrow Agreement and Partnership Agreement state that any funds that remain in escrow will be returned to Plaintiffs if their I-526 applications were denied.

113.   In fact,[9] the Greystone EB-5 Partnership did loan funds to Greystone Hotel Miami under the Loan Documents.  Attached hereto as **Exhibit 6** is a true and correct copy of an email from Robert Negron, Chief Fianncial Officer for Trans Inns Management, Inc. / VOS Hospitality, LLC, wherein Negron confirms receipt of $500,000 into Greystone Hotel Miami's account under the Loan Documents.

114.   Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew or should have known that Plaintiffs would not receive a guaranteed return if their I-526 applications were denied. Plaintiffs would not have invested in the Greystone Project without the representation that their investment was secured by guaranteed return policy.

### J.   DEFENDANTS' SOLICIT THE PLAINTIFFS TO INVEST IN THE *FRAUDULENT, NON-EXISTENT* EB-5 PROJECT

115.   Beginning in 2014, Walsh, Walsh Jr., and Defendants traveled to China to solicit the Plaintiffs regarding the EB-5 program at the Greystone Hotel.  In addition,

116.   Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group collaborated to produce and distribute advertisements with false and misleading information.  The advertisements repeatedly made false and misleading statements about: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior

---

[9] This is directly contrary to signed statements by counsel for the Greystone Defendants that "Due to the Limited Partnership's failure to loan funds to Greystone Hotel Miami LLC, the loan was not funded and no security was created in favor of the Limited Partnership." D.E. 68 at 17.

to disbursement to Greystone Hotel Project; (3) the guaranteed return of investors' funds if their I-526 Petitions were denied; (4) Walsh and co-conspirators' backgrounds; (5) Defendants' success rate in processing EB-5 applications; (6) Greystone Miami Hotel's equity in the project; and (7) The existence of bank loans in the project.  The false and misleading statements in the advertisements induced Plaintiffs into investing in the Greystone Project.  At the time that these advertising materials were distributed to Plaintiffs, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew, or had reason to know the statements were false and or misleading.  Plaintiffs would not have invested in the project but for the misleading information in the project advertisements.

117.    Specific examples of misleading and false statements in advertisements produced by  Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group include the following:

a.    In 2014, WWB, Wealth Without Boarders, EB-5 Magazine controlled by Walsh and the Walsh Entities, printed an article featuring the Greystone Hotel and made the following false and misleading information about the Greystone Hotel.  True and accurate copies of excerpts from the Wealth Without Boarders EB-5 Magazine are attached hereto as **Composite Exhibit 7**.

i.    The Greystone Property was a "historic Miami Beach landmark."

ii.    The property's renovation would include three (3), "food and beverage venues from an award winning, James Bear-nominated chef that appeared on Bravo's 'Top Chef.'"

iii.    The Greystone Property would have a basement speakeasy bar, "slated to become one the area's most exciting entertainment venues."

    iv.  The Greystone Property was owned and managed by VOS Hospitality, with over Thirty (30) years of hospitality experience and with noted focus on job creation.

    v.  The Greystone Property had support from the Miami Design Preservation League and Miami Beach Zoning & Planning Board.

    vi.  The Greystone Project will create at least Seven Hundred and Thirty (730) new permanent jobs.

    vii.  The Greystone Project would only need to create Four Hundred and Forty-Four (440) jobs to comply with EB-5 regulations, implying a limit of Forty-Four (44) EB-5 Investors.

    viii.  That SARC was a leading Regional Center and processor of investment-based immigration (EB-5).

    ix.  That a partnership with SARC and VOS Hospitality would provide, "knowledge and expertise that investors can count on."

    x.  That SARC's portfolio consisted of "safe and exclusive projects" in the EB-5 Market Place.

    xi.  That EB-5 Loans represented 34.9% of the total project cost, or Twenty-Two million Dollars ($22,000.00).

    xii.  That the Greystone Project had Thirty Million Dollars ($30,000,000.00) in bank financing, or 47.5%.

    xiii.  That the Greystone Project had $7.7 million in developer equity, or 12.2%.

    xiv.  That the Greystone Project had $3.3 million in historic tax credits, or 5.4%

b.  The WWB, Wealth Without Boarders, EB-5 Magazine also printed a profile of Walsh as President/CEO of USREDA stating the following false and misleading information (*See* Exh. 7):

    i.   That Walsh has extensive experience in merger and acquisition strategy and law, including experience in U.S. Security and Exchange law.

    ii.   That Walsh managed several successful mergers of public companies,

    iii.   That Walsh had over thirty (30) years of experience in marketing, development, and process engineering.

    iv.   That USREDA was a global leader in investment immigration.

    v.   That USREDA's subsidiaries, SARC and JJW Consultancy, specialized in connecting investors with "emerging organization in key growth sectors."

c.  A Greystone Hotel brochure produced by Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, and the Vosotas Entities stated the following false and misleading information. A true and accurate copy of the Greystone Hotel brochure is attached hereto as **Exhibit 8**.

    i.   The Greystone Hotel would have Eighty-Eight (88) Rooms.

    ii.   The total building size was Fifty Thousand (50,000) square feet.

    iii.   The total lot size was Twenty Thousand (20,000) square feet.

    iv.   United EB-5 and its affiliates were a "safe and secure investment opportunity."

    v.   Under the heading, "Job Creation Certainty," the brochure stated, "The project would create 733.7 jobs, or 16.5 jobs per investor.

    vi.   Under the heading, "Project Completion Certainty" the brochure stated, "The EB-5 Investment will be protected as the Project has been able to secure and fund substantial equity from ownership. This allows the Project to have a low amount of debt as a percentage to the total deal cost."

    vii.   That United EB-5, "execute[d] the greatest amount of certainty and job growth potential."

viii.   That United EB-5 was "owned and operated by seasoned real estate business owners who are also investors, developers and managers of hospitality and commercial real estate."

ix.   That SARC was one of the most respected processors of investment-based immigration.

x.   That SARC was a federally approved Regional Center and licensed by USCIS to undertake EB-5 projects.

xi.   That VOS Hospitality, as part of Trans Inns Management, was, "one of the nation's leading independent full and select service hospitality management companies."

d.   United EB-5's webpage was produced by D. Vosotas, J. Vosotas, and the Vosotas Entities.   United EB-5's webpage is hosted through VOS Hospitality's website domain.   United EB-5's webpage contained the following false and misleading statements.   A true and accurate copy of excerpts from United EB-5's webpage is attached hereto as **Composite Exhibit 9**.

i.   That USREDA has, "better than 99% approval rate on I-526 petitions-significantly higher than the national USCIS average of 89%." *See id.* at 3.

ii.   That EB-5 Petition's expert staff has "submitted hundreds of individual client files and are equipped to help EB-5." immigrant investors navigate the process with success and efficiency." *See id.*

iii.   United EB-5's Escrow Services were in line with "Best Practices." *See id.*

iv.   United EB-5 offered a "Guarantee: Simply stated, You get approved, or your money back!" *See id.* at 4.

v.   United EB-5 offered a "Guarantee: When you file your I-526 application through us you can be assured that we will process the application expeditiously. You can have confidence that our experienced staff will

address any areas that may cause a deficiency or regulatory issue." *See id.* at 5.

vi. United EB-5 offered a, "Guarantee: For these reasons we are delighted to offer a FULL REFUND in the unlikely event the Immigration Service denies a submission." *See id.* at 6.

118.    Walsh and Walsh Jr. acting on behalf of the Walsh Entities met with clients in person at various Walsh Entities' offices in China.  In more than one of these meetings, J. Vosotas, acting on behalf of the Vosotas Entities, joined telephonically.  During these meetings Walsh, Walsh Jr., the Walsh Entities, J. Vosotas, and the Vosotas Entities made material false and misleading statements regarding: (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Greystone Hotel Miami; (4) the guaranteed return of investors' funds if their I-526 Petition were denied; (5) Walsh and co-conspirators' backgrounds; (6) the preparation and periodic disclosure to investors of financial reports; (7) Greystone Hotel Miami's repayment of the loan; (8) Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties, (9) Greystone Hotel Miami's prior to the commencement of the Greystone EB-5 Partnership offering; and (10) the existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment.  Walsh, Walsh Jr., the Walsh Entities, J. Vosotas, and the Vosotas Entities knew, or had reason to know the statements were false and or misleading.  Plaintiffs relied on the information provided in these in person meetings.

119.    Specific examples of misleading and false statements by Walsh, Walsh Jr., the Walsh Entities, J. Vosotas, and the Vosotas Entities include, but are not limited to the following:

a.  On July 28, 2016, Plaintiffs met with Zachary J Franklin, the general manager of SARC and JJW Consultancy, at the company's Shanghai Office. J. Vosotas attended the meeting via teleconference. J. Vosotas provided Plaintiffs with false and misleading information as to ownership of the Greystone Properties, guarantees on the return of Plaintiffs' investment, and the existence of a mortgage, or other security. Zachary J. Franklin repeated these false and misleading statements and directed Plaintiffs to statements in the Investment Portfolio and Investment Portfolio which also repeated the false and misleading statements. J. Vosotas finished the call by falsely stating that Plaintiffs, as owners of the Greystone Hotel, would be eligible to live for free at the property upon the projects' completion.

**K.  DEFENDANTS FRAUDULENTLY INDUCE PLAINTIFFS WITH INVESTMENT PORTFOLIO, IN THE FORM OF AN INVESTMENT PORTFOLIO**

120.   Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group distributed Investment Portfolio and marketing materials in the form of an Investment Portfolio to investors. The Investment Portfolio as, stated above, included a Limited Partnership Agreement, a Subscription Agreement, a PPM, a Legal Service Agreement, an Escrow Agreement, a Loan Agreement, a Business Plan, and an Economic Report. Defendants combined these materials into a multi-hundred-page packet that also contained an "EB-5 Investor Documents & Process Guide," a fee agreement, and a USREDA/SARC Service Agreement. To streamline and expedite the closing of an investment, Greystone EB-5 Partnership provided a booklet which contained only the signature pages of the documents necessary for investors to make their investments and file their I-526 Petition with the USCIS. *See* Exhibit 4.

121.   The Greystone EB-5 Partnership's Investment Portfolio also included various versions of a project brochure that was translated into Chinese--Defendants went to great lengths to defraud the Plaintiffs.

