**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.: 1:19-cv-24138-DPG

YUANXIAO FENG, an individual; KIU
CHUN SAXON HUI, an individual; LAI
KING HUI, an individual; JING KUANG, an
individual; CHUEN PING NG, an individual;
MINYANG TIAN, an individual; HONGSEN
ZHANG, an individual; and YAN ZHANG, an
individual,

     Plaintiffs.

v.

JOSEPH WALSH, et. al.,

     Defendants.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED**
**MEMORANDUM OF LAW**

     Plaintiffs, Yuanxiao Feng; Kiu Chun Saxon Hui; Lai King Hui; Jing Kuang; Chuen Ping

Ng; Minyang Tian; Hongsen Zhang; and Yan Zhang ("Plaintiffs"), by and through the

undersigned counsel, hereby file this Memorandum of Law in Opposition to the Motion to

Dismiss First Partially Amended Complaint (D.E. 162) of Defendants Greystone Hotel Miami,

LLC; United EB-5, LLC; Santa Barbara 230, LLC; Greystone Terra Firma, LLC; VOS Holdings

I, LLC; VOS CRE I, LLC; Greystone Hospitality, LLC; Greystone Holdco, LLC; Greystone

Managing Member, LLC; Greystone Master Tenant, LLC; Greystone Tenant, LLC; Greystone

Option Holder, LLC; Trans Inns Associates, Inc.; VOS Hospitality, LLC; BBM3, LLC; BBM3

II, LLC; James Vosotas; Daniel Vosotas; and Branden Muhl (collectively, the "Greystone Defendants"), and in support thereof state as follows:

## I.   **INTRODUCTION**

The Greystone Defendants are entirely correct that this case has dragged on for "almost two years," but the Greystone Defendants fail to appreciate the facts that have taken place in those two years, including the fact that the reason for the First Partially Amended Complaint as to the Greystone Defendants (the "FPAC") (D.E. 148) was the result of both the bankruptcy of the South Atlantic Regional Center ("SARC") and the imposition of the stay against it by virtue of 11 U.S.C. § 362.  The Greystone Defendants also omit that it was the idea of their counsel for a *partially amended* complaint to be filed (*see* D.E. 116 at 2 n.1) so that the case could move forward against them without the intervention of the SARC bankruptcy court.  Instead, the Greystone Defendants classify this as "downplay[ing]" (D.E. 162 at 2) the old set of facts, instead of recognizing that the allegations have morphed because the First Amended Complaint (D.E. 44) remains as to the defaulted Defendants.

Importantly, the Greystone Defendants also ignore the fact that in their previous Motion to Dismiss, the Greystone Defendants argued that "Due to the Limited Partnership's failure to loan funds to Greystone Hotel Miami LLC, the loan was not funded and no security was created in favor of the Limited Partnership."  (D.E. 68 at 24.)  Then, when pressed on this issue by the Court at the Hearing on the Motion to Dismiss on June 17, 2020, the following exchange occurred:

> THE COURT: So let me ask you this question: Greystone and the Greystone defendants were building this hotel in Miami Beach –
>
> MR. MENDELSOHN: Correct.

THE COURT: -- and they received investment from not only Mr. Walsh, but from other investors. Am I correct?

MR. MENDELSOHN: No, you are not correct, Your Honor.

THE COURT: Only Walsh?

MR. MENDELSOHN: There was not to be an -- no, not to Walsh either.

The limited partnership that Walsh created or established was not to be an investor into the hotel project. They were to lend money -- the limited partnership was to lend money to the owner -- the holding company that owned the two companies that owned the parcel. Okay? So at no time do the plaintiffs allege, and it's not factually accurate if they were to allege, that -- and this is where I got hot under the collar -- that the plaintiffs had any ownership interest at all in the entity that was to sponsor, create, build, operate the hotel.

Walsh's entity, the limited partnership, was to lend money to Greystone Hotel Miami, LLC, the entity that owned other entities, that was to construct, own and manage the hotel. None of the plaintiffs had any connection whatsoever and no ownership interest at all with the entity that owned the property and developed the hotel, and there's no allegations in the complaint that they did. And the exhibits themselves, if anybody had any level of sophistication on any form of transactions like this, would absolutely see that they're not investing in the hotel. They're investing, again, if at all, in an entity that is to lend money to another entity, one of the Greystone defendants, so that it could use those funds to develop the hotel.

And the security interest would arise, if at all, once the limited partnership -- again, not the Greystone entity, the Walsh entity would lend money to the Greystone developer. In exchange for that loan, there would be a security interest given not to the plaintiffs individually but to the limited partnership that Walsh operated.

So it is absolutely inaccurate to say that the plaintiffs had any interest whatsoever in the hotel property in Miami Beach or any security interest in the hotel property in Miami Beach.

(D.E. 11 at 55–57.) While counsel for the Greystone Defendants defends this on the difference between investment and a loan, it was less than fully candid that funds did transfer hands from Plaintiffs to a Walsh entity to a Greystone Defendant.

