## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-24138-CIV-GAYLES/OTAZO-REYES

YUANXIAO FENG, *et al.*,

      Plaintiffs,

v.

JOSEPH WALSH, *et al.*,

      Defendants.

                            /

### REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants Greystone Hotel Miami, LLC ("Greystone Hotel Miami"), United EB-5 LLC ("United EB-5"), Santa Barbara 230, LLC ("Santa Barbara 230"), Greystone Terra Firma, LLC ("Greystone Terra Firma"), VOS Holdings I, LLC ("VOS Holdings I"), VOS CRE I, LLC ("VOS CRE I"),[1] Greystone Hospitality, LLC ("Greystone Hospitality"), Greystone Holdco, LLC ("Greystone Holdco"), Greystone Managing Member, LLC ("Greystone Managing Member"), Greystone Master Tenant, LLC ("Greystone Master Tenant"), Greystone Tenant, LLC ("Greystone Tenant"), Greystone Option Holder, LLC ("Greystone Option Holder"), Trans Inn Associates, LLC ("Trans Inn Associates"), VOS Hospitality, LLC ("VOS Hospitality"), BBM 3, LLC ("BBM 3"), BBM 3 II, LLC ("BBM 3 II"), James Vosotas ("J. Vosotas"), Daniel Vosotas ("D. Vosotas"), and Branden Muhl's ("Muhl"") (collectively, "Greystone Defendants") Motion to Dismiss First Partially Amended Complaint with Prejudice [D.E. 162].

---

[1] On December 17, 2021, VOS CRE I filed a Suggestion of Bankruptcy, thereby triggering an automatic stay of the case against this entity [D.E. 207].

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 106]. The undersigned held a hearing on this matter on August 10, 2021 [D.E. 199]. For the reasons stated below, the undersigned respectfully recommends that the Greystone Defendants' Motion to Dismiss First Partially Amended Complaint with Prejudice [D.E. 162] be GRANTED and that the First Partially Amended Complaint [D.E. 148] be DISMISSED WITH PREJUDICE.[2]

## **PROCEDURAL BACKGROUND**

Plaintiffs Yuanxiao Feng, Kiu Chun Saxon Hui, Lai King Hui, Jing Kuang, Chuen Ping Ng, Minyang Tian, Hongsen Zhang, and Yan Zhang (collectively, "Plaintiffs") are all foreign nationals who commenced this action on October 8, 2019. See Complaint [D.E. 1]. At the core of Plaintiffs' action is their allegation that they were defrauded out of millions of dollars they claim to have invested through Defendant Joseph Walsh ("Walsh") in the Greystone Defendants' hotel project in order to obtain permanent resident visas through the federal EB-5 Immigrant Visa Investor Program (hereafter, "EB-5 Program"). Id. at 4–5.

On November 18, 2019, the Greystone Defendants filed their Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (hereafter, "Greystone Defendants' First Motion to Dismiss") [D.E. 22]. On December 2, 2019, Plaintiffs timely amended their initial pleading as of right by filing their First Amended Complaint [D.E. 44].[3] On December 10, 2019, Defendants PNC Bank, N.A. and Ruben Ramirez (collectively, "PNC Defendants") filed their Motion to Dismiss the First Amended Complaint

---

[2] These recommendations are subject to the automatic bankruptcy stay with respect to VOS CRE I, as noted above.

[3] Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, . . . 21 days after service of a motion under Rule 12(b) . . . ." Fed. R. Civ. P. 15(a)(1)(B).

(hereafter, "PNC Defendants' Motion to Dismiss") [D.E. 51].  On January 2, 2020, the Greystone Defendants filed their Motion to Dismiss the First Amended Complaint (hereafter, "Greystone Defendants' Second Motion to Dismiss") [D.E. 68].

On September 24, 2020, the undersigned issued her Report and Recommendation as to the PNC Defendants' Motion to Dismiss and the Greystone Defendants' Second Motion to Dismiss, recommending dismissal with prejudice of Plaintiffs' federal and state Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against the PNC Defendants and the Greystone Defendants, and dismissal of the remaining counts against them without prejudice and with leave to replead.  See Report and Recommendation [D.E. 112].  On September 30, 2020, the Court adopted the undersigned's Report and Recommendation.  See Order Affirming and Adopting Report of Magistrate Judge ("Order") [D.E. 113].   On December 28, 2020, the Court dismissed the claims against the PNC Defendants with prejudice after receiving a report that Plaintiffs had settled with those parties [D.E. 125 & 126].

On January 12, 2021, after noting the non-active status of the other Defendants in the case, the Court granted Plaintiffs leave to partially amend the First Amended Complaint as to Defendant Anthony Reitz ("Reitz") and the Greystone Defendants only.  See Order [D.E. 132].[4]  Although

---

[4] As noted in the Order, by that time:

> Defendant Leslie Robert Evans [had been] previously dismissed from the First Amended Complaint by Notice of Voluntary Dismissal without Prejudice. [ECF No. 103].
>
> ***
>
> Defendants Joseph Walsh and Joseph Walsh, Jr. ha[d] defaulted. The Clerk [had] entered a Clerk's Default against them on December 30, 2020. [ECF No. 131].
> Defendants Greystone EB-5, LLLP, USREDA, LLC, USREDA Holdings LLC, USREDA Management, LLC, and WWB Trust LLC ha[d] also defaulted. The Clerk [had] entered a Clerk's Default against them on April 28, 2020. [ECF No. 102].
> Defendant South Atlantic Regional Center, LLC ("SARC") [had] defaulted, but [had] subsequently appeared and filed a Suggestion of Bankruptcy. [ECF No. 95].

Reitz had appeared *pro se* and answered the Complaint on November 20, 2019, he was dismissed with prejudice on April 2, 2021 pursuant to Plaintiffs' Notice of Partial Settlement as to Reitz, which had been filed on February 2, 2021 [D.E. 24, 133, & 157].

Thus, on March 29, 2021, Plaintiffs filed their "First Partially Amended Complaint as to Greystone Defendants" (hereafter, "FPAC") [D.E. 148].   Now before the Court is the Greystone Defendants' Motion to Dismiss First Partially Amended Complaint with Prejudice (hereafter, "Greystone Defendants' Third Motion to Dismiss"), wherein the Greystone Defendants seek dismissal with prejudice of all nineteen counts asserted against them in the FPAC.  See Greystone Defendants' Third Motion to Dismiss [D.E. 162].

## THE FPAC

In the FPAC, Plaintiffs note that the First Amended Complaint [D.E. 44] continues to be the operative pleading against Defendants Walsh, Joseph Walsh, Jr. ("Walsh, Jr."), Greystone EB-5 LLLP ("Greystone EB-5"), SARC, USREDA, LLC ("USREDA"), USREDA Holdings, LLC ("USREDA Holdings"), USREDA Management, LLC ("USREDA Management"), and WWB Trust, LLC ("WWB"), and further state that:

> Although this First Partially Amended Complaint is as to the Greystone Defendants only, the allegations against all Defendants from the First Amended Complaint (D.E. 44) are incorporated herein to the maximum extent possible, as that is the operative complaint as to the Defaulted Defendants, as defined herein. However, given that the Greystone Defendants have already moved to dismiss the First Amended Complaint (D.E. 44) as a shotgun pleading, allegations against all Defendants are made herein in accordance with the United [States] Magistrate Judge's Report and Recommendation (D.E. 112) and the Court's Order affirming the same (D.E. 113).