122.     Greystone's Investment Portfolio appeared under some combination of Greystone EB-5 Partnership, Greystone Hotel Miami, VOS Hospitality, Trans Inn Assocs., SARC, USREDA, and Greystone Hotel's names and logos.  Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group provided the Investment Portfolio to solicited Plaintiffs into investing in the Greystone Project. The Investment Portfolio repeatedly made the following false or misleading statements regarding (1) the use of investor funds; (2) the use of an escrow account to hold investor funds prior to disbursement to Greystone Hotel Miami; (3) the existence of conditions precedent to the advancement of loan disbursements to Greystone Hotel Miami; (4) the guaranteed return of investors' funds if their I-526 Petitions were denied; (5) Walsh and co-conspirators' backgrounds; (6) the preparation and periodic disclosure to investors of financial reports; (7) Greystone Hotel Miami's repayment of the loan; (8) Greystone Hotel Miami's purported ownership of and investment in the Greystone Properties; (9) Greystone Hotel Miami's prior to the commencement of the Greystone EB-5 Partnership offering; and (10) the existence of a mortgage, or other security, the investors held through the Greystone EB-5 Partnership against the Greystone Properties to secure their loan and investment.  At the time the Investment Portfolio was distributed to Plaintiffs, Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew, or had reason to know the statements were false and or misleading. Plaintiffs relied on this false and misleading information in determining to invest in the Greystone Project.

123.     Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group, through the Greystone EB-5 Partnership, also solicited investors using sales agents.  Greystone EB-5 Partnership sent an email to the sales agents that included links to its investment portfolio, the brochure, and the other advertising documents.  Each investor or the

sales agent for the investor received a copy of the relevant Investment Portfolio prior to investing—all containing false information.

124.    Walsh, Walsh Jr., the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group, participated in creating Greystone EB-5 Partnership's fraudulent Investment Portfolio and the drafted Greystone EB-5 Partnership agreement, the Greystone Project's business plans, loan documents, subscription, limited partnership, and escrow agreements with information provided by Walsh, D. Vosotas J. Vostotas, and Muhl.  Walsh and J. Vosotas reviewed and approved all of these documents.  Walsh and J. Vosotas also signed all the Investment Portfolio and investment documents as General Partners and managers despite knowledge of the false representations therein.

125.    Specific examples of false and misleading statements in the Investment Portfolio's Investment Portfolio are as follows:

a.  The Greystone Limited Partnership Agreement signed by Walsh and J. Vosotas falsely stated: (1) Partnership was formed for the purpose of investing in Qualifying Investments under the EB-5 Program (a true and accurate copy of the Greystone Limited Partnership Agreement is attached hereto as **Exhibit 10)**; (2) An escrow account will hold the limited partners' capital contributions (*see id.* at 6, ¶ 2.1.2); (3) The project was to develop and operate the Greystone Hotel (s*ee id.* at 5); (4) The capital contributions will be released from escrow under the terms of the escrow agreement (*see id.* at 6); and (5) The General Partners (SARC via Walsh and United EB5 via J. Vosotas) shall maintain accurate account and make such accounting available to the limited partners (*see id.* at 12).

b.  The Greystone Private Placement Memorandum signed by Walsh and J. Vosotas falsely stated the following (a true and accurate copy of the Greystone PPM is attached hereto as **Exhibit 11**): (1) the General Partners will provide limited partners addition information regarding the investment; (2) the General Partners have a successful history of commercial development, construction, retail, and

management experience; (3) the borrower, Greystone Hotel Miami, will use Plaintiffs' funds to invest in the Greystone Property and fulfill the EB-5 programs job creation requirements; (4) the Greystone Project will create the necessary number of jobs and economic benefits to assure the foreign investor that their application for residence status is and will continue in good standing; (5) the Greystone EB-5 Partnership will loan the proceeds from the offering to the Greystone Project; (6) all subscriptions will be paid to an Escrow account under the control of another entity, or Escrow Agent; and (7) the Greystone EB-5 Partnership intended to loan the proceeds of the offering to the Greystone Project.

c. The Escrow Agreement signed by Walsh falsely stated: The Escrow Agent shall hold Plaintiffs' funds until their I-526 Petitions have been submitted. A true and accurate copy of the Escrow Agreement is attached hereto as **Exhibit 12**.

d. The Loan Document signed by Walsh and J. Vosotas falsely stated: (1) The proceeds of this Loan will be used for Greystone Hotel Miami to develop the Greystone Properties (s*ee* Exh. 5); (2) Greystone Hotel Miami shall provide Plaintiffs a security interest in the Greystone Properties (*see id.*); (3) Greystone Hotel Miami will create ten (10) full time jobs per the EB-5 program (*see id.*); (4) Plaintiffs, in the event of default, have the right to foreclose on the Greystone Property (*see id.*); (5) Greystone Hotel Miami hold title to the Greystone Properties free of encumbrances. (*see id.*); (6) Greystone Hotel Miami conducts business solely in its own name and not through any other entities (*see id*); and (7) Plaintiffs shall receive a full return/refund of the investment if Plaintiffs' I-526 application is denied. *See id.*

e. The Greystone Comprehensive Business Plan was attached as an exhibit to the signed agreements in the Investment Portfolio. A true and accurate copy of the Greystone Comprehensive Business Plan is attached hereto as **Exhibit 13**. The Greystone Business Plan made the following false and misleading statements: (1) the Greystone Properties were owned by Greystone Hotel Miami (*see id.*); (2) the Greystone project anticipated financing of Sixty-Three Million Dollars ($63,000,000.00) (*see id.*); (3) that initial sources of financing included debt financing of Ten Million Dollars ($10,000,000.00) and equity of Fifteen Million

Dollars ($15,000,000.00) (*see id.*); (4) that final sources of financing included a first mortgage of Fifteen Million Dollars ($15,000,000.00), equity of Twenty Million Dollars ($20,000,000.00), HTC Equity of $6.2 million, and EB-5 investments of Twenty-Two Million Dollars ($22,000,000.00) (*see id.*); (5) that the hotel construction would be completed by the fourth quarter of 2015 (*see id.*); and (6) that the project was anticipated to create 733.7 direct and indirect jobs (*see id.*).

f.  The Subscription Agreement and Partnership Agreement state the following false or misleading statements (a true and accurate copy of the Subscription Agreement and Partnership Agreement is attached hereto as **Exhibit 14**; *see also* Exhibit 9):

    i.  The managers of the General Partner have a successful history of commercial development, construction, retail, and management experience.

    ii.  Timeline for acquisition of funding is anticipated to begin in 2014, and construction of the Project to begin concurrently with acquisition of EB-5 funding.

    iii.  The Partnership anticipates that the Project will be open for business in 2016.

    iv.  Anticipated project costs will be Sixty-Three Million Ninety-Five Thousand and Eight Hundred and Ninety-Eight Dollars ($63,095,898.00).

    v.  The Project shall provide substantial benefits to the regional economy that exceeds the strict USCIS requirements for job creation that will allow a foreign Investor to qualify for an EB-5 Immigration Visa.

    vi.  The Offering provides the Investors with a projected annual dividend.

    vii.  The Partnership will loan the proceeds of the offering to Greystone Project to partially finance the acquisition, development, and operation of the Greystone Properties.

    viii.  To maintain complete security in the payment process for the investor and the partnership, subscription funds will be wired into the Escrow Bank and held in Escrow.

    ix.  The Partnership will furnish financial statements to Limited Partners annually.

126.    Prior to investing in the project, Plaintiff Chuen Ping Ng traveled to Miami Florida to meet with Mitch Garrett, the Vice President - Acquisition & Development of VOS Hospitality and Trans Inns Management.  Acting as an employee and agent of the Vosotas Entities, Garrett provided the following false and misleading information as part of a presentation for the Greystone Hotel EB-5 Project: (1) the ownership of the Greystone Properties, (2) a guarantee on the return of Plaintiffs' investment, (3) the existence of a mortgage, or other security on Plaintiff's investment, (4) the expected creation of jobs by the project, (5) Defendants' experience as developers for EB-5 projects, and (6) the construction timeline for the Greystone Hotel.

**L.   UNKNOWINGLY, PLAINTIFFS WERE SENDING MONEY TO THE *FAKE* ESCROW ACCOUNT**

127.    In reliance upon the existence of the "escrow" account, Plaintiffs each wired their respective Five Hundred Thousand Dollars ($500,000.00) EB-5 investments, Forty-Four Thousand Dollars ($40,000.00), Sixty Thousand Dollars ($60,000.00) administrative fees into what they believed was a legitimate, safe escrow account—it was not.

128.    Plaintiff Yuanxiao Feng wired the funds to SARC on or about July 28, 2016. Plaintiff Yuanxiao Feng relied on the misrepresentations in the Investment Portfolio, which Plaintiff Yuanxiao Feng received prior to July 28, 2016, in making the decision to make the investment in to Greystone EB-5 Partnership.

129.    Plaintiff Kiu Chun Saxon Hui wired the funds to SARC on or about August 24, 2015.  Plaintiff Kiu Chun Saxon Hui relied on the misrepresentations in the Investment Portfolio, which Plaintiff Kiu Chun Saxon Hui received prior to August 24, 2015, in making the decision to make the investment in to Greystone EB-5 Partnership.

130.    Plaintiff Lai King Hui wired the funds to SARC in or around 2016 or 2017.  Plaintiff Lai King Hui relied on the misrepresentations in the Investment Portfolio, which Plaintiff Lai King

Hui received prior to the date of the wire, in making the decision to make the investment in to Greystone EB-5 Partnership.

131.    Plaintiff Jing Kuang wired the funds to SARC on or about January 17, 2017, January 20, 2017, and February 21, 2017.  Plaintiff Jing Kuang relied on the misrepresentations in the Investment Portfolio, which Plaintiff Jing Kuang received on or about November 26, 2016, in making the decision to make the investment in to Greystone EB-5 Partnership.

132.    Plaintiff Chuen Ping Ng wired the funds to SARC on or about March 4, 2015. Plaintiff Chuen Ping Ng relied on the misrepresentations in the Investment Portfolio, which Plaintiff Chuen Ping Ng received prior to March 4, 2015, in making the decision to make the investment in to Greystone EB-5 Partnership.

133.    Plaintiff Minyang Tian wired the funds to SARC on or about October 31, 2016; November 7, 2016; and November 8, 2016.   Plaintiff Minyang Tian relied on the misrepresentations in the Investment Portfolio, which Plaintiff Minyang Tian received on or about October 17, 2016, in making the decision to make the investment in to Greystone EB-5 Partnership.

134.    Plaintiff Hongsen Zhang wired the funds to SARC in or around 2016 or 2017. Plaintiff Hongsen Zhang relied on the misrepresentations in the Investment Portfolio, which Plaintiff Hongsen Zhang received prior to the date of the wire, in making the decision to make the investment in to Greystone EB-5 Partnership.