Now, due to the settlement with Reitz, it is abundantly clear that funds *were* transferred from Greystone EB-5 LLLP to a Greystone Defendant, activating that security interest. (D.E. 149-6.) It is also abundantly clear that while the Greystone Defendants attempt to separate the separate entities, even on the emails regarding the transfer, the funds were marked received into "our account" by an individual with signature blocks for Trans Inns Management, Inc. and VOS Hospitality, LLC. *Id.* Yet, the funds were supposedly transferred into an account for Greystone Hotel Miami, LLC. *Id.* It is also without dispute that Greystone EB-5 LLLP is a limited partnership with two general partners, SARC (a Joseph Walsh entity) and United EB5, LLC—one of the Greystone Defendants. In fact, throughout the private placement memoranda, Daniel Vosotas and James Vosotas's pictures and biographies are used to induce Plaintiffs to invest into the Greystone EB-5 LLLP. (D.E. 149-4 at 54, 186; D.E. 149-11 at 28; D.E. 149-13 at 24.) The Limited Partnership Agreement is signed by James Vosotas for United EB5, LLC. (D.E. 149-4 at 101; D.E. 149-10 at 28.) Yet, James Vosotas and the other Greystone Defendants now want to argue that they had no clue what was happening—or that they somehow failed to benefit from the funds that were transferred to Greystone Hotel Miami, LLC.

II.   **ARGUMENT**

A.   **Motion to Dismiss Legal Standard.**

In deciding whether to dismiss a complaint, the court must accept the allegations in the complaint as true and construe the allegations in the light most favorable to the plaintiff. *See* Fed. R. Cv. P. 12(b)(6); *Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008). To survive a motion to dismiss, a complaint does not need detailed factual allegations, but those allegations must be enough to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545-46 (2007). A

motion to dismiss must be denied if the complaint contains factual allegations which, when accepted as true, "plausibly give rise to the entitlement of relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1941 (2009). Rule 8(a)(2) requires only that a pleading contain a short and plain statement of the clam showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Here, the facts set forth in Plaintiffs' FPAC (D.E. 148)—taken in the light most favorable to Plaintiffs—support each allegation and claim therein and survive a motion to dismiss.

**B.  Plaintiffs' FPAC is Not a Shotgun Pleading.**

To start with, the Greystone Defendants again try to argue that the FPAC is a shotgun complaint. To do so, the Greystone Defendants point to, for example, how the "VOS Entities" are grouped in 44 paragraphs. This is out of a total of 490 separately numbered allegations, which, including subparts, is actually nearer to 600 separately numbered allegations. James and Daniel Vosotas are grouped together in 27 paragraphs. Muhl and his companies are grouped together in 35 paragraphs. Many of those paragraphs (75, 76, 87, 95, 96, 97, 100, 101, 102, 107, 108, 110, 111, 114, 116, 117, 120, 123, 124, 138, 144, 145, 172, 176, 178, and 180) are listed for all three of the separate lists, to make it appear as though nearly every paragraph lumps some of the Greystone Defendants together. But, even if that were the case, the Court can consider the fact that there are 490 separately numbered allegations and that *some* grouping is allowed under the Federal Rules of Civil Procedure.

"The fact that defendants are accused collectively does not render [a] complaint deficient" if "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Collective references to "defendants" does not constitute shotgun pleading. *See, e.g., Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014) ("[A] plaintiff may plead claims against

multiple defendants by referring to them collectively, for example by referring to a group of defendants as 'defendants.'  These collective allegations are construed as applying to each defendant individually.  The practice only runs afoul of the applicable pleading standard where it results in a complaint that fails to give each defendant notice of the claims against it."  (internal citations omitted)); *Toback v. GNC Holdings, Inc.*, No. 13-80526, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) ("Though Plaintiff refers to Defendants collectively as 'GNC,' he has alleged sufficient factual detail to put Defendants on notice of the nature of the claims against them, satisfying the requirements of Rule 8.").  A plaintiff properly pleads a cause of action against multiple defendants in one count when "the allegations against both Defendants raise the same claims and relate to the same occurrences.  They are properly pled in one count as to both parties under Rule 10(b)."  *Woodburn v. State of Florida Dept. of Children & Family Services*, 859 F. Supp. 2d 1305, 1310 (S.D. Fla. 2012).

"Indeed, a complaint need only provide sufficiently detailed descriptions of the misrepresentations made by other defendants with whom the defendant is affiliated so as to allege that there is adequate evidence to connect him to the scheme."  *State Farm Mut. Auto. Ins. Co. v. Brown*, 16-80793-CIV, 2017 WL 1291995, at *6 (S.D. Fla. Mar. 30, 2017) (quoting *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, No. 96-CV-2547, 1997 WL 728084, at *3 (M.D. Fla. Oct. 23, 1977)) (internal quotation marks and alterations omitted).

The Greystone Defendants' claim that the allegations in the FPAC (D.E. 148) are too general because they collectively accuse them of certain acts. (D.E. 162 at 12.)  Admittedly, Plaintiffs do group various Greystone Defendants together, but that is in part because the Greystone Defendants are so affiliated with one another that they should all be connected to the same scheme.  *See Brown*, 2017 WL 1291995 at *6.  Moreover, the FPAC alleges that the actions

of the Greystone Defendants both raise the same claims and relate to the same set of facts. (D.E. 148.)  For instance, Daniel Vosotas and James Vosotas's biographies and photos appear on the same pages of the investment documents, and VOS Hospitality, LLC and Trans Inns Management, LLC are so lumped together that it is not clear which entity is intended for which purpose.  (D.E. 149-4 at 54, 186; D.E. 149-11 at 28; D.E. 149-13 at 24.)