See FPAC [D.E. 148 at 2–3 n. 1 & 2].  Plaintiffs then allege that, since 2010, Walsh, "his entities, and coconspirators" have defrauded investors participating in the EB-5 Program.  See FPAC [D.E.

---

See Order [D.E. 132 at 2-3].

148 at 3].   According to Plaintiffs, the Walsh entities are: SARC, WWB, USREDA, USREDA Holdings and USREDA Management.   Id. ¶ 65.   Plaintiffs define the term "co-conspirators" as including but not limited to: Walsh, Walsh, Jr., SARC, WWB, USREDA, USREDA Holdings, D. Vosotas, J. Vosotas, Muhl, BBM 3, BBM 3 II and "the Vosotas Entities", which are further defined as consisting of Greystone EB-5, Greystone Hotel Miami, United EB-5, Santa Barbara 230, Greystone Terra Firma, VOS Holdings I, VOS CRE I, Greystone Hospitality, Greystone Holdco, Greystone Managing Member, Greystone Master Tenant, Greystone Tenant, Greystone Option Holder, Trans Inns Associates, and VOS Hospitality.   Id. at 3 n.3 & ¶ 67.   Thus, all of the "Vosotas Entities" are Greystone Defendants except for Greystone EB-5, which Plaintiffs characterize as the platform for the alleged fraud.   Id. at 4.

Plaintiffs further allege that:

- Walsh, through Greystone EB-5, offered and sold limited partnership units to foreign investors seeking to participate in an approved EB-5 Program. Id. at 3-4.

- The Greystone Defendants, in tandem with Walsh, developed a platform for fraud through an EB-5 investment project advertised as Greystone EB-5.   Id. at 3-5, 20.

- Walsh and the Greystone Defendants engaged in an elaborate, fraudulent scheme to induce Plaintiffs into investing in United States real estate to obtain EB-5 immigrant visas. Id. at 3-5, 22–30.

- Walsh and the Greystone Defendants falsely represented to investors that Greystone EB-5 would develop, renovate, and operate two adjacent properties in Miami Beach, Florida ("Greystone Properties"), one of which would become the Greystone Hotel ("Greystone Hotel Project").   Id. at 4–5.

- Each Greystone EB-5 partnership unit required an investment of $500,000 and an additional $60,000 in administrative and legal fees, which monies were collectively authorized to be spent for the renovation and development of the Greystone Properties.   Id. at 5, 17, & 22.

- J. Vosotas co-managed Greystone EB-5 with Walsh; D. Vosotas is the father of J. Vosotas and manages the Vosotas Entities with J. Vosotas; Muhl is a business partner and associate of D. Vosotas and J. Vosotas.   They and the other Greystone Defendants conspired with

Walsh to form a fake escrow account that allowed them to misappropriate Plaintiffs' funds outside the terms of investment portfolio agreements.  Id. at 5, 8–15.

- As a result, Plaintiffs lost their investments and the federal government denied Plaintiffs' EB-5 resident visa applications on the basis that they did not financially benefit the Greystone Hotel Project.  Id. at 5, 23, 28, & 41.

- After the fraud against Plaintiffs came to fruition, J. Vosotas, D. Vosotas, and Muhl moved the Greystone Properties to new shell entities and trusts in Delaware to further conceal and misrepresent the truth.  Id. at 7 & 26.

- Walsh and some of the Greystone Defendants travelled to China where they knowingly made false statements about the Greystone Hotel Project to persuade Plaintiffs to invest in Greystone EB-5.  Id. at 28, 60, 71, & 74.

- Plaintiffs, relying on the false statements made during those in-person meetings, executed transactional documents and, in exchange for the required investment fees and costs, received one unit each, consisting of a limited partnership interest in Greystone EB-5.  Id. at 22.

In the FPAC, Plaintiffs re-assert all of their claims against the Greystone Defendants from the First Amended Complaint [D.E. 44], except for the RICO claims that were dismissed with prejudice, to wit:

Count I:        Aiding and Abetting Conversion against J. Vosotas.

Count II:       Aiding and Abetting Conversion against D. Vosotas.

Count III:      Aiding and Abetting Conversion against Muhl.

Count IV:       Aiding and Abetting Conversion against Vosotas Entities.

Count V:        Fraud in the Inducement against J. Vosotas.

Count VI:       Fraud in the Inducement against D. Vosotas.

Count VII:      Fraud in the Inducement against Muhl.

Count VIII:     Fraud in the Inducement against Vosotas Entities.

Count IX:       Breach of Fiduciary Duty against J. Vosotas, D. Vosotas, United EB-5, VOS Hospitality, and Trans Inns Associates.

<u>Count X</u>:        Aiding and Abetting Breach of Fiduciary Duty against J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates.

<u>Count XI</u>:       Fraud against J. Vosotas.

<u>Count XII</u>:      Constructive Fraud against J. Vosotas, D. Vosotas, United EB-5, VOS Hospitality, and Trans Inns Associates.

<u>Count XIII</u>:     Civil Conspiracy against Greystone Defendants.

<u>Count XVI</u>:      Equitable Lien against Greystone Terra Firma.

<u>Count XV</u>:       Equitable Lien against Santa Barbara 230.

<u>Count XVI</u>:      Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") against J. Vosotas, D. Vosotas, United EB-5, and Muhl.

<u>Count XVII</u>:     Equitable Accounting against J. Vosotas, D. Vosotas, United EB-5, VOS Hospitality, and Trans Inns Associates.

<u>Count XVIII</u>:    Violation of Section 10 of the Securities Exchange Act and Rule 10b-5 against Muhl.

<u>Count XIX</u>:      Violation of Section 20 of the Securities Exchange Act against Muhl.

<u>See</u> FPAC [D.E. 148 at 52–100]. As noted above, the Greystone Defendants' Third Motion to Dismiss seeks dismissal of all nineteen counts with prejudice. The Greystone Defendants argue that the FPAC should be dismissed with prejudice because it fails to remedy the pleading deficiencies from Plaintiffs' First Amended Complaint [D.E. 44]. With respect to the specific counts asserted in the FPAC, the Greystone Defendants argue that: Plaintiffs' claims for aiding and abetting, fraud in the inducement, breach of fiduciary duty, fraud, and civil conspiracy fail to meet the heightened pleading requirements of Rule 9(b); Plaintiffs fail to plead the elements of a claim for equitable lien; Plaintiffs fail to state a viable FDUPTA claim because FDUPTA does not regulate securities transactions; Plaintiffs fail to allege facts sufficient to state a claim for equitable accounting; and Plaintiffs' claims for violations of Securities Laws do not meet the heightened

pleading standards of Fed. R. Civ. P. 9(b) ("Rule 9(b)") and the Private Securities Litigation

Reform Act of 1995. <u>See</u> Greystone Defendants' Third Motion to Dismiss [D.E. 162].