135.    Plaintiff Yan Zhang wired the funds to SARC on or about October 29, 2014. Plaintiff Yan Zhang relied on the misrepresentations in the Investment Portfolio, which Plaintiff Yan Zhang received on or about October 18, 2014, in making the decision to make the investment in to Greystone EB-5 Partnership.

### M. DEFENDANTS' FRAUD CONTINUED

136.    Beginning in 2017, Plaintiffs began receiving requests from USCIS to provide additional evidence to support their EB-5 Petitions.

      a.   J. Vosotas, D. Vosotas, Muhl, and Walsh provided false and misleading information to Plaintiff's immigration attorneys in an attempt to hide and conceal the ongoing fraud.  Such false and misleading information included photos of ongoing construction of the Greystone Hotel, falsely claiming that the photos were construction of the Santa Barbara Apartments.  True and correct copies of the Construction Photos are attached hereto as Composite **Exhibit 16**.

      b.  A Loan Agreement falsely stating ownership and financing of the Santa Barbara Apartments ("Santa Barbara 230 Loan Agreement).  A true and correct copy of the Santa Barbara 230 Loan Agreement is attached hereto as **Exhibit 17**.

      c.  An Ownership Chart falsely stating ownership of the Santa Barbara Apartments.  A true and correct copy of the Ownership Chart is attached hereto as **Exhibit 18**.

### N. PLAINTIFFS' I-526 PETITIONS ARE DENIED BY USCIS

137.    Plaintiffs were approved as accredited investors and their petitions were accepted within SARC's program for the Greystone EB-5 Partnership investment.

138.    Relying on the misrepresentations of Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group, Plaintiffs diligently submitted all necessary paperwork in conjunction with their I-526 Petitions, asserting eligibility based on an investment in a Regional Center through Greystone EB-5 Partnership and SARC.

139.    However, because of the deficiencies in the project, Plaintiffs' Form I-526 Petitions were denied by USCIS for failure to establish by a preponderance of the evidence that the Form I-526 Petitions complied with the applicable legal requirements.

140.    USCIS cited the following deficiencies: (1) failure to demonstrate the creation of jobs, (2) failure to demonstrate Plaintiffs' investment had been loaned to Greystone Hotel Miami,

(3) failure to demonstrate construction was underway at the properties, and (4) failure to demonstrate bank loans had been obtained.

141.    The deficiencies cited by USCIS were a direct result of actions taken and documents provided by Greystone EB-5 Partnership, and over which Plaintiffs had absolutely no control.

142.    Because it had become apparent that the promises of Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group were false and Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group had not adhered to their duties, Plaintiffs demanded the return of their funds.

143.    Despite Plaintiffs' demands, no funds were returned to Plaintiffs.

144.    Instead, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group ceased all communication with Plaintiffs and wrongfully retained the Plaintiffs' investment funds.

**O.   DEFENDANTS' FRAUD AND THEFT ARE DISCOVERED**

145.    Upon an investigation following denial of their I-526 Petitions, Plaintiffs discovered the list of fraudulent representations made by Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group in furtherance of obtaining and stealing Plaintiffs' money.

146.    Greystone EB-5 Partnership was not a legitimate EB-5 project, but rather a façade and a vehicle meant only to defraud investors.  Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group used the Greystone EB-5 Partnership to steal at least Four Million Dollars ($4,000,000.00) from at least eight (8) foreign nationals seeking EB-5 visas and a better life for their families in the United States.

147.    In violation of all written and oral representations, Plaintiffs' funds were immediately transferred from the fraudulent Escrow Account to other accounts controlled by the conspirators.

148.    Additionally, even though some funds were unquestionably transferred to the Greystone Hotel Miami (Exh. 6), even in this lawsuit the Greystone Defendants have claimed that the Greystone EB-5 Partnership did not loan any money to Greystone Hotel Miami such that the security agreements were activated.  (*See* D.E. 68.)

149.    As described in detail above, most of the representations within the Investment Portfolio's Investment Portfolio were knowingly false or misleading.

150.    The One Hundred Percent (100%) guaranty for the return of Plaintiffs' investment and fees in the event their I-526 Petition was denied was knowingly false.

151.    The representations that Plaintiffs' funds would be held in escrow unless and until USCIS approved their I-526 applications were knowingly false.

152.    The representations that Plaintiffs' funds would be returned within Ninety (90) days of denial of their I-526 applications were knowingly false.

153.    The representations that a maximum of forty-four (44) investors in the Greystone EB-5 Partnership would be sold were knowingly false.

154.    The representations that the funds would be exclusively invested in the Greystone Hotel to create jobs by helping to finish the renovation and development were knowingly false. Even in this lawsuit, counsel for the Greystone Defendants has falsely claimed that no funds changed hands from Greystone EB-5 Partnership to Greystone Hotel Miami—thus, Plaintiffs have no clear indication where the funds that were unquestionably transferred to SARC and/or Greystone EB-5 Partnership ended up.

155.    Plaintiffs' investigation has revealed that the representations that the developer had "invested" $7.7 million of their own equity into the project were misleading and knowingly false. In truth, no "equity" was invested by the developer, as they acquired the property with little or no cash paid.

156.    The representations that Plaintiffs' funds were in addition to an equity investment by the developer in excess of $7.7 million and a bank loan in excess of Thirty Million Dollars ($30,000,000.00) so that Plaintiffs' funds constitute less than 34.9% of the project funding were knowingly false.

157.    The representations that a bank had provided funding in excess of Thirty Million Dollars ($30,000,000.00) and that the bank had undertaken due diligence on the project prior to making the loan were knowingly false.  Indeed, there was no bank loan, and no due diligence undertaken by any bank.

158.    The representations that the funds would create ten (10) full-time jobs for each five hundred thousand dollars ($500,000.00) invested were knowingly false.

159.    In fact, the representations that the project was in progress, "very near completion," and would be complete for "Season" of 2016 were knowingly false.

160.    The representations that the job count for the project was Seven Hundred and Thirty (730) jobs were knowingly false.

161.    The representations that Plaintiffs need not worry if the project will perform and meet the rigid standards required by USCIS were knowingly false.

162.    The representations that Walsh had experience in securities was knowingly false.

163.    The representations that VOS Hospitality had experience in generating jobs for EB-5 related projects was knowingly false.

164.     The representations that each investor's investment would be fully secured by the real property at issue were knowingly false.

165.     All of the false representations described herein were made to induce Plaintiffs into investing their money.  The Loan Documents specifically stated that the loan to Greystone Project was dependent on USCIS' approval of Plaintiffs' I-526 Petitions.

166.     As authorized member of United EB5, General Partner of Greystone EB-5 Partnership, J. Vosotas knew that none of Plaintiffs' funds could be used unless and until Plaintiffs' I-526 Petitions had been approved by USCIS.

167.     Yet, J. Vosotas was copied on the email showing the transfer of $500,000 of funds to Greystone Hotel Miami on or about December 1, 2014.  *See* Exh. 6.

168.     While none of Plaintiffs' I-526 Petitions were approved, Defendants took Plaintiffs' money anyway, further demonstrating their intent to defraud the Plaintiffs.

169.     SARC, Walsh, J. Vosotas, and United EB5, LLC owed Plaintiffs a fiduciary duty to protect their funds, not steal their funds, and not allow their release for use at Greystone Hotel Miami unless and until the Plaintiffs' I-526 Petitions were approved by USCIS.

170.     Defendants acted with willful, reckless, grossly negligent and malicious intent in taking the alleged above actions.

**P.   THE *"GREYSTONE EB-5 PARTNERSHIP"* SCHEME WAS BASED ON A SERIES OF FRAUDULENT MISREPRESENTATIONS**

***i.*   Material Misrepresentations and Omissions to Greystone EB-5 Investors**

171.     Defendants misrepresented the ownership of the Greystone Properties.

172.     Throughout the Investment Portfolio, Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group misrepresented that Greystone Hotel Miami

either directly owned the Greystone Properties or indirectly owned the Greystone Properties through wholly owned the subsidiaries Greystone Terra Firma and Santa Barbara 230.

173.    In reality, and as evidenced by multiple mortgages, deeds, and other instruments filed with the Miami-Dade Clerk of Court, Greystone Hotel Miami held no ownership interest in the Greystone Properties.

### ii.    Misrepresentations Regarding Escrow Requirements and the Return of Investor Funds

174.    From 2014 to 2016, Greystone EB-5 Partnership's Investment Portfolio contained material misrepresentations about Greystone EB-5 Partnership use of an escrow account for investor funds.  Greystone EB-5 Partnership falsely and fraudulently claimed that investor funds would be held in an escrow account, pursuant to an escrow agreement through at least the filing of the investor's I-526 petition.  Contrary to these representations, no escrow account even existed for investor funds.

175.    Greystone EB-5 Partnership's Investment Portfolio also contained material misrepresentations about the return of funds paid by investors.  Greystone Hotel Miami and Greystone EB-5 Partnership falsely and fraudulently stated that if an investor's I-526 petition were denied by the USCIS for reasons "within the control" of Greystone EB-5 Partnership, the investor's funds would be returned without deduction.  The Investment Portfolio and SARC's own website also falsely, fraudulently, and repeatedly stated that investors' funds would be returned.

176.    Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group knew or recklessly disregarded that Greystone EB-5 Partnership would not be able to repay investors whose petitions were denied because the funds were never properly escrowed and because there was no adequate security agreement over the Greystone Properties.

177.    To date, the USCIS has denied all of the investor I-526 petitions.  USCIS denied the I-526 petitions because, among other reasons, investors failed to demonstrate that the Greystone Hotel project would create sufficient jobs, and failure to prove the investors' funds had been allocated to the development.

178.    Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group and their agents and employees orally repeated the misrepresentations.

179.    Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group and their agents and employees through electronic messengering services and email repeated the misrepresentations.

180.    Walsh, the Walsh Entities, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and the B Group never returned any money to Plaintiffs.

### iii.    Other Misrepresentations to the Greystone EB-5 Partnership Investors

181.    Greystone EB-5 Partnership's Investment Portfolio also materially misrepresented the conditions under which investor funds would be loaned to Greystone Hotel Miami. In particular, the private placement memoranda stated, "it shall be a condition of each advance that as of such time there shall not have been a material adverse change in the operations, assets or financial condition of the borrower and its subsidiaries, taken as a whole." *See* Exh. 5.