In the present case, the allegations are specific and detailed.  None of the Greystone Defendants should be confused about the wrongful conduct that Plaintiffs are accusing them of. Plaintiffs have alleged specific facts concerning particular Greystone Defendants as well as conduct that implicates multiple Greystone Defendants; Plaintiffs have not improperly lumped the Greystone Defendants together.  Including multiple Greystone Defendants in various counts is appropriate here as the claims arise from the same actions or underlying circumstances of each Greystone Defendant.  Thus, alleging multiple defendants are liable for the conduct alleged in each count is permissible in this case.  Similarly, grouping Plaintiffs who have all been victim to the same occurrences in a scheme of fraud from the same perpetrators is also permissible under the Federal Rules of Civil Procedure.  Even so, the FPAC (D.E. 148) sets forth the specific dates each Plaintiff wired funds into the Greystone EB-5, LLLP program. (D.E. 148 ¶¶ 127–35.)

The FPAC is already a lengthy pleading with one hundred (100) pages, nineteen (19) counts, and four hundred ninety (490) paragraphs.  Furthermore, Plaintiffs addressed each of the concerns raised by the Court in its previous Report and Recommendation (D.E. 112, 113).[1]  To accept the Greystone Defendants' argument here would result in an even longer and more verbose pleading.  The Greystone Defendants are plainly aware of the claims asserted against them and are attempting to use a shotgun pleading argument as yet another way to avoid liability.

---

[1] In fact, the Greystone Defendants failed to address this point on their Motion to Dismiss (D.E. 162) and have waived any argument regarding it as a result.

C. **Plaintiffs' FPAC Meets the Heightened Pleading Requirements.**

To begin with, Plaintiffs will inevitably spend more time on this argument than did the Greystone Defendants considering that the Greystone Defendants devote two sentences to this argument and give no citations other than under Federal Rule of Civil Procedure 9(b). Thus, for all intents and purposes, this argument is waived. *Patrick v. City of Birmingham*, No. 09-1825, 2010 WL 11468979, at *2 (N.D. Ala. Oct. 28, 2010) ("the failure to reference any legal authority constitutes an undeveloped argument and waives the issue."). However, to protect its positions, Plaintiffs will proceed as though the argument is not waived.

To meet the heightened standard to establish fraud or fraud-based claims, the complaint needs to identify (1) the statements, documents, or misrepresentations made, (2) the time and place of, and the persons responsible for, the alleged statements, (3) the content and manner in which the statements misled the plaintiff, and (4) what the defendant gained through the alleged fraud. *See State Farm Mutual Auto. Ins. Co. v. Health and Wellness Servs., Inc.*, 389 F. Supp. 3d. 1137, 1139 (S.D. Fla. 2018). Further, "[t]he requirements of Rule 9(b) do not apply to clams under the FDUTPA." *Galstaldi v. Sunvest Cmties. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009).

Contrary to the Greystone Defendants' assertions, Plaintiffs properly established each element of their fraud clams. First, the fraudulent statements, documents, or misrepresentations made were not only directly identified in the allegations of the FPAC (D.E. 148 ¶¶ 7, 9, 11, 16, 21, 24, 87, 93, 94, 97, 101, 102, 108, 111, 116, 117, 118, 123, 125, 150-64, 171, 172, 174, 175, 178, 179, 181-85, 203), but were also explicitly included in the exhibits to the FPAC (D.E. 149 Exs. 4, 5, 8, 9, 10, 11, 12, 14, 16, 17, 18). Second, the FPAC states the time, place, and/or persons responsible for, the misrepresentations. (D.E. 148 ¶¶ 7, 9, 11, 16, 21, 24, 87, 93, 94, 97,

101, 102, 108, 111, 116, 117, 118, 123, 125, 150-64, 171, 172, 174, 175, 178, 179, 181-85, 203.) The FPAC similarly sufficiently alleges Plaintiffs' actions and damages as a result of reasonable reliance on The Greystone Defendants' misrepresentations. (D.E. 148 ¶¶ 186–202.)  Even where the FPAC lumps some or all of the Greystone Defendants together, this prong is established because the FPAC alleges that the Greystone Defendants are each knowing participants in the EB-5 fraud scheme and therefore are all liable.  (D.E. 148 ¶¶ 22, 99, 110, 114, 116, 118, 122, 124, 149-64, 207, 214-18, 225, 235-39, 246, 256, 258-60, 268.)  Third, the FPAC alleges that the statements, documents, or misrepresentations misled Plaintiffs into reasonably believing that he or she would receive an EB-5 visa. (D.E. 148 ¶¶  7, 9, 11, 16, 21, 24, 87, 93, 94, 97, 101, 102, 108, 111, 116, 117, 118, 123, 125, 150-64, 171, 172, 174, 175, 178, 179, 181-85, 203.) And fourth, the FPAC alleges that the Greystone Defendants benefitted from the fraud by receiving funds to build their projects.[2]  (D.E. 148 ¶¶ 7, 11, 59, 60, 90, 113, 117, 125, 127, 146, 167, 186, 187.)