## <u>STANDARD OF REVIEW</u>

### I.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true

and construes them in the light most favorable to the plaintiff." <u>Speaker v. U.S. Dep't of Health</u>

<u>& Human Servs. Centers for Disease Control & Prevention</u>, 623 F.3d 1371, 1379 (11th Cir. 2010)

(citing <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir.2003)). "The Court does not view each fact

in isolation . . . but considers the complaint in its entirety." <u>Leader Glob. Sols., LLC v. Tradeco</u>

<u>Infraestructura, S.A. DE C.V.</u>, 155 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (citing <u>Tellabs, Inc. v.</u>

<u>Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to

state a claim to relief that is plausible on its face.'" <u>Michel v. NYP Holdings, Inc.</u>, 816 F.3d 686,

694 (11th Cir. 2016) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim

is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,

556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting

<u>Twombly</u>, 550 U.S. at 556). While detailed factual allegations are not necessary, "[a] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Twombly</u>,

550 U.S. at 545 (citations and internal quotation marks omitted).  "[U]nadorned, the-defendant-unlawfully- harmed-me accusation[s]" are insufficient to state a claim for relief.  Iqbal, 556 U.S. at 678.

## II.      Rule 9(b)

Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "The particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (internal quotation marks omitted) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

A complaint satisfies Rule 9(b) when it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Kammona v. Onteco Corp., 587 F. App'x 575, 581 (11th Cir. 2014) (quoting Ziemba, 256 F.3d at 1202).  "The complaint must sufficiently recite 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'"  Etkin & Co. v. SBD, LLC, No. 11-CV-21321, 2013 WL 12092536, at *4 (S.D. Fla. 2013) (quoting U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1222 (11th Cir. 2012)). Failure to comply with Rule 9(b)'s heightened pleading standard is grounds for dismissal.  Thoroughbred Yacht, Inc. v. McConaghy Boats Ltd.,

No. 18-CV-60355, 2018 WL 5098964, at *7 (S.D. Fla. 2018) (citing In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1269 (11th Cir. 2016)).

### III.   Claims for Violations of Securities Laws - Sections 10 & 20 of the Securities Exchange Act and Rule 10b-5.

Claims for violations of Securities Laws must satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995, codified at 15 U.S.C. § 78u-4(b) ("PSLRA").  See IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp., 660 F. App'x 850, 855 (11th Cir. 2016) (The PSLRA "requires a complaint alleging securities fraud to 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'") (quoting 15 U.S.C. § 78u–4(b)(1)(B)).  Failure to comply with the PSLRA's heightened pleading standard is grounds for dismissal.  See In re Sportsline.com Sec. Litig., 366 F. Supp. 2d 1159, 1174 (S.D. Fla. 2004) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 (11th Cir. 1999)).

"Additionally, the PSLRA provides that a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind.'"  City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Cellulose S.A., 41 F. Supp. 3d 1369, 1389 (S.D. Fla. 2011) (citing 15 U.S.C. § 78u–4(b)(2)). "A 'strong inference' of scienter means an inference that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  In re Ocwen Fin. Corp. Sec. Litig., No. 14-CV-81057, 2015 WL 12780961, at *4 (S.D. Fla. 2015) (quoting Tellabs, Inc., 551 U.S. at 324).

To determine whether a strong inference of scienter has been properly pled:

> courts must consider the complaint in its entirety, counting any omissions and ambiguities in the complaint against an inference of scienter. Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute. The inquiry is inherently comparative because courts must take into account plausible opposing inferences.

In re Ocwen Fin. Corp. Sec. Litig., 2015 WL 12780961, at *4 (citations and internal quotation marks). Thus,

> First, plaintiffs must specify each statement alleged to have been misleading and why each was misleading. This requirement is even more specific than the Rule 9(b) standard. Second, for each alleged misrepresentation, plaintiffs must state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind or scienter.
>
> The Eleventh Circuit recently clarified the second requirement in *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004). In *Phillips*, the defendants, like the Defendants in this case, argued that plaintiffs could not aggregate factual allegations to infer scienter and that plaintiffs were required to establish scienter with respect to each defendant and with respect to each alleged violation. The Eleventh Circuit interpreted the PSLRA to "permit the aggregation of facts to infer scienter." *Id.* at 1017. The Court went on to hold, however, that "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Id.* at 1017-8.

Underwood v. Lampert, No. 02-CV-21154, 2004 WL 7332754, at *12 (S.D. Fla. 2004) (some citations omitted).

- **Section 10(b) of the Securities Exchange Act & Rule 10b-5.**

Section 10(b) of the Securities Exchange Act (hereafter, "Section 10(b)") prohibits:

> us[ing] or employ[ing], in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (footnote omitted). Rule 10b-5 of the Securities Exchange Act (hereafter, "Rule

10b-5")—promulgated under Section 10(b)—makes it unlawful for:

> any person, directly or indirectly, . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff "must show '(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury.'" Kammona, 587 F. App'x at 581 (quoting Ziemba, 256 F.3d at 1202). "Moreover, to survive a motion to dismiss, a plaintiff's claims of fraud under Section 10(b) and Rule 10b-5 must meet the particularity requirements of Rule 9(b)." Kammona, 587 F. App'x at 581. To satisfy Rule 9(b), a complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba, 256 F.3d at 1202.

- **Section 20(a) of the Securities Exchange Act.**

Section 20(a) of the Exchange Act (codified at 15 U.S.C. §78t) (hereafter, "Section 20(a)"), provides for joint and several liability for people who control or abet violators of the Securities Exchange Act. See 15 U.S.C. §78t(a). Under Section 20(a), "any person who 'controls' someone who violates the Act is liable for this violation." Malin v. Ivax Corp., 17 F.Supp.2d 1345, 1351 (S.D. Fla. 1998) (citing 15 U.S.C. § 78t(a)). "The Exchange Act's implementing regulations define control as 'the possession, direct or indirect, of the power to direct or cause the direction of the management policies of a person.'" Id. (citing 17 C.F.R. § 230.405).

To allege controlling person liability under §20, a plaintiff must allege (1) that the defendant had the power to control the general affairs of the primary violator, and (2) that the defendant had the power to control the specific corporate policy that resulted in the primary violation. *Brown v. Enstar Group Inc.*, 84 F.3d 393, 396 (11th Cir. 1996). Of course, without a primary violation of the securities laws, there can be no secondary violation under § 20(a). *See id.* at 396 – 397; *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994).

Id.

## DISCUSSION

### A.  Aiding and Abetting Claims (Counts I–IV & X)

Plaintiffs assert claims for aiding and abetting conversion against J. Vosotas (Count I), D. Vosotas (Count II), Muhl (Count III), and the Vosotas Entities (Count IV). See FPAC [D.E. 148 at 52-65). Plaintiffs also assert a claim for aiding and abetting breach of fiduciary duty against J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates (Count X). Id. at 79–81.