182.    The Loan Documents made similar representations and stated that the determination as to material adverse changes would be made by Greystone EB-5 Partnership. *See id.* Walsh, J. Vosotas, and Greystone EB-5 Partnership never ascertained whether Greystone Hotel Miami met these pre-conditions for any loan advance.  Despite being granted the authority by the loan documents to access Greystone Hotel Miami's financial statements and the right to inspect its books and records, Greystone EB-5 Partnership never exercised this authority.

183.    The Investment Portfolio also materially misrepresented that Greystone EB-5 Partnership would provide audited financial statements or other financial information to Plaintiffs on an annual or quarterly basis. *See id.*  Greystone EB-5 Partnership never prepared audited financial statements and did not provide audited statements, or any other financial reports, to investors.

184.    The Investment Portfolio also misrepresented that Greystone Hotel Miami would make monthly interest payments to Greystone EB-5 Partnership on its loan for five (5) years. Greystone Hotel Miami did not make any monthly interest payments to Greystone EB-5 Partnership.  This is despite the fact

185.    In order to bolster investor confidence in Greystone EB-5 Partnership investment offering, Greystone's business plans and brochures also made materially misleading statements suggesting that Greystone Hotel Miami had substantial funds at stake in the Greystone Properties, and that investor funds were only part of an already well-financed development project.  Based on information provided in part by J. Vosotas, Greystone EB-5 Partnership's business plans falsely and fraudulently represented that the Greystone Project had $7.7 million in equity in the Greystone Hotel, and the brochures fraudulently stated the project was "very safe" based in part on a substantial equity investment from Greystone Hotel Miami.  In reality, the Greystone Properties were financially distressed, and J. Vosotas, through his various entities purchased them with limited equity.  J. Vosotas also failed to disclose the properties were financed with an initial, undisclosed Five Million Dollar ($5,000,000.00) mortgage from BBM3 II and BBM3 and no equity from the developer.

### iv.   Defendants Fraudulently Induced Plaintiff's to Invest in the Greystone EB-5 Partnership

186.    In reliance on the Investment Portfolio, the USCIS Approval of SARC and the Greystone Project, the websites, and the oral representations described above, each of the Plaintiffs provided Five Hundred Thousand Dollars ($500,000.00) for a limited partnership unit in Greystone EB-5 Partnership, along with an administrative fee of Forty-Five Thousand Dollars ($45,000.00) and legal services fee of Fifteen Thousand Dollars ($15,000.00). A true and accurate copy of a Certificate of Limited Partnership Interest is attached hereto as Exhibit 18.

187.    Each of the Plaintiffs received confirmation that their Five Hundred Thousand Dollar ($500,000.00) investment, Forty-Five Thousand Dollars ($45,000.00), Sixty Thousand Dollar ($60,000.00) administrative fee, and Fifteen Thousand Dollar ($15,000.00) legal services fee had been received.

188.    In providing their money, Plaintiffs relied upon the representation that there was a 100% guaranty for the return of their investment and fees in the event their I-526 Petition was denied.

189.    In providing their money, Plaintiffs relied upon the Escrow Representation, and understood that their money would be held in escrow unless escrow conditions were met.

190.    In providing their money, Plaintiffs relied upon the representation that if their I-526 Petition was denied, their funds would be returned within 90 days.

191.    In providing each of their respective money, Plaintiffs relied upon the representation that only forty-four (44) limited partnership units in Greystone EB-5 Partnership would be offered. This representation was material because, if there were too many investors, not enough jobs would be created per investor and they would be unable to obtain the EB-5 visas.

Further, this information was relied upon in calculating each investors' ability to obtain a return on their investment.

192.    In providing their money, Plaintiffs relied upon the representation that their funds would be exclusively invested in the Greystone Hotel Miami to create jobs by helping to finish the renovation and development of the Greystone Properties.

193.    In providing their money, Plaintiffs relied upon the representation by United EB-5 that the General Partners had a historic "99%" success rate with I-526 petitions.

194.    In providing their money, Plaintiffs relied upon the representation that their funds were in addition to an equity investment by the developer in excess of $7.7 million and a bank loan in excess of thirty million dollars ($30,000,000.00), so that Plaintiffs' funds constituted less than 34.9% of the project's funding. Plaintiffs relied upon the fact that a bank conducted significant due diligence on the viability of the project prior to giving a thirty million dollar ($30,000,000.00) loan.

195.    In providing their money, Plaintiffs relied upon the representation that their funds would be held in escrow, and were not yet needed, because the developer's investment in excess of $7.7 million and a bank loan in excess of thirty million dollars ($30,000,000.00) were being used for construction.

196.    In providing their money, Plaintiffs relied upon the representation that their funds would not be taken from the escrow account, and would not be used, unless and until the developer's investment in excess of $7.7 million and the bank funds in excess of thirty million dollars ($30,000,000.00) had been used at the project.

197.    In providing their money, Plaintiffs relied upon the representation that a bank had provided funding in excess of thirty million dollars ($30,000,000.00), that these funds were being

used for ongoing construction at the project, and that a bank had undertaken due diligence on the project.

198.     In providing their money, Plaintiffs relied upon the representation that their funds would be used exclusively to develop the hotel and create at least ten (10) jobs per investor, as required by USCIS guidelines.

199.     In providing their money, Plaintiffs relied upon the representation that the project was in progress, "very near completion," and would be complete for "the 2016 season." *See* Exh. 5.

200.     In providing their money, Plaintiffs relied upon the representation that the job count for the Greystone Hotel project was 733.7 jobs, while the project needed only four hundred and forty (440) jobs.

201.     In providing their money, Plaintiffs relied upon the representation that they need not worry if the project will perform and meet the rigid standards required by the USCIS.

202.     In providing their money, Plaintiffs relied upon the representation that each investor's investment in the Greystone EB-5 Partnership would be fully secured by the real property at issue with a mortgage from Greystone Hotel Miami—on the Greystone Properties— issued to the Greystone EB-5 Partnership.

**Q.   DIRECT STANDING DUE TO GENERAL PARTNERS ABDICATION OF RESPONSIBILITY TO GREYSTONE EB-5 PARTNERSHIP**

203.     United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates have allowed their counsel in this very action to falsely represent that no funds were lent to Greystone Hotel Miami from Greystone EB-5 Partnership (D.E. 68), even though this is clearly false given information provided by former Defendant Anthony Reitz. Exh. 6. Thus, Plaintiffs suffer an injury that is separate and distinct from both Greystone EB-5 Partnership and Greystone

EB-5 Partnership's General Partners.  In fact, the Vosotas Entities have benefitted from the breach of the fiduciary duty by United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates in that Greystone Hotel Miami has thus far successfully avoided liability for the loan to Greystone EB-5 Partnership.

204.    Each of the Plaintiffs invested different amounts in the Greystone EB-5 Partnership on different dates and under different circumstances, such that each Plaintiff's injury is separate and distinct from both Greystone EB-5 Partnership and Greystone EB-5 Partnership's General Partners.

## COUNT I - Aiding and Abetting Conversion
*(J. Vosotas)*
(Previously Count 4)

205.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

206.    Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.  All of the bad acts committed by Walsh, Walsh Jr., SARC, WWB Trust, USREDA, USREDA Holdings, USREDA Management as set out above are fully alleged and incorporated herein for purposes of establishing the underlying violation by the alleged aider and abettor.

207.    J. Vosotas had specific knowledge that Plaintiffs' property was about to be or was converted.

208.    Specifically, J. Vosotas is the authorized member of United EB5.  Attached hereto as **Exhibit 19** is a true and correct copy of the Articles of Organization for United EB5 as on file with the Florida Department of State Division of Corporations.  As noted therein, J. Vosotas signed as the "AMBR."  Attached hereto as **Exhibit 20** is a true and correct copy of the title abbreviations

utilized by the Florida Department of State Division of Corporations. As noted therein, "AMBR" means "authorized member."

209.     Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed. However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

210.     Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

211.     Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa. Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

212.     Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

213.     Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

214.     Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

215.     J. Vosotas knew or should have known that Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

216.     J. Vosotas knew or should have known that Plaintiffs' investment funds were never placed in escrow and that some of the funds were diverted out of the limited liability partnership by Walsh while some were loaned to another of Vosotas's entities, Greystone Hotel Miami.

217.     J. Vosotas knew, or should have known, that Walsh had misappropriated and converted Plaintiffs' property.

218.     J. Vosotas through his role as member or manager of the Vosotas Entities had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

219.     J. Vosotas provided substantial assistance to advance the commission of the conversion.

220.     J. Vosotas in a teleconference meeting with Plaintiffs made multiple misrepresentations to Plaintiffs including (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their EB-5 Visas were approved.

221.     J. Vosotas produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

222.     J. Vosotas provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

223.    J. Vosotas partnered with Walsh and represented himself as a project manager in the Greystone Project's advertisements and the Investment Portfolio.

224.    J. Vosotas allowed his likeness and VOS Hospitality / Trans Inns Associates to be used in the Investment Portfolio as the second general partner in Greystone EB-5 Partnership, even though the second general partner of record was United EB5.

225.    In conclusion, J. Vosotas, knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment.  J. Vosotas substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

226.    Plaintiffs were severely damaged by the actions Walsh, Walsh Jr., and the Walsh entities, all of which were aided and abetted by J. Vosotas.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against JAMES VOSOTAS for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT II - Aiding and Abetting Conversion
*(D. Vosotas*)
(Previously Count 5)

227.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

228.    Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.  All of the bad acts committed by Walsh, Walsh Jr., SARC, WWB Trust, USREDA, USREDA Holdings, USREDA Management as set out above are fully

alleged and incorporated herein for purposes of establishing the underlying violation by the alleged aider and abettor.

229.    Specifically, J. Vosotas is the authorized member of United EB5.  Exh. 19.

230.    Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

231.    Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

232.    Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

233.    Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

234.    Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

235.    Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

236.    D. Vosotas knew or should have known that Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

237.    D. Vosotas knew or should have known that Plaintiffs' investment funds were never placed in escrow and that some of the funds were diverted out of the limited liability partnership by Walsh while some were loaned to another of Vosotas's entities, Greystone Hotel Miami.

238.    D. Vosotas knew, or should have known, that Walsh had misappropriated and converted Plaintiffs' property.

239.    D. Vosotas through his role as member or manager of the Vosotas Entities had specific knowledge that Plaintiffs' investment had been misappropriated and converted.

240.    D. Vosotas provided substantial assistance to advance the commission of the conversion.

241.    D. Vosotas, or his authorized agents, met with Plaintiffs to discuss their potential investment in the Greystone Project.  Representations made by D. Vostoas and/or his agents gave credibility to Walsh and the Greystone Project.