Although Plaintiffs have lumped the Defendants together in certain portions of the FPAC, this does not negate the fact that Plaintiffs have still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the fraudulent scheme.  *See Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 612CV1138ORL36DAB, 2014 WL 12617566, at *4 (M.D. Fla. Mar. 6, 2014) (holding that a complaint satisfied the heightened pleading standard of Rule 9(b) even with defendants lumped together, noting "this is a complex case involving many Defendants and numerous claims").  Plaintiffs' allegations meet the heightened

---

[2] In fact, until the FPAC were filed, using documents received from former Defendant Anthony Reitz, the Greystone Defendants maintained that they never received any funds from the Greystone EB-5, LLLP, which is now known to be false.

pleading requirements and prove that the Greystone Defendants must proceed to the next stage for each count in which they are referenced.

**D.** **Plaintiffs' Allegations Against Muhl Contain Sufficient Facts for a Securities Cause of Action in Counts XVIII and XIX.**

As an initial matter, the Greystone Defendants rely on *C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Secs. Litig.)*, 311 F.3d 198, 217 (3d Cir. 2002) for the purported proposition that "each plaintiff must allege" with particularity.  (D.E. 162 at 14.)  Not only does counsel for Plaintiffs not find this holding in *C.W. Sommer*, instead, that court expressly states that "Specifically, § 78u-4(b)(1) of the Reform Act requires plaintiffs to 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.*  Instead of stating that *each* plaintiff must do this, the plain reading of *C.W. Sommer* is that collectively "plaintiffs," not each individual plaintiff, as the Greystone Defendants claim.  That the Greystone Defendants had to look to another circuit for such a holding—when it was not even the actual holding—is indicative of the strength of their argument.  In fact, the "group pleading" doctrine addressed in *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) is "a presumption of group responsibility for statements and omissions in order to satisfy the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b)," not the grouping of plaintiffs, as the Greystone Defendants suggest.

Branden Muhl is sufficiently affiliated with the other Greystone Defendants in this case so as to make him liable under both Section 10(b) and Rule 10b-5.  *See State Farm Mut. Auto. Ins. Co.*, 16-80793-CIV, 2017 WL 1291995 at *6.  Contrary to the Greystone Defendants' assertions, the FPAC did not need to allege factual allegations that Muhl specifically

"participated in the solicitation, knew of the Plaintiffs, knew that Plaintiffs each wired $500,000 to SARC, Walsh's company, or knew that Plaintiffs had executed Limited Partnership documents." (D.E. 162 at 15–16.)  Instead, it is enough that the FPAC alleged "Defendant Muhl is the owner and manager of multiple of the Vosotas Entities."  (D.E. 148 ¶ 30.)  Therefore, because the Vosotas Entities were directly involved in the fraudulent scheme (D.E. 148 ¶¶ 67–70), Muhl as their owner and affiliate, can be held legally liable for the Vosotas Entities' actions in carrying out the scheme.  *In re Pegasus Wireless Corp. Securities Litigation*, 657 F. Supp. 2d 1320, 1325 (S.D. Fla. 2009) ("Plaintiffs make the specific factual allegations that Peraticos, due to his high ranking position and direct involvement in the everyday business of the Company, was directly involved in controlling the content of the statements at issue.").

Next, the Greystone Defendants claim that Plaintiffs "bear the burden of proving the alleged violation caused their losses, they must plead loss causation," citing to *Dura Pharm, Inc. v. Broudo*, 544 U.S. 336, 345–48 (2005).  But, even there, the Court held that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."  *Id.* at 347.  This, Plaintiffs have done.  (D.E. 148 ¶ 480, 482, 489, 490.)

Further, the Greystone Defendants take the position that "As their securities claims are limited to Muhl, they must prove all elements against him." (D.E. 162 at 15.)  This is not only disingenuous in light of the fact that the underlying First Amended Complaint (D.E. 44) remains pending as to numerous defendants, including the Section 10 and Section 20 claims, but it is exactly part of the hesitation why Plaintiffs sought not to have to file the FPAC and instead get sufficient leave to go in front of the bankruptcy court.  *See* D.E. 116.[3]  To protect against the

---

[3] "The hesitation from Plaintiffs to partially amend comes with respect to Counts 29, 33, 40a,

result that the Greystone Defendants now seek, Plaintiffs stated at the outset of the FPAC, "Although this First Partially Amended Complaint is as to the Greystone Defendants only, the allegations against all Defendants from the First Amended Complaint (D.E. 44) are incorporated herein to the maximum extent possible, as that is the operative complaint as to the Defaulted Defendants, as defined herein."   (D.E. 148 at 3 n.2.)   Therefore, the Greystone Defendants should not be allowed to benefit from suggesting a partially amended complaint and then claiming that because there were not sufficient allegations against themselves only, they are entitled to dismissal.