"To state an aiding and abetting claim under Florida law, the [plaintiff] must allege: '(1) an underlying violation on the part of the primary wrongdoer; (2) actual knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing." Isaiah v. JPMorgan Chase Bank, N.A., No. 16-CV-21771, 2017 WL 5514370, at *3 (S.D. Fla. 2017) (quoting Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012). "Florida law requires that a defendant have actual 'knowledge of the underlying [wrongdoings],' not merely that certain 'red flags' indicate a defendant 'should have known' of the [wrongdoings]." Honig v. Kornfeld, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (citing Lamm v. State St. Bank & Tr., 749 F.3d 938, 950 (11th Cir. 2014)). "[W]hile actual knowledge may be shown by circumstantial evidence, the circumstantial evidence must demonstrate that the aider and abettor *actually knew* of the underlying wrongs committed." Perlman v. Wells Fargo Bank, N.A., 559 Fed. Appx. 988, 993 (11th Cir. 2014) (emphasis added). "[Although] the element of actual knowledge may be alleged generally, the plaintiff still must

accompany that general allegation with allegations of specific 'facts that give rise to a strong inference of actual knowledge regarding the underlying [wrongdoing].'" <u>Meridian Tr. Co. v. Batista</u>, No. 17-CV-23051, 2018 WL 4760277, at *8 (S.D. Fla. 2018) (quoting <u>Lamm v. State St. Bank & Tr. Co.</u>, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012)).

Counts I–IV are insufficient under these standards because Plaintiffs fail to plead that J. Vosotas, D. Vosotas, Muhl, or the Vosotas Entities had any actual knowledge of wrongdoing on the part of the alleged primary wrongdoers, Defendant Walsh and his entities. Rather, Plaintiffs impute knowledge of the wrongdoing on these Defendants through their mere business associations and claim that these Defendants "knew or should have known" of Walsh and his entities' alleged wrongdoing. <u>See</u> FPAC [D.E. 148 at 53, 57, 60, & 63]. Thus, Plaintiffs have failed to allege specific "facts that give rise to a strong inference of actual knowledge regarding the underlying [wrongdoing].'" <u>Meridian Tr. Co.</u>, 2018 WL 4760277, at *8. Count X suffers from the same deficiencies. <u>See</u> FPAC [D.E. 148 at 79-81]

Additionally, Plaintiffs fail to plead sufficient facts to satisfy the third element of aiding and abetting, namely, "the rendering of substantial assistance in committing the wrongdoing." <u>Isaiah</u>, 2017 WL 5514370, at *3 (citation omitted). At no point do Plaintiffs allege facts showing how J. Vosotas, D. Vosotas, Muhl, or the Vosotas Entities assisted Walsh in his alleged wrongdoing. Instead, Plaintiffs conclusorily allege in Counts I–IV that J. Vosotas, D. Vosotas, Muhl, and the Vosotas Entities "provided substantial assistance to advance the commission of the conversion", and conclusorily allege in Count X that J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates "provided substantial assistance to advance the commission of the breach of fiduciary duty." <u>See</u> FPAC [D.E. 148 at 54, 57, 60, 63, 80].

Given these shortcomings, Plaintiffs fail to state aiding and abetting claims in Counts I–IV and X.

**B.   Fraud in the Inducement (Counts V–VIII)**

In Counts V–VIII, Plaintiffs assert claims for fraud in the inducement against J. Vosotas (Count V), D. Vosotas (Count VI), Muhl (Count VII), and the Vosotas Entities (Count VIII).

"To state a claim for fraudulent inducement under Florida law a plaintiff must allege that (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment." Barret v. Scutieri, 281 F. App'x 952, 953 (11th Cir. 2008) (citing Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).   A claim, for fraudulent inducement must meet the heightened pleading requirements of Rule 9(b). See Fla. Beauty Flora, Inc. v. Evergreen Fresh Farms, Inc., No. 17-CV-24173, 2018 WL 801599, at *3 (S.D. Fla. 2018).  To satisfy the heightened pleading requirements for allegations of fraud, "it is sufficient to plead the who, what, when, where, and how of the allegedly fraudulent statements and then allege generally that those statements were made with the requisite intent." Mizzaro, 544 F.3d 1230 at 1237.

Plaintiffs fail to meet the specificity requirements imposed by Rule 9(b).  Counts V–VIII fail to allege how or when each of the Plaintiffs justifiably relied on any alleged false statements by these Defendants.  Instead of pleading reliance with specificity, Plaintiffs allege that they collectively relied on "false statements that Plaintiffs' funds would be solely for the investment into the EB-5 Project" and refer to "a teleconference meeting with Plaintiffs" attended by J.

Vosotas.  See FPAC [D.E. 148 at 66, 68, 71, & 74].  The only reference to a "teleconference" appears at paragraph 119 of the FPAC, in which Plaintiffs allege:

> On July 28, 2016, Plaintiffs met with Zachary J Franklin, the general manager of SARC and JJW Consultancy, at the company's Shanghai Office.  J. Vosotas attended the meeting via teleconference.  J. Vosotas provided Plaintiffs with false and misleading information as to ownership of the Greystone Properties, guarantees on the return of Plaintiffs' investment, and existence of a mortgage, or other security.  Zachary J. Franklin repeated these false and misleading statements and directed Plaintiffs to statements in the Investment Portfolio and Investment Portfolio [sic] which also repeated the false and misleading statements.  J. Vosotas finished the call by falsely stating that Plaintiffs, as owners of the Greystone Hotel, would be eligible to live for free at the property upon the projects' completion.

Id. ¶ 119.  Plaintiffs allege that they wired funds to SARC because they "relied on the misrepresentations in the Investment Portfolio".  Id. ¶¶ 129–135.  However, J. Vosotas is not identified as having presented the Investment Portfolio to Plaintiffs during the teleconference; instead, Zachary J. Franklin is the alleged individual who "directed Plaintiffs to statements in the Investment Portfolio".  Id. at 34.  Moreover, Plaintiffs allege that "Kiu Chun Saxon Hui wired the funds to SARC on or about August 24, 2015", while Chuen Ping Ng and Yan Zhang wired the funds on March 4, 2015 and October 29, 2014, respectively.  Id. ¶¶ 129, 132, & 135.  Lai King Hui and Hongsen Zhang generally allege they invested in "2016 or 2017", which could be before or after the July 28, 2016 teleconference attended by J. Vosotas.  Id. ¶¶ 130 & 134.

Thus, as to Count V, Plaintiffs allege that they were collectively induced by a "teleconference meeting" with J. Vosotas, which took place after some of the wire transfers or at an indeterminate time in relation to other transfers, and that they relied on the Investment Portfolio presented at the teleconference by someone other than J. Vosotas.