242.    D. Vosotas produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

243.    D. Vosotas, provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence or lack thereof of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers'

EB-5 experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

244.    D. Vosotas partnered with Walsh and represented himself as a project manager in the Greystone Project's advertisements and the Investment Portfolio.

245.    D. Vosotas allowed his likeness and VOS Hospitality / Trans Inns Associates to be used in the Investment Portfolio as the second general partner in Greystone EB-5 Partnership, even though the second general partner of record was United EB5.

246.    In conclusion, D. Vosotas, knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment.  D. Vosotas substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

247.    Plaintiffs were severely damaged by the actions Walsh, Walsh Jr., and the Walsh entities, all of which were aided and abetted by D. Vosotas.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against DANIEL VOSOTAS, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT III - Aiding and Abetting Conversion
*(Muhl)*
(Previously Count 6)

248.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

249.    Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.  All of the bad acts committed by Walsh, Walsh Jr., SARC,

WWB Trust, USREDA, USREDA Holdings, USREDA Management as set out above are fully alleged and incorporated herein for purposes of establishing the underlying violation by the alleged aider and abettor.

250.    Specifically, J. Vosotas is the authorized member of United EB5.  Exh. 19.

251.    Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

252.    Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

253.    Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

254.    Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

255.    Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

256.    Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

257.    Muhl was a member or manager in each of the Vosotas Entities.

258.    Muhl knew or should have known that Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

259.    Muhl knew or should have known that Plaintiffs' investment funds were never placed in escrow and that some of the funds were diverted out of the limited liability partnership by Walsh while some were loaned to another of Vosotas's entities, Greystone Hotel Miami.

260.    Muhl knew or should have known that Walsh had misappropriated and converted Plaintiffs' property.

261.    Muhl provided substantial assistance to advance the commission of the conversion.

262.    Muhl through the Muhl Entities (BBM3 and BBM3 II) provided the initial funding to purchase the Greystone Properties.

263.    Muhl traveled to China and Hong Kong to advertise EB-5 projects, including the Greystone Project.

264.    Muhl delayed in filing various mortgages, notices, and lease agreements in regards to the Greystone Properties.  The only reasonable explanation for this delay was to prevent public disclosure, and Plaintiffs' discovery of true ownership structure of the Greystone Properties.

265.    Muhl produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

266.    Muhl provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence or lack thereof of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5

experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

267.    Muhl partnered with Walsh and represented himself as a project manager in the Greystone Project's advertisements and the Investment Portfolio.

268.    In conclusion, Muhl knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment.  Muhl substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

269.    Plaintiffs were severely damaged by the actions Walsh, Walsh Jr., and the Walsh entities, all of which were aided and abetted by Muhl.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against BRANDEN MUHL, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT IV - Aiding and Abetting Conversion
*(Vosotas Entities)*
(Previously Count 7)

270.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

271.    Walsh, SARC, WWB TRUST, USREDA, and USREDA Holdings misappropriated and converted Plaintiffs' property.  All of the bad acts committed by Walsh, Walsh Jr., SARC, WWB Trust, USREDA, USREDA Holdings, USREDA Management as set out above are fully alleged and incorporated herein for purposes of establishing the underlying violation by the alleged aider and abettor.

272.     Specifically, J. Vosotas is the authorized member of United EB5.  Exh. 19.

273.     Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

274.     Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

275.     Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

276.     Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

277.     Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

278.     Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

279.     Further, the Vosotas Entities largely share the same members and managers, allowing the knowledge of J. Vosotas and United EB5 to be imputed to the rest of the Vosotas Entities.

280.    The Vosotas Entities knew or should have known that Plaintiffs' funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

281.    The Vosotas Entities knew or should have known that Plaintiffs' investment funds were never placed in escrow and that some of the funds were diverted out of the limited liability partnership by Walsh while some were loaned to another of Vosotas's entities, Greystone Hotel Miami.

282.    The Vosotas Entities knew or should have known that Walsh had misappropriated and converted Plaintiffs' property.

283.    The Vosotas Entities agreed to develop the Greystone Project and EB-5 partnership with Walsh.  Vosotas Entities, specifically Greystone EB-5 Partnership, were the legally authorized recipients of Plaintiffs' investment to develop the Greystone Properties.   Under the Investment Portfolio, Greystone Hotel Miami was intended to be the recipient of the Plaintiffs' funds as borrower under the Loan Documents.  *See* Exh. 4.  As such, the Vosotas Entities had specific knowledge that not all of the investment had been properly paid into Greystone EB-5 Partnership and lent to Greystone Hotel Miami.  Vosotas Entities knew or should have known Plaintiffs' property had been misappropriated and converted by Walsh.

284.    The Vosotas Entities provided substantial assistance to advance the commission of the conversion.

285.    J. Vosotas—manager or member of the Vosotas Entities—in a teleconference meeting with Plaintiffs made multiple misrepresentations to Plaintiffs including (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold

Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their  EB-5 Visas were approved.

286.    The Vosotas Entities produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

287.    The Vosotas Entities provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

288.    Vosotas Entities, specifically United EB5, VOS Hospitality, and Trans Inns Associates, partnered with Walsh and represented themselves as a project manager in the Greystone Project's advertisements and the Investment Portfolio.

289.    VOS Hospitality / Trans Inns Associates to be used in the Investment Portfolio as the second general partner in Greystone EB-5 Partnership, even though the second general partner of record was United EB5.

290.    In conclusion, the Vosotas Entities knowingly aided and abetted the conversion of Plaintiffs' EB-5 investment.  The Vosotas Entities substantially assisted or enabled the conversion of Plaintiffs' EB-5 investment monies.

291.    Plaintiffs were severely damaged by the actions Walsh, Walsh Jr., and the Walsh entities, all of which were aided and abetted by the Vosotas Entities.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against GREYSTONE HOTEL MIAMI, LLC; UNITED EB5, LLC; SANTA BARBARA 230, LLC; GREYSTONE TERRA FIRMA, LLC; VOS HOLDINGS I, LLC; VOS CRE I, LLC; GREYSTONE HOSPITALITY, LLC; GREYSTONE HOLDCO, LLC; GREYSTONE MANAGING MEMBER, LLC; GREYSTONE MASTER TENANT, LLC, GREYSTONE TENANT, LLC; GREYSTONE OPTION HOLDER, LLC; TRANS INNS ASSOCIATES, INC.; and VOS HOSPITALITY, LLC for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

**COUNT V - Fraud in the Inducement**
*(J. Vosotas)*
(Previously Count 11)

292.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

293.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, J. Vosotas induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

    a.  how funds invested in Greystone EB-5 Partnership would be utilized;

    b.  who the General Partners in Greystone EB-5 Partnership were;

    c.  the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

    d.  the guaranteed return of investors' funds if their I-526 Petitions were denied;

    e.  security in the form of the Loan Documents and that Greystone Hotel Miami held title to the Greystone Properties;

294.     Specifically, J. Vosotas in a teleconference meeting with Plaintiffs made multiple misrepresentations to Plaintiffs including (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their EB-5 Visas were approved.

295.     J. Vosotas knew that all of these misrepresentations were false.

296.     J. Vosotas is the authorized member of United EB5.  Exh. 19.

297.     Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

298.     Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

299.     Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

300.     Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

301.     Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

302. Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

303. J. Vosotas allowed his likeness and that of VOS Hospitality / Trans Inns Associates to be used as the "Management Team" of Greystone EB-5 Partnership even though the record general partner was United EB5.

304. J. Vosotas, after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake escrow account.

305. Knowing that his statements were false, J. Vosotas intended for the representations to induce Plaintiffs to rely on them and transfer the money.

306. Plaintiffs justifiably relied on J. Vosotas' representations and transferred all required payments.

307. Specifically, Plaintiffs would have never invested in Greystone EB-5 Partnership but for J. Vosotas's representations guaranteeing repayment of the investment if the I-526 Petitions were denied, that the funds were to be held in escrow until such time as the I-526 Petitions were approved, and that the Greystone EB-5 Partnership was secured by the Greystone Properties through a mortgage from Greystone Hotel Miami to the Greystone EB-5 Partnership.

308. In justifiable reliance on J. Vosotas' representations, Plaintiffs have suffered damages, including, but not limited to, the funds invested in Greystone EB-5 Partnership, to be proven at trial.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN

ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against JAMES VOSOTAS for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

**COUNT VI - Fraud in the Inducement**
*(D. Vosotas)*
(Previously Count 12)

309.     Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

310.     Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, D. Vosotas induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

 f.   how funds invested in Greystone EB-5 Partnership would be utilized;

 g.   who the General Partners in Greystone EB-5 Partnership were;

 h.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

 i.   the guaranteed return of investors' funds if their I-526 Petitions were denied;

 j.   security in the form of the Loan Documents and that Greystone Hotel Miami held title to the Greystone Properties;

311.     Additionally, D. Vosotas allowed an agent or employee to make multiple misrepresentations in a teleconference meeting with Plaintiffs including: (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their EB-5 Visas were approved.

312.     D. Vosotas knew that all of these misrepresentations were false.

313.     J. Vosotas is the authorized member of United EB5.  Exh. 19.

314.    Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

315.    Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

316.    Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

317.    Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

318.    Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

319.    Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

320.    D. Vosotas allowed his likeness and that of VOS Hospitality / Trans Inns Associates to be used as the "Management Team" of Greystone EB-5 Partnership even though the record general partner was United EB5.

321.    D. Vosotas, after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake escrow account.

322.    Knowing that his statements were false, D. Vosotas intended for the representations to induce Plaintiffs to rely on them and transfer the money.

323.    Plaintiffs justifiably relied on D. Vosotas' representations and transferred all required payments.

324.    Specifically, Plaintiffs would have never invested in Greystone EB-5 Partnership but for D. Vosotas's representations guaranteeing repayment of the investment if the I-526 Petitions were denied, that the funds were to be held in escrow until such time as the I-526 Petitions were approved, and that the Greystone EB-5 Partnership was secured by the Greystone Properties through a mortgage from Greystone Hotel Miami to the Greystone EB-5 Partnership.

325.    In justifiable reliance on D. Vosotas' representations, Plaintiffs have suffered damages, including, but not limited to, the funds invested in Greystone EB-5 Partnership, to be proven at trial.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against DANIEL VOSOTAS, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT VII - Fraud in the Inducement
*(Muhl)*
(Previously Count 13)

326.     Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

327.     Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, Muhl induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

> k.   how funds invested in Greystone EB-5 Partnership would be utilized;
>
> l.   who the General Partners in Greystone EB-5 Partnership were;
>
> m.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;
>
> n.   the guaranteed return of investors' funds if their I-526 Petitions were denied;
>
> o.   security in the form of the Loan Documents and that Greystone Hotel Miami held title to the Greystone Properties;

328.     Additionally, Muhl allowed an agent or employee to make multiple misrepresentations in a teleconference meeting with Plaintiffs including: (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their EB-5 Visas were approved.