Next, with respect to the Greystone Defendants argument that the embezzlement was not "in connection with" the sale of securities, the cases that they cite are inapposite.  For instance, in *Securities and Exchange Commission v. Morgan*, 2019 WL 2385395, at *8 (W.D.N.Y. June 5, 2019), the initial offering date was "at the latest January 2016" and "the alleged Eden Square scheme did not begin until December 2016."   This is why the Supreme Court of the United States in *S.E.C. v. Zandford* held that "It is enough that the scheme to defraud and the sale of securities coincide."  535 U.S. 813, 822 (2002).  This, Plaintiffs have undoubtedly alleged.

Again, the Greystone Defendants claim that Plaintiffs "bear the burden of proving the alleged violation caused their losses, they must plead loss causation," citing to *Dura Pharm, Inc. v. Broudo*, 544 U.S. 336, 345–48 (2005).  But, even there, the Court held that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with

---

and 40b, where the new allegations in the partially amended complaint would be against the PNC Defendants and/or Greystone Defendants only, but previously involved other defendants, including SARC.  Plaintiffs do not want to meet the Greystone Defendants halfway in filing a partially amended complaint only to be met with a 12(b)(7) motion to dismiss because there are tangential allegations against Defendants not party to the partially amended complaint." (D.E. 116 ¶ 37.)

some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* at 347. This, Plaintiffs have done.  (D.E. 148 ¶ 480, 482, 489, 490.)

    **E.  <u>Plaintiffs' Section 20 Claim Against Muhl Stands.</u>**

    As stated in the preceding section, the Greystone Defendants should not be allowed to benefit from their suggestion of the partial amended complaint and then argue that because it is only directed toward Muhl, it cannot stand.

    In stating a claim based on control person liability under joint and several liability provision of the Exchange Act, securities fraud plaintiffs could logically allege that same individuals were both "primary violators" and "control persons," at least in case where multiple misrepresentations by various defendants had been alleged.  *See, e.g.*, *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 412-13 (S.D.N.Y. 2005) ("Plaintiffs are not precluded from pleading that the Defendants are both primary violators and control persons."). The Greystone Defendants do not dispute that Muhl is a "primary violator" under Section 10 and Rule 10-5 of the Securities Exchange Act.  (D.E. 116.)  In the FPAC (D.E. 148), Plaintiffs alleged that Muhl is a fifty percent (50%) manager/member of the Greystone Properties, therefore allowing him to participate as a "control person" for the purpose of Section 20.  (D.E. 148 ¶¶ 30, 51, 53, 70, 71.)  Here, Muhl could be both the "primary violator" and the "control person" and can thus be liable under both Section 10/Rule 10-b claims and Section 20 claims. Muhl is a controller for the very misrepresentations that he made.

    Furthermore, contrary to the Greystone Defendants' assertions, the Section 10 and Section 20 claims do not stand against Muhl only.  They were also lodged against other parties, parties which have defaulted and which were alleged in the First Amended Complaint.  (D.E. 44.)  The Federal Rules do not prohibit pleading in the alternative, which is another way to

construe the claims under both Section 10 and Section 20—when read with the claims still proceeding in the First Amended Complaint (D.E. 44) against other Defendants.

**F.   <u>Plaintiffs' Allegations Comply with Rule 9(b).</u>**

Once again, Plaintiffs will inevitably spend more time on this argument than did the Greystone Defendants considering that the Greystone Defendants devote one paragraph to this argument and give no citations other than under Federal Rule of Civil Procedure 9(b).  Thus, for all intents and purposes, this argument is waived.  *Patrick*, 2010 WL 11468979, at *2 ("the failure to reference any legal authority constitutes an undeveloped argument and waives the issue.").  However, to protect its positions, Plaintiffs will proceed as though the argument is not waived.

In alleging fraud, a party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*  To establish a claim for fraudulent inducement, a plaintiff must show: (1) a false statement of material fact; (2) that the defendant knew ***or should have known*** was false; (3) that was made to induce the plaintiff to enter into a contract; (4) that proximately caused injury to the plaintiff.  *See, e.g.*, *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003) (emphasis added).  To establish a clam for common law fraud, a plaintiff must show: (1) the opposing party made a misrepresentation of material fact; (2) the opposing party knew ***or should have known*** the falsity of the statement; (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment.  *See Jackson v. Shakespeare Foundation, Inc.*, 108 So. 3d 587, 595 n.2 (Fla. 2013) (emphasis added).

Here, the FPAC alleges sufficient facts to prove that the Greystone Defendants knew, or at the very least should have known, that Plaintiffs wired funds to SARC, including their participation in the meetings and contributions to the investment portfolio. (D.E. 148 ¶¶ 116, 118, 120, 121, 146, 187.)

G. **The Documents Speak for Themselves.**

The Greystone Defendants go to great lengths to claim that Plaintiffs misconstrue the various hundreds of pages of documents that were given to them.  However, those documents— and the inconsistencies pleaded in the FPAC stand for themselves.