Additionally, in Counts VI–VIII, Plaintiffs fail to allege that D. Vosotas (Count VI), Muhl (Count VII), and the Vosotas Entities (Count VIII) "made a false statement about a material fact". Barret, 281 F. App'x. at 953.  Plaintiffs attempt to impute liability to D. Vosotas, Muhl, and the

Vosotas Entities by stating that they "allowed an agent or employee to make multiple misrepresentations in a teleconference with Plaintiffs". See FPAC [D.E. 148 ¶¶ 311, 328, & 346]. Even if Plaintiffs had specified who that agent or employee was, Plaintiffs cannot impute liability to these Defendants merely by virtue of business associations with the alleged wrongdoer, whoever that may be.   Likewise, Plaintiffs' allegations that Muhl "traveled to China and Hong Kong, making multiple false statements" and that "the Vosotas Entities allowed Muhl to travel to China . . . making multiple false statements" fail to meet the specificity requirements of Rule 9(b) by omitting the "what, when, . . . and how of the allegedly fraudulent statements". Mizzaro, 544 F.3d 1230 at 1237.

Finally, Counts V through VIII fail to state "what the defendants obtained as a consequence of the fraud" as required by Rule 9(b). See Kammona, 587 F. App'x at 581.

Given the specificity requirements of Rule 9(b), Plaintiffs' argument that they sufficiently pled their claims for fraudulent inducement because the FPAC alleges sufficient facts that "the Greystone Defendants knew, or should at the very least have known, that Plaintiffs wired funds to SARC, including their participation in the meeting and contributions to the investment portfolio[,]" see Response in Opposition [D.E. 184 at 14 & 15], falls short of the mark.

Thus, Plaintiffs fail to state claims for fraud in the inducement in Counts V through VIII.

## C. **Breach of Fiduciary Duty (Count IX)**

In Count IX, Plaintiffs assert a claim for breach of fiduciary duty against J. Vosotas, D. Vosotas, United EB-5, VOS Hospitality, and Trans Inns Associates.

The elements of a claim for breach of fiduciary duty are "'the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages.'" Wilson v. EverBank, N.A., 77 F. Supp. 3d 1202, 1223 (S.D. Fla. 2015) (quoting Gracey v. Eaker, 837 So.

2d 348, 353 (Fla. 2002)).  "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  Watkins v. NCNB Nat'l Bank of Florida, N.A., 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993), rev. denied, 634 So. 2d 629 (Fla. 1994).  Moreover, a breach of fiduciary duty claim must meet the heightened pleading requirements of Rule 9(b) "to the extent it relies on grounds sounding in fraud."  Cutler v. Voya Fin., Inc., No. 18-CV-20723, 2019 WL 1112379, at *3 (S.D. Fla. 2019) (citation omitted).

Plaintiffs' claim for breach of fiduciary duty against these Greystone Defendants is predicated on their alleged failure to "follow material terms of the partnership agreement, which would have revealed their fraud", "concealing material facts", and "falsely represent[ing] that no funds were lent to Greystone Hotel Miami from Greystone EB-5 Partnership".  See FPAC [D.E. 144 at 78].  Accordingly, Plaintiffs' claim for breach of fiduciary duty sounds in fraud and must meet the heightened pleading requirements of Rule 9(b).  See Rana Fin., LLC v. City Nat'l Bank of New Jersey, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018) (applying Rule 9(b) to claim for breach of fiduciary duty because the alleged fraud was the predicate of the breach).

As to J. Vosotas, D. Vosotas, VOS Hospitality and Trans Inns Associates, Plaintiffs fail to meet the specificity requirements of Rule 9(b) because they do not allege any facts showing that any of these four Greystone Defendants owed a fiduciary duty to Plaintiffs.  Plaintiffs merely allege that they "lent their likenesses as the 'Management Team' in the Investment Portfolio", and "all assumed a fiduciary duty to Plaintiffs as limited partners in [Greystone EB-5]."  See FPAC [D.E. 148 at 77].  However, even as purported limited partners in Greystone EB-5, these Greystone Defendants did not owe a fiduciary duty to Plaintiffs.  See Chen v. Walsh, No. 18-CIV-23894, 2020 WL 10618317 at *6 (S.D. Fla. 2020) ("A general partner [rather than a limited partner] owes

two fiduciary duties to the limited partnership: the duty of loyalty and the duty of care."). And United EB-5, as general partner in Greystone EB-5, may be deemed to have owed a fiduciary duty to that limited partnership only, not to Plaintiffs as limited partners of Greystone EB-5. Id.

Moreover, direct actions by individual investors are governed by Fla. Stat. § 620.2001, which states that a limited partner "must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened by the limited partnership." See Fla. Stat. § 620.2001. Thus, as limited partners of Greystone EB-5, Plaintiffs cannot assert a direct action against United EB-5 in its capacity as general partner of Greystone EB-5 absent pleading and proving "a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company" and that "there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." Fritz v. Fritz, 219 So. 3d 234, 237 (Fla. 3d DCA 2017). Plaintiffs' allegation that they suffered "an injury that is separate and distinct" from both Greystone EB-5 and its general partners is conclusory and unsupported by any specific facts. See FPAC [D.E. 148 at 78].

Thus, Plaintiffs fail state a claim for breach of fiduciary duty in Count IX.

**D. Fraud (Count XI)**

In Count XI, Plaintiffs assert a claim for common law fraud against J. Vosotas.

Rule 9(b) provides that, in alleging fraud, "a party must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). "To state a claim for fraud, a plaintiff must show (1) a false statement or an omission of material fact, (2) knowledge of the statement's falsity, (3) intent to induce reliance, and (4) injury resulting from the plaintiff's relying on the statement." Drilling Consultants, Inc. v. First Montauk Secs. Corp., 806 F.Supp.2d 1228, 1236 (M.D. Fla. 2011). Moreover, "first-party reliance is an element of a common-law fraud claim."

Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 656 (2008); Platinum Props. Investor Network, Inc. v. Sells, No. 18-61907-CIV, 2019 WL 2247544, at * 11, 12 (S.D. Fla. 2019) (stating that "first-party reliance is the centerpiece of a fraud claim" and dismissing a fraud claim because plaintiffs alleged "mere third-party reliance as the predicate" for their common-law fraud claim).

Plaintiffs group plead that they met with J. Vosotas "in a teleconference meeting" in which he allegedly made multiple misrepresentations to Plaintiffs. See FPAC [D.E. 148 at 82]. However, none of the Plaintiffs are individually identified as attending the teleconference and as a result, they fail to show how each of them relied on the alleged misrepresentations by J. Vosotas. Indeed, Plaintiffs' group pleading contravenes the "rule in contemporary law that first-party reliance is the centerpiece of a fraud claim." Sells, 2019 WL 2247544, at *11.

Given these shortcomings, Plaintiffs fail to state a claim for fraud in Count XI.

### E. **Constructive Fraud (Count XII)**

In Count XII, Plaintiffs assert a claim for constructive fraud against J. Vosotas, D. Vosotas, United EB-5, VOS Hospitality, and Trans Inns Associates. See FPAC [D.E. 148 at 77 & 85].

"Constructive fraud exists where a duty arising from a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken . . . . Florida courts have construed the term "fiduciary or confidential relation" as being very broad.'" Linville v. Ginn Real Estate Co., LLC, 697 F.Supp.2d 1302, 1309 (citations omitted). "Constructive fraud, unlike actual fraud, does not require a showing of intent or of a misrepresentation or concealment and thus a claim for constructive fraud need only meet the liberal pleading requirements of Rule 8 [of the Federal Rules of Civil Procedure]." Id.