329.     Additionally, Muhl traveled to China and Hong Kong seeking investors for EB-5 project, making multiple false statements as alleged above.

330.     Muhl knew that all of these misrepresentations were false.

331.     J. Vosotas is the authorized member of United EB5.  Exh. 19.

332.     Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

333.     Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

334.     Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

335.     Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

336.     Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

337.     Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

338.     Muhl allowed VOS Hospitality / Trans Inns Associates to be used as the "Management Team" of Greystone EB-5 Partnership even though the record general partner was United EB5.

339.    Muhl, after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake escrow account.

340.    Knowing that his statements were false, Muhl intended for the representations to induce Plaintiffs to rely on them and transfer the money.

341.    Plaintiffs justifiably relied on Muhl's representations and transferred all required payments.

342.    Specifically, Plaintiffs would have never invested in Greystone EB-5 Partnership but for Muhl's representations guaranteeing repayment of the investment if the I-526 Petitions were denied, that the funds were to be held in escrow until such time as the I-526 Petitions were approved, and that the Greystone EB-5 Partnership was secured by the Greystone Properties through a mortgage from Greystone Hotel Miami to the Greystone EB-5 Partnership.

343.    In justifiable reliance on Muhl's representations, Plaintiffs have suffered damages, including, but not limited to, the funds invested in Greystone EB-5 Partnership, to be proven at trial.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against BRANDEN MUHL, for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

**COUNT VIII - Fraud in the Inducement**
*(Vosotas Entities)*
(Previously Count 14)

344.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

345.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, the Vosotas Entities induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

      p.   how funds invested in Greystone EB-5 Partnership would be utilized;

      q.   who the General Partners in Greystone EB-5 Partnership were;

      r.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;

      s.   the guaranteed return of investors' funds if their I-526 Petitions were denied;

      t.   security in the form of the Loan Documents and that Greystone Hotel Miami held title to the Greystone Properties;

346.    Additionally, the Vosotas Entities allowed J. Vosotas to make multiple misrepresentations in a teleconference meeting with Plaintiffs including: (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their EB-5 Visas were approved.

347.    Additionally, the Vosotas Entities allowed Muhl to travel to China and Hong Kong seeking investors for EB-5 project, making multiple false statements as alleged above.

348.    The Vosotas Entities knew that all of these misrepresentations were false.

349.    J. Vosotas is the authorized member of United EB5.  Exh. 19.

350.     Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

351.     Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

352.     Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

353.     Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

354.     Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

355.     Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

356.     Further, the Vosotas Entities largely share the same members and managers, allowing the knowledge of J. Vosotas and United EB5 to be imputed to the rest of the Vosotas Entities.

357.    The Vosotas Entities allowed VOS Hospitality / Trans Inns Associates to be used as the "Management Team" of Greystone EB-5 Partnership even though the record general partner was United EB5.

358.    The Vosotas Entities, after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake escrow account.

359.    Knowing that his statements were false, the Vosotas Entities intended for the representations to induce Plaintiffs to rely on them and transfer the money.

360.    Plaintiffs justifiably relied on the Vosotas Entities' representations and transferred all required payments.

361.    Specifically, Plaintiffs would have never invested in Greystone EB-5 Partnership but for the Vosotas Entities' representations guaranteeing repayment of the investment if the I-526 Petitions were denied, that the funds were to be held in escrow until such time as the I-526 Petitions were approved, and that the Greystone EB-5 Partnership was secured by the Greystone Properties through a mortgage from Greystone Hotel Miami to the Greystone EB-5 Partnership.

362.    In justifiable reliance on the Vosotas Entities' representations, Plaintiffs have suffered damages, including, but not limited to, the funds invested in Greystone EB-5 Partnership, to be proven at trial.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against GREYSTONE HOTEL MIAMI, LLC; UNITED EB5, LLC; SANTA BARBARA 230, LLC; GREYSTONE TERRA FIRMA, LLC; VOS HOLDINGS I, LLC; VOS CRE I, LLC;

GREYSTONE HOSPITALITY, LLC; GREYSTONE HOLDCO, LLC; GREYSTONE MANAGING MEMBER, LLC; GREYSTONE MASTER TENANT, LLC, GREYSTONE TENANT, LLC; GREYSTONE OPTION HOLDER, LLC; TRANS INNS ASSOCIATES, INC.; and VOS HOSPITALITY, LLC for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT IX - Breach of Fiduciary Duty
*(J. Vosotas, D. Vosotas, United EB5, VOS Hospitality, Trans Inns Associates)*
(Previously Count 19)

363.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

364.    United EB5 owed Plaintiffs a fiduciary duty and other implied duties arising from its service as a general partner in Greystone EB-5 Partnership, including the duties of loyalty and care.

365.    In addition, as J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates lent their likenesses as the "Management Team" in the Investment Portfolio, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates all assumed a fiduciary duty to Plaintiffs as limited partners in the Greystone EB-5 Partnership.

366.    Plaintiffs reposed their trust in United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates as their fiduciaries.  Plaintiffs were dependent United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates for their purported expertise in the United States EB-5 visa program, and United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates knowingly undertook and accepted the duty to advise, counsel, and protect Plaintiffs.

367.    United EB5's, J. Vosotas's, D. Vosotas's, VOS Hospitality's, and Trans Inns Associates's duty of loyalty included the duty to account and hold as trustee any property derived by the general partner in the conduct of the limited partnership's activities.

368.    United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates had a duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

369.    United EB5's, J. Vosotas's, D. Vosotas's, VOS Hospitality's, and Trans Inns Associates's duty of loyalty included the duty to follow material terms of the partnership agreement, which would have revealed their fraud, such as providing annual financial statements.

370.    United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates by allowing Plaintiffs' funds to be stolen from the Escrow Account, in derogation of the written and oral representations that the funds would be held in escrow pending USCIS' approval of Plaintiffs' I-526 applications, breached their fiduciary duties to Plaintiffs.

371.    United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates by concealing material facts about the Greystone project, breached their fiduciary duties to Plaintiffs.

372.    United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates breach of their fiduciary duties have caused Plaintiffs substantial damage.

373.    In addition, United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates have allowed their counsel in this very action to falsely represent that no funds were lent to Greystone Hotel Miami from Greystone EB-5 Partnership, even though this is clearly false given information provided by former Defendant Anthony Reitz.  Exh. 6.  Thus, Plaintiffs suffer an injury that is separate and distinct from both Greystone EB-5 Partnership and Greystone EB-5 Partnership's General Partners.  In fact, the Vosotas Entities have benefitted from the breach of the

fiduciary duty by United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates in that Greystone Hotel Miami has thus far successfully avoided liability for the loan to Greystone EB-5 Partnership.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against JAMES VOSOTAS; DANIEL VOSOTAS; UNITED EB-5, LLC; VOS HOSPITALITY, LLC; and TRANS INNS ASSOCIATES, INC. for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT X - Aiding and Abetting Breach of Fiduciary Duty
*(J. Vosotas, D. Vosotas, VOS Hospitality, Trans Inns Associates)*
(Previously Counts 20 and 21)
(Alternative to Count IX)

374.   Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

375.   SARC and United EB5 in their capacity as the General Partners of Greystone EB-5 Partnership breached their fiduciary duty owed to the Plaintiffs as limited partners of Greystone EB-5 Partnership.

376.   J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates had specific knowledge of SARC and United EB5's breach of fiduciary duty to Plaintiffs.

377.   J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates allowed their likenesses to be held out as the "Management Team" and General Partners of Greystone EB-5 Partnership in the Investment Portfolio.  Exh. 4.

378.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates had specific knowledge of the fiduciary duties that SARC and United EB5 had to Plaintiffs as General Managers of Greystone EB-5 Partnership.

379.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates knew or should have known Plaintiffs' investment funds were supposed to be held in escrow then loaned to Greystone Hotel Miami for the purposes of developing the Greystone Properties.

380.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates knew or should have known that Plaintiffs' investment funds were never placed in escrow and that not all of the funds were loaned to Greystone Hotel Miami.

381.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates knew or should have known that SARC and United EB5 had held out that any loans made to Greystone Hotel Miami would be secured by a mortgage on the Greystone Properties, which never actually occurred.

382.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates provided substantial assistance to advance the commission of the breach of fiduciary duty.

383.     Specifically, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates all lent their likeness to the Investment Portfolio, which held J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates as the General Partners and Management Team of Greystone EB-5 Partnership.

384.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates and/or their agents and employees, met with Plaintiffs to discuss their potential investment in the Greystone Project.  Representations made by J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates and/or their agents and employees gave credibility to Walsh and the Greystone Project.

385.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates produced a website that made multiple misrepresentations to induce Plaintiffs including (1) The Greystone Project's Guaranteed Return on investment, (2) a 99% success rate for visa applications, and (3) the existence of a legitimate escrow account.

386.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates provided Walsh, the Walsh Entities, and co-conspirators fraudulent business plans, mortgages, and loan agreements that made multiple misrepresentations including (1) the ownership of the Greystone Properties, (2) the existence of a security on Plaintiffs' investment, (3) the project's economic impact and job creation, (4) the project managers' EB-5 Experience, (5) the development timeline, and (6) the existence of bank and third-party investment in the project.

387.     J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates knowingly aided and abetted SARC's and United EB5's breach of Fiduciary Duty to Plaintiffs.  J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates substantially assisted or enabled SARC and United EB5's breach of fiduciary duty to Plaintiffs.

388.     Plaintiffs were severely damaged by the actions of SARC and United EB5, which were aided and abetted by J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against JAMES VOSOTAS, DANIEL VOSOTAS, VOS HOSPITALITY, LLC, and TRANS INNS ASSOCIATES, INC. for damages, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT XI - Fraud
*(J. Vosotas)*
(Previously Count 25)

389.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

390.    In a calculated scheme to defraud, J. Vosotas made false statements to the Plaintiffs to induce them into investing into an EB-5 program.