Take for instance, the argument that it was not material if the Greystone Hotel owned the properties.  If there is a loan agreement and mortgage, it is undoubtedly material whether there was real property to secure that mortgage.  And, while it may be true that "ownership of the parcels could easily be verified by a title search," the EB-5 program is specifically targeted to foreign individuals, who likely do not have the knowledge of how to do title searches for something such as this.  As in situations like the Fair Debt Collection Practices Act, where courts construe things as though it were being viewed by the least sophisticated consumer, *see, e.g., Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1303 (M.D. Fla. 2016), the Court here has to consider how a *reasonable* person, sitting in Plaintiffs shoes, would have interpreted them.  *See, e.g.*, *Humana, Inc. v. Castillo*, 728 So. 2d 261, 264 (Fla. 2d DCA 1999) (applying reasonable standard to fraud in inducement claim).

H. **The Greystone Defendants Caused Plaintiffs' Injuries.**

The Greystone Defendants' claim that "nothing the Greystone Defendants are accused of misrepresenting caused Plaintiffs' injuries" is unfounded.  (D.E. 162 at 23.)  The FPAC alleges facts to prove the Greystone Defendants' direct involvement in the fraudulent scheme that took at

least five hundred forty-five thousand ($545,000.00) dollars from each Plaintiff and left each Plaintiff without an EB-5 visa.  (D.E. 148 ¶¶ 12, 13, 17, 18, 19, 20, 21, 67-74, 77-83, 91, 92, 93, 95, 97, 98, 99, 101, 108, 110, 111, 114, 116, 117, 118, 119, 120, 122, 123, 124, 125.) Specifically, the FPAC sets forth specific false statements produced by identified Greystone Defendants that, but for these statements, Plaintiffs would not have invested into the Greystone EB-5 Partnership. (D.E. 148 ¶ 117, 118, 119, 125.)  In reliance on the Greystone Defendants' misrepresentations, Plaintiffs each wired their perspective investments, administrative fees, and legal fees. (D.E. ¶ 127.)  By directly participating in the conspiracy and/or by owning, controlling, and managing an entity that participated, each Greystone Defendant knew, or should have known, that Plaintiffs funds were misappropriated.  Therefore, the Greystone Defendants' actions in furthering the fraudulent scheme directly caused Plaintiffs' injuries in this case.

The Greystone Defendants primarily rely on *Goldberg v. Florida Power & Light Co.*, 899 So. 2d 1105, 1117–18 (Fla. 2005) for the proposition that an intervening act breaks the causal connection.  But, even there, the Florida Supreme Court stated that "Any such bright-line rule would contravene the well-settled principle that the issue of proximate cause, including whether there exists an intervening and superseding cause, is primarily a question of fact, and that when the facts are in dispute, the issue must be left to the fact finder."  Thus, even by the Greystone Defendants' own authority, this case must proceed to the next step.

### I.   The Greystone Defendants Offer Flawed Authority that FDUTPA Does Not Apply to Securities.

For their argument that FDUTPA does not apply to securities, the Greystone Defendants cite to *Rogers v. Cisco Systems, Inc.*, 268 F. Supp. 2d 1305 (N.D. Fla. 2003).  That case expressly notes that "Whether FDUTPA applies to claims related to securities transactions has not been

addressed by any Florida court." *Id.* at 1315. Then, it continues on that it is making the finding that FDUTPA does not apply because "Plaintiffs seek recovery for alleged fraudulent misrepresentations by Cisco which encouraged them to retain their securities, as opposed to either purchasing or selling securities." *Id.* at 1316. But, here, Plaintiffs make no such holding claims, their claims are directly related to the purchase or sale of their interests in Greystone EB-5 LLLP. Thus, without authority on point, the Greystone Defendants have waived this argument.

FDUTPA broadly prohibits all "[u]nfair methods of competition, unquestionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. Plaintiffs alleged specific acts by J. Vosotas, D. Vosotas, United EB-5, and Muhl that constituted an unconscionable, unfair, or deceptive act or practice within the terms of the FDUTPA. (D.E. 148 ¶¶ 452–60.)

**J.   Plaintiffs Correctly Brought this Action as a Direct Action**

In order for shareholders to bring a direct action in their individual capacity, the complaint must satisfy a two-prong test and allege both a direct harm and a special injury, or meet the exception of alleging a special duty to the individual shareholders. *See Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) (holding that there was direct harm where the defendants induced plaintiffs to invest in companies by making fraudulent misrepresentations). The fact that some other investors may also have been similarly injured does not necessarily transform direct claims into derivative ones. *See id.* The duty owed test examines the statutory and contractual terms to determine whether the duty at issue was owed to the individual member or shareholder by a particular manager or member, or whether those duties were owed to the company generally. *See Kovalivker v. Team Real Estate Management*, LLC, No. 7-cv-80442, 2019 WL 9093471 at *6 (S.D. Fla. 2019) (satisfying the exception to the derivative claim rule

because brought a direct action against LLC's member manager for constructive fraud, breach of duties of loyally, care, and good faith and fair dealing); *Rahal v. Mussek Beach Restaurant Inc.*, No. 7-cv-80442, 2018 WL 456212 at *3 (S.D. Fla. 2018) (satisfying the duty owed test when parties agreed that the plaintiff's payment to defendants would be used "as investment to grow the business" and when the defendants used the investment "for 'a purpose that was not authorized or intended'").