Given the failure to state a claim for breach of fiduciary duty, as found in connection with Count IX, Plaintiffs' constructive fraud claim must be predicated on a confidential relation.

Plaintiffs allege that "[a]n unconscionable or improper advantage has been taken of Plaintiffs by United EB-5, J. Vosotas, D. Vosotas, VOS Hospitality, and Trans Inns Associates." <u>See</u> FPAC [D.E. 148 ¶ 416].  However, this wholly conclusory allegation fails to satisfy even the liberal pleading requirements of Fed. R. Civ. P. 8. <u>See Linville</u>, 697 F.Supp.2d 1302, 1309 (constructive fraud claims need only meet the liberal pleading requirements of Fed. R. Civ. P. 8); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

Thus, Plaintiffs fail to state a claim for constructive trust in Count XII.

## F.  **Civil Conspiracy - Count XIII**

In Count XIII, Plaintiffs assert a claim for civil conspiracy against the Greystone Defendants and argue that, because they "have sufficiently pled other common law claims for which there was a conspiracy, the civil conspiracy claim has merit as a matter of law and should not be dismissed." <u>See</u> Response in Opposition [D.E. 184 at 22].  This contention is unpersuasive.

 "Under Florida law, the elements of a civil conspiracy claim are: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" <u>Tippens v. Round Island Plantation L.L.C.</u>, No. 09-CV-14036, 2009 WL 2365347, at *4 (S.D. Fla. 2009) (quoting <u>UTC Indus., Inc. v. Presidential Fin. Corp.</u>, 976 So. 2d 92, 94 (Fla. 3d DCA 2008)).  "[A] conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan." <u>McAndrew v. Lockheed Martin Corp.</u>, 206 F.3d 1031, 1036 (11th Cir. 2000).  Moreover, "mere evidence of knowledge of the crime or association with conspirators is insufficient." <u>Koch v. Royal Wine Merchants, Ltd.</u>, 907 F.Supp.2d 1332, 1347 (S.D. Fla. 2012).

Plaintiffs allege that "the basis of the conspiracy is a fraud and theft of over four million dollars of Plaintiffs' money, which are independent torts that give rise to causes of action if committed by one person", and that the "investment scheme was designed to fraudulently procure and steal Plaintiffs' funds under the guise of an EB-5 visa investment opportunity." See FPAC [D.E. 148 at 88]. Because Plaintiffs' civil conspiracy claim is based upon alleged fraudulent conduct by the Greystone Defendants, Plaintiffs' civil conspiracy claim sounds in fraud and must therefore satisfy Rule 9(b)'s heightened pleading standard. See Meridian Tr. Co., 2018 WL 4693533, at *6 ("'Conspiracy claims [sounding in fraud] must also meet Rule 9(b)'s heightened particularity requirements.'") (internal citation omitted).

Here, Plaintiffs have not sufficiently pled that an agreement existed among the Greystone Defendants to defraud Plaintiffs of their investment funds. Rather, Plaintiffs allege that:

- "Defendants entered into a conspiracy and acted in concert to market a fraudulent investment scheme to Plaintiffs, steal their money, allow the theft of Plaintiffs' money and then distribute the money among themselves." See FPAC [D.E. 148 ¶ 432].

- "Defendants acted with the full knowledge and awareness that the investment scheme was designed to fraudulently procure and steal Plaintiffs' funds under the guise of an EB-5 visa investment opportunity." Id. ¶ 434.

- "Defendants acted contrary to law, acted according to a predetermined and commonly understood plan of action for the purpose of obtaining Plaintiffs' funds, and took overt acts in furtherance of the conspiracy." Id. ¶ 436.

- "There was a meeting of the minds between and among the Defendants to commit the unlawful acts alleged herein." Id. ¶ 437.

Thus, there are no factual allegations in the FPAC that provide the level of detail necessary to satisfy Rule 9(b)'s heightened pleading standards. Rather, as alleged in Count XIII, "most of the action taken in this case was taken by Walsh on behalf of [Greystone EB-5], a limited liability partnership" and "as United EB-5 was a general partner in [Greystone EB-5], United EB-5 was

ultimately liable for the actions of Walsh, and the knowledge of Walsh's actions was imputed to members of United EB-5." Id. ¶¶ 426, 428.  Plaintiffs further allege that "the Vosotas Entities largely share the same members and managers allowing the knowledge of J. Vosotas and United EB-5 to be imputed to the rest of the Vosotas Entities" and as a result, "[t]here was an agreement between the Defendants to do an unlawful act" and "there were overt acts in furtherance of the conspiracy". Id. ¶¶ 429, 430.  However, "alleging mere affiliation between corporate defendants is insufficient to establish agreement".  Meridian Tr. Co., 2018 WL 4693533, at *6 (citing Davidson v. Wilson, 763 F. Supp. 1470, 1472 n. 8 (D. Minn. 1991) aff'd, 973 F.2d 1391 (8th Cir. 1992)); Ferguson v. DeStefano, No. 10-80385-CIV, 2010 WL 121558260, at * 2 (S.D. Fla. 2010) (an alleged association between defendants is insufficient to establish conspiracy claim); United States v. Fanning, 365 F. App'x. 207, 208 (11th Cir. 2010) ("mere association with co-conspirators or presence at the scene of the crime is insufficient to prove participation in a conspiracy").

Moreover, Plaintiffs' civil conspiracy claim cannot survive given the failure of Plaintiffs' common law fraud claim upon which their civil conspiracy claim is based.  See Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018) (civil conspiracy is not an independent cause of action and relies on an underlying tort).

Thus, Plaintiffs fail to state a claim for civil conspiracy in Count XIII.

**G. Equitable Liens – Counts XIV & XV**

In Counts XIV and XV, Plaintiffs seek the imposition of equitable liens on the Greystone Hotel and Santa Barbara Apartments, which are properties held by Greystone Terra Firma and Santa Barbara 230, due to their "fraud, misrepresentation, and deception to secure Plaintiffs' investments in [Greystone EB-5] Project." See FPAC [D.E. 148 at 89–90].

"To be entitled to an equitable lien, there must be circumstances such as fraud or misrepresentation of material facts upon which the plaintiff specifically relied in good faith . . . ." In re Cameron, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006). "[O]nly monies *obtained* through fraud or egregious conduct may permit the imposition of an equitable lien." Id. at 822 (emphasis in original) (citing In re Chauncey, 454 F.3d 1292, 1294 (11th Cir. 2006)). "In all circumstances, in order to warrant the imposition of an equitable lien, the funds, payment of which are to be secured by the equitable lien, must be directly traceable to the real property in question, having unjustly enriched the Debtor's interest in that property." In re Johnson, 336 B.R. 568, 572 (Bankr. S.D. Fla. 2006).