391.    Using false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project, J. Vosotas induced Plaintiffs to enter into agreements and transfer funds based on the following false statements:

> u.   how funds invested in Greystone EB-5 Partnership would be utilized;
>
> v.   who the General Partners in Greystone EB-5 Partnership were;
>
> w.   the existence of conditions precedent to the advancement of loan disbursements to Greystone Project;
>
> x.   the guaranteed return of investors' funds if their I-526 Petitions were denied;
>
> y.   security in the form of the Loan Documents and that Greystone Hotel Miami held title to the Greystone Properties;

392.    Specifically, J. Vosotas in a teleconference meeting with Plaintiffs made multiple misrepresentations to Plaintiffs including (1) the direct and indirect ownership of the Greystone Properties, (2) the existence or lack thereof of a security interest or collateral, (3) the existence or lack thereof of a legitimate escrow account to hold Plaintiffs' funds, and (4) that Plaintiffs, as owners of the Greystone Hotel, could live there for free after their EB-5 Visas were approved.

393.    J. Vosotas knew that all of these misrepresentations were false.

394.    J. Vosotas is the authorized member of United EB5.  Exh. 19.

395.    Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as

authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

396.    Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

397.    Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

398.    Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

399.    Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

400.    Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

401.    J. Vosotas allowed his likeness and that of VOS Hospitality / Trans Inns Associates to be used as the "Management Team" of Greystone EB-5 Partnership even though the record general partner was United EB5.

402.    J. Vosotas, after falsely leading Plaintiffs to believe that their investments would be for the sole purpose of the Greystone EB-5 Project, instructed Plaintiffs to transfer funds into the fake escrow account.

403.    Knowing that his statements were false, J. Vosotas intended for the representations to induce Plaintiffs to rely on them and transfer the money.

404.    Plaintiffs justifiably relied on J. Vosotas' representations and transferred all required payments.

405.    Specifically, Plaintiffs would have never invested in Greystone EB-5 Partnership but for J. Vosotas's representations guaranteeing repayment of the investment if the I-526 Petitions were denied, that the funds were to be held in escrow until such time as the I-526 Petitions were approved, and that the Greystone EB-5 Partnership was secured by the Greystone Properties through a mortgage from Greystone Hotel Miami to the Greystone EB-5 Partnership.

406.    In justifiable reliance on J. Vosotas' representations, Plaintiffs have suffered damages, including, but not limited to, the funds invested in Greystone EB-5 Partnership, to be proven at trial.

407.    J. Vosotas knew the representations and materials provided were false and intended that Plaintiffs and USCIS rely on them and to prevent USCIS or Plaintiffs from discovering and taking action to disrupt the criminal scheme.

408.    Plaintiffs justifiably relied on these material representations and invested funds in the Greystone EB-5 project.

409.    J. Vosotas did not perform and misappropriated the Plaintiffs' investments.

410.    In justifiable reliance on Defendant J. Vosotas' representations, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against JAMES

VOSOTAS, for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

## COUNT XII - Constructive Fraud
*(J. Vosotas, D. Vosotas, United EB5, VOS Hospitality, and Trans Inns Associates)*
(Previously Count 28)

411.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

412.    A duty to Plaintiffs under a confidential or fiduciary relationship has been abused.

413.    United EB5 owed Plaintiffs a fiduciary duty and other implied duties arising from its service as a general partner in Greystone EB-5 Partnership, including the duties of loyalty and care.

414.    In addition, as J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates lent their likenesses as the "Management Team" in the Investment Portfolio, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates all assumed a fiduciary duty to Plaintiffs as limited partners in the Greystone EB-5 Partnership.

415.    Plaintiffs reposed their trust in United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates as their fiduciaries.  Plaintiffs were dependent United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates for their purported expertise in the United States EB-5 visa program, and United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates knowingly undertook and accepted the duty to advise, counsel, and protect Plaintiffs.

416.    An unconscionable or improper advantage has been taken of Plaintiffs by United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates.

417.   As specifically described above, a fraudulent scheme was perpetrated upon Plaintiffs based upon knowingly false statements concerning material facts and concealment.

418.   Plaintiffs relied upon the false statements knowingly made by United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates concerning material facts and concealment, were induced to provide their investments, and have been damaged.

419.   United EB5's, J. Vosotas's, D. Vosotas's, VOS Hospitality's, and Trans Inns Associates's fraudulent scheme perpetrated upon Plaintiffs was wrongful, and equitable interference is justified under these circumstances.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against JAMES VOSOTAS; DANIEL VOSOTAS; UNITED EB-5, LLC; VOS HOSPITALITY, LLC; and TRANS INNS ASSOCIATES, INC. for damages, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT XIII - Civil Conspiracy against all Defendants
*(All Greystone Defendants)*
(Previously Count 29)

420.   Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

421.   Defendants are parties to a conspiracy.

422.   J. Vosotas is the authorized member of United EB5.  Exh. 19.

423.   Under Florida Statutes Section 605.0407, a Florida limited liability company can either be manager-managed or member-managed.  However, as J. Vosotas continually signed as

authorized member or member of United EB5, United EB5 is member-managed upon information and belief.

424.   Pursuant to Florida Statutes Section 605.0407(2), in a Florida limited liability company that is member-managed, "the management and conduct of the company are vested in the members, except as expressly provided in this chapter."

425.   Under Florida law, the knowledge of a member-managed limited liability company may be imputed to its members and vice versa.  Further, the knowledge of one member of a member-managed limited liability company may be imputed to the other members.

426.   Further, most of the action taken in this case was taken by Walsh on behalf of Greystone EB-5 Partnership, a limited liability partnership.

427.   Under Florida law, general partners are jointly and severally liable for the actions of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.

428.   Thus, as United EB5 was a general partner in Greystone EB-5 Partnership, United EB5 was ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to the members of United EB5.

429.   Further, the Vosotas Entities largely share the same members and managers, allowing the knowledge of J. Vosotas and United EB5 to be imputed to the rest of the Vosotas Entities.

430.   There was an agreement between the Defendants to do an unlawful act or to do a lawful act by unlawful means, there were overt acts in furtherance of the conspiracy, and Plaintiffs were damaged as a result of acts done under the conspiracy.

431.     As described above, the basis of the conspiracy is a fraud and theft of over four million dollars of Plaintiffs' money, which are independent torts that give rise to causes of action if committed by one person.

432.     Defendants entered into a conspiracy and acted in concert to market a fraudulent investment scheme to Plaintiffs, steal their money, allow the theft of Plaintiffs' money and then distribute and dissipate the money among themselves.

433.     Further, the Greystone Defendants have benefitted by avoiding liability and repayment for funds loaned to Greystone Hotel Miami by Greystone EB-5 Partnership.

434.     Defendants acted with the full knowledge and awareness that the investment scheme was designed to fraudulently procure and steal Plaintiffs' funds under the guise of an EB-5 visa investment opportunity.

435.     The Greystone Defendants acted with full knowledge and awareness that the investment scheme would allow them to take a loan from Greystone EB-5 Partnership and later try to claim that no funds were ever lent.

436.     Defendants acted contrary to law, acted according to a predetermined and commonly understood plan of action for the purpose of obtaining Plaintiffs' funds, and took overt acts in furtherance of the conspiracy.

437.     There was a meeting of the minds between and among the Defendants to commit the unlawful acts alleged herein.

438.     There was a meeting of the minds between and among the Greystone Defendants to commit the unlawful acts alleged herein.

439.     Plaintiffs have suffered damage as a result of the conspiracy.

WHEREFORE, Plaintiffs, YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG respectfully request this Court to enter a judgment in favor of Plaintiffs, against Defendants for damages, interest, attorneys' fees, litigation costs, and for any such other and further relief as this Court deems just and proper.

### COUNT XIV - Equitable Lien-1920 Collins Avenue
(Previously Count 31)

440.     Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

441.     Plaintiffs seek the imposition of a lien on the 1920 Collins Avenue parcel held by Greystone Terra Firma, LLC.

442.     As described above, D. Vosotas, J. Vosotas, the Vosotas Entities, Muhl, and B Group are managers and members of Greystone Terra Firma and used fraud, misrepresentation, and deception to secure Plaintiffs' investments in Greystone EB-5 Partnership Project.

443.     As set out in Exhibit 6, unquestionably funds were lent from Greystone EB-5 Partnership to Greystone Hotel Miami, which to this point the Greystone Defendants have claimed to not be the case.

444.     Upon information and belief, the funds flowed from Greystone Hotel Miami to Greystone Terra Firma.

445.     A lien on the Greystone Properties in favor of Plaintiffs is appropriate to prevent unjust enrichment or other inequities.

WHEREFORE, Plaintiffs request that the Court impose an equitable lien in favor of Plaintiffs on the 1920 Collins Avenue parcel held by GREYSTONE TERRA FIRMA, LLC, and grant such other and further relief which is necessary and just under the circumstances.

## COUNT XV - Equitable Lien-230 Santa Barbara St.
(Previously Count 32)

446.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

447.    Plaintiffs seek the imposition of a lien on the Santa Barbara Apartments located at 230 20th Street, Miami Beach, Florida, a parcel held by Santa Barbara 230.

448.    As described above, J. Vosotas, as manager and member of Santa Barbara 230 used fraud, misrepresentation, and deception to secure Plaintiffs' investments in Greystone EB-5 Partnership project.

449.    As set out in Exhibit 6, unquestionably funds were lent from Greystone EB-5 Partnership to Greystone Hotel Miami, which to this point the Greystone Defendants have claimed to not be the case.

450.    Upon information and belief, the funds flowed from Greystone Hotel Miami to Santa Barbara 230.

451.    A lien on the Greystone Properties located at 230 20th Street, Miami Beach, Florida, in favor of Plaintiffs is appropriate to prevent unjust enrichment or other inequities.

WHEREFORE, Plaintiffs request that the Court impose an equitable lien in favor of Plaintiffs on the 1920 Collins Avenue parcel held by 230 SANTA BARBARA, LLC, and grant such other and further relief which is necessary and just under the circumstances.

## COUNT XVI – Violation of Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201 et seq.
(*J. Vosotas, D. Vosotas, United EB-5, and Muhl*)
(Previously Count 33)

452.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

453.  The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") broadly prohibits all "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade of commerce." § 501.204(1), Fla. Stat.

454.  United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates have allowed their counsel in this very action to falsely represent that no funds were lent to Greystone Hotel Miami from Greystone EB-5 Partnership (D.E. 68), even though this is clearly false given information provided by former Defendant Anthony Reitz.  Exh. 6.  Thus, Plaintiffs suffer an injury that is separate and distinct from both Greystone EB-5 Partnership and Greystone EB-5 Partnership's General Partners.  In fact, the Vosotas Entities have benefitted from the breach of the fiduciary duty by United EB5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates in that Greystone Hotel Miami has thus far successfully avoided liability for the loan to Greystone EB-5 Partnership.

455.  Each of the Plaintiffs invested different amounts in the Greystone EB-5 Partnership on different dates and under different circumstances, such that each Plaintiff's injury is separate and distinct from both Greystone EB-5 Partnership and Greystone EB-5 Partnership's General Partners.