Here, Plaintiffs properly brought this action as a direct action and not as a derivative action.  The claims in the FPAC (D.E. 148) involve direct injuries sustained by Plaintiffs based their own reliance on different fraudulent statements and misrepresentations made to them by the Greystone Defendants.  *See Medsker*, 307 F. App'x at 265; (D.E. 148 ¶¶ 128–35).  Greystone EB-5 LLLP could not bring suit to recover for the Plaintiffs reliance on the fraudulent actions of the Greystone Defendants.  Thus, these claims may be maintained in this direct action.

Further, each Plaintiff did not suffer the same injury as every other Plaintiff, making the injury a special injury.  Each Plaintiff invested a different sum of money at a different time, making their injuries distinct.  Specifically, Plaintiff Yuanxiao Feng wired funds on or about July 28, 2016; Plaintiff Kiu Chun Saxon wired funds on or about August 24, 2015; Plaintiff Lai King Hui wired funds in or around 2016 or 2017; Plaintiff Chuen Ping Ng wired funds on or about March 4, 2015; Plaintiff Minyang Tian wired funds on or around October, 31 2016, November 7, 2016, and November 8, 2016; Plaintiff Hongsen Zhang wired funds on or around 2016 or 2017; Plaintiff Yan Zhang wired funds on or about October 29, 2014; and Plaintiff Jing Kuang wired funds on or about January 17, 2017, January 20, 2017, and February 21, 2017.  (D.E. 148 ¶¶ 128-35); (D.E. 149 Ex. 15).  Additionally, not only did Plaintiffs lose their various investments, but Plaintiffs also lost the ability to gain citizenship into the United States as promised by the

Greystone Defendants.  Greystone EB-5 LLLP suffered no such harm. Plaintiffs were acting on behalf of themselves when they invested, not on behalf of Greystone EB-5 LLLP.

However, even if this Court agrees with the Greystone Defendants that the harm was not separate and distinct, the Plaintiffs can still satisfy the duty owed exception.  Starting in or around 2016, Plaintiffs and Greystone EB-5 LLLP (of which United EB5 was a general partner acting through J. Vosotas) entered into an agreement by which Plaintiffs would transfer funds to the Greystone Project as part of their application for EB-5 visas.  The FPAC alleges that the Greystone Defendants are liable for, in addition to other things, fraud in the inducement, breach of fiduciary duty, fraud, and constructive fraud.  (D.E. 148 ¶¶ 292-419.)  All of these Counts set forth that the various Greystone Defendants did in fact have a separate contractual duty to Plaintiffs to use their investments in the matter promised and secure their EB-5 visas. The Greystone Defendants failed to do either thing and therefore broke their contractual duties to Plaintiffs.  Read in the light most favorable to Plaintiffs, this Court could find that the Greystone Defendants owed Plaintiffs a separate contractual duty to use the investments in the way they promised.  The Greystone Defendants fail to show that Plaintiffs were required to bring their claims in a derivative capacity.  Accordingly, their Motion to Dismiss (D.E. 162) on this ground should be denied.

**K.** **Plaintiffs Sufficiently Pled Counts XIV and XV for Equitable Liens**

An equitable lien is a remedial tool that is used to prevent an inequity of one party against another and that may be used as means of enforcing, against a piece of property, a party's obligation that has resulted in benefit to that property.  *See In re Performance Leasing Corp. of Collier Cty.*, 385 B.R. 317, 326 (Bankr. M.D. Fla. 2008).  Contrary to the Greystone Defendants' assertions, the FPAC alleges that Plaintiffs were unjustly enriched by investing funds that flowed

into Terra Firma and Santa Barbara.  (D.E. 148 ¶¶ 444, 450.)  Further, these investments were the result of the Greystone Defendants' fraud and deception.  Here, equitable liens on Terra Firma and Santa Barbara are appropriate to remedy the benefits they received at the hands of the misrepresentations to Plaintiffs.

**L.  <u>Plaintiffs Sufficiently Pled Counts I, II, III, and IV for Aiding and Abetting Conversion</u>**

Plaintiffs' conversion claims are for aiding and abetting conversion, not for conversion itself.[4]  The elements necessary to establish an aiding and abetting claim are: "(1) an underlying violation on the part of the preliminary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in commuting the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 906 (11th Cir. 2012).  Conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time."  *See Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1321 (M.D. Fla. 2013).

Plaintiffs' conversion claims do not relate to Walsh's embezzlement of Greystone EB-5 LLLP property as the Greystone Defendants suggest.  (D.E. 162 at 26.)  On the contrary, Plaintiffs' conversion claims relate to the Greystone Defendants' original misrepresentations that led Plaintiffs to hand over their money in the first place.  At this point, the money was in Plaintiffs' direct control and the Greystone Defendants aided Walsh in improperly taking it.  Moreover, it is not necessary for Plaintiffs to allege that the Greystone Defendants had dominion over the monies.  First, Counts I-IV are for aiding and abetting which can be established through

---

[4] As with above, this is a result of the Greystone Defendants' insistence that the amended complaint be filed against them without waiting for intervention from the bankruptcy court due to SARC's bankruptcy.  The First Amended Complaint (D.E. 44) is incorporated to the maximum extent possible, as set forth above.

knowledge.  (D.E. 148 ¶¶ 207, 237, 253, 275.)  Second, Florida law establishes that general partners are jointly and severally liable for the actions, debts, obligations, and liabilities of one another in a limited liability partnership if the actions are taken in furtherance of the limited liability partnership.  *See* § 620.8306, Fla. Stat.  United EB5 was undoubtedly a general partner in Greystone EB-5 LLLP.