Plaintiffs were previously cautioned that, to state these equitable claims, they must trace the investment funds that they claim to have lost to the Greystone Hotel and the Santa Barbara Apartments, respectively. See Report and Recommendation [D.E. 112 at 26–27] and Order [D.E. 113]. Plaintiffs have failed to do so in their FPAC. Moreover, Plaintiffs fail to allege how Defendants Terra Firma and Santa Barbara committed unlawful acts or that they received any of the funds Walsh purportedly embezzled. Thus, Plaintiffs have again failed to properly plead the elements of their claims for equitable lien in Counts XIV and XV.

## H. **FDUPTA (Count XVI)**

In Count XVI, Plaintiffs allege that J. Vosotas, D. Vosotas, United EB-5, and Muhl violated FDUPTA, which prohibits all "'[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

> [T]he FDUPTA, like most state unfair trade practices acts, is largely modeled after Section 5 of the Federal Trade Commission Act, and "the FTC Act has been consistently 'interpreted to preclude coverage of securities claims' in the overwhelming majority of state and federal courts addressing this issue." *Crowell*,

87 F. Supp. 2d at 1294 (quoting *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1101 (5th Cir. 1988)).  The FDUPTA specifically instructs that "due consideration and great weight shall be given to the interpretations of the" FTC Act.  § 501.204(2), Fla. Stat. (2002).  This provision indicates that the FDUPTA should be interpreted consistently with the FTC Act, which has been held inapplicable to securities claims.

Rogers v. Cisco Sys., 268 F. Supp. 2d 1305, 1316 (N.D. Fla. 2003).

Plaintiffs argue that they sufficiently state a claim for violation of FDUPTA because they allege "specific acts" by Defendants that "constituted an unconscionable, unfair, or deceptive act or practice within the terms of the FDUPTA."  See Plaintiffs' Response [D.E. 184 at 17].  However, this argument is futile given that FDUPTA does not apply to securities claims.  See Rogers, 268 F. Supp. 2d at 1316 (numerous courts have "held that various state unfair trade practices acts do not apply to securities transactions" in part, because "the purchase and sale of securities are already heavily regulated by state and federal laws" that give plaintiffs an appropriate civil remedy and because FDUPTA is modeled after the FTC Act, which precludes coverage for securities claims).  Because Plaintiffs' allegations regarding their lost investments are rooted in securities transactions, FDUPTA does not apply in this case.

Thus, Plaintiffs have again failed to state a FDUPTA claim in Count XVI.

**I.  Equitable Accounting (Count XVII)**

In Count XVII, Plaintiffs assert a claim for equitable accounting against J. Vosotas, D. Vosotas, United EB-5, VOS Hospitality, and Trans Inns Associates.  "Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate."  Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp., 46 F.Supp.2d 1276, 1285 (M.D. Fla. 1999).  "To state a claim for equitable accounting, the plaintiff must allege that the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full,

adequate and expeditious as it is in equity." <u>Bankers Trust Realty, Inc. v. Kluger</u>, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (internal citations omitted).

Plaintiffs allege that "[t]he fraud and theft perpetrated upon Plaintiffs was an extensive, complex transaction, whereby Plaintiffs' funds were transferred between and among many accounts, laundered through numerous entities, and ultimately used for personal, inappropriate purposes" and that the "transactions involving these funds, are so involved and complicated that a remedy at law is insufficient to administer complete justice." <u>See</u> FPAC [D.E. 148 ¶¶ 466–67]. Not only do Plaintiffs fail to plead how the transaction was "extensive" or "complex" or identify the "many accounts" or the "numerous entities", but the allegations in Count XVII are also contradicted by earlier allegations in the FPAC.

The general allegations of the FPAC, which are incorporated in Count XVII, provide the following summary of the intended financial transaction between Plaintiffs and the Greystone Defendants:

> Plaintiffs would invest in Greystone EB-5 Partnership as limited partners, each contributing Five Hundred Thousand Dollars ($500,000). Greystone EB-5 Partnership would hold Plaintiffs' funds in escrow, pending EB-5 processing and approval. Upon being released from escrow, the General Partners of Greystone EB-5 Partnership (SARC and United EB-5) would then loan Plaintiffs' funds to Greystone Hotel Miami to develop the Greystone Project and meet USCI's EB-5 requirements.

<u>Id.</u> ¶¶ 89–90. In other words, the "funds invested into the Greystone EB-5 Partnership would be loaned from the Greystone EB-5 Partnership to Greystone Hotel Miami". <u>Id.</u> at ¶ 86. Thus, contrary to Plaintiffs' conclusory allegations, nothing about this financial transaction is complex or extensive and an equitable accounting is not warranted. <u>See</u> <u>Managed Care Sol., Inc. v. Essent Healthcare, Inc.</u>, 694 F. Supp. 2d 1275, 1281 (S.D. Fla. 2010) ("[A] claim for equitable accounting

should be dismissed where the evidentiary facts alleged in a complaint show neither complexity nor inadequacy of a legal remedy.").

Moreover, Plaintiffs cannot use a claim for equitable accounting as a fact-finding tool to prove their claims.   Count XVII alleges that, "Plaintiffs are entitled to receive information regarding transactions involving any of the funds traceable to Plaintiffs" and "Plaintiffs have requested information on the transfers of their funds, transactions involving their funds, and the present location of their funds, which has not been provided."  See FPAC [D.E. 148 ¶¶ 468–69]. This is not a sufficient basis for asserting a claim for equitable accounting.  See Managed Care Sol., 694 F. Supp. 2d at 1281 ("'Where a party [has] the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate.'") (internal citation omitted); see also id. ("An equitable accounting is not a substitute for a motion to compel under Fed. R. Civ. P. 37.").

Thus, Plaintiffs have again failed to state a claim for equitable accounting in Count XVII.

**J.   Claims for Securities Laws Violations against Muhl**

Plaintiffs allege that Muhl violated Section 10(b) and Rule 10b-5, and Section 20(a), respectively, in Counts XVIII and XIX (hereafter, "Securities Claims").

1.   Count XVIII - Violation of Section 10(b) and Rule 10b-5 against Muhl

In Count XVIII, Plaintiffs broadly allege that Defendants Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5:

> (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of Greystone EB-5 Partnership's limited partnership units in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

See FPAC [D.E. 148 at 94].  In support of these broad allegations, Plaintiffs proffer nothing more than recycled allegations from the First Amended Complaint that were already found to be insufficient.  Specifically, Plaintiffs allege in both pleadings that:

- Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 carried out a plan, scheme, and course of conduct that was intended to, and did (i) deceive Plaintiffs, as alleged herein; and (ii) cause Plaintiffs to purchase limited partnership interests in Greystone EB-5.  In furtherance of this unlawful scheme, Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 took the actions set forth hereinabove.[5]

- Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of Greystone EB-5's limited partnership units in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  These Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

- Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5 each employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure the Plaintiffs of the value of investing in the project, which included the making of, or the participating in the making of, untrue statements of material facts about Greystone EB-5 and project and omitting material facts necessary in order to make the statements not misleading.