456.  The Defendants engaged in trade and/or commerce within the meaning of FDUTPA.

457.  Plaintiffs were consumers under FDUTPA.

458.  In furtherance of a conspiracy to defraud and steal from Plaintiffs,  Walsh, SARC, J. Vosotas, D. Vosotas, United EB-5, USREDA, and Muhl, engaged in deceptive and unfair trade practices, as more fully explained above, including but not limited to:

   a.  Causing Plaintiffs to wire money into a bank account in Florida, which then allowed the money to be looted in Florida;

    b.   Stealing and removing Plaintiffs' funds from the Escrow Account in Florida;

    c.   Engaging in a scheme whereby Plaintiffs' funds were moved between multiple bank accounts in Florida, using Florida business entities (e.g.,  Greystone EB-5 Partnership) or entities with their principal place of business in Florida (e.g., USREDA), in an effort to disguise the source of funds, and then distributing those funds among the conspirators in Florida; and

    d.   Providing Plaintiffs' funds to SARC in Florida before Plaintiffs' I-526 Petitions were approved by USCIS; Engaging in a systematic scheme, in Florida, to loot Plaintiffs' funds.

459.    Defendants' deceptive acts and unfair practices cause Plaintiffs to suffer damages.

460.    Plaintiffs suffered actual economic damages as a direct result of Walsh's, SARC's, J. Vosotas's, D. Vosotas's, United EB-5's, USREDA's, and Muhl's deceptive and unfair trade practices.

461.    Plaintiffs' damages include, but are not limited to, their solicited investments in the Greystone EB-5 Partnership Program.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against the Defendants JAMES VOSOTAS, DANIEL VOSOTAS, UNITED EB-5, LLC, and BRANDEN MUHL, for damages, interest, costs, attorneys' fees pursuant to Fla. Stat. Section § 501.2105, and such other relief that the Court deems just and proper.

### COUNT XVII – Equitable Accounting
*(J. Vosotas, D. Vosotas, United EB5, VOS Hospitality, and Trans Inns Associates)*
(Previously Count 36)

462.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

463.     United EB5 owed Plaintiffs a fiduciary duty and other implied duties arising from its service as a general partner in Greystone EB-5 Partnership, including the duties of loyalty and care.

464.     In addition, as J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates lent their likenesses as the "Management Team" in the Investment Portfolio, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates all assumed a fiduciary duty to Plaintiffs as limited partners in the Greystone EB-5 Partnership.

465.     As set out in Exhibit 6, unquestionably funds were lent from Greystone EB-5 Partnership to Greystone Hotel Miami, which to this point the Greystone Defendants have claimed to not be the case.

466.     The fraud and theft perpetrated upon Plaintiffs was an extensive, complex transaction, whereby Plaintiffs' funds were transferred between and among many accounts, laundered through numerous entities, and ultimately used for personal, inappropriate purposes.

467.     Plaintiffs' funds, which were transferred from the Escrow Account without any authorization from Plaintiffs, and the subsequent unauthorized transfers and transactions involving these funds, are so involved and complicated that a remedy at law is insufficient to administer complete justice.

468.     Plaintiffs are entitled to receive information regarding transactions involving any of the funds traceable to Plaintiffs.

469.     Plaintiffs have requested information on the transfers of their funds, transactions involving their funds, and the present location of their funds, which has not been provided.

470.     A remedy at law is inadequate.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants JAMES VOSOTAS, DANIEL VOSOTAS, UNITED EB-5, LLC; VOS HOSPITALITY, LLC; and TRANS INNS ASSOCIATES, LLC and order Defendants to provide a full and complete accounting of their finances, operations, and transactions involving any funds traceable to Plaintiffs, provide Plaintiffs with the location and amount of all accounts containing any funds traceable to Plaintiffs, provide Plaintiffs with the location and description of all property purchased with any funds traceable to Plaintiffs, and to grant such other and further relief as the Court deems just and proper.

### Count XVIII – Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
*(Muhl)*
(Previously Count 40a)

471.    Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

472.    Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 carried out a plan, scheme, and course of conduct that was intended to, and did (i) deceive Plaintiffs, as alleged herein; and (ii) cause Plaintiffs to purchase limited partnership interests in Greystone EB-5 Partnership. In furtherance of this unlawful scheme, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 took the actions set forth hereinabove.

473.    Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of

Greystone EB-5 Partnership's limited partnership units in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

474.    Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a course of conduct including but not limited to conceal adverse material information about the fake escrow account, the status of the project, the funding available for the completion of the Greystone EB-5 Project.

475.    Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 each employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure the Plaintiffs of the value of investing in the project, which included the making of, or the participating in the making of, untrue statements of material facts about the Greystone EB-5 Partnership and project and omitting material facts necessary in order to make the statements not misleading.

476.    Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's primary liability arises from the following facts, among others: (i) Defendants designed a scheme to entice foreign investors to purchase limited partnership interests in the Greystone EB-5 Partnership; (ii) by virtue of their responsibilities and activities in the scheme, were privy to and participated in the creation, development and publication of the Greystone EB-5 Partnership's sales, marketing, projections and/or reports; and (iii) Defendants were aware of Greystone EB-5 Partnership's dissemination of information to the potential foreign investors, which Defendants knew or recklessly disregarded was materially false and misleading.

477.   Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with severely reckless disregard for the truth, in that each failed to ascertain and disclose such material facts, even though such facts were available to them. Defendants' material misrepresentations and/or omissions were done knowingly or with deliberate recklessness and for the purpose and effect of concealing information regarding Greystone EB-5 Partnership's true status as a façade and scheme for fraud and theft.

478.   As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth herein, Greystone EB-5 Partnership appeared to be a legitimate investment opportunity for foreigners seeking a path to United States residency through an EB-5 visa. Unbeknownst to the Plaintiffs, the Greystone EB-5 Partnership was merely a façade for a criminal scheme, Plaintiffs invested their money in to Greystone EB-5 Partnership and suffered damages.

479.   At the time of Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's misrepresentations and omissions, Plaintiffs were unaware of the falsity of the statements and believed them to be true. Had Plaintiffs known of  Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's fraudulent practices, Plaintiffs would not have purchased or otherwise acquired their securities in the Greystone EB-5 Partnership.

480.   In addition to the foregoing, the Greystone Defendants have attempted to avoid the repayment due to Greystone EB-5 Partnership by claiming that funds were never lent that unquestionably were.  Exh. 6.

481.     By virtue of the foregoing, Defendants Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 have each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated therein.

482.     As a direct and proximate result of Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's wrongful conduct, Plaintiffs suffered damages in connection with their respective purchases of limited partnership interests in the Greystone EB-5 Partnership.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and MUHL for damages, pre-judgment and post-judgment interest, litigation costs, and for any such other and further relief as this Court deems just and proper.

### Count XIX – Violations of Section 20(a) of the Securities Exchange Act
*(Muhl)*
(Previously Count 40b)

483.     Plaintiffs reaffirm, re-allege, and incorporate by reference paragraphs 1 through 204, as if fully set forth herein.

484.     Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 acted as controlling persons of Greystone EB-5 Partnership within the meaning of Section 20(a) of the Exchange Act as alleged herein.

485.     By virtue of their high positions within the Greystone EB-5 Partnership and/or high level positions within the scheme to sell foreign investors limited partnership interests in Greystone EB-5 Partnership, participation in and/or awareness of Greystone EB-5 Partnership's operations, and/or intimate knowledge of Greystone EB-5 Partnership's fraudulent practices and Greystone EB-5 Partnership's actual status and true prospects, Walsh, Walsh Jr., Muhl, SARC, USREDA and

Greystone EB-5 had the power to influence and control, and did influence and control, directly or indirectly, the decision making of Greystone EB-5 Partnership, including the content and dissemination of the various statements which Plaintiffs contend were false and misleading.

486.     Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 were provided with, or had unlimited access to, copies of Greystone EB-5 Partnership's reports, sales materials, brochures, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

487.     Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 also had direct involvement in the day-to-day operations of the Greystone EB-5 Partnership and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

488.     As explained above, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5, each violated Section 10(b) and Rule 10b-5 by their acts and omissions. By virtue of Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's controlling positions, they are liable pursuant to Section 20(a) of the Securities Exchange Act.

489.     In addition to the foregoing, the Greystone Defendants have attempted to avoid the repayment due to Greystone EB-5 Partnership by claiming that funds were never lent that unquestionably were. Exh. 6.

490.     As a direct and proximate result of Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's conduct, Plaintiffs suffered damages in connection with their purchases of the Greystone EB-5 Partnership securities.

WHEREFORE, Plaintiffs YUANXIAO FENG, KIU CHUN SAXON HUI, LAI KING HUI, JING KUANG, CHUEN PING NG, MINYANG TIAN, HONGSEN ZHANG, and YAN ZHANG, respectfully request that the Court enter judgment in favor of Plaintiffs and against pMUHL for damages, pre-judgment and post-judgment interest, litigation costs, and for any such other and further relief as this Court deems just and proper.

## **JURY TRIAL REQUEST**

Plaintiffs respectfully requests a jury trial on all issues so triable.

Respectfully submitted <u>29th </u>day of March, 2021.

ZEBERSKY PAYNE SHAW LEWENZ, LLP
*Attorneys for Plaintiffs*
110 SE 6th Street, Suite 2900
Fort Lauderdale, FL  33301
Telephone:  (954) 989-6333
Facsimile:   (954) 989-7781
Primary Email: jshaw@zpllp.com;
srusso@zpllp.com, zludens@zpllp.com
Secondary Email: medmondson@zpllp.com,
mlomastro@zpllp.com

By: */s/ Zachary D. Ludens*
        JORDAN A. SHAW, ESQ.
        Fla. Bar No.  111771
        STEFFANI M. RUSSO, ESQ.
        Fla. Bar No. 1002598
        ZACHARY D. LUDENS, ESQ.
        Fla. Bar No. 111620
and

SMS LAW GROUP, APC
*Co-Counsel for Plaintiffs*
Kevin Qi, Esq.
CA Bar No. 284314
*Pro Hac Vice* to be sought

2221 Camino Del Rio S, Ste. 100
San Diego, CA 92108
Telephone: (619) 342-7887

Facsimile: (619) 255-9559
(732) 747-5259 Fax
Primary Email: kevinqi@smslawfirm.us

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Court on this 29th day of March, 2021, via the Court's CM/ECF system, which caused the foregoing to be served on all counsel of record via electronic filing notices.

*/s/ Zachary D. Ludens*