### M. Plaintiffs Sufficiently Pled Counts IX and X for Breach of Fiduciary Duty

Under Florida law, the knowledge of a corporation's directors may be imputed to the corporation.  *See In re Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 244 (S.D. Fla. 2010) (citing *Beck v. Deloitte & Touche*, 14 F.3d 732, 736 (11th Cir. 1998).  Further, the knowledge of one member of a member-managed limited lability company may be imputed to other members.  *See Purchasing Power, LLC v. Bluestream Brands, Inc.*, 851 F.3d 1218, 1226 n.6 (11th Cir. 2017) (affirming imputation of one member's knowledge of citizenship requirements to another member).  Therefore, it was not necessary for the FPAC to allege that James Vosotas and Daniel Vosotas, individually, and each of their companies VOS Hospitality and Trans Inns Associates had any knowledge of or involvement with any of the Plaintiffs.  It is enough that Plaintiffs established James Vosotas and Daniel Vosotas, individually, and VOS Hospitality and Trans Inns Associates' were alleged to be the "Management Team."  (D.E. 148 ¶ 365; D.E. 149-4 at 54, 186; D.E. 149-11 at 28; D.E. 149-13 at 24.)  However, the FPAC went even further and alleged their direct knowledge of and involvement with the Plaintiffs, including but not limited to their work on the investment portfolio and concealment of material facts from Plaintiffs. (D.E. 148 ¶¶ 365, 371, 377, 380, 383, 385, 387.)

**N.  Plaintiffs Sufficiently Pled Count XVII for Equitable Accounting**

"[T]he determination of whether a series of transactions is sufficiently complex to warrant equitable accounting is fact specific." *Traditions Senior Mgmt., Inc. v. United Health Adm'rs, Inc.*, No. 8:12-cv-2321-T-30MAP, 2013 WL 3285419, at *5 (M.D. Fla. June 27, 2013). First, the FPAC alleges a fiduciary relationship between Plaintiffs and J. Vosotas, D. Vosotas, United EB5, VOS Hospitality, and Trans Inns. (D.E. 148 ¶¶ 96, 169, 203.)  Second, Plaintiffs' FPAC alleges that the fraud and misrepresentations in this case were extensive and complex requiring Plaintiffs' funds to be transferred between multiple accounts, laundered through numerous entities, and ultimately used for inappropriate personal purposes.  (D.E. 148 ¶¶ 462–70.)  Therefore, it is not clear that a remedy at law would be as expeditious as one in equity, and the facts of this case show that Plaintiffs are entitled to equitable accounting. Even so, because the determination of whether a transaction is sufficiently complex is fact specific, it is a question of fact not to be decided on a motion to dismiss.

**O.  Plaintiffs' Civil Conspiracy Count Has Merit**

As Plaintiffs have sufficiently pled other common law claims for which there was a conspiracy, the civil conspiracy claim has merit as a matter of law and should not be dismissed.

**P.  Florida Common Law and Statutory Claims Should not be Dismissed**

As shown above, Plaintiffs' securities clams in Counts I, II, III, IV, IX, X, XIII, XIV, XVI, and XV have been sufficiently pled. Therefore, the Court should not dismiss the securities claims.

**III.    CONCLUSION**

For the foregoing reasons, the Greystone Defendants' Motion to Dismiss (D.E. 162) should be denied.

Dated: June 21, 2021                    Respectfully submitted,


                                        ZEBERSKY PAYNE SHAW LEWENZ, LLP
                                        110 S.E. 6th Street, Suite 2900
                                        Ft. Lauderdale, Florida 33301
                                        Telephone: (954) 595-6060
                                        Facsimile: (954) 989-7781
                                        Primary Email: jshaw@zpllp.com;
                                        srusso@zpllp.com, zludens@zpllp.com
                                        Secondary Email: medmondson@zpllp.com;
                                        mlomastro@zpllp.com


                                        By:  /s/ Zachary D. Ludens
                                        JORDAN A. SHAW, ESQ.
                                        Fla. Bar No. 111771
                                        STEFFANI M. RUSSO, ESQ.
                                        Fla. Bar No. 1002598
                                        ZACHARY D. LUDENS, ESQ.
                                        Fla. Bar No. 111620

                                        and

                                        SMS LAW GROUP, APC
                                        *Co-Counsel for Plaintiffs*
                                        Kevin Qi, Esq.
                                        CA Bar No. 284314
                                        *Pro Hac Vice Granted*
                                        2221 Camino Del Rio S.
                                        Ste. 100
                                        San Diego, CA 92108
                                        Telephone: (619) 342-7887
                                        Facsimile: (619) 255-9559
                                        Primary Email: kevinqi@smslawfirm.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 21, 2021, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF which will notify all parties.

                                        */s/ Zachary D. Ludens*
                                        Zachary D. Ludens, Esq.


[2119953/1]                     23