- Walsh, Walsh Jr., Muhl, SARC, USREDA and Greystone EB-5's primary liability arises from the following facts, among others: (i) Defendants designed a scheme to entice foreign investors to purchase limited partnership interests in Greystone EB-5; (ii) Defendants, by virtue of their responsibilities and activities in the scheme, were privy to and participated in the creation, development and publication of the Greystone EB-5's sales, marketing, projections and/or reports; and (iii) Defendants were aware of Greystone EB-5's dissemination of information to the potential foreign investors, which Defendants knew or recklessly disregarded was materially false and misleading.

---

[5] Although unclear, the terms "herein" and "hereinabove" in Count XVIII seem to refer to the general allegations and counts preceding Count XVIII that reference an alleged "scheme" by the Greystone Defendants.  This ambiguity is a further example of how Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b).

Compare FPAC [D.E. 148 ¶¶ 472-73; 475-76] <u>with</u> First Am. Compl. [D.E. 44 ¶¶ 561-62, 564-65]. Plaintiffs do not specify any statements, representations, or omissions made by Muhl, much less what untrue statements or omissions he allegedly made. Therefore, Count XVIII of the FPAC fails to satisfy the heightened pleading requirements of Rule 9(b) or the PSLRA. <u>See</u> <u>Kammona</u>, 587 F. App'x at 581 ("Moreover, to survive a motion to dismiss, a plaintiff's claims of fraud under Section 10(b) and Rule 10b-5 must meet the particularity requirements of Rule 9(b).").

The FPAC also fails to comply with Rule 9(b)'s requirement that Plaintiffs state the time and place of Muhl's alleged statements or omissions, the content of such statements, and how those statements misled the Plaintiffs. <u>See</u> <u>Ziemba</u>, 256 F. 3d at 1202 (claims under Section 10(b) and Rule 10b-5 must allege what statements were made, the time and place of such statements, their content, and what the defendants obtained as a result); <u>see also</u> <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1371 (11th Cir. 1997) (claims for fraud under Section 10(b) and Rule 10b-5 must satisfy the requirements of Rule 9(b), including setting forth "precisely what statements were made . . . [and] the time and place of each such statement and the person responsible for making [or omitting] same.").

Plaintiffs also fail to allege facts that would give rise to a strong inference that Muhl acted with the scienter required under the PSLRA. <u>See</u> <u>Underwood</u>, No. 02-CV-21154, 2004 WL 7332754, at *12 ("[F]or each alleged misrepresentation, plaintiffs must state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind or scienter."). Plaintiffs merely allege that Muhl, in conjunction with Walsh, Walsh, Jr., SARC, USREDA, and Greystone EB-5, "designed a scheme to entice foreign investors to purchase limited partnership interests in [Greystone EB-5]", and that "by virtue of their responsibilities and activities in the scheme", they disseminated information that they knew was materially false and

misleading.  <u>See</u> FPAC [D.E. 148 at 94-95].  However, Plaintiffs fail to plead any specific facts regarding Muhl's role in the alleged "scheme"; when, how, or what information he disseminated that was materially misleading; and what his purported "responsibilities and activities" in that scheme were.  Moreover, none of the Limited Partnership documents attached to the FPAC mention Muhl or his companies, BBM3 and BBM3 II, and no facts are pled that Muhl knew of the Limited Partnership's PNC account, had any authority over the account, or knew of the alleged embezzlement by Walsh.  <u>See</u> FPAC Exhibit 4 [D.E. 149-4].

Further, Plaintiffs generally refer to "Defendants' material misrepresentations" rather than attributing any specific ones to Muhl.  Thus, in grouping Muhl with Walsh, Walsh Jr., SARC, USREDA, and Greystone EB-5, Plaintiffs fail to establish that Muhl acted with the state of mind required under the PSLRA.  <u>See</u> <u>Phillips</u>, 374 F.3d at 1017–18 ("[S]cienter must be found with respect to each defendant and with respect to each alleged violation of the statute."); <u>Mizzaro</u>, 544 F.3d at 1238 (the PSLRA requires that a plaintiff "allege facts supporting a strong inference of scienter for each defendant with respect to each violation.")

In their opposition, Plaintiffs argue that the FPAC "did not need to allege factual allegations that Muhl specifically 'participated in the solicitation'" of Greystone EB-5, and that "it is enough that the FPAC alleged "'Defendant Muhl is the owner and manager of multiple of the Vosotas Entities.'"  <u>See</u> Plaintiffs' Response [D.E. 184 at 10–11].  However, this argument is predicated on circumstances that are not present here.

> Courts in the Southern District of Florida have permitted plaintiffs to attribute allegedly false statements to defendants via group pleading so long as plaintiffs also "make the specific factual allegation that [defendant], due to his 'high ranking position and direct involvement in the everyday business of the Company,' was 'directly involved in controlling the content of the statements at issue.'"

<u>Murdeshwar v. Search Media Holdings, Ltd.</u>, No. 11-Civ-20549, 2011 WL 7704347, at *12 (S.D. Fla. 2011) (quoting <u>In re Pegasus Wireless Corp. Sec. Litig.</u>, 657 F.Supp.2d 1320, 1325 (S.D. Fla.

2009)).  There is no allegation in the FPAC that Muhl was directly involved in the everyday business of the Vosotas Entities or controlled the content of any alleged misstatements.  Thus, Plaintiffs cannot impute liability to Muhl merely by virtue of his membership in the Vosotas Entities.

Finally, the FPAC fails to "specify each statement alleged to have been misleading with regards to each Plaintiffs' own investment."  Ravin v. Hockman, No. 06-Civ-22492, 2007 WL 29248, at * 5 (S.D. Fla. 2007).  Other than conclusory allegations that Muhl conspired with Walsh, there are no facts that plausibly show Muhl had any foreknowledge of Walsh's alleged embezzlement.

Thus, Plaintiffs fail to state a claim for violation of Section 10(b) and Rule 10b-5 in Count XVIII.

2.  Alleged Violation of Section 20(a) – Count XIX

Count XIX relies on vague, group pleading allegations that Muhl violated Section 20(a) by virtue of his violations of Section 10(b) and Rule 10b-5 and by virtue of his "high position[] within [Greystone EB-5]".  See FPAC [D.E. 148 at 97].  Given Plaintiffs' failure to state a claim that Muhl violated Section 10(b) and Rule 10b-5, Plaintiffs' Section 20(a) claim consequently fails. See Malin, 17 F.Supp.2d at 1351 ("Of course, without a primary violation of the securities laws, there can be no secondary violation under § 20(a).").

**K**.  **The FPAC is Subject to Dismissal with Prejudice.**

Because Plaintiffs were already given an opportunity to amend their pleading and have failed to cure the deficiencies in their claims against the Greystone Defendants, the undersigned recommends that the FPAC be dismissed with prejudice.  See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required the district

courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so.").

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that the Greystone Defendants' Motion to Dismiss First Partially Amended Complaint with Prejudice [D.E. 162] be GRANTED and the First Partially Amended Complaint [D.E. 148] be DISMISSED WITH PREJUDICE.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 21st day of December, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Darrin P. Gayles
        Counsel of Record